SEALED

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

SECURITIES AND EXCHANGE COMMISSION,

                    Plaintiff,

                                                     CASE NO.:

v.

ROYAL BENGAL LOGISTICS, INC., and
SANJAY SINGH,

                                                   **UNDER SEAL**

                    Defendants,

SHEETAL SINGH and CONSTANTINA
CELICOURT,

                    Relief Defendants.



## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

## I.    INTRODUCTION

1.    The Commission brings this emergency action to enjoin Royal Bengal Logistics, Inc. ("RBL"), a trucking and logistics company headquartered in Coral Springs, Florida, and its owner, Sanjay Singh ("Singh") (collectively, "Defendants"), from continuing to defraud investors through the sale of unregistered securities in violation of the anti-fraud and registration provisions of the federal securities laws.

2.    Since at least August 2019 to the present (the "Relevant Period"), Defendants have operated a Ponzi scheme and affinity fraud targeting South Florida's Haitian-American community, offering high-yield investment programs purportedly generating 12.5% to 325% of "guaranteed" returns. Defendants have raised approximately $112 million from more than 1,500 investors.

3.　　　Touting the success of its business model, Defendants promised investors that their money would be used to grow RBL's operations and increase RBL's fleet of semi-trucks and trailers. Among other things, Defendants assured investors and prospective investors that their investment programs were safe, that RBL's business did not depend on investor funds because it generated up to $1,000,000 per month, and that they had a fleet of over 200 semi-trucks, and growing.

4.　　　In truth, since August 2019, RBL has operated at a loss of over $18 million.[1] Without sufficient revenue to pay returns owed to investors, Defendants used approximately $70 million of new investor funds to pay promised returns and redemptions to existing investors.

5.　　　In addition, during that period Singh has misappropriated at least $14 million of investor funds for himself and others, including Relief Defendants, who did not provide any legitimate services for those investor funds. Defendants have also diverted over $19 million to two brokerage accounts controlled by Singh, who engaged in highly speculative equities trading on margin, ultimately losing more than $1 million of investor money in the process.

6.　　　Defendants did not disclose to investors and prospective investors their misappropriation of investor funds. Nor did they disclose that investor funds would be used to trade hundreds of millions of dollars in equities on margin.

7.　　　As of February 2023, RBL's bank accounts have dwindled to approximately $2.1 million. RBL will be unable pay the interest and principal owed to hundreds of investors absent an influx of new investor money in perpetuation of the scheme.

---

[1] Excluding funds received from and paid to investors, during the Relevant Period RBL's cash inflows associated with the operation of RBL's trucking business, approximately $13 million, were significantly less than cash outflows for expenses associated with the operation of RBL's trucking business, approximately $31.2 million.

8.      As a result of the conduct alleged in this Complaint, Defendants violated Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77e(a) and 77e(c); Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a); and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Exchange Act Rule l0b-5, 17 C.F.R. § 240.10b-5. Singh also, directly and indirectly, violated Exchange Act Section 10(b) and Rule 10b-5 thereunder as a control person of RBL under Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

9.      Unless restrained and enjoined, Defendants will continue to violate the federal securities laws. Among other relief, the Commission seeks permanent injunctions and civil monetary penalties against Defendants, and disgorgement of ill-gotten gains with prejudgment interest against the Defendants and Relief Defendants. The Commission also seeks an order against Singh imposing an officer and director bar. To halt this ongoing offering fraud, protect investors, and preserve investor assets, the Commission also seeks emergency relief, including preliminary injunctive relief, asset freezes, the appointment of a Receiver, and an order prohibiting the destruction of documents.

## II.   DEFENDANTS AND RELIEF DEFENDANTS

### A.  Defendants

10.     Singh, age 43, is an individual residing in Coral Springs, Florida. Singh is the founder, president, and director of RBL, and controls RBL's bank accounts and brokerage accounts, and all key aspects of RBL's business operations. Singh has never been registered with the Commission.

