UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 23-61179-CIV-SINGHAL

SECURITIES AND EXCHANGE COMMISSION,

     Plaintiff,

v.

ROYAL BENGAL LOGISTICS, INC., and
SANJAY SINGH,

     Defendants.

_____/

## RECEIVERS' SECOND QUARTERLY STATUS REPORT FOR THE PERIOD FROM OCTOBER 1, 2023 UNTIL DECEMBER 31, 2023

Paul Lopez and Jennifer Wahba in their capacity as Receivers for Royal Bengal Logistics, Inc. (RBL), by their undersigned attorneys, file this Second Quarterly Status Report as to their activities from October 1, 2023 through December 31, 2023 as follows:

### INTRODUCTION

The Receivers were appointed in their position by this Court on June 21, 2023 as a result of an Order Granting the Securities and Exchange Commission's (SEC) Motion. *See* [DE 11] (the "Receivership Order") Pursuant to paragraphs 48 and 49 of the Receivership Order, the Receivers were directed to file this quarterly status report for the period ending December 31, 2023.

While all Receivership proceedings involving Ponzi schemes are different, the situation involving RBL is unique due to several extraordinary factors. As noted in more detail below, beginning on February 1, 2023, management of RBL discontinued making entries into the financial books and records of RBL in the company's QuickBooks software system. This has hampered the Receivers and the Receivers' accounting professionals in the investigation as to the acts and conduct of those involved with RBL in determining the true nature of the financial transactions

#2726846v1-221271.0001

involving the company. Furthermore, rather than utilizing a single investment vehicle and a single bank account to lure investors into depositing money with RBL, management devised multiple schemes for "investment opportunities" which include the following:

- Providing investments to RBL for the purchase of trucks in the investors' names (or corporate entity) to be then leased to RBL where the trucks were to be utilized by RBL in its money-losing trucking operation.  A percentage of the trucks were old with excessive miles that were in various states of disrepair, none of which was apparently properly disclosed to investors.

- Providing investments to RBL for the purchase of trucks to be then leased to RBL when no such trucks were ever purchased for the investors.

- Providing unsecured short-term loans to RBL for 90 days with high-interest rates, some of which were in excess of 110% per annum in violation of Florida law

- Providing unsecured long-term loans to at high interest rates, some of which were in excess of 110% per annum in violation of Florida law.

- Providing loans to RBL for the alleged investment in real estate acquisitions.

- Providing loans to RBL for the fabrication of trailers at the RBL Lubbock Texas facility.

- Providing loans or equity investments for a purported business operation in India.

While the Receivers, their legal professionals and their accounting professionals have worked diligently in order to be able to submit this quarterly status report that is complete, based upon the lack of financial recordkeeping by RBL and its management, the absence of candor of some of the RBL executives and employees, and the herculean task of reconstructing the financial records of RBL as noted below, the Receivers are unable at this time to provide all of the information as required by paragraphs 48 and 49 of the Receivership Order.  That said, the

Receivers have been able to reconstruct significant key information regarding RBL's operations so that this Court can understand RBL's overall status at this point in time. Moreover, as the Receivers' counsel continues to obtain additional bank records through various subpoenas, the forensic accountants continue to reconstruct RBL's bank records to the fullest extent possible.

## SUMMARY OF THE OPERATIONS OF THE RECEIVERS

In order to create the most meaningful narrative as to the summary of the operations of the Receivers, the following information will in part be listed in chronological order as to operational issues and endeavors throughout the quarterly reporting period.

As previously reported, the Receivers determined that the presence of the Receivers or one of the attorneys for the Receivers at the Coral Springs office facility needed to be continued for each business day. Because of the continuation of the limited staff in order to facilitate the surrender of the vehicles and help with the identification and disposition of assets, face-to-face communication with the Florida employees was necessary. Additionally, because of the unique and diverse constituency of the investors and creditors, many of the investors continued to come in to the RBL offices for information and assistance, and the presence of the Receivers' or their legal representative was necessary in order to deal with these in-person inquiries. This daily presence at the Coral Springs office continued until November 30, 2023, at which time, as noted below, the Receivers vacated the leased premises where the RBL executive offices had been located in an effort to further reduce expenses.

