# UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA
## CASE NO.: 23-61179-CIV- SINGHAL

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

vs.

ROYAL BENGAL LOGISTICS, INC and

SANJAY SINGH

    Defendants.

**ORAL ARGUMENT REQUESTED**

FILED BY _____ D.C.

FEB 16 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

SHEETAL SINGH and CONSTANTINA

CELICOURT,

    Relief Defendants.

_____/

**February 16th, 2024.**

## Defendant's MOTION FOR JUDGMENT ON THE PLEADINGS Pursuant to Federal Rule of Civil Procedure 12(c).

1. Sanjay Singh in pro-se moves to dismiss under Federal Rule of Civil Procedure 12(c). upon accompanying **Memorandum of Law** in support of Judgement on pleading; For an **Urgent** hearing as the Defendant[s] is continuously harmed irreparably due to the plaintiff complaint AND RELIEF GRANTED.

### I.    Standard of Review

2. "To survive a Rule 12(c) motion," the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

1

Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 301 (2d Cir. 2021). "[T]he courts considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *Ricatto v. M3 Innovations Unlimited, Inc., 2019 WL 6681558, at \*3 (S.D.N.Y. Dec. 6, 2019)*. "If the allegations of a pleading are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the pleading.". Application of these standards requires dismissal. Though the Defendant[s] has raised many other defenses provable upon summary judgment or at trial, the issues raised by this motion—which rest solely on deficiencies in the Complaint—are independently dispositive of the entire case. This Motion brings up the core threshold question of the plaintiff's complaint if there was any security violation and any substantial statement which influenced the court in establishing prima-facie for injunctive and other relief sort for the Plaintiff.

## II. PRELIMINARY STATEMENT

3. The defendant in *pro-se* bring this **MOTION FOR JUDGMENT ON THE PLEADINGS** pleading under F.R.C.P 12 (C) For an **Urgent** hearing as the Defendant[s] is continuously harmed irreparably due to the plaintiff complaint AND RELIEF GRANTED.

4. The SEC may pursue this enforcement action only if relevant transactions in the Royal Bengal asset and services identified in the Complaint are **"investment**

**contracts"** and therefore "securities" under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act"). Because as a matter of law none of them are, the claims must be dismissed.

5. Defendant[s] Denies the Security violations in its entirety.

### IV. Commission's Factual Allegations

5. Commission alleges that RBL offer investors Four Investment Program, promising guaranteed returns ranging from 12.5 % to as high as 325% and called it collectively RBL Investment program, further it alleges that **RBL's investment program are investment contract and therefore securities** (para 19, Sec IV ref SEC: Complaint for Injunctive and other relief).

6. **RBL'S Short term and Long term Investment Program**, *(Ref Sec IV (i) ref SEC: Complaint for Injunctive and other relief).*

7. **RBL's Trailer Sponsorship** *(Ref Sec IV (ii) ref SEC: Complaint for Injunctive and other relief).*

8. **RBL's Truck Program** *(Ref Sec IV (iii) ref SEC: Complaint for Injunctive and other relief).*

9. Further in summary the commission states in *(para 29, Sec IV ref SEC: Complaint for Injunctive and other relief)* RBL's Investment Program constitute Investment Contract and are therefore Securities under <u>SEC v. Howey Co., 328 U.S. 293, 298-99 (1946)</u>. SEC alleges with respect to RBL investment programs, there was a) Investment of Money; b) in a common enterprise; c) based on the expectation of

profits to be derived from the entrepreneurial or managerial effort of others. Sec Further site a comparative case law <u>SEC v. Friendly Power 49 F. Supp. 2d 1363,1368 (S.D. Fla. 19990).</u>

10. The commission cannot be farther from the fact as matter of law, RBL investment Program is a summary of relationship of **Lessor and lender**. None of the contract meets any or part of standard as applied case law by the commission. The commission has failed to analyze, study or it or just went on a standardized witch hunt. It is often evident in the commissions complaint that the Commission failed in the facts and relied on instinctive allegations or suppositions.

