UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 23-61179-CIV- SINGHAL

SECURITIES AND EXCHANGE COMMISSION,
Plaintiff, vs.

ROYAL BENGAL LOGISTICS, INC and
SANJAY SINGH

Defendants.

SHEETAL SINGH and CONSTANTINA
CELICOURT,

    Relief Defendants.
_____/

FILED BY _____ D.C.
FEB 16 2024
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

February 16th, 2024.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS.

### I. PRELIMINARY STATEMENT

1. Commission alleges that RBL offer investors Four Investment Program, promising guaranteed returns ranging from 12.5 % to as high as 325% and called it collectively RBL Investment program, further it alleges that **RBL's investment program are investment contract and therefore securities** 1) RBL'S Short term and long-term Investment Program (NOTES). 2). RBL's Trailer Sponsorship, 3). RBL's Truck Program.

2. Royal Bengal Logistics operated as Long-Haul Trucking in the 48 Sates transporting general freight, dry, refrigerated and flatbed loads DOT number 3149658.

1

3. Royal Bengal Logistics operated though its d/b/a Royal Bengal Engineering a self-engineered Trailer Manufacturing unit, where the trailer parts would be built in India and shipped to Lubbock, Tx for assembly. Manufacturer ID 21239, Approved by Administrator National Highway Traffic Safety Administration

### III. Memorandum of Law

6.. "RBL's investment program" is a summary of business relationship rather than factual or contractual Investment enterprise relationship with clients. Any publication reflects RBL'S investment program is a textually subjective in nature rather than objective in nature. For an Investment Contract in an enterprise to exist; The prevailing case Standard of investment contract must be applied.

### *Investments as Investment Contracts Under the Howey/Forman Test*

I. *The Supreme Court initially defined an "investment contract"* as a contract, transaction, or scheme whereby a person makes an investment of money in a common enterprise and is led to expect profits solely from the efforts of a promoter or a third party. See SEC v. W.J. Howey Co., 328 U.S. 293, 298-99, 66 S. Ct. 1100, 90 L. Ed. 1244 (1946). The Supreme Court later modified this definition to require that the promoter contribute only the "entrepreneurial or managerial efforts. "United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 852, 95 S. Ct. 2051, 44 L. Ed. 2d 621 (1975). Therefore, under the Howey/Forman test, an investment contract exists if there is **(a) an investment of money, (b) in a common enterprise, (c)**

**based on an expectation of profits to be derived from the entrepreneurial or managerial efforts of others.**

II. **An "investment of money"** refers to an arrangement whereby an investor commits assets to an enterprise or venture in such a manner as to subject himself to financial losses. See *Stowell, 489 F. Supp. at 1220.*; *also see... El Khadem v. Equity Securities Corp., 494 F.2d 1224 (9th Cir. 1974) cert. denied, 419 U.S. 900, 95 S. Ct. 183, 42 L. Ed. 2d 146 (1974).*

III. **To Establish Common Enterprise** - To satisfy the second element of the Howey test, the Commission must establish that individuals invested money in a "common enterprise." A common enterprise exists where "the fortunes of the investor are interwoven with and dependent on the efforts and success of those seeking the investment or of third parties." *SEC v. Unique Financial Concepts, Inc., 196 F.3d 1195, 1199 (11th Cir. 1999)* (quoting *Villeneuve, 698 F.2d at 1124*). The thrust of this test is that "investors" have no desire to perform the chores necessary for a return." quoting *Eberhardt v. Waters, 901 F.2d 1578, 1580-81 (11th Cir.1990).* Instead, "the requisite commonality is evidenced by the fact that the fortunes of all investors are tied to the efficacy of the promoter." Id. (*quoting SEC v. Koscot Interplanetary, Inc., 497 F.2d 473, 479 (5th Cir.1974).* Because emphasis is placed upon the relationship between the investors and the promoter, this concept is referred to as "vertical commonality."

IV. **Based on an expectation of profits to be derived from the entrepreneurial or managerial efforts of others;** <u>Plaintiff must establish that investors expect profits to be derived "**solely from the efforts of the promoter or third party**." Howey, 328 U.S. at 299, 66 S. Ct. at 1103. **If the investor controls the profitability of his investment, the agreement is not a security**</u>. Therefore, the "<u>crucial inquiry is the amount of control that the investors retain under their **written agreements**</u>" *Albanese v. Florida Nat'l Bank of Orlando, 823 F.2d 408, 410 (11th Cir.1987).*

V. In addition, to *Howey,* the Courts have stablished various test to determine a transaction as Investment contract and hence security, Risk Capital approach and Economic Reality test.

