# UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA
## CASE NO.:  23-61179-CIV- SINGHAL

SECURITIES AND EXCHANGE COMMISSION,

     Plaintiff,

vs.

ROYAL BENGAL LOGISTICS, INC and

SANJAY SINGH

     Defendants.

SHEETAL SINGH and CONSTANTINA

CELICOURT,

     Relief Defendants.

_____/

FILED BY_____D.C.

FEB 28 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

**ORAL ARGUMENT REQUESTED**

**February 28th, 2024.**

## Defendant's Amended MOTION FOR JUDGMENT ON THE PLEADINGS Pursuant to Federal Rule of Civil Procedure 12(c).

1. Sanjay Singh in pro-se moves for **MOTION FOR JUDGMENT ON THE PLEADINGS** Pursuant to Federal Rule of Civil Procedure 12(c)... For an **Expedited** hearing as the Defendant[s] is continuously harmed irreparably due to the plaintiff complaint AND RELIEF GRANTED. (Excess Page granted [DE-175])

1

CASE NO.: 23-61179-CIV-SINGHAL

## I.   <u>Standard of Review</u>

2.   "To survive a Rule 12(c) motion," the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 301 (2d Cir. 2021). "[T]he courts considers the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *Ricatto v. M3 Innovations Unlimited, Inc., 2019 WL 6681558, at *3 (S.D.N.Y. Dec. 6, 2019)*. "If the allegations of a pleading are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the pleading.". Application of these standards requires dismissal. Though the Defendant[s] has raised many other defenses provable upon summary judgment or at trial, the issues raised by this motion—which rest solely on deficiencies in the Complaint—are independently dispositive of the entire case. This Motion brings up the core threshold question of the plaintiff's complaint if there was any security violation and any substantial statement which influenced the court in establishing prima-facie for injunctive and other relief sort for the Plaintiff.

## II.   <u>PRELIMINARY STATEMENT</u>

3.   The defendant in *pro-se* bring this **<u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>** pleading under F.R.C.P 12 (C) For an **Urgent** hearing as the

Defendant[s] is continuously harmed irreparably due to the plaintiff complaint AND RELIEF GRANTED.

4. The SEC may pursue this enforcement action only if relevant transactions in the Royal Bengal asset and services identified in the Complaint are **"investment contracts"** and therefore "securities" under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act"). Because as a matter of law none of them are, the claims must be dismissed.

5. Defendant[s] Denies the Security violations in its entirety.

## III.     Commission's Factual Allegations

1. Commission alleges that RBL offer investors Four Investment Program, promising guaranteed returns ranging from 12.5 % to as high as 325% and called it collectively RBL Investment program, further it alleges that **RBL's investment program are investment contract and therefore securities** (para 19, Sec IV ref SEC: Complaint for Injunctive and other relief).

2. **RBL'S Short term and Long term Investment Program**, *(Ref Sec IV (i) ref SEC: Complaint for Injunctive and other relief).*

3. **RBL's Trailer Sponsorship** *(Ref Sec IV (ii) ref SEC: Complaint for Injunctive and other relief).*

4. **RBL's Truck Program** *(Ref Sec IV (iii) ref SEC: Complaint for Injunctive and other relief).*

CASE NO.:  23-61179-CIV- SINGHAL

5. The commission cannot be farther from the fact as matter of law, RBL investment Program is a summary of relationship of **Lessor and lender**. None of the contract meets any or part of standard as applied case law by the commission. The commission has failed to analyze, study or it or just went on a standardized witch hunt. It is often evident in the commissions complaint that the Commission failed in the facts and relied on instinctive allegations or suppositions.

### IV.    Memorandum of Law

6.. *Investments as Investment Contracts Under the Howey/Forman Test*

I.  *The Supreme Court initially defined an "investment contract"* as a contract, transaction, or scheme whereby a person makes an investment of money in a common enterprise and is led to expect profits solely from the efforts of a promoter or a third party. See SEC v. W.J. Howey Co., 328 U.S. 293, 298-99, 66 S. Ct. 1100, 90 L. Ed. 1244 (1946). The Supreme Court later modified this definition to require that the promoter contribute only the "entrepreneurial or managerial efforts. "United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 852, 95 S. Ct. 2051, 44 L. Ed. 2d 621 (1975). Therefore, under the Howey/Forman test, an investment contract exists if there is **(a) an investment of money, (b) in a common enterprise, (c) based on an expectation of profits to be derived from the entrepreneurial or managerial efforts of others.**

II. **An "investment of money"** refers to an arrangement whereby an investor commits assets to an enterprise or venture in such a manner as to subject himself to financial losses. See *Stowell, 489 F. Supp. at 1220.; also see... El Khadem v. Equity Securities Corp., 494 F.2d 1224 (9th Cir. 1974) cert. denied, 419 U.S. 900, 95 S. Ct. 183, 42 L. Ed. 2d 146 (1974).*

CASE NO.: 23-61179-CIV- SINGHAL

III. **To Establish Common Enterprise** - To satisfy the second element of the Howey test, the Commission must establish that individuals invested money in a "common enterprise." A common enterprise exists where "the fortunes of the investor are interwoven with and dependent on the efforts and success of those seeking the investment or of third parties." *SEC v. Unique Financial Concepts, Inc., 196 F.3d 1195, 1199 (11th Cir. 1999) (quoting Villeneuve, 698 F.2d at 1124).* The thrust of this test is that "investors" have no desire to perform the chores necessary for a return." quoting *Eberhardt v. Waters, 901 F.2d 1578, 1580-81 (11th Cir.1990).*

