Exhibit A-1

# INVESTMENT & EQUIPMENT OPERATING LEASE AGREEMENT

**THIS EQUIPMENT OPERATING AGREEMENT (this "Agreement") dated this June 15th, 2023, by and between:**

**UNN LOGISTICS, INC. :** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

("Lessor")

OF THE FIRST PART

– AND –

**Royal Bengal Logistics: 9600 WEST SAMPLE RD, SUITE 100, CORAL SPRINGS, FL 33065**

("Lessee")

OF THE SECOND PART

(Lessor and Lessee are collectively the "Parties")

**IN CONSIDERATION OF** the mutual covenants and promises in this Agreement, the receipt and sufficiency of which consideration is hereby acknowledged, Lessor leases the Equipment to Lessee, and Lessee leases the Equipment from Lessor on the following terms:

*This Agreement contains italicized text which explains the terms of this contract and our reasoning for asking you to agree to those contract terms. In these sections, "Royal Bengal Logistics, Inc" is referred to as "we/our" and Lessor is referred to as "you/your." If for some reason, we get into a dispute with you and a court of law is interpreting this contract, the italicized explanation is intended to be read together with the regular contract terms. If, however, there is any conflict between the interpretation of the regular terms and the italicized explanation, the regular terms control our relationship.*



**Definitions**

**§ 1.** The following definitions are used but not otherwise defined in this Agreement:

    a. "Casualty Value" means the market value of the Equipment. When referring to the "Casualty Value" in relation to a "Total Loss," the Casualty Value shall be the market value immediately before the "Total Loss" and shall be determined by an appraisal by Lessee's insurance carrier.

    b. "Equipment" means the tractor and/or trailer which is the subject of this Agreement, as more specifically identified in the "Equipment Addendum" at the time of purchase.

    c. "Total Loss" means any loss or damage that is not repairable or that would cost more to repair than the market value of the Equipment.

    d. "Business days" means a weekday (as opposed to a weekend) which is not a United States federal holiday or a day designated for the recognition of the federal holiday (*e.g.* New Year's Day, Christmas).

    e. "Term" means the five-year period of this Operating Lease beginning June 15th, 2023. If the Agreement is terminated prior to the conclusion of this five-year period, pursuant to the terms of this Agreement, the Term of the Agreement shall conclude at the time of termination.

    f. "Finance Contract" means the contract between the Lessor and a third party company for the purpose of financing the purchase of the Equipment.

**Start-up**

*For this Operating Lease Agreement, you will need to pay us $55,000 to get your business started. This initial payment will be used by us, in whole or in part, for the process of acquiring a tractor (e.g. administrative costs, down payment) which we will lease from you. This is a nonrefundable payment, but we will return the payment (subtracted by any payments we made to you or on your behalf) if something goes wrong in the process of acquiring the equipment. For example, if after 12 months we cannot find a lender who will provide you financing on reasonable terms which we agree with and have already sent you 10 payments of $3,000, then we will return to you the remainder.*

**§ 2.** Lessor shall pay Lessee $55,000 ("Start-up Payment"). The Start-up Payment is a material condition for Lessee to enter into this Agreement. The Start-up Payment is not refundable, however, Lessee shall return to Lessor the Start-up Payment, less any payments already made to or on behalf of Lessor, if the Agreement is prematurely terminated prior to the purchase of the Equipment.



**Lease**

§ 3.    Lessor agrees to lease the Equipment to Lessee, and Lessee agrees to lease the Equipment from Lessor in accordance with the terms set out in this Agreement.

§ 4.    The Agreement's Term commences on **June 15th, 2023** and will continue until **June 15th, 2028** unless otherwise terminated pursuant to the terms of this Agreement.  At the conclusion of the Term of this Agreement, Lessee shall no longer have any obligation to make lease payments to Lessor, and Lessee shall return the Equipment to Lessor.

**Lease Payment**

*We will pay lease payments to you monthly, except for the month that we entered into this Agreement and the following month.  In total, we will pay you for a total of 58 payments (five years of payments [60] minus the first and second month) presuming that the Agreement is not terminated earlier.  We will try to get the lease payments into your account at the same time every month, but we may need up to five business days.  We don't expect to miss any payments, but if for any reason we miss a payment, just notify us by email at **bdo@rbltransports.com** and we will fix it quickly.  You will receive lease payments even if you have not yet purchased the tractor and trailer.*

§ 5.    Lessee shall pay Lessor the sum of $3,000 ("Lease Payment") within 7-10 business days of the 15th day of each month during the Term of the Agreement, as described below.

    a.  Lessee shall not make any Lease Payment on the first or the second month of the Term of the Agreement, payments will begin August 15th, 2023.

    b.  If Lessee fails to make a Lease Payment as required by this section, Lessee shall have 7-10 business days to cure after the date which Lessor provides written notice of the missed Lease Payment.



**Acquisition of the Equipment**

*This is an operating lease contract where we will lease from you a tractor that you have not purchased yet. We will find equipment which is suitable for our company, and do what we can to help you acquire financing for your purchase of the tractor. Once we have helped you purchase your equipment, we will use it for our business for the remainder of the lease term. Since we are using the equipment for our business and paying for it, it is important that we get to decide which tractor will become the leased equipment. In exchange, we will pay you for the use of the equipment and we will make the financing payments for you. Presuming that this agreement has not been concluded prematurely, we will ultimately make all payments for the tractor, leaving you with equipment in a condition in which it could be lawfully used in business.*

**§ 6.** The Parties recognize that Lessor does not have possession of the Equipment as of, June 15th, 2023 and that this Agreement is contingent upon Lessor's acquisition of the Equipment. The tractor and trailer comprising the Equipment may be purchased at separate times. The Parties agree to cooperate in good faith concerning the acquisition of the Equipment as follows:

    a.  Lessee shall identify Equipment available for sale from a third party which suits Lessee's business needs. In Lessee's discretion, a trailer may be part of the Equipment.

    b.  Lessee shall assist the Lessor with obtaining financing through a third party lender. Lessor shall cooperate and assist with this process as necessary to acquire said financing.

    c.  Lessor shall enter into an agreement with the third party lender to provide financing for the purchase of the Equipment ("Finance Contract"). Lessee shall not be a party to the Finance Contract.

    d.  Lessor shall purchase the Equipment and provide the Equipment to Lessee for use during the Term of the Agreement.

    e.  Upon Lessor's request, Lessee will execute and deliver to Lessor documents required by Lessor to protect Lessor's interest in the Equipment including, but not limited to, the documents necessary to file a UCC financing statement.