11.     RBL is a Florida for-profit corporation with its principal place of business in Coral Springs, Florida. RBL was formed in June 2018 for the purpose of operating a trucking and

logistics business. RBL began raising funds from investors in 2019 purportedly to increase the size of its fleet of trucks and to grow its operations. RBL's investment offerings have never been registered with the Commission.

### B.   Relief Defendants

12.   Sheetal Singh ("Sheetal"), age 41, is an individual residing in Coral Springs, Florida. Sheetal is Singh's spouse. RBL diverted approximately $7.5 million of investor funds to a bank account held jointly by Singh and Sheetal.

13.   Constantina Celicourt ("Constantina"), age 39, is an individual residing in Coconut Creek, Florida. Constantina is the spouse of RBL's Vice President of Business Development. On June 6, 2022, Constantina used approximately $2.1 million of investor funds to purchase real property in Pompano Beach, Florida, titled in her name.

### III.   JURISDICTION AND VENUE

14.   The Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act, 15 U.S.C. §§ 77t(b), 77t(d), and 77v(a); and Sections 21(d), 21(e), and Section 27 of the Exchange Act, 15 U.S.C. §§ 78u(d), 78u(e), and 78aa.

15.   This Court has personal jurisdiction over the Defendants, and venue lies in the Southern District of Florida because most of the transactions and acts constituting the violations alleged in this Complaint occurred in this District. Further, Singh resides in the District, and RBL—the company through which Singh defrauded investors—has its principal place of business in the District.

16.     In connection with the conduct alleged in this Complaint, the Defendants, directly and indirectly, singly or in concert with others, have made use of the means or instrumentalities of interstate commerce, the means or instruments of transportation and communication in interstate commerce, and the mails.

## IV.  FACTUAL ALLEGATIONS

### A.  RBL's Investment Programs

17.     RBL is a transportation and logistics company, and is registered as a common carrier with the U.S. Department of Transportation. Singh formed RBL in 2018, is RBL's president and director, and at all times material to the Complaint, has had signature authority over the company's bank accounts and finances, and control over all key aspects of RBL's business operations.

18.     Singh purports to have transformed RBL into, what he describes as, a reverse franchising model, whereby investors receive passive income generated from RBL's trucking business.

19.     Since no later than August 2019, RBL has offered investors at least four investment programs, promising guaranteed returns ranging from 12.5% to as high as 325% depending on the program (collectively, "RBL's Investment Programs"). RBL's Investment Programs are investment contracts and, therefore securities, within the meaning of Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act. As of the filing of this Complaint, Defendants continue to market RBL's Investment Programs and raise funds from investors.

### (i) RBL's Short and Long Term Investment Programs

20.     RBL offers investors the opportunity to invest in RBL's business through two loan programs, a Short Term Investment Program (the "Short Term Program"), and a Long Term

Owner Financing Program (the "Long Term Program"). RBL represents to investors that investments in either loan program will be used in RBL's general business operations.

21.    RBL's Short Term Program requires a minimum investment of $25,000, with a maximum investment of $200,000, for a period of 90 to 365 days depending upon the investment amount. At the end of the loan period, RBL is obligated to repay investors their principal investment plus interest ranging from 20-24% depending on the investment amount and term selected by the investor.

22.    RBL's Long Term Program requires a minimum investment of $60,000, with a maximum of $250,000, for a 36-month term. Under the Long Term Program, RBL is obligated to pay investors monthly payments based on an annual 12.5% interest rate.

### (ii) RBL's Trailer Sponsorship Program

23.    The third investment program offered by RBL is its Trailer Sponsorship Program (the "Trailer Program"). The Trailer Program is a six-month program that offers investors the opportunity to sponsor the building and purchase of a tractor-trailer on behalf of RBL.

24.    Under the Trailer Program, the minimum investment is $50,000, with a maximum investment of $200,000 for a period of 180 days. RBL represents to investors that their funds are used to build trailers in India, which are then disassembled and shipped to the United States. RBL claims that upon arriving in the U.S., the trailers are then reassembled and added to RBL's fleet or sold for a profit. At the end of the period, RBL is obligated to repay investors their principal investment plus 30% interest.