At the end of September 2023, as reported in the Receivers' initial quarterly report [DE 100], the parcel of undeveloped property located in Pompano Beach, Florida, which was the subject of a fraudulent transfer action filed by the Receivers against Constantina Celicourt, was deeded back to the Receivers. After an investigation by the Receivers and their legal counsel as to

the best and most efficient way to sell the property, the Court granted the Receivers' motion to sell the property at auction. [DE 120, 121]. The Order authorized the Receivers to employ Fisher Auctions to conduct the sale. The Receivers were able to procure liability insurance for the property in order to protect the Receivership estate.

With respect to this property, it should be noted that one of the Receivers' legal counsel, Wilson Atkinson, Esq., who has had vast experience in land use and development in South Florida was able to determine that the prior owner of the parcel (prior to the transfer of funds to Ms. Celicourt and her acquisition of the property) had begun a re-platting effort to increase the value of the vacant property. Counsel for the Receivers then communicated with the vendor that had been assisting the prior owner with the re-platting and for an expense of less than $700 in out-of-pocket costs was able to facilitate the re-platting of the property prior to Ms. Celicourt's re-conveyance of the property to the receivership estate. This re-platting served to substantially increase the value of the property by almost $1 million dollars. A virtual and in-person auction was conducted on December 15, 2023. As a result of that auction, the highest bid received was in the amount of $3,010,000 (which was significantly higher than the original $2.1 million dollar purchase price for the property). The Receivers are currently working with the highest bidder in order to prepare for the closing on the sale of the property, which is scheduled to take place on or before January 19, 2024.

The Receivers and their legal counsel had initially proposed an auction sale of investors' vehicles where the investors were unable or unwilling to retrieve the vehicles themselves, yet wanted to try to recover the value of the purchased vehicles. After arranging for the auction sale of the vehicles, the Receivers learned that partially as a result of the inflated purchase prices paid by the investors for the vehicles, and also partially as a result of the changing used-truck market

as a result of the bankruptcy proceeding of Yellow Transportation, the liquidation value of the trucks would not bring sufficient proceeds in order to satisfy the lien obligations of the investors on the vehicles. As such, the Receivers would be unable to deliver good and clean title to purchasers at an auction sale. This resulted in the Receivers canceling the proposed auction sale which then required the investors to arrange for the retrieval of the vehicles. The Receivers notified each of the investors/owners of the vehicles that they needed to retrieve their vehicles from the Receivers' leased/rented storage lots in Ft. Pierce, Florida, and Lubbock, Texas, no later than November 30, 2023. When it became clear that some of the investors/owners were unable to retrieve their vehicles due to the lack of financial capability or a place to store them, the Receivers began a process of notifying the lienholders on the vehicles that if the lienholders provided proof of the perfection of the security interest/liens on the vehicles and also executed a hold harmless/indemnification agreement with the Receivers, then beginning December 1, 2023, the Receivers would release the vehicles to the lienholders.  In working with the various financing entities for the investors, the Receivers have, following receipt of executed indemnity and hold harmless agreements, released the vehicles to the lenders. As of December 31, 2023, only 45 vehicles remain in the custody of the Receivers, further easing the financial burden on RBL due to requiring less staff and less storage costs. As an additional incentive for the removal of the vehicles, the Receivers' legal counsel researched appropriate laws in Florida and Texas relating to storage charges. As a result, the Receivers have notified all investors and their lenders that beginning December 1, 2023, daily storage charges would be imposed on all vehicles that had not been promptly retrieved. This will permit the Receivers to sell any vehicles not retrieved by the final deadline free and clear of any liens or encumbrances so as to be able to permit the Receivers to vacate the storage facilities.

#2726846v1-221271.0001

In connection with identifying all creditors and investors, the Receivers continued updating their website and sent email blasts to all known creditors and investors setting forth the procedures for filing claims in the Receivership proceeding. In so doing, the Receivers arranged to have the instructions for the filing of claims posted on the Receivers' website in English and Haitian Creole, and provided links to the claim forms also in English and in Haitian Creole.  As noted in more detail below, the Receivers are currently processing and categorizing the proofs of claim that has been submitted to the Receivers. As of December 31, 2023, 1,533 proofs of claim have been submitted to the Receivers.