## V. Argument

11. *<u>Plaintiff alleges RBL program as Investment contract and hence "Security", Defendant[s] as a matter of law disagree and the</u>* COMPLAINT DOES NOT PLEAD "SECURITIES" TRANSACTIONS; See Exhibit A-1[1]

12. <u>RBL's Truck Program styled as "INVESTMENT & EQUIPMENT OPERATING LEASE AGREEMENT" is not security;</u> RBL Truck Program contract is a **business plan** rather than sale of equity, asset or stocks etc. and it is a **joint venture** contract between two independent corporation.

   i. <u>**RBL truck program**</u> is a civil contract with a business plan to build a successful enterprise to lease asset from a/k/a Lessor/investor for operation to generate high volume revenue from operation of the asset; The word

---

[1] RBL TRUCK CONTRACT INVESTMENT & EQUIPMENT OPERATING LEASE AGREEMENT

4

**Investment** was for the Intent of Investment in the client's own enterprise as a Startup Payment submitted to RBL, With prospective acquisition of a Truck and Trailer from an OPEN MARKET; RBL reimbursed all expenses including down payment and other expenses in the acquisition of truck or trailer from the Startup Capital; Converted the asset into an operating lease agreement Prior to expiration of 12 months after signing the contract. However, the money assigned as Startup payment will be used by RBL in full or part; or its use including retuning capital termed as lease payment after two months in the interest of reducing liability if the investor is unsuccessful in acquisition of asset. If the client fails in awarding an Asset to RBL within 12 months; all paid payments Plus any remaining payment will be returned to the Prospective lessor and the contract will stand terminated. Any investment if consumed by the investor[2] in a venture cannot be considered an investment contract, *Since the Lessor or Investor in RBL truck Program consumes the investment in full or more The Truck program is not an investment contract*, in contrary on many transaction RBL overpaid the investor initial amount in the interest of good faith business and RBL becomes the investor into lessors' enterprise and hence it implied as a business plan. See **Exhibit A-1 <u>INVESTMENT & EQUIPMENT OPERATING LEASE AGREEMENT</u>**: Hence First prong of Howey/Foreman test is defeated in the RBL's Truck Contract *"Investment of*

---

[2] See Forman, 421 U.S. at 852-53 (where a purchaser is not "'attracted solely by the prospects of a return' on his investment . . . [but] is motivated by a desire to use or consume the item purchased . . . the securities laws do not apply."). Reference... https://www.sec.gov/corpfin/framework-investment-contract-analysis-digital-assets#_edn10

*money" refers to an arrangement whereby an investor commits assets to an enterprise or venture in such a manner as to subject himself to financial losses. See Stowell, 489 F. Supp. At 1220. <u>RBL Truck Contract induce no financial loss contractually if the contract/business plan is unsuccessful in its endeavor.</u> The Forman Court noted that the respondents urged it to abandon the element of profits in the definition of securities and to adopt the "risk capital" approach articulated by the <u>Supreme Court of California in Silver Hills Country Club v. Sobieski</u>. The Court went on to say that even if it were inclined to adopt a "risk capital" approach. Purchasers of apartments in Co-op City in fact took no risk in any significant sense. If the purchasers were dissatisfied with their apartments, apparently, they had the right to recover their initial investment in-full. <u>The result was no risk of loss of initial investment</u>, the Ninth Circuit Court of Appeals reasoned that the "risk capital" test remains a viable standard by which to determine the existence of a security. Therefore, in order to distinguish the Howey/Forman test from the "risk capital" test, it is necessary to examine the California Supreme Court's decision in the Sobiesli case. [I]n searching for the meaning and scope of the word 'security' in the Act[s], form should be disregarded for substance and the emphasis should be on economic reality." Tcherepnin v. Knight, 389 U. S. 332, 389 U. S. 336 (1967). Hence RBL Truck Contract is not Security and therefore the commission/Plaintiff is subject to NO Jurisdiction or enforceability. Also See Exhibit A-1 (6) <u>"INVESTMENT & EQUIPMENT OPERATING LEASE AGREEMENT"</u>. See*

*Also (7)(8) must be read together. (Economic reality test)*. It is clear in the law that simply a business plan of functional joint venture doesn't constitute security. It is very evident that the So-called investor/lessors had undisputed motivation on ***desire to use or consume the Start Up capital for the purchase of asset and other expenses associated by the Acquisition*** hence RBL truck program doesn't constitute **Investment of Money**