VI. **Risk Capital Approach** - A risk-capital test is a way to determine if a transaction involves the sale of a security and is subject to securities laws. It is based on whether the seller is asking for money to develop a business venture. Risk distribution is how a legal system decides who should bear the risk of harm in a situation.

VII. **Economic reality Test** – Supreme Courts of United states have applied active role of Economic reality test in the identification of an Instrument as a security. The test is to determine Substance Over Form. The Supreme Court in Forman rejected a literal approach to analyzing whether a transaction constituted a security. In the context of "stock," the

4

Court adopted the economic realities standard. This test looks to "the economic realities underlying a transaction and not [to] the name appended thereto.

### IV. Summary of Argument

7. The term "investment contract" is not defined in either the Securities Act of 1933 or the Securities Exchange Act of 1934, see 15 U.S.C. § 77b(a)(1); 15 U.S.C. § 78c(a)(10), but the Supreme Court established the test for applying that term nearly eight decades ago in SEC v. W.J. Howey Co., 328 U.S. 293 (1946); see SEC v. Edwards, 540 U.S. 389, 393 (2004). "[A]n investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." Howey, 328 U.S. at 298-99. The very heart of an investment contract is and always has been the coupling of an asset with a binding promise: The sale of land *plus* the promise to manage orange groves on it; the sale of beavers plus the promise to raise them for fur; the sale of vineyards plus the promise to develop wine. But here, there is nothing of the sort; *SEC v. W.J. Howey Co., 328 U.S. 293, 298-99, 66 S. Ct. 1100, 90 L. Ed. 1244 (1946). In RBL* There is just "in a state of nature" Joint venture business plan or unsecured loan. The Major Questions Doctrine along with basic principles of fair notice underscore what text, history, and precedent already make plain. The SEC may not use the phrase "investment contract" as a blank check to cash whenever it seeks to

expand its regulatory competence. But even setting all that aside, as described below, the SEC cannot prevail even under its own framework as described and literalistic reading of the Supreme Court's decision in *Howey*, 328 U.S. 293. As the SEC would have it, there is an "investment contract" whenever a person is "led to invest money in a common enterprise with the expectation that they would earn a profit solely through the efforts of the promoter or of someone other than themselves." But here, there is no investment of money *in* anything rather a business plan in the Truck Program. The securities laws exist to protect people with direct passive investments in ongoing enterprises. Such ventures vary in the details, but the term "investment contract" has always carried certain core traits—most obvious, *a contract,* and one that captures the post-sale promises that transform an asset sale into something more. In using the phrase "investment contract," Congress codified the term's traditional definition into the federal securities laws. *Howey*, 328 U.S. at 298. The federal securities laws do not specifically define the term "investment contract." The term should accordingly be given its "ordinary meaning at the time Congress enacted the statute." *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019). When Congress passed the Securities Act of 1933 and the Exchange Act of 1934 (both of which use "investment contract" as part of their near-identical definitions of "security"), "investment contract" was a settled term of art from state "blue sky" laws (*i.e.*, state securities laws). And "when Congress employs

6

a term of art, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word." *FAA v. Cooper*, 566 U.S. 284, 292 (2012). The Ninth Circuit has confirmed as much, reaffirming that "the term 'investment contract' retains the same meaning it possessed under predating state 'blue sky' laws." *SEC v. Rubera*, 350 F.3d 1084, 1090 (9th Cir. 2003). The definition of "investment contract" under predating state "'blue sky' laws," *Howey*, 328 U.S. at 298, had several "essential ingredients,". Chief among them: An "investment contract" required a *contract* (written or implicit) that imposed *post-sale obligations* on the promoter, and gave the investor a *right to receive profits* from the promoter's venture... Nor can just *any* contract constitute an "investment contract." an <u>"investment contract" is an asset sale *coupled with* legally binding promises by the promoter to manage or develop that asset in a profitable way.</u> *See, e.g., State v. Robbins*, 185 Minn. 202, 204-05 (1932) (sale of muskrat breeding pairs *plus* promise to rear pairs until later sold for fur); *Prohaska v. Hemmer-Miller Dev. Co.*, 256 Ill. App. 331, 334-35 (1930) (sale of land *plus* promise to harvest crops on it); *Kerst v. Nelson*, 171 Minn. 191, 193-95 (1927) (sale of land *plus* promise to cultivate vineyard, harvest crops, and market wine). When Congress passed the federal securities laws, it quite purposefully used a term of art that had a well-established meaning. In that light, then as now, the definition of "investment contract" is (i) a contract, that (ii) imposes post-sale obligations on the promoter, among