IV. **Based on an expectation of profits to be derived from the entrepreneurial or managerial efforts of others;** Plaintiff must establish that investors expect profits to be derived "**solely** from the efforts of the promoter or third party." Howey, 328 U.S. at 299, 66 S. Ct. at 1103. **If the investor controls the profitability of his investment, the agreement is not a security.** Therefore, the "crucial inquiry is the amount of control that the investors retain under their **written agreements**" *Albanese v. Florida Nat'l Bank of Orlando, 823 F.2d 408, 410 (11th Cir.1987).*

V. In addition, to *Howey,* the Courts have stablished various test to determine a transaction as Investment contract and hence security, Risk Capital approach and Economic Reality test.

VI. **Risk Capital Approach** - A risk-capital test is a way to determine if a transaction involves the sale of a security and is subject to securities laws. It is based on whether the seller is asking for money to develop a business venture. Risk distribution is how a legal system decides who should bear the risk of harm in a situation.

VII. **Economic reality Test** – Supreme Courts of United states have applied active role of Economic reality test in the identification of an Instrument as a security. The test is to determine Substance Over Form. The Supreme Court in Forman rejected a literal

5

approach to analyzing whether a transaction constituted a security. In the context of "stock," the Court adopted the economic realities standard. This test looks to "the economic realities underlying a transaction and not [to] the name appended thereto.

## V.   <u>Summary of Argument</u>

7.   The term "investment contract" is not defined in either the Securities Act of 1933 or the Securities Exchange Act of 1934, see 15 U.S.C. § 77b(a)(1); 15 U.S.C. § 78c(a)(10), but the Supreme Court established the test for applying that term nearly eight decades ago in SEC v. W.J. Howey Co., 328 U.S. 293 (1946); see SEC v. Edwards, 540 U.S. 389, 393 (2004). <u>The very heart of an investment contract is and always has been the coupling of an asset with a binding promise</u>: The sale of land *plus* the promise to manage orange groves on it; the sale of beavers plus the promise to raise them for fur; the sale of vineyards plus the promise to develop wine. But here, there is nothing of the sort; *SEC v. W.J. Howey Co., 328 U.S. 293, 298-99, 66 S. Ct. 1100, 90 L. Ed. 1244 (1946). In RBL* There is just "in a state of nature" Joint venture business plan or unsecured loan. **The Major Questions Doctrine** along with basic principles of fair notice underscore what text, history, and precedent already make plain.  The SEC may not use the phrase "investment contract" as a blank check to cash whenever it seeks to expand its regulatory competence. But even setting all that aside, as described below, the SEC cannot prevail even under its own framework as described and literalistic reading of the Supreme Court's decision in *Howey*, 328 U.S. 293. As the SEC would have it, *there is an "investment contract" whenever a person is "led to invest money in a common*

*enterprise with the expectation that they would earn a profit solely through the efforts of the promoter or of someone other than themselves.*" But here, there is no investment of money *in* common enterprise rather a business plan in the Truck Program with no economic loss. In using the phrase "investment contract," Congress codified the term's traditional definition into the federal securities laws. *Howey*, 328 U.S. at 298. The federal securities laws do not specifically define the term "investment contract." The term should accordingly be given its "ordinary meaning at the time Congress enacted the statute." *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 539 (2019). When Congress passed the Securities Act of 1933 and the Exchange Act of 1934 (both of which use "investment contract" as part of their near-identical definitions of "security"), "investment contract" was a settled term of art from state "blue sky" laws (*i.e.*, state securities laws). And "when Congress employs a term of art, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word." *FAA v. Cooper*, 566 U.S. 284, 292 (2012). The Ninth Circuit has confirmed as much, reaffirming that "the term 'investment contract 'retains the same meaning it possessed under predating state 'blue sky 'laws." *SEC v. Rubera*, 350 F.3d 1084, 1090 (9th Cir. 2003). The definition of "investment contract" under predating state "'blue sky 'laws," *Howey*, 328 U.S. at 298, had several "essential ingredients,". Chief among them: An "investment contract" required a *contract* (written or implicit) that imposed *post-sale obligations* on the promoter, and gave the investor a *right to receive profits*

7

CASE NO.: 23-61179-CIV-SINGHAL

from the promoter's venture... Nor can just *any* contract constitute an "investment contract." an <u>"investment contract" is an asset sale *coupled with* legally binding promises by the promoter to manage or develop that asset in a profitable way.</u> *See, e.g., State v. Robbins*, 185 Minn. 202, 204-05 (1932) (sale of muskrat breeding pairs *plus* promise to rear pairs until later sold for fur); *Prohaska v. Hemmer-Miller Dev. Co.*, 256 Ill. App. 331, 334-35 (1930) (sale of land *plus* promise to harvest crops on it); *Kerst v. Nelson*, 171 Minn. 191, 193-95 (1927) (sale of land *plus* promise to cultivate vineyard, harvest crops, and market wine). When Congress passed the federal securities laws, it quite purposefully used a term of art that had a well-established meaning. In that light, then as now, the definition of "investment contract" is (i) a contract, that (ii) imposes post-sale obligations on the promoter, among which include (iii) giving the investor a legal entitlement to share in the business venture's profits. Even before Howey, the traditional definition of "investment contract" had taken hold in the federal courts. See, e.g., *SEC v. Bailey, 41 F. Supp 647, 650 (S.D. Fla. 1941)* ("investment contract" is "a contract providing for the investment or laying out of capital in a way intended to secure income or profit from its employment, which will arise through the activities and management of others than the owner"). And since Howey, the Supreme Court has never recognized an "investment contract" that lacks the three defining characteristics described above. See, e.g., Edwards, 540 U.S. at 391 (payphone sale-and-leaseback arrangement to be investment contract where company contracted to maintain phones and deliver fixed monthly return);