*We want to enjoy a mutually beneficial relationship with you during this Operating Lease Agreement's five-year term, however, if something happens that prevents us from acquiring and using a tractor and trailer, we will have to terminate this Operating Lease Agreement and return what remains of your start-up payment after subtracting money we paid to you (lease payments) or on your behalf.*



**§ 7.**      If Lessor fails, is unable, or refuses to comply with the terms listed in the preceding § 6, then Lessee shall have the option to terminate this Agreement.  Reasons for termination include, but are not limited to:

| | |
|---|---|
| a. | If Lessee refuses to cooperate in the purchase or financing of the Equipment or refuses the terms of the sale or financing of the Equipment; and |
| b. | If Lessee cannot acquire financing to purchase the Equipment within the first 12 months of this Agreement. |

**§ 8.**      In the event that Lessee has elected to terminate this Agreement pursuant to the above § 7, Lessee shall return to Lessor the Startup Payment, subtracted by any Lease Payments paid to Lessor and any payment made on behalf of Lessor.  These returned funds shall be provided to Lessee within 60 days of Lessee providing notice of the termination of the Agreement to Lessor.

**Financing of Equipment**

> *While we will make all of the payments for the equipment (unless something goes wrong and our agreement is terminated early), you will be the party obtaining financing and agreeing to a financing contract to acquire the tractor. It is our goal to try to find you the best financing agreement with the most beneficial terms from a reputable lender. However, the financing contract will be between you and a lender who we do not control. We will not be reviewing the contract that you enter into.*

**§ 9.**      Lessor shall finance and purchase the Equipment in its name, however, all payments to the third party lender pursuant to the Finance Contract shall be paid by Lessee during the Term of the Agreement.

**§ 10.**      If the Finance Contract requires that payments be made beyond the 5-year term of this Agreement, Lessee shall continue to make payments until all payments have been made pursuant to the Financing Contract.

**§ 11.**      Lessor is under no obligation to agree to the terms of the Financing Contract provided by the third party lender.  Upon Lessor's request, Lessee will take reasonable measures in a good faith attempt to find an alternative third-party lender which is acceptable to Lessor.  However, if Lessor cannot acquire financing for the Equipment with payment terms that are agreed to by Lessee, based on Lessee's sole discretion, Lessee may terminate the Agreement pursuant to the above § 7.

**§ 12.**      Lessor releases Lessee from any liability related to the acquisition of financing, the Finance Contract, or actions or omissions committed by the third party lender.



## Use of the Equipment

> *It is critical that we be able to use the tractor while we are leasing it.   If you do something that interferes with our ability to use the equipment, we may need to conclude this Operating Lease Agreement.*

**§ 13.**     Lessor shall permit Lessee to use the Equipment during the Term.  This use shall include, but not limited to, the transportation of goods for the benefit of Lessee's business.  Accordingly,

　　　　a.   Lessor shall not sell or otherwise convey the Equipment or the title of the Equipment to any other party during the Term of the Agreement;

　　　　b.   Lessor shall not interfere with the use of the Equipment during the Term.  This includes inspections or other interruptions of Lessee's business; and

　　　　c.   Lessor shall not encumber or otherwise use the Equipment or the title of the Equipment as collateral/security for any purpose other than the Finance Contract.

If Lessor violates this section and it prevents Lessee from the use of the Equipment during the Term, Lessor may terminate this Agreement and shall no longer have any obligation to make Lease Payment or the payments required under the Finance Contract, in addition to any other remedy lawfully available to Lessee.

## Lessee's Care for the Equipment

> *We will do our best to take care of the tractor and trailer while it is in our care.  If something goes wrong and something happens to your tractor and trailer, we will fix it.  When our Operating Lease Agreement has concluded, we will make sure to give you a vehicle in good enough condition that you could operate it as part of a trucking business.*

**§ 14.**     Lessee shall exercise reasonable care in the use of the Equipment and shall maintain the Equipment with reasonable care and will comply with all applicable law.  Lessee will, at Lessee's own expense, keep the Equipment in good repair, appearance, and condition.   Lessee shall have no obligation to repair or otherwise remedy damages arising from wear and tear which may accrue during the normal use of the Equipment (minor dents, tire wear, etc.), so long as the Equipment is in a condition which can pass a Department of Transportation inspection for the commercial transportation of goods.

**§ 15.**     Unless Lessee obtains the prior written consent of Lessor, Lessee will not alter, modify or attach anything to the Equipment unless the alteration, modification or attachment is easily removable without damaging the functional capabilities or economic value of the Equipment.

**§ 16.**     Lessee warrants that the Equipment will be in good working order and good condition upon delivery to Lessor after the completion of the Term or termination of the



**R B L**
ROYAL BENGAL LOGISTICS, INC.

Agreement.  If Lessor did not purchase a trailer because Lessee did not elect to include the trailer as part of the Equipment or because Lessor was unable to acquire financing for a trailer, then a trailer will not be provided to Lessor at the completion of the Term.

### Relationship with Seller and Lender

*If a problem comes up concerning the sale or financing of the tractor and trailer, we might need to work with the seller or the lender.  Because you are the purchaser of the tractor and trailer and borrowed money for that transaction, the seller and lender might not want to work with us unless you give us permission to speak with them.  Accordingly, you agree to let us speak to the seller or lender to resolve such disputes.*

**§ 17.**     Lessor appoints Lessee as a designated representative for the purpose of enforcing any warranty, guarantee, or promise made concerning the sale of the Equipment.  Lessor agrees to cooperate with Lessee as needed for that purpose.

**§ 18.**     Lessor appoints Lessee as a designated representative for the purpose of communicating with the Finance Contract lender or resolving any dispute with the Finance Contract lender.  Lessor agrees to cooperate with Lessee as needed for that purpose.