### *(iii) RBL's Truck Program*

25.    RBL's Equipment Management Investment Program (the "Truck Program") has a five-year term (the longest of RBL's Investment Programs) and offers the highest returns. The Truck Program requires a minimum investment of $55,000 that RBL purports to use toward the purchase of a semi-truck on behalf of the investor.

26.    RBL explains to prospective investors that it takes all steps to purchase and operate the truck on behalf of the investor, including identifying and purchasing the truck, arranging financing for the investor to purchase the truck, assigning a driver, obtaining licensing, registration and insurance, and maintaining the truck. Investors are required to make the investment through a new or existing corporation or limited liability company created by the investor, which RBL claims will be the legal owner of the truck.

27.    Under the terms of the Truck Program, the investor agrees to lease the truck to RBL for a five-year term. RBL pays the investor monthly lease payments in the amount of $3,000, beginning on the third month for 58 months. At the end of the five-year term, an investor in the Truck Program would have received $174,000 in lease payments alone, representing a 216% return on investment.[2] The investor also purportedly owns the trucks outright, which the investor may keep, sell to RBL, or sell to a third party.

28.    Investors may also invest $110,000 in the Truck Program for the purchase of two trucks. As an incentive to invest in two trucks, RBL pays investors a $10,000 rebate 30 days after receipt of the investor's investment. Under the two-truck option, RBL pays investors monthly lease payments in the amount of $6,000 for 58 months, after which an investor in the Truck Program

---

[2] Assuming the truck is valued at approximately $55,000 when returned to the investor at the end of the five-year lease, the total return on investment is 316%.

owns two trucks outright and will have received $358,000, representing a 225% return on investment.[3]

29.     RBL's Investment Programs constitute investment contracts and are, therefore, securities under *SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946). With respect to these investment programs, there was (a) an investment of money; (b) in a common enterprise; (c) based on the expectation of profits to be derived from the entrepreneurial or managerial efforts of others. *See SEC v. Friendly Power Co., LLC*, 49 F. Supp. 2d 1363, 1368 (S.D. Fla. 1999).

30.     New investors typically begin by investing $25,000 in RBL's Short Term Program, which is an apparent teaser program designed to lure investors into making larger investments over longer periods of time. After the three-month investment period, when investors are repaid their initial $25,000 investment, plus $5,000 of "interest," many investors decide to roll their $30,000 principal and interest payment into RBL's Truck Program, which requires an additional $25,000 investment and a five-year term.[4]

31.     From August 2019 through February 2023, RBL raised $112 million from more than 1,500 investors, a majority of which are Haitian-American residing in South Florida, but also include residents from at least 17 other states, the District of Columbia, Haiti, Canada, and India.

---

[3] Assuming the combined value of the trucks is approximately $110,000 when returned to the investor at the end of the five-year lease, the total return on investment is 325%.

[4] RBL's bank records reflect that a significant portion of investors initially invest $25,000 in what appears to be RBL's Short Term Program, followed by a second investment, often around 90 days after their first investment, in amounts indicative of the Truck Program or Two Truck Program.

### B. Defendants' Material Misrepresentations and Omissions

32.     Defendants solicit investors through sales agents, promotional videos, in-person investor presentations, investor conferences, and word-of-mouth.

33.     Investors are provided with offering materials and a brochure, entitled "RBL Investor Plan," which describes each of the four investment programs along with investment requirements and associated returns.

34.     In one of RBL's promotional videos, "Driving American Dream," available to the public on YouTube,[5] Singh claims to have reversed the traditional business model to one in which RBL carries all of the risk on behalf of its investors: "The company['s] ambition is only one – to work for our investor and to make the investor prosper. We take the risk. We take the liability. You enjoy the investment, and that is our business model."