During this reporting period, the Receivers were advised that several vehicles that were leased to RBL that were awaiting retrieval or disposition located in the Fort Pierce storage facility were missing. The Receivers arranged to obtain security camera footage of the location, and it was found that the storage facility operator did not have functioning cameras at all appropriate locations. With what information was available, the Receivers contacted the Fort Pierce Police Department, and a detective from the Fort Pierce Police Department worked with the Receivers in order to file a police report and theft affidavit for the vehicles. During this period of time, some of the missing vehicles were retrieved.  The investigation by the Fort Pierce Police Department is ongoing, and the Receivers are working with and cooperating with the detective in charge of that investigation. The Receivers also filed another police report with the Lakeland Police Department for another truck that went missing within that jurisdiction. The Lakeland investigation is also ongoing. As of December 31, 2023, there were four vehicles that have not been retrieved, and the Receivers are continuing to work with law enforcement in order to try to obtain their recovery.

The Receivers continued pursuing complete responses from banking institutions and brokerage firms to the subpoenas previously issued in order to determine the extent of banking and

#2726846v1-221271.0001

other transactions with financial institutions transactions that occurred prior to the entry of the Receivership Order. As a result of the millions of dollars that were transferred between bank accounts of RBL (without any apparent legitimate business purpose for doing so) and also disbursed to others, it became imperative for the Receivers to pursue complete responses from the banking and other financial institutions. Additionally, as previously noted, principals of RBL discontinued making any financial book entries into the RBL accounting system as of February 1, 2023, so the ability of the Receivers and their accounting professionals to create an understanding of what transpired prior to the Receivership Order has been severely hampered. Unfortunately, some of the banking institutions have been unwilling to fully comply with the subpoenas, which has necessitated continuous follow-up and pressure to be exerted by the Receivers' legal counsel. Unfortunately, some of the banking institutions have been reluctant to or have refused to turn over some of the subpoenaed and requested documentation, and the Receivers are in the process of taking the steps necessary in order to enforce compliance with the document production subpoenas. It is anticipated that the Receivers will be filing multiple motions to compel with the Court in January 2024.

As previously reported, the Receivers were able to obtain an Order from this Court appointing them as Receivers for an affiliated entity, North America Aerospace, LLC (NAA). According to the records of the Secretary of State of Florida, Sanjay Singh is listed as the only member and officer of this entity. When the Receivers sought compliance with the NAA Receivership Order by Mr. Singh to provide the Receivers with information concerning the assets and business activities of NAA, Mr. Singh refused to do so, asserting his Fifth Amendment privilege. This necessitated the Receivers' legal counsel filing a motion to compel the response to the request for information so that the Receivers could effectively carry out their fiduciary duties

in administering the NAA Receivership estate.  On December 13, 2023, this Court entered an order granting the Receivers' motion [DE 125], and gave Mr. Singh until December 22, 2023, in which to comply. On December 20, 2023, Mr. Singh expressed to the SEC and the Receivers' counsel that he wishes to apply for appointment of a volunteer attorney to represent him through this Court's volunteer attorney program so that counsel can review the requests and respond to the Receivers' requests.   On December 28, 2023, this Court entered an Order [DE 128] referring the matter to the Court's volunteer attorney program, and giving further direction with respect to a response by Mr. Singh.

The Receivers continued to negotiate with the landlords for the facilities located in Coral Springs, Florida, and Lubbock, Texas, in order to terminate the leases early to conserve the Receivership's resources. With respect to the facility in Lubbock, which is a lease of an airplane hangar located on a former U.S. Air Force Base, as well as the adjoining storage area (where both RBL and NAA are the lessees), the Receivers agreed with the landlord to terminate the lease and vacate the premises when all of the vehicles have been retrieved, which is currently expected to be no later than January 31, 2024. In consideration of foregoing, in exchange for the claim the landlord has against the Receivership estate for the future lease obligations, the Receivers are abandoning a fuel tank, a compressor and the office furniture located at the Lubbock facility. This accommodation will save the Receivership estate thousands of dollars with respect to a future lease termination claim.