ii. **RBL "INVESTMENT & EQUIPMENT OPERATING LEASE AGREEMENT" Common enterprise Element is not satisfied** as because, RBL Truck Program contract was a business plan rather sale or equity, asset or stocks etc.; RBL was not seeking investment in its enterprise through sale of equity, asset, stocks etc.; rather it was seeking to build an enterprise for the Enterprise willing to participate in the RBL truck program as a prospective lessor as a business plan; In order to establish common enterprise the fortunes of the investor must be interwoven with and dependent on the efforts and success of those seeking the investment or of third parties. In the Case of RBL truck program the Fortunes of the participant were not Interwoven and dependent on the efforts and success of third party, **As a matter of fact it was dependent on the success of the investor a/k/a lessor**; RBL truck program was contingent Upon successful qualification of Purchase of an Truck or Trailer from/through a Third party dealership/finance company; RBL had no role in the Success of the Participant qualification; In the RBL truck program Owner of the ASSSET was the participant with full exclusive rights

without any restriction on withdrawing from the program or selling their asset in their best interest of business; If the participant were not qualified or failed to qualify for third party financing the participant are eligible for termination of Contract with any remaining funds paid back by RBL. - <u>ROLES</u>: **RBL** - Will provide intermediatory/ministerial service in Finding an Eligible Equipment and Third-party lending Company in the open market. Participant a/k/a Investor; Must qualify with Commercial Lending Criteria like Credit rating and meet each third-party lending criteria, Experience with commercial financing and others as established by Third party lending Company. If The participant or **a/k/a Investor** is successful in acquiring the asset; RBL will bring the asset under a Lease for operation; The participant has full exclusive right to their ownership, Buying or selling or addition; Participant had a choice to terminate the agreement at any point in time; Participant can use for any financial gain such as Tax benefits or Leverage on Commercial Lending; RBL maintain full control of operation such as maintenance, Driver, Revenue and any other operational duties. The participant or the Lessor Maintained a Full control of Insurance as an **Additional Insured** for the Financial liability and safety of finance on their owned asset. The entire success of the Program was dependent on the Lessor/ Participant or the Investors decision; RBL could only continue the program if the Lessor/Participant or the Investors allowed the continuation. <u>Hence the Master of Contract was the lessor a/k/a Investor, and hence Common Enterprise prong doesn't apply.</u> In summary, RBL

management worked for operation and Lessor a/k/a made final decision on their asset management. The second element of the Howey test focuses on the nature of the investment venture, i.e.., is the individual investor part of a "common enterprise.". <u>In RBL's situation the so-called investor consumes the startup payment either by receiving monthly payment or receiving reimbursement for down payment of a Truck and other expenses. Hence it cannot satisfy Howey's second prong.</u>

iii. **Commission alleges:** *Based on an expectation of profits to be derived from the entrepreneurial or managerial efforts of others;* <u>***The commission alleges that*** **The RBL truck program in design to be a entrepreneurial or managerial efforts of RBL and its promoter**</u>*;* This prong has two dimensions. See Warfield, 569 F.3d at 1020. First, a product must be sold as a profit-making investment rather than an item be used or consumed. *United Hous. Found., Inc. v. Forman, 421 U.S. 837,858 (1975).* Second, profits must derive significantly from managerial efforts rather than market forces. Noa v. Key Futures, Inc., 638 F.2d 77, 79 (9th Cir. 1980). *RBL Was managing the operation of the truck while the lessor was managing his/her asset and their own enterprise. Making sure the finance payment is made on time, Certificate of Insurance is current, Any TOLL BILL reports to RBL, Keeping free and clear of all conflict from the third-party lender or finance company. Lessor had all rights and decision-making power at any point to*

*continue the relationship or terminate without penalty hence it constitutes* ***substantial control and substantial risk*.** *Any Litigation notice, be able to sue and get sued for asset management, Any accident and incident or legal case management. Lessor where also the management of their final profit and loss statement, tax depreciation from asset or any other benefits, RBL had no Influence or control over their Year-to-Date Profit and Loss. Hence forth the <u>final prong of Howey test fails in the RBL truck Program.</u>* <u>**RBL paid lease payment [3] to the lessor as debt obligation and not profit of the enterprise. If the investor controls the profitability of his investment in the enterprise, the agreement is not a security**</u>*. Therefore, the "<u>crucial inquiry is the amount of control that the investors retain under their written agreements</u>." Albanese v. Florida Nat'l Bank of Orlando, 823 F.2d 408, 410 (11th Cir.1987). Neither a general partnership[4] nor a joint venture interest has been held to be a security since effective management control of asset is in the hands of the "investor." Furthermore, when a purchaser is motivated by a* **<u>*desire to use or consume*</u>**[5] *the item purchased--"to occupy the land or to develop it them-selves," as the Howey court put it, -... the securities laws do not apply. Defendant never sold anything to the investor and upon acquisition of the asset[s] the lessor can consume the asset by selling or withdrawing from*