which include (iii) giving the investor a legal entitlement to share in the business venture's profits. Even before Howey, the traditional definition of "investment contract" had taken hold in the federal courts. See, e.g., *SEC v. Bailey, 41 F. Supp 647, 650 (S.D. Fla. 1941)* ("investment contract" is "a contract providing for the investment or laying out of capital in a way intended to secure income or profit from its employment, which will arise through the activities and management of others than the owner"). And since Howey, the Supreme Court has never recognized an "investment contract" that lacks the three defining characteristics described above. See, e.g., Edwards, 540 U.S. at 391 (finding payphone sale-and-leaseback arrangement to be investment contract where company contracted to maintain phones and deliver fixed monthly return); *Tcherepnin v. Knight, 389 U.S. 332, 337 (1967)* (same for "withdraw able capital shares "that paid "dividend" from savings and loan association's "profits"); *SEC v. United Benefit Life Ins. Co., 387 U.S. 202, 205 (1967)* (same for annuity contracts providing right to a "pro rata share" of returns from "portfolio of equity interests"); *SEC v. Variable Annuity Life Ins. Co., 359 U.S. 65, 71 (1959)* (similar); see also *SEC v. C.M. Joiner Leasing Corp., 320 U.S. 344, 348-4 (1943)* (same for oil lease sales conditioned on promoters' contractual agreement to drill wells). Royal Bengal Logistics had no sale or post sale obligation for profit on sole effort of the promoter and the company. **Every "Investment Contract" Identified By The Supreme Court Involves A

Contractual Undertaking to Grant A Surviving Stake In The Enterprise. ***No Supreme Court or Second Circuit Decision Has Found That A "Scheme "Without Accompanying Contractual Undertakings Qualifies as an "Investment Contract."

8. ***Every "Investment Contract" Identified by The Supreme Court Involves a Contractual Undertaking to Grant a Surviving Stake in The Enterprise.*** Echoing state-court decisions under the pre-1933 blue sky laws, post-Howey Supreme Court decisions recognize that the holder of an "investment contract" must be promised an ongoing right to participate in the income, profits, or assets of an enterprise. The Court homed in on this theme in *International Brotherhood of Teamsters v. Daniel, 439 U.S. 551 (1979)*. There, the Court observed that "in every decision of this Court recognizing the presence of a 'security' under the Securities Acts, the person found to have been an investor chose to give up a specific consideration in return for a separable financial interest with the characteristics of a security."

To date, every arrangement the Supreme Court has deemed an "investment contract" promised the investor some ongoing, contractual interest in the enterprise's future endeavors. *S.E.C. v. C. M. Joiner Leasing Corp.*, which predated Howey by three years, involved the offering of leasehold interests near a planned oil drilling test well in exchange for investors' "sharing in [the] discovery values" of the ongoing "exploration enterprise." 320 U.S. 344, 345–46, 348 (1943). *S.E.C. v. C. M. Joiner Leasing Corp.* In The Defendant case the

9

contract is merely service to develop a business plan a/k/a business development, with ambition to consume start-up payment and their own ownership of asset.

9. *Defendant[s] is entitled for judgement on pleading because Transactions in RBL are not investment contracts because the participant gets no share in business income, profits, or assets.*

10. *Because the SEC does not allege an expectation in the income, profits, or assets of any business, the Exchange Act claims cannot stand.*

11. *Short term and long-term Loans are not Notes.*

**Respectfully Submitted**

By: /s/ SANJAY SINGH
Add: 3700 NW 109th Ave,
Coral Springs, Fl-33065
PH: 954-822-5096
Email: sjaysingh@icloud.com

CASE NO.: 23-61179-CIV- SINGHAL

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this February 16th, 2024. I have filed the Motion for Defendant's **MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS** IN PRO-SE to the Clerk of the Court. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified, either by transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for counsel of parties who are authorized to receive electronically, Notices of Electronic Filing.

By: /s/ SANJAY SINGH
Add: 3700 NW 109th Ave,
Coral Springs, Fl-33065
PH: 954-822-5096
Email: sjaysingh@icloud.com

11