8

*Tcherepnin v. Knight, 389 U.S. 332, 337 (1967)* (same for "withdraw able capital shares "that paid "dividend" from savings and loan association's "profits"); *SEC v. United Benefit Life Ins. Co., 387 U.S. 202, 205 (1967) (*same for annuity contracts providing right to a "pro rata share" of returns from "portfolio of equity interests"); *SEC v. Variable Annuity Life Ins. Co., 359 U.S. 65, 71 (1959)* (similar); see also *SEC v. C.M. Joiner Leasing Corp., 320 U.S. 344, 348-4 (1943)* (same for oil lease sales conditioned on promoters 'contractual agreement to drill wells). Royal Bengal Logistics had no sale or post sale obligation for profit on sole effort of the promoter and the company. Every "Investment Contract" Identified By The Supreme Court Involves A Contractual Undertaking to Grant A Surviving Stake In The Enterprise. ***No Supreme Court or Second Circuit Decision Has Found That A "Scheme "Without Accompanying Contractual Undertakings Qualifies as an "Investment Contract."

## VI.    <u>Argument</u>

11. <u>***Plaintiff   alleges   RBL   program   as   Investment   contract   and   hence "Security", Defendant[s] as a matter of law disagree and the*** COMPLAINT *DOES NOT PLEAD "SECURITIES" TRANSACTIONS; See Exhibit A-1[1]*</u>

12. <u>RBL's   Truck   Program   styled   as   "INVESTMENT   &   EQUIPMENT OPERATING LEASE AGREEMENT" is not security;</u> RBL Truck Program

---

[1] RBL TRUCK CONTRACT INVESTMENT & EQUIPMENT OPERATING LEASE AGREEMENT

contract is a **business plan** rather than sale of equity, asset or stocks etc. and it is a **joint venture** contract between two independent corporation.

i. ***RBL truck program*** is a civil contract with a business plan to build a successful enterprise to lease asset from a/k/a Lessor/investor for operation to generate high volume revenue from operation of the asset; The word **Investment** was for the Intent of Investment in the client's own enterprise as a Startup Payment submitted to RBL, With prospective acquisition of a Truck and Trailer from an OPEN MARKET; RBL reimbursed all expenses including down payment and other expenses in the acquisition of truck or trailer from the Startup Capital; Converted the asset into an operating lease agreement Prior to expiration of 12 months after signing the contract. However, the money assigned as Startup payment will be used by RBL in full or part; or its use including retuning capital termed as lease payment after two months in the interest of reducing liability if the investor is unsuccessful in acquisition of asset. If the client fails in awarding an Asset to RBL within 12 months; all paid payments Plus any remaining payment will be returned to the Prospective lessor and the contract will stand terminated. Any investment if consumed by the investor[2] in a venture cannot be considered an investment contract, *Since the Lessor or Investor in RBL truck Program consumes the investment in full or more The Truck program is not an investment contract,* in contrary on many transaction RBL overpaid the investor

---

[2] See Forman, 421 U.S. at 852-53 (where a purchaser is not "'attracted solely by the prospects of a return' on his investment . . . [but] is motivated by a desire to use or consume the item purchased . . . the securities laws do not apply."). Reference... https://www.sec.gov/corpfin/framework-investment-contract-analysis-digital-assets#_edn10

initial amount in the interest of good faith business and RBL becomes the investor into lessors' enterprise and hence it implied as a business plan. *See Exhibit A-1 INVESTMENT & EQUIPMENT OPERATING LEASE AGREEMENT*: Hence First prong of Howey/Foreman test is defeated in the RBL's Truck Contract *"Investment of money" refers to an arrangement whereby an investor commits assets to an enterprise or venture in such a manner as to subject himself to financial losses. See Stowell, 489 F. Supp. At 1220. RBL Truck Contract induce no financial loss contractually if the contract/business plan is unsuccessful in its endeavor. The Forman Court noted that the respondents urged it to abandon the element of profits in the definition of securities and to adopt the "risk capital" approach articulated by the Supreme Court of California in Silver Hills Country Club v. Sobieski. The Court went on to say that even if it were inclined to adopt a "risk capital" approach. Purchasers of apartments in Co-op City in fact took no risk in any significant sense. If the purchasers were dissatisfied with their apartments, apparently, they had the right to recover their initial investment in-full. The result was no risk of loss of initial investment, the Ninth Circuit Court of Appeals reasoned that the "risk capital" test remains a viable standard by which to determine the existence of a security. Therefore, in order to distinguish the Howey/Forman test from the "risk capital" test, it is necessary to examine the California Supreme Court's decision in the Sobiesli case. [I]n searching for the meaning and scope of the word 'security' in the Act[s], form should be disregarded for substance and the emphasis should be on economic*