### Risk of Damage to the Equipment

*We are responsible for your tractor and trailer while we have it in our possession.  If your tractor and trailer are damaged in our possession, we will fix it (other than normal wear and tear).*

**§ 19.**     Lessee shall bear the risk of loss concerning the Equipment, including but not limited to loss arising from theft, damage, or destruction to the Equipment from any and every cause.

**§ 20.**     In the event of Total Loss of the Equipment, Lessee and Lessor shall confer in good faith to evaluate the best method for the Parties to continue doing business together.  In the event no agreement can be reached, Lessee shall purchase Equipment with substantially the same value and condition as the Equipment was, immediately prior to the incident which resulted in the Total Loss.  In such a circumstance, this Agreement shall continue to be in force, as if the replacement Equipment had always been the Equipment identified in the Equipment Addendum in this Agreement.

### Insurance

*While we have your tractor and trailer, we will make sure that it is insured with a policy limit of at least $1,000,000.*

**§ 21.**     Lessee will, during the Term and while Lessee possess the Equipment, maintain and pay for insurance against loss of and damage to the Equipment for the full replacement value of the Equipment and will name Lessor as the loss payee. While Lessee possesses the Equipment during the Term, Lessee shall maintain and pay for comprehensive general



liability insurance against claims for bodily injury, including death, and property damage or loss arising out of the use of the Equipment. **The insurance policy will have limits of at least $1,000,000.** The insurance will be in the joint name of Lessor and Lessee so that both Lessor and Lessee are protected by the policy. The insurance policy shall have a provision that it will not be modified or canceled unless the insurer provides Lessor with thirty (30) days written notice stating when such modification or cancellation will be effective. Upon written demand by Lessor, Lessee shall provide Lessor with an original policy or certificate evidencing such insurance.

**Taxes**

*We are going to take care of whatever taxes are owed for the purchase and use of the tractor and trailer. We are not going to pay any taxes (such as income taxes) that you owe because of payments we make to you.*

**§ 22.**    Lessee will report and pay all taxes, fees, and tax penalties associated with the purchase and use of the Equipment during the Term.   However, Lessee shall have no obligation to pay taxes, fees, and tax penalties which arise from any income or other benefit received by Lessor pursuant to this Agreement (*e.g.* income taxes).

**§ 23.**    If Lessee fails to pay any taxes, fees, and charges, as required by this Agreement and Lessor, on behalf of Lessee, pays the same, Lessee shall reimburse Lessor for the cost upon notification from Lessor of the amount.

**Indemnity**

*We will ensure that you do not have to pay if something happens with your tractor and trailer (like a vehicle accident) and someone tries to hold you responsible as the owner of the vehicle.*

**§ 24.**    Lessee will indemnify and hold harmless Lessor against any and all claims, actions, suits, proceedings, costs, expenses, damages and liabilities, including attorney's fees and costs, arising from Lessee's use of the Equipment during the Term.   Lessee's responsibility to indemnify the Lessor under this section may be satisfied in whole or in part by proceeds or other benefits provided by insurance.

**Right of First Refusal**

*At the end of the term of the Operating Lease Agreement, you can do whatever you want to do with your tractor and trailer. However, if you are going to sell the tractor and trailer, we want to have a chance to buy it before you sell it to someone else.  For the first year after our agreement is concluded, you will give us an opportunity to purchase the tractor and trailer before you sell it to someone else. Before any potential sale of the tractor and trailer, you will tell us what price you intend to sell it for and give us an opportunity to buy it for the same price. If we refuse the offer or do not respond within two weeks, you can go ahead and sell the tractor and trailer to someone else.*



**R B L**
ROYAL BENGAL LOGISTICS, INC.

**§ 25.**     At the conclusion of the Term of this Agreement and for a period of one year thereafter, Lessor shall not sell or otherwise convey the Equipment to a potential purchaser without first providing Lessee with the opportunity to purchase the Equipment from Lessor under the same material terms as those contemplated by the potential purchaser. Accordingly, prior to entering into any agreement concerning the sale or conveyance of the Equipment, Lessor shall first provide notice to Lessee of a prospective sale or conveyance and this notice shall include all material terms of a prospective sale or conveyance. Lessee shall have 14 days to evaluate and determine whether it will purchase the Equipment under those same terms.  If Lessee refuses or does not respond within 14 days, Lessor may sell or otherwise convey the Equipment under those 35 same terms to a third party purchaser.

**Entire Agreement**

**§ 26.**     This Agreement will constitute the entire agreement between the Parties. Any prior understanding or representation of any kind preceding the date of this Agreement will not be binding on either Party except to the extent incorporated in this Agreement.

**Address for Notice**

**§ 27.**     Notices under this Agreement will be delivered personally or sent by registered mail or courier to the following addresses:

Lessor: **UNN LOGISTICS, INC. :** ███████████████████
████████████████

Lessee: **Royal Bengal Logistics: 9600 WEST SAMPLE RD, SUITE 100, CORAL SPRINGS, FL 33065**

**Governing Law**

*We are a Florida company with a headquarters in Broward County, Florida.  It makes sense for any dispute between us should be determined here.  This Operating Lease Agreement was drafted with the intention that Florida law would apply.  Accordingly, to fulfil our intentions, Florida law will apply to any dispute between us.*

**§ 28.**     This Agreement shall be interpreted under Florida law.  Any dispute arising between the Parties shall be governed by Florida law.  The exclusive jurisdiction for any lawsuit or other dispute resolution process between Lessee and Lessor shall be brought and heard in Broward County, Florida, unless the applicable court does not have personal jurisdiction over a necessary party.

**Severability**

*We do not believe that there is anything unlawful about our agreement, but a court might disagree.  This agreement shall be enforced as it is written to the extent possible, even if a court ultimately determines that there is anything unlawful about it.*

**§ 29.**     In the event that any provision or term of this Agreement is determined to be



unenforceable, invalid, or otherwise unlawful, the remainder of the Agreement shall nevertheless be enforced as if there had not been any unlawful provision or term of the Agreement.

§ 30.    If any provision or term of this Agreement is determined to be unlawful, as described in the above § 29 *and* that provision or term can be limited or truncated in such a way as to cause the provision or term to lawful and still substantially fulfill the intent of the parties, as reflected in the text of this Agreement, then an enforcing court shall so enforce this limited or truncated provision or term as if it had always been part of the Agreement (aka "blue-penciling").