35.     During a November 2022 RBL Investor Zoom video conference, also available to the public on YouTube,[6] Singh claimed that RBL generates $650,000 in revenue per month and compared RBL to Apple and Tesla:

> … [T]he fundamental[s] of this business can be trusted. So let's move on from the point of view that [RBL] may last one day, two days – this is not Bitcoin. Our product is better than Apple. Our product is better than Tesla. You buy Apple, you buy Tesla, you start spending money. You buy [a] Royal Bengal contract, you start making money.

36.     In a pitch to undercover FBI agents[7] posing as prospective investors at RBL's headquarters, RBL's representatives emphasized that:

- Investments are 100% guaranteed;

- RBL does not rely on investor funds to operate;

---

[5] https://youtu.be/oEqnyBB5-6Q
[6] https://youtu.be/t02PZhNIs5k
[7] All undercover activity and recordings referenced in the Complaint were done strictly at the direction and behest of law enforcement agencies and not the Commission.

- RBL has a fleet of 230 trucks and plans to purchase 60 more by July 2023; and
- To date, no investor has ever missed receiving a payment.

37.     During this same pitch, RBL's representatives claimed that RBL's trucking business generates over a million dollars in revenue per month—a notable increase from the $650,000 figure touted by Singh back in November 2022.

38.     Defendants' representations about the success of RBL's trucking company, the safety and security of investor funds, the size of RBL's fleet, and RBL's ability to pay investor returns from the profitability of RBL's trucking enterprise are false.

39.     RBL's bank account records demonstrate that investments in RBL are anything but safe and secure. Since at least August 2019, Defendants have been depositing and commingling investor funds raised through the four investment programs in RBL's operating accounts.

40.     RBL uses commingled investor funds to pay its business expenses and, as further explained below, to make Ponzi-like "interest" and "lease" payments and principal redemptions to investors under RBL's Investment Programs. Account balances often have been reduced to a few hundred thousand dollars until new investor money is deposited allowing RBL to continue operating. This cycle is then repeated.

41.     Contrary to RBL's claims that it is generating $650,000 to $1,000,000 in monthly revenues, from August 2019 through February 2013, RBL operated at an approximate $18 million loss and used investor funds to cover the shortfall.

42.     Specifically, during that time period, RBL generated approximately $13 million of revenues from what appears to be freight factoring. Freight factoring allows a trucking company, such as RBL, to sell its invoices to a third party for immediate payment rather than having to wait 30, 60, or even 90 days for invoices to be paid by customers after the freight has been delivered.

During this same period, RBL incurred approximately $31.2 million of expenses. Therefore, at all times material to the Complaint, RBL could not have paid investors "interest" or "lease" payments from company profits. Instead, RBL has been paying investors "returns" and redemptions from a continuous stream of new investor money, in a Ponzi-like fashion.

43.     In addition, RBL has grossly overstated the number of trucks it has purchased on behalf of investors in RBL's Truck Program. The bulk of RBL's fleet is comprised of independent contractors who drive their *own* trucks for RBL, known in the industry as owner operators. To inflate the number of trucks to prospective investors, Defendants misrepresent owner-operated trucks as their own. Trucks actually purchased by RBL are approximately 10 to 20 years old and in poor condition. Employees driving RBL-owned trucks regularly complain about breakdowns and issues with RBL paying for repairs.

44.     In addition to these misrepresentations, Defendants also failed to disclose that Singh misappropriated millions of investor funds for himself, his wife, and other related parties, and diverted millions for unauthorized and speculative securities trading.

**C. Defendants' Misuse and Misappropriation of Investor Funds**

45.     During the Relevant Period, Defendants used investor funds to make Ponzi-like payments of "returns" and redemptions to investors, Singh misappropriated millions for himself and related parties, and diverted over $19 million to two brokerage accounts controlled by Singh, where he engaged in highly speculative equities trading on margin. None of this misconduct or use of funds was, or is currently being, disclosed to investors.