With respect to the office space facility originally utilized by RBL in Coral Springs Florida, the Receivers had previously terminated part of the lease so as to surrender offices located on the 2nd floor and 3rd floor of the building to the landlord. Because so much of the business of RBL in the receivership estate on a day-to-day basis had been wound down, the Receivers made the

determination to discontinue utilizing the Coral Springs main office on the first floor of the building as of November 30, 2023. In connection therewith, the Receivers reached an agreement with the landlord to terminate the lease as of November 30, 2023, and the landlord, being able to re-let the premises immediately, agreed to forego any claim for future rent from the Receivers. The very limited number of remaining employees who had worked at the Coral Springs facility will be working remotely on an as-needed part-time basis. Since the remaining Florida employees are familiar with the investors and have the time available, the Receivers are utilizing these employees to assist with the input of the data from the submitted proofs of claim. By utilizing these employees to do so, it will expedite the compilation of all of the data from the proofs of claim, and it will be done in a very cost-effective manner rather than utilizing paralegal staff from the Receivers' law firm to so. Additionally, because the Receivers believe the virtually all of the investors and creditors have been notified of the receivership proceedings, there was no longer the need for one of the Receivers or a legal representative of the Receivers to be physically present at the Coral Springs office past November 30, 2023. The discontinuance of the use of the Coral Springs facility has worked to save the receivership estate considerable money.

The Receivers continue to review documents involving the financing of vehicles by investors for purchases that had been facilitated by RBL employees. Whenever possible, the Receivers and their legal counsel worked to urge the lenders to accommodate the unique situations confronting the investors as a result of the unfortunate consequences of being the victims of a significant Ponzi scheme. Unfortunately, several of the finance companies have chosen to aggressively pursue the investors for deficiency claims and collection fees. The Receivers' legal counsel have investigated whether the receivers and their legal counsel could assist these investors,

but after review and research, it was determined that the Receivers do not have appropriate standing to intervene on behalf of the investors.

As previously reported, the US Attorney's office for the Southern District of Florida had issued a comprehensive subpoena addressed to the Receivers for electronically stored and other information concerning the operations of RBL.  The Receivers employed an outside vendor to digitized and store all of the information from multiple stand-alone computer hard drives which were utilized by RBL during its operations. The Receivers have provided paper documents to the US Attorney's office. In conjunction therewith, the Receivers were advised that emails to and from the RBL employees were of a magnitude of close to 100 gigabytes of stored information. After consulting with counsel for the SEC, the Receivers and the legal counsel made the determination that it would not be worthwhile to spend the time, effort and money to review all of these emails given the likelihood of no significant return being provided for this endeavor.

The Receivers have also been in communication with the office of the Federal Public Defender for the Southern District of Florida as Mr. Singh is being represented by those attorneys in his concurrent federal criminal proceeding. The Receivers have worked with and cooperated with the Public Defender attorneys and staff in providing such information and documents as has been requested consistent with appropriate legal standards.

The Receivers had previously reported that in accordance with an Order entered by this Court, they successfully sold at auction sale a 40 acre ranch and a separate single family residence that had been purchased in the name of RBL (where the Receivers determined there was no business purpose for the purchases).  In connection with the contemplated closing on the purchase of the single-family residence, legal counsel for the Receivers was required to file copies of motions and court orders from this Court in the United States District Court for the Northern

District of Texas in order to comply with various federal statutes concerning the sale of Receivership property. The closing on that sale took place in early November, and the Receivers have received the proceeds of that sale. The closing on the sale of the Ranch Property took place in November, and the Receivers received the net proceeds of the sale. For the 40-acre ranch property, the Receivers were paid net amount of $829,647.85. For the single-family home, the Receivers were paid net amount of $195,594.25.

In connection with the sale of the 40-acre ranch, the day after the parties signed the written agreement for the purchase and sale of the property that was sold at auction, a freak rainstorm hit the Lubbock Texas area, and, as a result, the lower level of the ranch house was flooded. The Receivers had previously reported that they had been unable to obtain insurance on this vacant house. Based upon applicable Texas law and the terms of the purchase and sale agreement, the Receivers, as sellers, were responsible for the damage to the residence that occurred after the execution of the contract. Utilizing the services of the Receivers' auctioneer, experts were engaged to determine the cost of the remediation. After extensive negotiations with legal counsel for the purchasers, it was determined that it would be in the best interest of the Receivership estate to allow a deduction in the purchase price for the cost of the water remediation, with the responsibility to correct the problem then being placed on the purchasers rather than having the Receivers undertake to have the work performed. Additionally, as a result of the title search in order to convey good title to the ranch property, it was determined that RBL had never purchased title insurance when acquiring the ranch, and it was found that the deed granting title to RBL contained a scrivener's error as to a metes and bounds call. As a result, the Receivers were required to allow a further discount for the cost of obtaining a corrective deed so that good title could be passed.