---

[3] Martin v. Occupational Safety and Health Review Commission, 499 U.S. 144, 150, 111 S. Ct. 1171, 113 L. Ed. 2d 117 (1991); Lyng v. Payne, 476 U.S. 926, 939, 106 S. Ct. 2333, 90 L. Ed. 2d 921 (1986); Wolpaw v. Commissioner of Internal Revenue, 47 F.3d 787, 790 (6th Cir.1995)

[4] Hirsch v. DuPont, 396 F.2d 1214 (S.D.N.Y. 1975) (general partnership); Polikoff v. Levy, et al., FED. SEC. L. REP. (CCH) 191,513 (Il. App. 1965) (joint venture).

[5] The lesser can sell the asset to consume maximum profit is evident in the transaction or terminate the lease for any personal gain, that satisfies the theory of use and consume under Howey test.

*lease without penalty, the Lessor could very well control his profitability by any other offering of higher profit or operate asset himself or herself.*

13. ***The Commission alleged RBL Short term Unsecured Loan as notes and hence security; RBL Short term Loans were unsecured and it doesn't resemble as a Note or a trade-able instrument neither it is an investment contract instrument, Hence not Security;*** <u>**See Exhibit ST-1A**[6]</u>; RBL Short Term Loan are unsecured loan from lenders participating as Corporation and Individual in the company overall business structure and by invitation for commercial purpose in trucking operation, ranging from 1 months term to 6 months term with amount ranging from $10,000 to $100,000.00, Largely Short term Lenders were also a lessor or prospective lessor in the truck program; It is not a tradable instrument neither it was traded or intended to be traded by RBL or by a reasonable lender; as a matter of Law it is not security; <u>The primal view of selling notes implies an exchange of asset in lieu of money or property</u>, The fundamental difference between notes and Loan is the debtor and borrower obligations and rights, defendants never sold asset, stocks or any collateral through the instrument in question. <u>Even under face value if commissions allegations</u> are to be considered that RBL Short Term Loans are notes and therefore security it is well settled definition that Notes Less than 9 months of maturity is not security as The Second Circuit's "family resemblance" approach

---

[6] RBL Short term Unsecured Loan Contract

begins with a presumption that any note with a term of more than nine months is a "security." *See, e. g., Exchange Nat. Bank of Chicago v. Touche Ross Co., 544 F.2d 1126, 1137 (CA2 1976)*, <u>Under 1933 ACT the nine-month exemption is not available for only antifraud issues not for the threshold question of notes are security or not</u>; with respect to notes that seemingly fall within the short-term note exclusion, *Reves* failed to confront the issue directly. The majority's reasoning was inconsistent with Supreme Court precedent and failed to recognize the contemporaneous understanding of the term "maturity.". IN RBL Question maturity is clear, no notes in the allegation of Short Term exceeds 6 Months.

The Supreme Court in Reves v. Ernst & Young rejected the D.C. and Eighth Circuit courts 'approach in applying the Howey Test in determining if a note should qualify as a security and instead adopted the family resemblance test from the 2nd Circuit. <u>*The 4-factor test of In Reves v. Ernst & Young, 494 U.S. 56, 66-67 (1990) applies: "1) the motivations of a reasonable seller and buyer; (2) the note's plan of distribution; (3) the reasonable expectations of the investing public; and (4) whether other risk-reducing factors exist, making unnecessary the application of the securities laws to protect the public."*</u>; Accordingly, the "family resemblance" test permits an issuer to rebut the presumption that a note is a security if it can show that the note in question "bear[s] a strong family resemblance" to an item on the judicially crafted list of exceptions, <u>or convinces the court to add a new instrument to the list</u>, *see, e. g., Chemical Bank v. Arthur Anderson Co., 726 F.2d 930, 939 (CA2 1984)*.