reality." *Tcherepnin v. Knight, 389 U. S. 332, 389 U. S. 336 (1967)*. Hence RBL Truck Contract is not Security and therefore the commission/Plaintiff is subject to NO Jurisdiction or enforceability. *Also See Exhibit A-1 (6) "INVESTMENT & EQUIPMENT OPERATING LEASE AGREEMENT". See Also (7)(8) must be read together. (Economic reality test*). It is clear in the law that simply a business plan of functional joint venture doesn't constitute security. It is very evident that the So-called investor/lessors had undisputed motivation on ***desire to use or consume the Start Up capital for the purchase of asset and other expenses associated by the Acquisition*** hence RBL truck program doesn't constitute **Investment of Money**

ii.   **RBL "INVESTMENT & EQUIPMENT OPERATING LEASE AGREEMENT" Common enterprise Element** is **not satisfied** as because, RBL Truck Program contract was a business plan rather sale or equity, asset or stocks etc.;  RBL was not seeking investment in its enterprise through sale of equity, asset, stocks etc.; rather it was seeking to build an enterprise for the Enterprise willing to participate in the RBL truck program as a prospective lessor as a business plan; In order to establish common enterprise the fortunes of the investor must be interwoven with and dependent on the efforts and success of those seeking the investment or of third parties. In the Case of RBL truck program the Fortunes of the participant were not Interwoven and dependent on the efforts and success of third party, **As a matter of fact it was dependent on the success of the investor a/k/a lessor**; RBL truck program

was contingent Upon successful qualification of Purchase of an Truck or Trailer from/through a Third party dealership/finance company; RBL had no role in the Success of the Participant qualification; In the RBL truck program Owner of the ASSSET was the participant with full exclusive rights without any restriction on withdrawing from the program or selling their asset in their best interest of business; If the participant were not qualified or failed to qualify for third party financing the participant are eligible for termination of Contract with any remaining funds paid back by RBL. - <u>ROLES</u>: **RBL** - Will provide intermediatory/ministerial service in Finding an Eligible Equipment and Third-party lending Company in the open market. Participant a/k/a Investor; Must qualify with Commercial Lending Criteria like Credit rating and meet each third-party lending criteria, Experience with commercial financing and others as established by Third party lending Company. If The participant or **a/k/a Investor** is successful in acquiring the asset; RBL will bring the asset under a Lease for operation; The participant has full exclusive right to their ownership, Buying or selling or addition; Participant had a choice to terminate the agreement at any point in time; Participant can use for any financial gain such as Tax benefits or Leverage on Commercial Lending; RBL maintain full control of operation such as maintenance, Driver, Revenue and any other operational duties. The participant or the Lessor Maintained a Full control of Insurance as an **Additional Insured** for the Financial liability and safety of finance on their owned asset. The entire success of the Program was dependent on the Lessor/

Participant or the Investors decision; RBL could only continue the program if the Lessor/Participant or the Investors allowed the continuation. <u>Hence the Master of Contract was the lessor a/k/a Investor, and hence Common Enterprise prong doesn't apply.</u> In summary, RBL management worked for operation and Lessor a/k/a made final decision on their asset management. The second element of the Howey test focuses on the nature of the investment venture, i.e.., is the individual investor part of a "common enterprise.". <u>In RBL's situation the so-called investor consumes the startup payment either by receiving monthly payment or receiving reimbursement for down payment of a Truck and other expenses. Hence it cannot satisfy Howey's second prong.</u>

iii. **Commission alleges:** *Based on an expectation of profits to be derived from the entrepreneurial or managerial efforts of others; <u>The commission alleges that</u>* **<u>The RBL truck program in design to be a entrepreneurial or managerial efforts of RBL and its promoter;</u>** This prong has two dimensions. See Warfield, 569 F.3d at 1020. First, a product must be sold as a profit-making investment rather than an item be used or consumed. *United Hous. Found., Inc. v. Forman, 421 U.S. 837,858 (1975).* Second, profits must derive significantly from managerial efforts rather than market forces. Noa v. Key Futures, Inc., 638 F.2d 77, 79 (9th Cir. 1980)**.** *RBL Was managing the operation of the truck while the lessor was managing his/her asset and their own enterprise. Making sure the finance payment is made on time, Certificate of*

CASE NO.: 23-61179-CIV- SINGHAL

*Insurance is current, Any TOLL BILL reports to RBL, Keeping free and clear of all conflict from the third-party lender or finance company. Lessor had all rights and decision-making power at any point to continue the relationship or terminate without penalty hence it constitutes* **substantial control and substantial risk***. Any Litigation notice, be able to sue and get sued for asset management, Any accident and incident or legal case management. Lessor where also the management of their final profit and loss statement, tax depreciation from asset or any other benefits, RBL had no Influence or control over their Year-to-Date Profit and Loss. Hence forth the* <u>*final prong of Howey test fails in the RBL truck Program.*</u> <u>**RBL paid lease payment[3] to the lessor as debt obligation and not profit of the enterprise. If the investor controls the profitability of his investment in the enterprise, the agreement is not a security***</u>*. Therefore, the "*<u>*crucial inquiry is the amount of control that the investors retain under their written agreements.*</u>*" Albanese v. Florida Nat'l Bank of Orlando, 823 F.2d 408, 410 (11th Cir.1987). Neither a general partnership[4] nor a joint venture interest has been held to be a security since effective management control of asset is in the hands of the "investor." Furthermore, when a purchaser is motivated by a* <u>**desire to use or consume[5]**</u> *the item purchased--"to occupy the land or to develop it them-selves," as the Howey court put it, -... the securities laws do not apply.*