*"Force Majeure"*

*In the unlikely event that a catastrophic event occurs, either one of us might not be able to do what we promise to do in our agreement. Accordingly, you agree that neither of us will claim damages for a delay caused by a catastrophic event.  If something so catastrophic happens that we cannot even use your tractor and trailer anymore, we may need to conclude our agreement to lease your tractor and trailer. If so, we will make sure that you have received at least twice the amount you provided as a start-up payment.*

§ 31.    Neither Party shall be liable in damages for any delay or default in performance if such delay or default is caused by conditions beyond its control including, but not limited to Acts of God, Government restrictions, acts of war or terrorism, disease pandemics, civil disturbances, utility malfunction, natural disasters, such as earthquakes, hurricanes or floods and/or any other cause beyond the reasonable control of the Party whose performance is affected.

§ 32.  If any event described in the above § 31 makes it impossible or prohibitively difficult for Lessee to continue doing business with the Equipment, the Parties shall confer in good faith about the best way for the Parties to proceed, considering the circumstances.  If no agreement can be reached, the Agreement shall be terminated. Lessee shall return the Equipment to Lessor and shall have no further obligation to make Lease Payments or make payments pursuant to the Finance Contract.  If Lessor has not received at least double the amount it originally provided as a Start-up Payment (considering both the Lease Payments and payments made by Lessee to the lender on Lessor's behalf) at the time of the termination of the Agreement, as described in this section, then Lessee shall pay to Lessor a sum of money equal to double the Start-up Payment subtracted by the total amount of funds Lessee paid to Lessor as Lease Payments and the payments Lessee made to the lender on Lessor's behalf.



## Assignment

> *We may want another legal entity to use the tractor and trailer while we are leasing them from you. To ensure that there is no legal technicality preventing us from doing that, you agree to permit us to assign the right to use your tractor and trailer. This won't change our contractual obligations to you, such as our obligation make payments to you and your lender (if any) or return your tractor and trailer to you.*

**§ 33.**     Lessee may assign to a third party Lessee's right to use the Equipment. Lessee's assignment, pursuant to this section, shall not absolve or release Lessee of responsibility or liability arising from the terms of this Agreement.   Lessor shall not assign any rights or responsibilities pursuant to this Agreement without the express written consent of Lessee.

## Compliance Requirements

> *Leases of commercial trucks have certain required terms that must be included (49 C.F.R. §§ 376.11, et seq.). The terms in this section are intended to comply with these requirements.*

**§ 34.**     Lessee shall provide written notice by email to Lessor when Lessee takes possession of the Equipment.  Upon Lessee's request, Lessor shall provide written notice of the return of the Equipment at the conclusion of the Term.

**§ 35.**     During the Lease Term, Lessee shall have exclusive possession, control, and use of the Equipment.

**§ 36.**     At the conclusion of the Term, Lessee shall remove from the Equipment any identification device before the Equipment is returned to Lessor.

**§ 37.**     The cost of fuel, fuel taxes, empty mileage, permits of all types, tolls, ferries, detention and accessorial services, base plates and licenses shall be borne by Lessee. Lessor has no responsibility to load or unload any equipment.  Lessee shall not deduct from the Lessor's compensation the purchase of any items.  Lessor is not required to purchase or rent any products, equipment, or services from Lessee.



**IN WITNESS WHEREOF-** The parties have duly affixed their signatures under hand and seal on this **15th day of June, 2023.**

**Lessor- UNN LOGISTICS, INC. :** ▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬

▬▬▬▬▬▬▬▬▬▬▬

Its Authorized Agent

**Lessee – ROYAL BENGAL LOGISTICS:**

9600 W Sample Rd Suite 100, Coral Springs, FL 33065

_____

**CO. AGENT NAME**
Its Authorized Agent

_____ (Witness)

_____ (Witness)



## EQUIPMENT ADDENDUM

The "Equipment," as referred to in the June 15, 2023 Investment & Operating Lease Agreement, has been identified as:

[_____] with the approximate value of $[_____]

VIN # [_____]

SO AGREED, this 15th day of June, 2023:

Lessor - UNN LOGISTICS, INC. :

Its Authorized Agent



# RBL
ROYAL BENGAL LOGISTICS, INC.

EXB — ST — 1A

## SHORT TERM LOAN AGREEMENT

**THIS LOAN AGREEMENT (this "Agreement") dated this June 20, 2023  between:**

**DAUPHIN VARIETY LLC:** █████████████████████████████

(the "Lender")

**OF THE FIRST PART**

&

**Royal Bengal Logistics Inc, 9600 W Sample Rd, Suite 100 Coral Springs FL-33065
(the "Borrower")**

**OF THE SECOND PART**

**IN CONSIDERATION OF** the Lender loaning certain monies (the "Loan") to the Borrower, and the Borrower repaying the Loan to the Lender, both parties agree to keep, perform and fulfill the promises and conditions set out in this Agreement:

LOAN SUMMARY

| | | |
|---|---|---|
| Loan Amount | - | $ 50,000.00 |
| Term of Agreement | - | 6 months |
| Total Term Interest | - | $ 15,000.00 |
| Total Return (Principal and Interest) | - | $ 65,000.00 |

## Loan Amount & Interest

**§ 1.** The Lender shall make the Loan to Borrower in the aggregate principal amount of **$ 50,000.00** (USD).  Borrower promises to repay this principal amount to the Lender, within the term of this Loan as follows:

**a.** The total interest for this six-month loan shall be **$15,000.00.**

**b.** Borrower shall pay Lender the total principal and interest ($ 65,000.00) on or before 12/20/2023.

**§ 2.** If, for any reason, the Loan (principal and/or interest) has not been fully repaid by Borrower within 7-10 business days of 12/20/2023 then any and all outstanding monies owed to Lender shall be immediately due.

*Loan Agreement*
Page 1 of 3



**Default**

&sect; **3**. If Borrower fails to make the payment described in the above §§ 1-2, Borrower shall be in default.