### *(i) Defendants' Operation of a Ponzi Scheme*

46.     RBL represents to prospective investors that it is able to pay such extraordinary returns due to the rapid growth and success of its trucking business. RBL's bank account records, however, reflect that from August 2019 through February 2023, RBL operated at an approximate $18 million loss and used investor funds to cover the shortfall.

47.     RBL's bank account records further reflect that, in the absence of sufficient revenues, RBL has been conducting a Ponzi scheme to meet its obligations to investors. In classic Ponzi-scheme fashion, RBL is paying returns owed to existing investors – either "interest" on the loan programs or "lease" payments under the Truck Program – with money raised entirely from new investors. RBL has also used new investor funds to pay redemptions to preexisting investors.

48.     As of February 2022, RBL had approximately $2.1 million remaining in its bank accounts. RBL will have insufficient funds to continue paying its investors absent a substantial influx of new investor money in furtherance of the scheme.

### *(ii) Defendants' Misappropriation of Investor Funds*

49.     Since RBL signed up its first investor in or around August 2019, Defendants have misappropriated at least $13.9 million of investor funds for themselves and related parties, including:

> a.     $7.5 million of investor funds diverted to a bank account held jointly by Singh and his spouse, Sheetal;

> b.     As much as $3.5 million of investor funds diverted to Cingar Transport, LLC, a company owned and controlled by RBL's Vice President of Credit and Acquisition

> c.     $432,500 of investor funds paid to one of Singh's relative; and

d.      As much as $375,400 of investor funds diverted to North America Aerospace, LLC, a company owned and controlled by Singh.

50.      In addition, RBL paid $2.1 million of investor funds to a realty company for real estate in Pompano Beach, Florida, purchased in the name of Constantina Celicourt, who is the spouse of RBL's Vice President of Business Development.

### (iii) Investor Funds Diverted for Unauthorized Securities Trading

51.      From March 2022 through January 2023, Defendants diverted approximately $19.3 million of investor funds to two TD Ameritrade brokerage accounts – one opened in the name of RBL (TD Account XXXX3647), the second opened in the name of Sigh personally (TD Account XXXX7115). Defendants diverted approximately $17.3 million from RBL's operating account directly to RBL's TD Ameritrade Account. Singh's personal TD Ameritrade account was funded with at least $2 million that was first diverted to the joint bank account held by Singh and Sheetal, then transferred to the brokerage account. Singh had sole control over both accounts.

52.      Singh engaged in highly speculative trading of equities on margin, losing over $1 million in the RBL TD Account. Monthly statements from these brokerage accounts reflect a rapid and frequent turning over of equities.

53.      For instance, RBL's TD Ameritrade account was opened in March 2022. For the period of March 1, 2022 through December 31, 2022, RBL purchased $299 million in securities and sold $291 million in securities, with unrealized losses for this period totaling $1.06 million. With respect to Singh's TD Ameritrade account, for the period of January 1, 2022 through December 31, 2022, Singh purchased $383 million in securities and sold $381 million in securities, with unrealized losses for this period totaling 15 dollars.

54.     Trading in both accounts was so aggressive, TD Ameritrade warned Defendants against manipulative stock trading, and in January of 2023, TD Ameritrade force-closed both accounts.

55.     None of RBL's Investment Programs permitted Defendants to trade stock using investor funds.

## V.   VIOLATIONS ALLEGED

### COUNT I

#### Violations of Sections 5(a) and 5(c) of the Securities Act
#### (Against all Defendants)

56.     The Commission adopts by reference paragraphs 1 through 55 of this Complaint.

57.     No registration statement was filed or in effect with the Commission pursuant to the Securities Act with respect to the securities issued by the Defendants as described in this Complaint, and no exemption from registration existed with respect to these securities.

58.     From at least August 2019 through the present, the Defendants directly and indirectly:

(a)     made use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, through the use or medium of a prospectus or otherwise;

(b)     carried or caused to be carried securities through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or delivery after sale; or

(c)     made use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security,

without a registration statement having been filed or being in effect with the Commission as to such securities.