#2726846v1-221271.0001

**Locating Additional Lubbock, Texas Properties in the Name of RBL**

As set forth in more detail below, given the absence of credible financial records be maintained at RBL, the Receivers conducted an investigation as to the real property ownership records in and around the Lubbock Texas area in order to determine if there were any additional properties in which RBL had an interest. The Receivers were able to locate an unimproved commercial parcel of land adjoining Interstate 27 there Lubbock which was owned by RBL. Pursuant to an order of this Court, the receivers were authorized to employ Stampler Auctions in order to sell this parcel at auction, and the auction sale is scheduled for January 9, 2024.

**Securing the Funds of the Receivership Estate**

As initially reported, the Receivers determined that the funds in the account at the existing RBL banking relationship may not have been fully insured as they exceeded the $250,000 insured limit by the FDIC. The Receivers sought proposals from various banking institutions in South Florida, and did establish a new banking relationship which provides full insurance coverage for all Receivership funds, and, at the same time, earns interest on funds on deposit so as to be able to maximize the recovery for the estate. As such, all of the receivership funds are currently in insured accounts, with the vast majority of the funds being held earning interest.

**Other Investigations into RBL Assets and Decisions by the Receivers**

**India Operations**

Upon their appointment, the Receivers learned that RBL had various business relationships with entities in India affiliated with the principals of RBL.  These affiliated entities appeared to provide some form of "back office" services for RBL, as well as utilizing software to keep track of the location of leased vehicles. The Receivers also learned that RBL was paying a flat monthly fee to the affiliated entity in India. The Receivers discontinued all payments to the affiliated entity

in India based upon (a) the lack of any documentation to support the payments, and (b) since the trucking operation was discontinued, there was no longer a need for the services that were being claimed to be provided.  The Receivers are currently further investigating the relationship with the entities in India and transfers of assets that have been made to these entities.

**Manufacture of Sub-Standard Trailers**

The Receivers learned that RBL fabricated trailers at the Lubbock facility utilizing component parts that were shipped from India to the Port of Houston and then to the Lubbock facility. The Receivers and counsel have determined that the so-called fabrication of trailers by RBL should be discontinued since key personnel at RBL have explained that said trailers were of little to no value since they were not manufactured using United States regular specifications and were of sub-standard quality.  Thurs, the Receivers have halted any such further production in order to continue to save resources. Additionally, the Receivers have made the determination not to accept components being shipped from India to the Port of Houston since the demurrage charges and other charges would exceed the value of the components, and, at the same time, the Receivers would then be required to dispose of the components if they were delivered to the Lubbock, facility.

As mentioned above, the Receivers continued to investigate those trailers that were owned by investors that had been fabricated in the Lubbock facility, the Receivers learned that those trailers were not built to appropriate specifications for use in the United States. Among other things, the trailers were not as wide as the tractors, and that disparity created a propensity for the trailers to wobble while on the road which created an accident hazard. Additionally, because the trailers were narrower than standard, loads needed to be concentrated in the middle of the trailer, which created a tipping over hazard while on the road. Furthermore, there had been reports that

because of the apparent inferior materials used to fabricate the trailers, bottoms of the trailers fell out while on the road. As a result of all of this, the Receivers, on advice of counsel, made the decision to not release the RBL-fabricated trailers to those investors that owned them because of the severe safety hazards, and the Receivers will sell the trailers for parts and scrap and pay the proceeds to the respective owners.  Fortunately, to the best of the receivers' knowledge, no claims have been filed against the receivership estate as a result of the defectively manufactured and fabricated trailers.

### Communication with Investors

The Receivers have established a procedure to ensure that all telephone communications, telephone messages and email messages are responded to as promptly as possible, with all telephone messages received prior to the end of the business day being responded to before the end of that business day.

As noted above, the Receivers recognized the need for effective communication to RBL's investors and creditors, which was complicated by the fact that many of the investors and creditors were unsophisticated in business transactions, and unfamiliar with court proceedings. The Receivers immediately established a website (www.rblreceivers.com) that is updated on an almost weekly basis to provide information and current developments to everyone interested in the Receivership estate. Where appropriate, the Receivers include hyperlinks to court pleadings and important documents, and provide instructions for those interested in surrendering vehicles, having vehicles auctioned, and communicating with the Receivers.