*<u>RBL SHORT TERM LOAN BEAR'S FAMILY RESEMBELANCE as the participating entity is in no doubt participating in the commercial enterprise (Trucking/Manufacturing Company) and dependent upon company Assets, Receivables, Valuation and other assets.</u>*

As per contractual relationship in the RBL short term Loans, none of the test is satisfied to answer the threshold question if RBL Short term loans can be presumed notes and hence security. The common goal was to purchase and sale of a minor asset or consumer good, to correct for the business cash-flow difficulties, or to advance some other commercial or consumer purpose., manage shortage of cash flow in business operation and use for commercial purpose; Hence as a matter of law RBL Short term loans fails the test as established by the Supreme Court; **(A) The purpose of the transaction is examined. In absence of the intention in the instrument the lender and borrower are implying the transaction for advancing commercial purpose. Definitions:** The term "used for commercial purposes" in transportation sector means the carriage of persons or property for any fare, fee, rate, charge or other consideration, or directly or indirectly in connection with any business, or other undertaking intended for profit... see 18 U.S. Code § 31(A)(6). It is undisputable that the lenders knew they were lending unsecured loan to a Transportation company and not to a financial institution only to advance the company for commercial purpose, regardless of the sophistication of the lender. Notes are considered security if it is resold to a third-party at a discount to its original face value; **<u>A note is not a security</u>**, if it was exchanged to "facilitate the purchase and

sale of a minor asset or consumer good, to correct for the seller's cash-flow difficulties, or to advance some other commercial or consumer purpose." *On August 24, 2023, the United States Court of Appeals for the Second Circuit (the "Court") upheld the District Court's ruling in Kirschner v. JPMorgan Chase Bank, N.A. that notes issued as part of a refinancing transaction involving Millennium Health LLC, Inc f/k/a Millennium Laboratories, or Millennium, are not "securities" under the Securities Acts of 1933 or the Securities Exchange Act of 1934 (collectively, the "Securities Acts") or for purposes of state securities laws.*

14. ***The Commission alleged RBL Long term Unsecured Loan as notes and hence security; RBL Long term Loans were unsecured and it doesn't resemble as a Note or a trade-able instrument neither it is an investment contract instrument, hence not Security; See Exhibit LT-OW-1A: <u>RBL LONG TERM LOAN WAS NOT AVAILABLE TO BROAD SEGMENT OF PUBLIC</u>.*** RBL Long term Loan program were a supplement of Truck Program and to advance commercial purpose if the Lessor choose to self-finance (<u>*Hence; Desire to Consume doctrine is applied*</u>) their own asset upon failure to qualify for third party approval of commercial loan ***see..Pollack v. Laidlaw Holdings, Inc., 27 F.3d 808, 812 (2d Cir. 1994)***, [*The first Reves factor requires a court to "examine the transaction to assess the motivations that would prompt a reasonable seller and buyer to enter into it." 494 U.S. at 66, 110 S.Ct. at 951. The inquiry is whether the motivations are investment (suggesting a security) or commercial or consumer with*

*desire to consume (suggesting a non-security)*]. If the participant failed to secure a third party financing the Participant provided the capital to RBL to purchase the truck from a third-party dealership at the time of choosing and compliment that capital with 12.5% interest as a good faith business of the participant's own enterprise while continuing the Truck Program instead of facing separation from the Truck Program. <u>RBL long term loan were not offered to broad segment of public</u>. The Truck Purchased would be titled under the Lenders Enterprise name. Until the truck is purchased RBL will have the right to use the money as it sees fit. The number of Participant were very few and hence its falls outside the scope of security law and exempt from the commission's enforceability, The long-term loans were not available to public. <u>SEE EXHIBIT LTINVLIST-1</u>. The commission had failed in the separation of the Contractual instrument as matter of Law RBL Long-term Unsecured Loan are not security; *The Supreme Court in Reves v. Ernst & Young rejected the D.C. and Eighth Circuit courts approach in applying the Howey Test in determining if a note should qualify as a security and instead adopted the family resemblance test from the 2nd Circuit.* The 4-factor test of In Reves v. Ernst & Young, 494 U.S. 56, 66-67 (1990) applies: "1) the motivations of a reasonable seller and buyer; (2) the note's 'plan of distribution'; (3) the reasonable expectations of the investing public; and (4) whether other risk-reducing factors exist, making unnecessary the application of the securities laws to protect the public," As per contractual relationship in the RBL Long term Loans, None of the test qualifies as security. Hence as a matter of law RBL Long

term loans fails the test as established by the Supreme Court to be considered as Security enforcement.