---

[3] Martin v. Occupational Safety and Health Review Commission, 499 U.S. 144, 150, 111 S. Ct. 1171, 113 L. Ed. 2d 117 (1991); Lyng v. Payne, 476 U.S. 926, 939, 106 S. Ct. 2333, 90 L. Ed. 2d 921 (1986); Wolpaw v. Commissioner of Internal Revenue, 47 F.3d 787, 790 (6th Cir.1995)

[4] Hirsch v. DuPont, 396 F.2d 1214 (S.D.N.Y. 1975) (general partnership); Polikoffv. Levy, et al., **FED.** SEC. L. REP. (CCH) 191,513 (Il. App. 1965) (joint venture).

[5] The lesser can sell the asset to consume maximum profit is evident in the transaction or terminate the lease for any personal gain, that satisfies the theory of use and consume under Howey test.

15

CASE NO.: 23-61179-CIV-SINGHAL

*Defendant never sold anything to the investor and upon acquisition of the asset[s] the lessor can consume the asset by selling or withdrawing from lease without penalty, the Lessor could very well control his profitability by any other offering of higher profit or operate asset himself or herself.*

13. ***The Commission alleged RBL Short term Unsecured Loan as notes and hence security; RBL Short term Loans were unsecured and it doesn't resemble as a Note or a trade-able instrument neither it is an investment contract instrument, Hence not Security; <u>See Exhibit ST-1A</u>[6]***; RBL Short Term Loan are unsecured loan from lenders participating as Corporation and Individual in the company overall business structure and by invitation  for commercial purpose in trucking operation, ranging from 1 months term to 6 months term with amount ranging from $10,000 to $100,000.00, Largely Short term Lenders were also a lessor or prospective lessor in the truck program; It is not a tradable instrument neither it was traded or intended to be traded by RBL or by a reasonable lender; as a matter of Law it is not security; <u>The primal view of selling notes implies an exchange of asset in lieu of money or property</u>, The fundamental difference between notes and Loan is the debtor and borrower obligations and rights, defendants never sold asset, stocks or any collateral through the instrument in question. <u>Even under face value if commissions allegations</u> are to be considered that RBL Short Term Loans are notes and therefore security it is well settled

---

[6] RBL Short term Unsecured Loan Contract

definition that Notes Less than 9 months of maturity is not security as The Second Circuit's "family resemblance" approach begins with a presumption that any note with a term of more than nine months is a "security." *See, e. g., Exchange Nat. Bank of Chicago v. Touche Ross Co., 544 F.2d 1126, 1137 (CA2 1976)*, <u>Under 1933 ACT the nine-month exemption is not available for only antifraud issues not for the threshold question of notes are security or not</u>; with respect to notes that seemingly fall within the short-term note exclusion, *Reves* failed to confront the issue directly. The majority's reasoning was inconsistent with Supreme Court precedent and failed to recognize the contemporaneous understanding of the term "maturity.". IN RBL Question maturity is clear, no notes in the allegation of Short Term exceeds 6 Months.

The Supreme Court in Reves v. Ernst & Young rejected the D.C. and Eighth Circuit courts 'approach in applying the Howey Test in determining if a note should qualify as a security and instead adopted the family resemblance test from the 2nd Circuit. <u>*The 4-factor test of In Reves v. Ernst & Young, 494 U.S. 56, 66-67 (1990) applies: "1) the motivations of a reasonable seller and buyer; (2) the note's 'plan of distribution '; (3) the reasonable expectations of the investing public; and (4) whether other risk-reducing factors exist, making unnecessary the application of the securities laws to protect the public,";*</u> Accordingly, the "family resemblance" test permits an issuer to rebut the presumption that a note is a security if it can show that the note in question "bear[s] a strong family resemblance" to an item on the judicially crafted list of exceptions, <u>or convinces</u>

<u>the court to add a new instrument to the list</u>, *see, e. g., Chemical Bank v. Arthur Anderson Co., 726 F.2d 930, 939 (CA2 1984).*

<u>*RBL SHORT TERM LOAN BEAR'S FAMILY RESEMBELANCE as the participating entity is in no doubt participating in the commercial enterprise (Trucking/Manufacturing Company) and dependent upon company Assets, Receivables, Valuation and other assets.*</u>

As per contractual relationship in the RBL short term Loans, none of the test is satisfied to answer the threshold question if RBL Short term loans can be presumed notes and hence security. The common goal was to purchase and sale of a minor asset or consumer good, to correct for the business cash-flow difficulties, or to advance some other commercial or consumer purpose., manage shortage of cash flow in business operation and use for commercial purpose; Hence as a matter of law RBL Short term loans fails the test as established by the Supreme Court; **(A) The purpose of the transaction is examined. In absence of the intention in the instrument the lender and borrower are implying the transaction for advancing commercial purpose. Definitions:** The term "used for commercial purposes" in transportation sector means the carriage of persons or property for any fare, fee, rate, charge or other consideration, or directly or indirectly in connection with any business, or other undertaking intended for profit... see 18 U.S. Code § 31(A)(6). It is undisputable that the lenders knew they were lending unsecured loan to a Transportation company and not to a financial institution only to advance the company for commercial purpose, regardless of the sophistication of the lender. Notes