&sect; **4**. Borrower shall have an opportunity to cure its default prior to Lender enforcing this Loan. Lender shall provide notice of Borrower's default to bdo@rbltransports.com, or such other email designated by Borrower in writing. After Lender provides notice of Borrower's default, Borrower shall have 7-10 business days to correct the event causing Borrower to be in default. If Borrower fails to cure its default within that period, then Lender may enforce this Loan by seeking relief in a court of competent jurisdiction.

**Governing Law**

&sect; **5**. This Agreement will be interpreted in accordance with and governed by the laws of the State of Florida.  Any dispute concerning this agreement shall be heard within Broward County, Florida.

**Attorneys' Fees**

&sect; **6**. In the event that any suit or action is instituted to enforce this Agreement, the prevailing party in such a dispute shall be entitled to recover from the non prevailing party all attorneys' fees and costs reasonably expended in the prosecution or defense of said suit or action.

**Amendments**

&sect; **7**. This Agreement may only be amended or modified by a written instrument executed by both the Borrower and the Lender.

**No Waiver**

&sect; **8**. Lender shall not be deemed to have waived any provision of this Agreement or the exercise of any rights held under this Agreement unless such waiver is made expressly and in writing. Waiver by Lender of a breach or violation of any provision of this Agreement shall not constitute a waiver of any other subsequent breach or violation.

**Entire Agreement**

&sect; **9**. This Agreement constitutes the entire agreement between the Parties concerning this Loan, and there are no further terms or provisions, either oral or otherwise, which govern the Parties' relationship concerning this Loan.



**IN WITNESS WHEREOF-** The parties have duly affixed their signatures under hand and seal on this **20th** day of **June, 2023.**

Lender:   **DAUPHIN VARIETY LLC:**

Its Authorized Agent

**Borrower – Royal Bengal Logistics, Inc.**

9600 W Sample Rd Suite 100, Coral Springs, FL 33065

**CO. AGENT NAME**
Its Authorized Agent

*Loan Agreement*
Page 3 of 3

2022.2.28-RBLSHORTLOAN

EXB – LTOW – 1A

## LOAN AGREEMENT

**THIS LOAN AGREEMENT (this "Agreement") dated this April 13, 2022  between**



(the "Lender")

**OF THE FIRST PART**

&

**Royal Bengal Logistics Inc, 9600 W Sample Rd, Suite 100 Coral Springs FL-33065
(the "Borrower")**

**OF THE SECOND PART**

[]

**IN CONSIDERATION OF** the Lender loaning certain monies (the "Loan") to the Borrower, and the Borrower repaying the Loan to the Lender, both parties agree to keep, perform and fulfill the promises and conditions set out in this Agreement:

LOAN SUMMARY

| | | |
|---|---|---|
| Loan Amount | - | $ 60,000.00 |
| Monthly Return | - | $ 2,291.67 |
| Term of Agreement | - | 3 years (36 monthly payments) |
| Total Term Interest | - | $ 22,500.00 |
| Total Return (Principal and Interest) | - | $ 82,500.00 (37.5% - over three years) |

## Loan Amount & Interest

**§ 1.** The Lender shall make the Loan to Borrower in the aggregate principal amount of **$ 60,000.00** (USD).  Borrower promises to repay this principal amount to the Lender, within the three-year term of this Loan as follows:

    **a.** The total interest for this three-year term shall be **$22,500.00.**

    **b.** Borrower shall repay both the principal and interest of the Loan in 36 equal monthly payments, beginning on 06/13/2022 and continuing on the 13th day of each subsequent month until the Lender has been repaid ("Monthly Payment").

    **c.** The Monthly Payment shall be $2,291.67.   The Monthly Payment includes both principal and interest of the Loan.

    **d.** If the Monthly Payment is due to the Lender on a weekend or the date in which a federally recognized holiday is observed, then that Monthly payment shall be due on the next day which is not a weekend or a federally recognized holiday.

    **e.** A Monthly Payment shall be deemed to be timely if it is paid to Lender within seven calendar days of the date that the Monthly Payment is due.

**§ 2.** If, for any reason, the Loan (principal and/or interest) has not been fully repaid by Borrower after the 36th Monthly Payment is due, then any and all outstanding monies owed to Lender, pursuant to this Agreement shall be immediately due, and accrue interest at the rate of 12.5% per year.

ROYAL BENGAL LOGISTICS, INC.

### Default

**§ 3.** If Borrower fails to make a Monthly Payment pursuant to this Agreement, as described in the above §§ 1-2, Borrower shall be in default.

**§ 4.** Borrower shall have an opportunity to cure its default prior to Lender enforcing this Loan. Lender shall provide notice of Borrower's default to ~~_____~~, or such other email designated by Borrower in writing.   After Lender provides notice of Borrower's default, Borrower shall have 7 calendar days to correct the event causing Borrower to be in default.  If Borrower fails to cure its default within that 7-day period, then:

    **a.** Lender may declare that all moneys Borrower owes to Lender pursuant to this Agreement are immediately due and payable; and

    **b.** Lender may enforce this Loan by seeking relief in a court of competent jurisdiction.

### Governing Law

**§ 5.** This Agreement will be interpreted in accordance with and governed by the laws of the State of Florida.  Any dispute concerning this agreement shall be heard within Broward County, Florida.

### Attorneys' Fees

**§ 6.** In the event that any suit or action is instituted to enforce this Agreement, the prevailing party in such a dispute shall be entitled to recover from the non prevailing party all attorneys' fees and costs reasonably expended in the prosecution or defense of said suit or action.

### Amendments

**§ 7.** This Agreement may only be amended or modified by a written instrument executed by both the Borrower and the Lender.

### No Waiver

**§ 8.** Lender shall not be deemed to have waived any provision of this Agreement or the exercise of any rights held under this Agreement unless such waiver is made expressly and in writing. Waiver by Lender of a breach or violation of any provision of this Agreement shall not constitute a waiver of any other subsequent breach or violation.

### Entire Agreement

**§ 9.** This Agreement constitutes the entire agreement between the Parties concerning this Loan, and there are no further terms or provisions, either oral or otherwise, which govern the Parties' relationship concerning this Loan.



ROYAL BENGAL LOGISTICS, INC.