59.   By reason of the foregoing, the Defendants violated and, unless restrained and enjoined, are reasonably likely to continue to violate, Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

## COUNT II

### Violations of Section 17(a)(1) of the Securities Act
### (Against all Defendants)

60.   The Commission adopts by reference paragraphs 1 through 55 of this Complaint.

61.   From at least August 2019 through the present, the Defendants, in the offer or sale of securities by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly, knowingly or recklessly, employed devices, schemes, or artifices to defraud.

62.   By reason of the foregoing, the Defendants violated and, unless restrained and enjoined, are reasonably likely to continue to violate, Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

## COUNT III

### Violations of Section 17(a)(2) of the Securities Act
### (Against all Defendants)

63.   The Commission adopts by reference paragraphs 1 through 55 of this Complaint.

64.   From August 2019 through the present, the Defendants, in the offer or sale of securities by use of the means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly, negligently obtained money or property by means of untrue statements of material facts or omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading.

65.     By reason of the foregoing, the Defendants violated and, unless restrained and enjoined, are reasonably likely to continue to violate, Section 17(a)(2) of the Securities Act, 15 U.S.C. § 77q(a)(2).

## COUNT IV

### Violations of Section 17(a)(3) of the Securities Act
### (Against all Defendants)

66.     The Commission adopts by reference paragraphs 1 through 55 of this Complaint.

67.     From August 2019 through the present, the Defendants, in the offer or sale of securities by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, directly or indirectly, negligently engaged in transactions, practices, and courses of business which have operated, are now operating, or will operate as a fraud or deceit upon the purchasers.

68.     By reason of the foregoing, the Defendants have violated and, unless restrained and enjoined, are reasonably likely to continue to violate, Section 17(a)(3) of the Securities Act, 15 U.S.C. § 77q(a)(3).

## COUNT V

### Violations of Section 10(b) and Rule 10b-5(a) of the Exchange Act
### (Against all Defendants)

69.     The Commission adopts by reference paragraphs 1 through 55 of this Complaint.

70.     From August 2019 through the present, the Defendants, directly and indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails in connection with the purchase or sale of securities, knowingly or recklessly employed devices, schemes, or artifices to defraud.

71.     By reason of the foregoing, the Defendants have violated and, unless restrained and enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(a), 17 C.F.R. § 240.10b-5(a), thereunder.

## COUNT VI

### Violations of Section 10(b) and Rule 10b-5(b) of the Exchange Act
### (Against all Defendants)

61.     The Commission adopts by reference paragraphs 1 through 55 of this Complaint.

62.     From August 2019 through the present, the Defendants, directly and indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails in connection with the purchase or sale of securities, knowingly or recklessly made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

63.     By reason of the foregoing, the Defendants have violated and, unless restrained and enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b), thereunder.

## COUNT VII

### Violations of Section 10(b) and Rule 10b-5(c) of the Exchange Act
### (Against all Defendants)

72.     The Commission adopts by reference paragraphs 1 through 55 of this Complaint.

73.     From August 2019 through the present, the Defendants, directly and indirectly, by use of the means and instrumentalities of interstate commerce, or of the mails in connection with the purchase or sale of securities, knowingly or recklessly engaged in acts, practices and courses of business which operated as a fraud upon the purchasers of such securities.

74.     By reason of the foregoing, the Defendants have violated and, unless restrained and enjoined, are reasonably likely to continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5(c), 17 C.F.R. § 240.10b-5(c), thereunder.

## COUNT VIII

### Violations of Section 20(a) of the Exchange Act – Control Personal Liability
### (Against Singh)

75.     The Commission adopts by reference paragraphs 1 through 55 of this Complaint.

76.     From August 2019 through the present, Singh has been, directly or indirectly, a control person of RBL for purposes of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

77.     From August 2019 through the present, RBL has violated Section 10(b) and Rule 10b-5 of the Exchange Act.

78.     As a control person of RBL, Singh is jointly and severally liable with and to the same extent as RBL for each of its violations of Section 10(b) and Rule 10b-5 of the Exchange Act.