When the Receivers determine that there is a new development that is significant or if it is necessary to advise the investors and creditors of a specific development, the Receivers arranged to have an email blast sent to all known investors and creditors. Because the books and records of

RBL are incomplete as to the identities of the investors and creditors, the Receivers were made aware by several investors that they were not receiving email updates. As soon as the Receivers obtain information as to an additional investor who has not been receiving updates, the investor's contact information is uploaded into the Receivers' database. As noted above, because of the insufficiency of the record-keeping by RBL, the Receivers have been unable to ascertain the physical street addresses of all investors and creditors. As part of the information being obtained from the compilation from the proofs of claim submitted to the Receivers, the Receivers should be able to create a more comprehensive list which will contain contact information for all investors and creditors.

As the Receivers continue to wind down the business operations of the trucking company and related activities, the Receivers have discharged former employees of RBL that are no longer needed for the Receivership estate's operations. This has had the effect of substantially reducing the ongoing payroll expense without compromising the ongoing winding down operations by the Receivers.  As noted above, with the closing of the Coral Springs office facility and the part-time utilization of a limited number of employees in Coral Springs/Fort Pierce Florida and Lubbock Texas, the administrative expenses of the receivership estate have been substantially curtailed.

On a daily basis, numerous investors and creditors contact the Receivers and legal counsel by email, by telephone and in person at the Coral Springs office. As noted above, the number of investors and creditors seeking information in person from the receivers at the Coral Springs office had substantially diminished, so that the closing of the Coral Springs office has not had any significant effect on the ability of the receivers to communicate with investors and creditors. The Receivers and legal counsel, while not providing legal advice to the investors and creditors, confer with each of them in order to assist them with their particular and unique issues, and further work

to help to mitigate the losses they have sustained as a result of their investments and loans to RBL. Legal counsel for the Receivers have communicated with secured lenders on the trucks for many of the investors in order to have the lenders forebear from taking action against the investors and the collateral and to try to minimize the hardship and impact on the investors.

### RBL Insurance Claims and Pending Litigation

Prior to the cessation of the trucking business by the Receivers appointment, a number of the vehicles being operated by RBL were involved in collisions and accidents. The Receivers determined that there were several active lawsuits pending against RBL at the time of the Receivers' appointment, and legal actions were also commenced against RBL after the entry of the Receivership Order.  With respect to all of the litigation, legal counsel for the Receivers has notified the parties to the litigation of the mandatory automatic stay imposed by the Receivership Order, and in many instances, notices of stay have been filed in the litigation proceedings.  Legal counsel for the Receivers has established a procedure in order to deal with the multitude of claims being made against the insurance coverage that had been maintained by RBL.  Where appropriate, legal counsel for the Receivers has negotiated and agreed to adjusted settlements, and authorized the Receivership estate to pay the deductible amount in order to facilitate the settlement and resolution of the claims where there was liability on the part of RBL.

### The Short-Term Loan Investment Scheme

As a result of communications with investors and creditors, the Receivers learned that beginning in late May, 2023 or early June, 2023, RBL management and employees solicited and entered into short-term loan arrangements, most of which were for 90 days, whereby RBL borrowed hundreds of thousands of dollars from unsuspecting creditors promising to pay an unusually high rate of interest when the loan matured. The Receivers learned of these loans when

the investors contacted the Receivers as their loans came due in late August and September 2023. Each of these investors was then advised of the Receivership Order and proceedings, and their information added to the Receivers' database. Presently, the extent of these "11th hour" unsecured loans has not been fully determined by the Receivers due to the continued lack of complete information. The receivers are continuing their investigation in order to determine if there are any other creditors that need to be notified who had provided short-term loans to RBL that had not been memorialized on the financial books and records of the company.

### A DESCRIPTION OF LIQUIDATED AND UNLIQUIDATED CLAIMS HELD BY THE RECEIVERSHIP ESTATE

**RBL's Former Accounting Firm**

As a result of the investigation of the work performed by the accounting firm Forrest Robinson which was the accounting firm utilized by RBL, including reviewing all of the accounting firm's work papers, the Receivers, their legal counsel and their accounting professionals believe that a cause of action existed against Forrest Robinson for negligence and possibly other causes of action. Subsequent to a demand being made on the accounting firm and its insurance carrier, when no meaningful settlement negotiations ensued, on December 15, 2023, the Receivers filed a Complaint in the Circuit Court for Broward County Florida against Forrest Robinson for such amount as may be determined by the court for damage to RBL and the creditors of the entity.