15. ***The Commission alleged RBL Trailer sponsorship as a security and characterize as Investment contract*** and the COMPLAINT ***DOES NOT PLEAD "SECURITIES" TRANSACTIONS****; See Exhibit TL-01*[7] To date, every arrangement the Supreme Court has deemed an "investment contract" promised the investor some ongoing, contractual interest in the enterprise's future endeavors. *S.E.C. v. C. M. Joiner Leasing Corp.*, which predated Howey by three years, involved the offering of leasehold interests near a planned oil drilling test well in exchange for investors' "sharing in [the] discovery values" of the ongoing "exploration enterprise." 320 U.S. 344, 345–46, 348 (1943). Howey's reference to a "scheme" or "transaction" simply reflected the instruction that courts should consider the "economic reality" of a business venture to determine whether an "investment contract" exists. 328 U.S. at 298. That economic reality may be reflected in a single agreement—for example, a single profit-sharing agreement—or, as in Howey itself—which involved land sale, warranty deed, and management contracts—multiple contracts. RBL Trailer sponsorship was a commercial transaction to advance the purpose of Truck Program, ***it was not offered to broad segment of public, See Exhibit TL-02L***; Trailer sponsorship was not an investment contract and hence it is not security as the Trailer sponsorship was to advance **commercial purpose with only service contract for the**

---

[7] RBL Trailer Sponsorship Contract

16

**participant in the Truck Program or any new client** in partnership with the sponsor or a Joint venture approach, and treated as Short Term loan for 3 to 6 months; as a matter of Law it is not security for the following assessment, Its Was not offered to broad segment of public, Doesn't satisfy the *Risk Capital Approach test and economic reality test to meet the security standard*. Even under face value if commissions allegations are to be considered that ***RBL Trailer sponsorship as Investment contract***, SEC v. W.J. Howey Co., 328 U.S. 293, 298-99, 66 S. Ct. 1100, 90 L. Ed. 1244 (1946). An "investment contract" required a *contract* (written or implicit) a sale of asset, stocks or profit that imposed *post-sale obligations* on the promoter, and gave the investor a *right to receive profits* from the promoter's venture. Nor can just *any* contract constitute an "investment contract." an "investment contract" is an asset sale *coupled with* legally binding promises by the promoter to manage or develop that asset in a profitable way. *See, e.g., State v. Robbins*, 185 Minn. 202, 204-05 (1932) (sale of muskrat breeding pairs *plus* promise to rear pairs until later sold for fur); *Prohaska v. Hemmer-Miller Dev. Co.*, 256 Ill. App. 331, 334-35 (1930) (sale of land *plus* promise to harvest crops on it); *Kerst v. Nelson*, 171 Minn. 191, 193-95 (1927) (sale of land *plus* promise to cultivate vineyard, harvest crops, and market wine).."[I]n searching for the meaning and scope of the word 'security' in the Act[s], form should be disregarded for substance and the emphasis should be on **economic reality**." *Tcherepnin v. Knight,* 389 U. S. 332, 389 U. S. 336 (1967). *See also Howey, supra,* at 328 U. S. 298. As per contractual relationship in the ***RBL Trailer sponsorship***, none of

17

the test satisfies to security transaction. Hence as a matter of law **_RBL Trailer sponsorship_** fails the test as established by the Supreme Court and therefore not securities. Furthermore, when a purchaser is motivated by a **desire to use or consume** the item purchased--"to occupy the land or to develop it them-selves," as the Howey court put it, -... the securities laws do not apply...

16. For an **Urgent** hearing as the Defendant[s] is continuously harmed irreparably due to the plaintiff complaint AND RELIEF GRANTED.

## *VI. Conclusion*

17. For the foregoing reasons, Defendant[s] is entitled to **MOTION FOR JUDGMENT ON THE PLEADINGS** and respectfully request that this Court dismiss with prejudice the SEC's Complaint pursuant to Rule 12 C of the Federal Rules of Civil Procedure.

## Exhibit's

1. Exhibit A-1 - Attached
2. Exhibit A-2 - Attached
3. Exhibit ST-1A - Attached
4. EXHIBIT LT-OW-1A - Attached.
5. Exhibit TL-01- Attached
6. Exhibit TL-02L
7. LTINVLIST-1- Attached

CASE NO.: 23-61179-CIV- SINGHAL

Respectfully submitted,

By: /s/ SANJAY SINGH

Add:   3700 NW 109th Ave,
Coral Springs, Fl-33065
PH: 954-822-5096
Email:    sjaysingh@icloud.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this February 16th, 2024. I have filed the Motion for Defendant's **MOTION FOR JUDGMENT ON THE PLEADINGS** IN PRO-SE to the Clerk of the Court. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified, either by transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for counsel of parties who are authorized to receive electronically, Notices of Electronic Filing.

By: /s/ SANJAY SINGH
Add:  3700 NW 109th Ave,
Coral Springs, Fl-33065
PH: 954-822-5096
Email:    sjaysingh@icloud.com