are considered security if it is resold to a third-party at a discount to its original face value; **A note is not a security**, if it was exchanged to "facilitate the purchase and sale of a minor asset or consumer good, to correct for the seller's cash-flow difficulties, or to advance some other commercial or consumer purpose." *On August 24, 2023, the United States Court of Appeals for the Second Circuit (the "Court") upheld the District Court's ruling in Kirschner v. JPMorgan Chase Bank, N.A. that notes issued as part of a refinancing transaction involving Millennium Health LLC, Inc f/k/a Millennium Laboratories, or Millennium, are not "securities" under the Securities Acts of 1933 or the Securities Exchange Act of 1934 (collectively, the "Securities Acts") or for purposes of state securities laws.*

14. ***The Commission alleged RBL Long term Unsecured Loan as notes and hence security; RBL Long term Loans were unsecured and it doesn't resemble as a Note or a trade-able instrument neither it is an investment contract instrument, hence not Security; See Exhibit LT-OW-1A:*** <u>***RBL LONG TERM LOAN WAS NOT AVAILABLE TO BROAD SEGMENT OF PUBLIC***</u>***.*** RBL Long term Loan program were a supplement of Truck Program and to advance commercial purpose if the Lessor choose to self-finance (<u>*Hence; Desire to Consume doctrine is applied*</u>) their own asset upon failure to qualify for third party approval of commercial loan ***see..Pollack v. Laidlaw Holdings, Inc., 27 F.3d 808, 812 (2d Cir. 1994)***, [*The first Reves factor requires a court to "examine the transaction to assess the motivations that would prompt a reasonable seller and*

*buyer to enter into it." 494 U.S. at 66, 110 S.Ct. at 951. The inquiry is whether the motivations are investment (suggesting a security) or commercial or consumer with desire to consume (suggesting a non-security)].* If the participant failed to secure a third party financing the Participant provided the capital to RBL to purchase the truck from a third-party dealership at the time of choosing and compliment that capital with 12.5% interest as a good faith business of the participant's own enterprise while continuing the Truck Program instead of facing separation from the Truck Program. <u>RBL long term loan were not offered to broad segment of public</u>. The Truck Purchased would be titled under the Lenders Enterprise name. Until the truck is purchased RBL will have the right to use the money as it sees fit. The number of Participant were very few and hence its falls outside the scope of security law and exempt from the commission's enforceability, The long-term loans were not available to public. <u>SEE EXHIBIT LTINVLIST-1</u>. The commission had failed in the separation of the Contractual instrument as matter of Law RBL Long-term Unsecured Loan are not security; *The Supreme Court in Reves v. Ernst & Young rejected the D.C. and Eighth Circuit courts 'approach in applying the Howey Test in determining if a note should qualify as a security and instead adopted the family resemblance test from the 2nd Circuit.* The 4-factor test of In Reves v. Ernst & Young, 494 U.S. 56, 66-67 (1990) applies: "1) the motivations of a reasonable seller and buyer; (2) the note's 'plan of distribution'; (3) the reasonable expectations of the investing public; and (4) whether other risk-reducing factors exist, making unnecessary the application of the securities laws

CASE NO.:  23-61179-CIV- SINGHAL

to protect the public," As per contractual relationship in the RBL Long term Loans, None of the test qualifies as security. Hence as a matter of law RBL Long term loans fails the test as established by the Supreme Court to be considered as Security enforcement.

15. ***The Commission alleged RBL Trailer sponsorship as a security and characterize as Investment contract*** and the COMPLAINT ***DOES NOT PLEAD "SECURITIES" TRANSACTIONS; See Exhibit TL-01***[7] To date, every arrangement the Supreme Court has deemed an "investment contract" promised the investor some ongoing, contractual interest in the enterprise's future endeavors. *S.E.C. v. C. M. Joiner Leasing Corp.,* which predated Howey by three years, involved the offering of leasehold interests near a planned oil drilling test well in exchange for investors' "sharing in [the] discovery values" of the ongoing "exploration enterprise." 320 U.S. 344,345–46,348 (1943). Howey's reference to a "scheme" or "transaction" simply reflected the instruction that courts should consider the "economic reality" of a business venture to determine whether an "investment contract" exists. 328 U.S. at 298. That economic reality may be reflected in a single agreement—for example, a single profit-sharing agreement— or, as in Howey itself—which involved land sale, warranty deed, and management contracts—multiple contracts. RBL Trailer sponsorship was a commercial transaction to advance the purpose of Truck Program, ***it was not offered to broad segment of public, See Exhibit TL-02L***; Trailer sponsorship was not an