**IN WITNESS WHEREOF-** The parties have duly affixed their signatures under hand and seal on this **13th** day of **April, 2022.**

Lender –

Its Authorized Agent

**Borrower – Royal Bengal Logistics, Inc.**

9600 W Sample Rd Suite 100, Coral Springs, FL 33065

**CO. AGENT**
Its Authorized Agent

*Loan Agreement*

Page 3 of 3





ExB - LTINVLIST-1





3

EXB-TL-01





## TRAILER SPONSORSHIP AGREEMENT

**This Trailer Sponsorship Agreement (this "Agreement") dated this
16th day of March, 2023, by and between:**

**SKAR TRUCKING INC:** 

("Sponsor")

OF THE FIRST PART

**– AND –**

**Royal Bengal Logistics Inc, 9600 West Sample Rd Suite 100,
Coral Springs FL-33065**

("Builder")

OF THE SECOND PART

(Sponsor and Builder are collectively the "Parties")

**IN CONSIDERATION OF** the mutual covenants and promises in this Agreement, the receipt and sufficiency of which consideration is hereby acknowledged, the Parties agree to the following terms:

> *This Agreement contains italicized text which explains the terms of this contract and our reasoning for asking you to agree to those contract terms. In these sections, "Royal Bengal Logistics, Inc" is referred to as "we our" and Sponsor is referred to as "you, your." If for some reason, we get into a dispute with you and a court of law is interpreting this contract, the italicized explanation is intended to be read together with the regular contract terms. If, however, there is any conflict between the interpretation of the regular terms and the italicized explanation, the regular terms control our relationship.*

 

# R B L
ROYAL BENGAL LOGISTICS, INC.

ROYAL BENGAL ENGINEERING
DIESEL ELECTRIC MANUFACTURING

## Definitions

**§ 1.**   The following definitions are used but not otherwise defined in this Agreement:

   a. "Trailer" means a semi-trailer to be manufactured and sold by Builder and is the subject matter of this Agreement.

   b. "Sale of the Trailer" refers to the first date after which payment was received by a third-party purchaser for the Trailer *and* the third-party has received title to the Trailer.

   c. "Business days" means a weekday (as opposed to a weekend) which is not a United States federal holiday or a day designated for the recognition of the federal holiday (*e.g.* New Year's Day, Christmas).

## Sponsorship

> *Fundamentally, you are paying us $ 50,000 to receive a payment from us in the amount of $ 15,000 within 6 months. To begin this process, you will need to pay us $50,000 to sponsor the manufacture of a Trailer. This initial payment will be used by us, in whole or in part for the process of building a trailer (e.g. parts, assembly, shipment). We will then attempt to sell the Trailer to a third-party buyer. When we sell your sponsored Trailer, you shall receive a payment of $ 15,000 in addition to repayment of the Sponsorship Payment ($ 50,000). We expect that the Trailer will be manufactured or sold within 3-6 months. If for some reason we can't get the Trailer sold within 6 months, we'll "buy" it, and you will receive your $ 65,000 at that time.*

**§ 2.**   Sponsor shall pay Builder $ 50,000 ("Sponsorship Payment").  The Sponsorship Payment is a material condition for Builder to enter into this Agreement.

   a. Sponsor shall be designated as the "sponsor" of a Trailer to be manufactured in India, shipped to the United States, and sold to a buyer.  Title and ownership of the Trailer shall be in Builder's name and not otherwise transfer to Sponsor.

   b. Only one sponsor shall be assigned to any trailer.

   c. The Trailer shall be manufactured, shipped, and sold by Builder or parties that it designates.  The method by which the Trailer shall be manufactured, shipped, and sold shall be within Builder's exclusive discretion.

   d. After the Trailer has been delivered to the United States, Builder shall attempt to sell the Trailer to a third-party as quickly as reasonably possible.  Builder shall determine to which third-party that it will sell to and the terms of such a sale.  If Builder has other trailers that it is attempting to sell, it may attempt to sell those trailers first before attempting to sell your designated Trailer.

2 of 5

 

# R B L
ROYAL BENGAL LOGISTICS, INC.

   e. Builder shall pay Sponsor $ 65,000 within 14 days of the Sale of the Trailer. Sponsor shall receive this full $ 65,000 payment regardless as to whether Builder receives any profit from the sale of the Trailer.  Sponsor shall not be entitled to any further payment from Builder.

   f. If Builder is unable to sell the Trailer within 6 months of receipt of the $ 50,000 Sponsorship Payment, then Builder shall pay Sponsor $ 65,000 within 14 days.  Sponsor shall not be entitled to any further payment from Builder. Contract end date is: 09/16/2023

**Taxes**

> *We are going to take care of whatever taxes are owed.  We are not going to pay any taxes (such as income taxes) that you owe because of payments we make to you.*

**§ 3.** Builder will report and pay all taxes, fees, and tax penalties associated with the purchase of materials, assembly, shipping, and sale of the Trailer. However, Builder shall have no obligation to pay taxes, fees, and tax penalties which arise from any income or other benefit received by Sponsor pursuant to this Agreement (*e.g.* income taxes).

**Entire Agreement**

**§ 4.** This Agreement will constitute the entire agreement between the Parties concerning the Trailer. Any prior understanding or representation of any kind preceding the date of this Agreement will not be binding on either Party except to the extent incorporated in this Agreement.

**Address for Notice**

**§ 5.** Notices under this Agreement will be delivered personally or sent by registered mail or courier to the following addresses:

   Sponsor: **SKAR TRUCKING INC:** ██████████████████████████
███████████████████████

Builder: **Royal Bengal Logistics; 9600 WEST SAMPLE RD SUITE 100 CORAL SPRINGS FL 33065**

**Governing Law**

> *We are a Florida company with a headquarters in Broward County, Florida.  It makes sense for any dispute between us should be determined here.  This Agreement was drafted with the intention that Florida law would apply.  Accordingly, to fulfill our intentions, Florida law will apply to any dispute between us.*

**§ 6.** This Agreement shall be interpreted under Florida law.  Any dispute arising between the Parties shall be governed by Florida law.  The exclusive jurisdiction for any lawsuit or other dispute resolution process between Builder and Sponsor shall be brought and heard in Broward County, Florida, unless the applicable court does not have personal

 

**R B L**

ROYAL BENGAL LOGISTICS, INC.