79.     By reason of the foregoing, Singh has violated and, unless restrained and enjoined, is reasonably likely to continue to violate, Sections 10(b) and 20(a), and Rule 10b-5 of the Exchange Act, 15 U.S.C. § 78j(b) and § 78t(a), and 17 C.F.R. § 240.10b-5.

## COUNT IX

### Unjust Enrichment
### (As to Relief Defendants)

80.     The Commission adopts by reference paragraphs 1 through 55 of this Complaint.

81.     The Relief Defendants obtained funds as part, and in furtherance of, the securities violations alleged above without a legitimate claim to those funds, and under those circumstances

it is not just, equitable or considerable for the Relief Defendants to retain the funds. The Relief Defendants were unjustly enriched.

82.     Relief Defendants should be ordered to disgorge the funds they received as a result of Defendants' violations of the federal securities laws.

## VI.  <u>RELIEF REQUESTED</u>

**WHEREFORE**, the Commission respectfully requests the Court find the Defendants committed the violations alleged, and:

### A.  <u>Temporary Restraining Order and Preliminary Injunction</u>

Issue a Temporary Restraining Order and Preliminary Injunction, restraining and enjoining: the Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating Sections 5(a) and 5(c) and 17(a) of the Securities Act, and Sections 10(b) and Rule 10b-5 of the Exchange Act, and additionally as to Defendant Singh, Section 20(a) of the Exchange Act.

### B.  <u>Permanent Injunction</u>

Issue a Permanent Injunction restraining and enjoining the Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, from violating the federal securities laws alleged in this Complaint.

### C.  <u>Asset Freeze and Sworn Accountings</u>

Issue an order freezing the assets of the Defendants and Relief Defendants, and requiring Defendants and Relief Defendants to file sworn accountings with the Court.

### D.  <u>Appointment of a Receiver</u>

Appoint a receiver over Defendant RBL.

### E. **Records Preservation**

Issue an Order requiring all Defendants and Relief Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, to preserve any records related to the subject matter of this lawsuit that are in their possession, custody, or subject to their control.

### F. **Disgorgement**

Issue an order directing all Defendants and Relief Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, and each of them, to disgorge all ill-gotten gains received within the applicable statute of limitations, including prejudgment interest, resulting from the acts or courses of conduct alleged in this Complaint.

### G. **Penalties**

Issue an order directing Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).

### H. **Officer and Director Bar**

Issue an Order barring Singh, pursuant to Section 20(e) of the Securities Act, 15 U.S.C. § 77t(d), and Section 21(d)(2) of the Exchange Act, 15 U.S.C. § 78o(d), from serving as an officer or director of any company that has a class of securities registered with the Commission pursuant to Section 12 of the Exchange Act, 15 U.S.C. § 78l, or that is required to file reports pursuant to Section 15(d) of the Exchange Act, 15 U.S.C. § 78o(d).

### I. **Further Relief**

Grant such other and further relief as may be necessary and appropriate.

### J.  **Retention of Jurisdiction**

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that it may enter, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

## VII. **DEMAND FOR JURY TRIAL**

The Commission hereby demands a jury trial on all issues so triable.

Dated: June 20, 2023          Respectfully submitted,

                             Russell R. O'Brien
                             Trial Counsel
                             Florida Bar No. 084542
                             Direct Dial: (305) 982-6341
                             Email: obrienru@sec.gov

                             Attorney for Plaintiff
                             **SECURITIES AND EXCHANGE COMMISSION**
                             801 Brickell Avenue, Suite 1950
                             Miami, Florida 33131

Of counsel:
Linda Schmidt, Senior Counsel
Securities and Exchange Commission
801 Brickell Avenue, Suite 1950
Miami, Florida 33131