**Continued Investigations and Additional Fraudulent Transferees**

The Receivers and legal counsel have conducted an investigation as to multiple suspected unusual or fraudulent transfers made by management of RBL prior to the appointment of the Receivers.

#2726846v1-221271.0001

The Receivers examined the payroll records of RBL, which revealed that there were extraordinary and unusual payments made to certain employees who appeared to be receiving commissions or bonuses based upon the procuring of investments for RBL.  The Receivers and counsel for the Receivers initially made a demand upon the recipients of these unusual and extraordinary payments for the return of such payments.  The extraordinary and unusual payments identified to date exceed $1 million.

As a result of no meaningful settlement proposals being communicated to the Receivers, the Receivers instituted litigation in the Circuit Court for Broward County Florida against former RBL employees Ricardi Celicourt and Brisly Guillaume, both of whom received bonuses which were apparently tied to commissions or other performance in connection with the solicitation of investments and loans in RBL.  Although initially represented by legal counsel, Mr. Celicourt is now handling his case pro se.  On December 18, 2023, the Receivers, through legal counsel, filed Motions for Summary Judgment against both defendants. The Receivers will do everything possible in order to expedite the consideration of the Motions for Summary Judgment by the Circuit Court for Broward County.

**Additional Potential Insiders and/or Affiliated Entities**

In reviewing the records of RBL, the Receivers have been able to identify additional entities that may be deemed to be affiliated or connected with RBL, and to which transfers of funds were made. As an example, North America Aerospace, LLC, (NAA) which is listed in the records of the Secretary of State of Florida with Sanjay Singh as the CEO, was the recipient of substantial financial transfers.  As a result of the Receivers' investigations and with the assistance of their accounting professionals, the Receivers gained sufficient evidence to file a motion with this Court to have the RBL Receivers appointed Receivers for NAA On September 12, 2023, this Court

#2726846v1-221271.0001

entered an order appointing Paul Lopez and Jennifer Wahba as Receivers for NAA [DE 60]. In accordance with their authority as Receivers, the Receivers, through legal counsel, contacted the attorney for Sanjay Singh and provided the attorney with a document production request and a request for information concerning the business activities, financial affairs and acts of conduct of NAA to be supplied to the Receivers as mandated by the order appointing Receivers for NAA. Mr. Singh's counsel relayed that Mr. Singh is asserting his Fifth Amendment privilege with respect to providing information to the Receivers about NAA's operations as noted above. The Receivers are in the process of filing a motion to compel Mr. Singh to provide the requested information about NAA.

The preliminary review of the banking transactions of NAA indicate that NAA may have effected fraudulent transfers to insiders and third parties. As a result of this preliminary review, the Receivers filed a motion to appoint Receivers for NAA [DE 88], and on September 12, 2023, this Court entered an order appointing Paul Lopez and Jennifer Wahba as Receivers for NAA [DE 90]. Because there has been virtually no activity with respect to the separate receivership proceeding of NAA, the Receivers will not be filing a quarterly status report for that entity.

**Other Claim**

**Evaluation of Potential Claims Against Financial Institutions**

The Receivers, their legal counsel and their accounting professionals are in the process of evaluating the nature and extent of any acts of commission or omission by banking and other financial institutions doing business with RBL and its principals. To the extent that the Receivers are able to discover any appropriate causes of action to bring against these banking and financial institutions, they will do so. At this time, due in part to the complexity of all of the financial transactions that occurred prior to the appointment of the Receivers and the delay and responses

by banking and financial institutions to the Receivers' request for production of documents it is premature to determine the nature and extent of any such causes of action.

Because so much time has been consumed by the Receivers and their professionals in dealing with the operational and urgent issues in connection with the institution of the Receivership proceedings, the Receivers and their professionals have determined to defer the analysis of other claims that may be brought against insiders, affiliates and other parties in connection with the prior operation and transactions involving RBL.  The Receivers are also be evaluating the propriety and practicality of performing an analysis of those investors that had a net benefit from payments they received by way of the return of principal and interest in order to determine if there would be a legal basis in seeking a recovery of such net benefits in accordance with case law developed in other Ponzi scheme cases.