---

[7] RBL Trailer Sponsorship Contract

investment contract and hence it is not security as the Trailer sponsorship was to advance **commercial purpose with only service contract for the participant in the Truck Program or any new client** in partnership with the sponsor or a Joint venture approach, and treated as Short Term loan for 3 to 6 months; as a matter of Law it is not security for the following assessment, Its Was not offered to broad segment of public, Doesn't satisfy the *Risk Capital Approach test and economic reality test to meet the security standard*. Even under face value if commissions allegations are to be considered that ***RBL Trailer sponsorship as Investment contract***, SEC v. W.J. Howey Co., 328 U.S. 293, 298-99, 66 S. Ct. 1100, 90 L. Ed. 1244 (1946). An "investment contract" required a *contract* (written or implicit) a sale of asset, stocks or profit that imposed *post-sale obligations* on the promoter, and gave the investor a *right to receive profits* from the promoter's venture. Nor can just *any* contract constitute an "investment contract." an "investment contract" is an asset sale *coupled with* legally binding promises by the promoter to manage or develop that asset in a profitable way. *See, e.g., State v. Robbins*, 185 Minn. 202, 204-05 (1932) (sale of muskrat breeding pairs *plus* promise to rear pairs until later sold for fur); *Prohaska v. Hemmer-Miller Dev. Co.*, 256 Ill. App. 331, 334-35 (1930) (sale of land *plus* promise to harvest crops on it); *Kerst v. Nelson*, 171 Minn. 191, 193-95 (1927) (sale of land *plus* promise to cultivate vineyard, harvest crops, and market wine).."[I]n searching for the meaning and scope of the word 'security' in the Act[s], form should be disregarded for substance and the emphasis should be on **economic reality**." *Tcherepnin v.*

*Knight,* 389 U. S. 332, 389 U. S. 336 (1967). *See also Howey, supra,* at 328 U. S. 298. As per contractual relationship in the ***RBL Trailer sponsorship***, none of the test satisfies to security transaction. Hence as a matter of law ***RBL Trailer sponsorship*** fails the test as established by the Supreme Court and therefore not securities. Furthermore, when a purchaser is motivated by a **desire to use or consume** the item purchased--"to occupy the land or to develop it them-selves," as the Howey court put it, -... the securities laws do not apply...

16. For an **Urgent** hearing as the Defendant[s] is continuously harmed irreparably due to the plaintiff complaint AND RELIEF GRANTED.

## VII.   Memorandum of Law and Supporting Legal Authority

i   ***Pooling of Money doesn't exist in RBL; and let alone doesn't constitute security.***

> *See also SEC* v. *Life Partners, Inc.,* 87 F.3d 536, 544 (D.C. Cir. 1996) ("*commingling in itself is but an administrative detail; it is the inter-dependency of the investors that transforms the transaction substantively into a pooled investment*")
>
> *Lauer,* 52 F.3d at 670 ("*each investor's interest is pooled with that of the other investors, so that each has an undivided share in a pool of assets rather than an individual asset*"). *Terraform* nevertheless held that the SEC pleaded "pooling" as to the LUNA token by alleging that an issuer "used

proceeds from LUNA coin sales to develop the Terraform blockchain and represented that these improvements would increase the value of the LUNA tokens themselves.". *This conception of "pooling" deprives the term of all meaning and cannot be reconciled with the Second Circuit's common-sense holding in Revak that investors do not "share or pool" their funds merely by paying money to a common promoter.* **Opinion from REVAK ...Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994)**

The SEC, misrepresenting *Hocking*, says it involved "finding an investment contract where there was 'no evidence' of any binding contractual obligations.". In fact, *Hocking* (like *Howey*) involved two contracts, one for real estate and one for services, and the Court remanded on the question of whether the two contracts were sufficiently related to together constitute an investment contract. *See Hocking*, 885 F.2d at 1457, 1462. Indeed, the SEC submitted an amicus brief in *Hocking* arguing that because "there was no affiliation or selling arrangement between the condominium seller or the real estate agent and the rental pool operator the condominium sale and the pooling arrangements were two separate transactions, and the sale was not covered by the federal securities laws." Br. for SEC as Amicus Curiae on Reh'g En Banc, *Hocking* v. *Dubois*, No. 85-1932, at 3 (9th Cir. Oct. 24, 1988).

**ii** ___Common Enterprise doesn't exist in RBL contract.___

     *That foundational principle undergirds the "common enterprise" concept from Howey. It is not enough to show that multiple investors paid money to a common recipient which then banked the funds. The funds must instead be "pooled"—that is, deployed in the enterprise in a way that ties the investors' fortunes together—usually with pro rata distribution of profits. See Revak, 18 F.3d at 87 (with horizontal commonality, "the fortunes of each investor depend upon the profitability of the enterprise as a whole"). Vertical or Broad Vertical commonality doesn't exist in RBL contract because the Asset purchase is dependent on the Investor/Lessor not relied on the promoter. See..Revak v. SEC Realty Corp., 18 F.3d 81 (2d Cir. 1994)*

     The term "common enterprise" has been the subject to a great deal of litigation. The courts require that in order to demonstrate the existence of a "common enterprise," there must be a showing of "horizontal commonality" or "vertical commonality." "Vertical commonality" has been subdivided into "broad vertical commonality" and "strict vertical commonality." Different circuits adhere to different commonality standards. See, e.g., Revak v. SEC Realty Corp., 18 F.3d. 81, 87-88 (2d Cir. 1994) ("A common enterprise within the meaning of Howey can be established by a showing of 'horizontal commonality': the tying of each individual investor's fortunes to the fortunes of the other investors by the pooling of assets, usually combined with the pro-rata distribution of profits. See Hart v. Pulte Homes of Michigan Corp., 735 F.2d 1001, 1004 (6th Cir. 1984); Salcer v.