ROYAL
BENGAL ENGINEERING
DIESEL ELECTRIC MANUFACTURING

jurisdiction over a necessary party.

## Severability

> *We do not believe that there is anything unlawful about our agreement, but a court might disagree. This agreement shall be enforced as it is written to the extent possible, even if a court ultimately determines that there is anything unlawful about it.*

**§ 7.**      In the event that any provision or term of this Agreement is determined to be unenforceable, invalid, or otherwise unlawful, the remainder of the Agreement shall nevertheless be enforced as if there had not been any unlawful provision or term of the Agreement.

**§ 8.**      If any provision or term of this Agreement is determined to be unlawful, as described in the above § 7 *and* that provision or term can be limited or truncated in such a way as to cause the provision or term to lawful and still substantially fulfill the intent of the parties, as reflected in the text of this Agreement, then an enforcing court shall so enforce this limited or truncated provision or term as if it had always been part of the Agreement (aka "blue-penciling").

## *"Force Majeure"*

> *In the unlikely event that a catastrophic event occurs, either one of us might not be able to do what we promise to do in our agreement. Accordingly, you agree that neither of us will claim damages for a delay caused by a catastrophic event.*

**§ 9.**      Neither Party shall be liable in damages for any delay or default in performance if such delay or default is caused by conditions beyond its control including, but not limited to Acts of God, Government restrictions, acts of war or terrorism, disease pandemics, civil disturbances, utility malfunction, natural disasters, such as earthquakes, hurricanes or floods and/or any other cause beyond the reasonable control of the Party whose performance is affected.

[CONTINUED ON THE FOLLOWING PAGE]

 

**IN WITNESS WHEREOF-** The parties have duly affixed their signatures under hand and seal on this **16th day of March 2023.**

**Sponsor - SKAR TRUCKING INC:**

Its Authorized Agent

**Builder – Royal Bengal Logistics, Inc.**

9600 W Sample Rd Suite 100, Coral Springs, FL 33065

**RBL AGENT**
Its Authorized Agent

5 of 5

EXB-TL-02L

| ORDER NUMBER | NAME of UNIT Funded | CONTRACT DATE | AMOUNT | START DATE | END DATE | ADVANCE | PURPOSE |
|---|---|---|---|---|---|---|---|
| DANIEL COSTILLO 8T | 17001 | 1 | 20-Jun-2022 | $45,000 | 20-Jun-2022 | 20-Dec-2022 | $90,000.00 | Trailer Manufacturing |
| DAN HOLDINGS USA INC | 17002 | 1 | 23-Dec-2022 | $45,000 | 23-Dec-2022 | 23-Dec-2022 | $90,000.00 | Trailer Manufacturing |
| JRZ WAYS LOGISTICS LLC | 17003 | 2 | 28-Jul-2022 | $90,000 | 28-Jul-2022 | 28-Jul-2022 | $100,000.00 | Trailer Manufacturing |
| DANIEL COSTILLO 8T | 17004 | 1 | 28-Jul-2022 | $45,000 | 28-Jul-2022 | 28-Jul-2022 | $90,000.00 | Trailer Manufacturing |
| L & E LOGISTICS MANAGEMENT INC | 17005 | 2 | 31-Jan-2023 | $90,000 | 31-Jan-2023 | 31-Jan-2023 | DO NOT PAY, IS CONVERTING | Trailer Manufacturing |
| NERY LOGISTICS INC | 17006 | 3 | 4-Feb-2023 | $45,000 | 4-Feb-2023 | 4-Feb-2023 | $90,000.00 | Trailer Manufacturing |
| ESTHER AMIAS | 17007 | 1 | 5-Aug-2022 | $45,000 | 5-Aug-2022 | 5-Feb-2023 | $90,000.00 | Trailer Manufacturing |
| DENIS ENTERPRISES | 17008 | 2 | 8-Aug-2022 | $90,000 | 8-Aug-2022 | 8-Aug-2022 | DO NOT PAY, CONVERTED | Trailer Manufacturing |
| DENIS ENTERPRISES | 17009 | 1 | 11-Aug-2022 | $45,000 | 11-Aug-2022 | 11-Feb-2023 | $90000 PAY ONLY 3K IS CONVERTING | Trailer Manufacturing |
| MKA BUSINESS SERVICES LLC | 17010 | 1 | 8-Sep-2022 | $45,000 | 8-Sep-2022 | 8-Mar-2023 | $90,000.00 | Trailer Manufacturing |
| ESTHER LAROCHE | 17011 | 1 | 6-Mar-2023 | $50,000 | 6-Mar-2023 | 6-Sep-2023 | $95,000.00 | Trailer Manufacturing |
| AZUERA LOGISTICS | 17012 | 1 | 6-Mar-2023 | $50,000 | 6-Mar-2023 | 6-Sep-2023 | $95,000.00 | Trailer Manufacturing |
| JING D JING | 17013 | 1 | 6-Mar-2023 | $50,000 | 6-Mar-2023 | 6-Sep-2023 | $95,000.00 | Trailer Manufacturing |
| JHR RESOURCES INC | 17014 | 1 | 6-Mar-2023 | $50,000 | 6-Mar-2023 | 6-Sep-2023 | $95,000.00 | Trailer Manufacturing |
| P & S CAPITAL EXPRESS INC | 17015 | 1 | 6-Mar-2023 | $50,000 | 6-Mar-2023 | 6-Sep-2023 | $95,000.00 | Trailer Manufacturing |
| MSKFL INVESTMENT AND TRUCKING LLC | 17016 | 1 | 6-Mar-2023 | $50,000 | 6-Mar-2023 | 6-Sep-2023 | $95,000.00 | Trailer Manufacturing |
| MSKFL INVESTMENT AND TRUCKING LLC | 17017 | 1 | 6-Mar-2023 | $50,000 | 6-Mar-2023 | 6-Sep-2023 | $95,000.00 | Trailer Manufacturing |
| MARIE EHANA DUMELIEN | | 1 | 6-Mar-2023 | $50,000 | 6-Mar-2023 | 6-Sep-2023 | $95,000.00 | Trailer Manufacturing |
| RESIDUAL TRUCKING LLC | | 1 | 7-Mar-2023 | $50,000 | 7-Mar-2023 | 7-Sep-2023 | $95,000.00 | Trailer Manufacturing |
| WILNER HONORE | | 1 | 8-Mar-2023 | $52,000 | 8-Mar-2023 | 8-Sep-2023 | $95,000.00 | Trailer Manufacturing |
| GURPLANE GEORGES | | 1 | 8-Mar-2023 | $50,000 | 8-Mar-2023 | 8-Sep-2023 | $95,000.00 | Trailer Manufacturing |
| CATILLIS TRUCKING | | 1 | 8-Mar-2023 | $50,000 | 8-Mar-2023 | 8-Sep-2023 | $95,000.00 | Trailer Manufacturing |
| ELIZABETH ANN TOMASELLI | | 1 | 8-Mar-2023 | $50,000 | 8-Mar-2023 | 8-Sep-2023 | $95,000.00 | Trailer Manufacturing |