### A DESCRIPTION OF ALL KNOWN RECEIVERSHIP PROPERTY, INCLUDING APPROXIMATE OR ACTUAL VALUATIONS, ANTICIPATED OR PROPOSED DISPOSITIONS, AND REASONS FOR RETAINING ASSETS WHERE NO DISPOSITION IS INTENDED

The following is a description of all known Receivership property, including approximate or actual valuations, anticipated or proposed dispositions and reasons for retaining assets were no disposition is intended:

1. The Receivers have located eight trucks that were titled in the name of RBL.  The Receivers intend to auction the trucks in early 2024. At the Lubbock Texas facility leased to RBL, there are components used for the fabrication of trailers as well as approximately 52 trucks that are not operative, and many of which have been previously cannibalized for parts. The receivers have also located an inventory of new tires and other machinery, equipment and inventory utilized by RBL.  The receivers intend to auction or otherwise sell and dispose of these assets prior to January

31, 2024. The Receivers are unable to determine the anticipated value of these assets, although the value is expected to be minimal.

2.  At the Coral Springs office and a nearby storage facility, there is a collection of various office furniture and equipment. The Receivers have placed this office furniture and equipment in storage, and intend to either solicit bids or sell the assets at auction in January 2024. As part of these sales, the Receivers did not intend to sell the computer hardware until such time as the proceedings are about to be closed.

### A LIST OF ALL KNOWN CREDITORS WITH THEIR ADDRESSES AND THE AMOUNTS OF THEIR CLAIMS

The Receivers have filed a Motion with this Court [DE 94] seeking to defer providing a list of all known creditors with their addresses and the amount of their claims due to the fact that the books and records of RBL have not been able to provide the Receivers with an accurate and complete list of all such creditors. Upon the Receivers gaining such information that will permit them to complete such a list, it will be submitted with the next quarterly status report.  As noted above, the compilation of the proofs of claim should be able to provide the Receivers with more complete contact information for all investors and creditors On September 18, 2023, this Court entered an Order [DE 98] granting the Receivers' Motion to defer providing the list of creditors with this Status report.

**The Claims Filing Process**

In consultation with the counsel for the SEC, the Receivers and their legal counsel developed a user-friendly proof of claim form to be utilized by all investors and creditors of RBL. That claim form, when completed and returned to the Receivers, will permit the Receivers to memorialize and categorize all types of claims held by investors and creditors. The Receivers and

their legal counsel have developed a unique spreadsheet format for the memorialization of the proofs of claim that are returned to the Receivers so that various types of information concerning the nature, extent and amounts of claims can be easily tracked by the Receivers as needed. The proof of claim forms were sent by email to all investors and creditors where the Receivers have email addresses on September 26, 2023. Additionally, a link to both of the proof of claim forms (English and Creole) has been posted on the Receivers' website. Due to the large number of investors who are from the Haitian community, which investors may not be familiar with legal proceedings, the Receivers have translated the proof of claim form and the instructions for submitting the proof of claim form into Haitian Creole to be made available by email and on the Receivers' website.

### A SCHEDULE OF ALL THE RECEIVER'S RECEIPTS AND DISBURSEMENTS (ATTACHED AS EXHIBIT A), WITH ONE COLUMN FOR THE QUARTERLY PERIOD COVERED AND A SECOND COLUMN FOR THE ENTIRE DURATION OF THE RECEIVERSHIP

**Conclusion**

The Receivers will continue to wind down the business operations of RBL so as to be able to vacate the leased premises as soon as possible.

The Receivers recognize the urgency of liquidating the assets of RBL and collecting all funds that have been transferred by RBL to others in order to be able to make a distribution to the investors and creditors as promptly as possible.

**TRIPP SCOTT, P.A.**
***Counsel to the Receivers***
110 S.E. 6th Street, 15th Floor
Ft. Lauderdale, FL 33301
Phone: (954) 525-7500

22

By: */s/ Charles M. Tatelbaum*
**Charles M. Tatelbaum**
Florida Bar No. 177540
cmt@trippscott.com
**Corey D. Cohen**
Florida Bar No. 1024891
cdc@trippscott.com
hbb@trippscott.com

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on the 8th day of January, 2024, I electronically filed the foregoing document via this Court's CM/ECF system which provided a true copy to all those entitled to notice.

By: */s/ Charles M. Tatelbaum*
Charles M. Tatelbaum
Florida Bar No. 177540

#2726846v1-221271.0001