CASE NO.:  23-61179-CIV- SINGHAL

Merrill Lynch, Pierce, Fenner & Smith, Inc., 682 F.2d 459, 460 (3d Cir. 1982)
(investment must be 'part of a pooled group of funds'); Milnarik v. M-S
Commodities, Inc., 457 F.2d 274, 276 (7th Cir.) (success or failure of other
contracts must have a 'direct impact on the profitability of plaintiffs' contract'),
cert. denied, 409 U.S. 887, 93 S. Ct. 113, 34 L. Ed. 2d 144 (1972).


### iii  *Managerial Efforts alone doesn't constitute security:*

No aspect of the RBL Contract in any event reflects profits generated by
the "essential managerial efforts" of others, as it must to constitute an
investment contract. Hocking, 885 F.2d at 1455. RBL contract reflects
Managerial service from the Lessor and not the promoter. RBL merely
provides technical and operation service to the lessor. Lease and
operational service are not properly conceived as investment profit but
rather reflect payments for putting assets to work to perform operation, in
support of the relevant operation at a fixed cost. See United Hous. Found.,
Inc. v. Forman, 421 U.S. 837, 852-53 (1975) ("securities laws do not apply"
"when a purchaser is motivated by a desire to use .and consume. ."). Role of
RBL and promoter was adviser, consultant and operator at a fixed cost, the
asset manager was the lessor and hence held the managerial role of their
asset.


### iv  *Expectation of Profit Alone doesn't constitute Security in RBL...*

The word _**Expectation**_ is directly co-related to the behavior of stock or tradable instrument, in order for an investment Contract to be considered security the investment contract must have the fundamental elements or behavior of a stock or tradable instrument. In the RBL Contract in Question the expectation of profit in common enterprise doesn't exist. *Wals v. Fox Hills Dev. Corp., 24 F.3d 1016, 1018 (7th Cir. 1994) (Posner, C.J.); SEC v. Lauer, 52 F.3d 667, 670 (7th Cir. 1995) (Posner, C.J.) (an investment contract, while "not a conventional security like a bond or a share of common stock," has "the essential properties of a conventional security".*

### v   _Short term and long-term loans are not notes.... or security...as styled._

*The primary characteristic of a note is promise from one party to another in exchange of an asset collateral or equity in the enterprise.*

**A Loan can be a note if the borrower is the only promissory party to the loan. If both Lender and borrower are party to the instrument it is considered lender and borrower.** *In 1992, the Second Circuit Court of Appeals held that loan participations are not securities in Banco Espanol de Credito v. Security Pacific National Bank ("Banco Espanol"). In KIRSCHNER* The Court also indicated that the limited references to the purchasers being "investors" rather than "lenders" in the confidential information memorandum and other loan documents did not create a reasonable expectation that the purchasers were investing in securities. The Court focused on the isolated use of the word

27

"investors" in the documents and determined that, except for such isolated mentions, all documents used the word "lender" more consistently to describe the purchasers". Significantly, the Second Circuit was not swayed otherwise on this factor by the fact that the documents provided to prospective lenders "at times" referred to the prospective lenders as "investors." Judge Cabranes reasoned that (1) *there were only isolated references to "investors" in the documents, and "these isolated references could not have plausibly created the reasonable expectation that the buyers were investing in securities," and* (2) *the loan documents "more consistently" referred to the buyers as "lenders." Judge Cabranes concluded, "This label aligns with the reasonable expectations of the experienced entities that the Notes were not securities." Kirschner v. JPMorgan Chase Bank, N.A., 2023 WL 5437811 (Aug. 24, 2023);*

*The Second Circuit also found that the assignment restrictions were "akin" to those in the longtime Second Circuit precedent Banco Espanol de Credito v. Security Pacific National Bank, 973 F.2d 51 (2d. Cir. 1992), where the Circuit applied Reves and found that the transfer restrictions weighed against finding that the subject loan participations were securities. Long term and short term both bears family resemblance., Notes delivered in consumer financing, short term notes secured by an assignment of accounts receivable, respectively and both falls outside the scope of security regulations. Reves v. Ernst & Young, 494 U.S. 56 (1990).*

### *VI.* Conclusion

17. For the foregoing reasons, Defendant[s] is entitled to **MOTION FOR JUDGMENT ON THE PLEADINGS** and respectfully request that this Court dismiss with prejudice the SEC's Complaint pursuant to Rule 12 C of the Federal Rules of Civil Procedure.

### Exhibit's

1. Exhibit A-1 - Attached

2. Exhibit ST-1A - Attached

3. EXHIBIT LT-OW-1A - Attached.

4. Exhibit TL-01- Attached

5. Exhibit TL-02L

6. LTINVLIST-1- Attached

Respectfully submitted,

By: */s/* SANJAY SINGH

Add:  3700 NW 109th Ave,
Coral Springs, Fl-33065
PH: 954-822-5096
Email:        sjaysingh@icloud.com

29

CASE NO.: 23-61179-CIV- SINGHAL

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **February 28th, 2024**. I have filed the Defendant's *Amended.* **MOTION FOR JUDGMENT ON THE PLEADINGS** IN PRO-SE to the Clerk of the Court. I also certify that the foregoing document is being served this day on all counsel of record in the manner specified, either by transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for counsel of parties who are authorized to receive electronically, Notices of Electronic Filing.

By: */s/* SANJAY SINGH
Add:  3700 NW 109th Ave,
Coral Springs, Fl-33065
PH: 954-822-5096
Email:      sjaysingh@icloud.com

30