1

2

| Name | | Date | Amount | Date | Date | Amount | Type |
|---|---|---|---|---|---|---|---|
| DHANVI PATEL | 1 | 28-Apr-2023 | 50,000.00 | 28-Oct-2023 | 28-Oct-2023 | $65,000.00 | Trailer Manufacturing |
| PIERRE CHARLOT VANOOL | 1 | 28-Apr-2023 | 50,000.00 | 25-Oct-2023 | 25-Oct-2023 | $65,000.00 | Trailer Manufacturing |
| LIU CAPITAL MANAGEMENT GROUP INC | 1 | 27-Mar-2023 | 50,000.00 | 23-Mar-2023 | 23-Sep-2023 | $65,000.00 | Trailer Manufacturing |
| LIU CAPITAL MANAGEMENT GROUP INC | 1 | 27-Mar-2023 | 50,000.00 | 27-Mar-2023 | 27-Sep-2023 | $65,000.00 | Trailer Manufacturing |
| SEAMLESS HOLDINGS LLC | 1 | 27-Mar-2023 | 50,000.00 | 27-Sep-2023 | 27-Sep-2023 | $65,000.00 | Trailer Manufacturing |
| BETTY ALEXANDRE | 1 | 25-Mar-2023 | 50,000.00 | 25-Sep-2023 | 25-Sep-2023 | $65,000.00 | Trailer Manufacturing |
| UNIVERSAL ELITE SERVICES | | 23-Mar-2023 | 50,000.00 | 24-Sep-2023 | 24-Sep-2023 | $65,000.00 | Trailer Manufacturing |
| MARIE E AURELUS | | 22-Mar-2023 | 50,000.00 | 22-Sep-2023 | 22-Sep-2023 | $65,000.00 | Trailer Manufacturing |
| WEPPY CAPITAL INC | | 20-Mar-2023 | 50,000.00 | 20-Sep-2023 | 20-Sep-2023 | $65,000.00 | Trailer Manufacturing |
| LINDA PRIOR | | 20-Mar-2023 | 50,000.00 | 20-Sep-2023 | 20-Sep-2023 | $65,000.00 | Trailer Manufacturing |
| RITA RIDORI LOGISTICS | | 19-Mar-2023 | 50,000.00 | 19-Sep-2023 | 19-Sep-2023 | $65,000.00 | Trailer Manufacturing |
| SAAR TRUCKING INC | | 16-Mar-2023 | 50,000.00 | 16-Sep-2023 | 16-Sep-2023 | $65,000.00 | Trailer Manufacturing |
| MARIE E AURELUS | | 15-Mar-2023 | 50,000.00 | 15-Sep-2023 | 15-Sep-2023 | $65,000.00 | Trailer Manufacturing |
| MBPL INVESTMENT AND TRUCKING LLC | | 14-Mar-2023 | 50,000.00 | 14-Sep-2023 | 14-Sep-2023 | $65,000.00 | Trailer Manufacturing |
| MBPL INVESTMENT AND TRUCKING LLC | | 14-Mar-2023 | 50,000.00 | 14-Sep-2023 | 14-Sep-2023 | $65,000.00 | Trailer Manufacturing |
| SANDRA DEE RICHARDSON WILLIAMS | | 14-Mar-2023 | 50,000.00 | 14-Sep-2023 | 14-Sep-2023 | $65,000.00 | Trailer Manufacturing |
| MILAN CAPITAL MANAGEMENT INC | | 14-Mar-2023 | 50,000.00 | 14-Sep-2023 | 14-Sep-2023 | $65,000.00 | Trailer Manufacturing |
| JOSEPH JEAN | | 13-Mar-2023 | 50,000.00 | 13-Sep-2023 | 13-Sep-2023 | $65,000.00 | Trailer Manufacturing |
| COMPLIANCE SERVICES & BEYOND LLC | | 13-Mar-2023 | 50,000.00 | 13-Sep-2023 | 13-Sep-2023 | $65,000.00 | Trailer Manufacturing |
| ALTO TRANSIT LLC | | 13-Mar-2023 | 50,000.00 | 13-Sep-2023 | 13-Sep-2023 | $65,000.00 | Trailer Manufacturing |
| NOBREINS CLERVIL | | 13-Mar-2023 | 50,000.00 | 13-Sep-2023 | 13-Sep-2023 | $65,000.00 | Trailer Manufacturing |
| W & L CAPITAL INC | | 13-Mar-2023 | 50,000.00 | 13-Sep-2023 | 13-Sep-2023 | $65,000.00 | Trailer Manufacturing |
| YWFAN & SONS LOGISTICS INC | | 13-Mar-2023 | 50,000.00 | 13-Sep-2023 | 13-Sep-2023 | $65,000.00 | Trailer Manufacturing |

3

| NEDDO APARTMENTS | RUTH HOPKINS-GERMAN |
|---|---|
| 1 | 1 |
| 28-Apr-2023 | 28-Apr-2023 |
| 50,000.00 | 50,000.00 |
| 28-Apr-2023 | 28-Apr-2023 |
| 28-Oct-2023 | 28-Oct-2023 |
| $65,000.00 | $65,000.00 |
| Trailer Manufacturing | Trailer Manufacturing |