UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-61179-DSL

SECURITIES AND EXCHANGE
COMMISSION,

    Plaintiff,

v.

ROYAL BENGAL LOGISTICS, INC.,
and SANJAY SINGH,

    Defendants,

SHEETAL SINGH and CONSTANTINA
CELICOURT,

    Relief Defendants.
_____

## ORDER ON DISCOVERY MOTIONS

THIS CAUSE is before the Court upon two motions stemming from Receiver's service of Rule 45 subpoenas on Truist Bank ("Truist") and Capital One: (i) Receivers' Motion to Compel Discovery Responses from Truist (ECF No. 143); and (ii) Capital One's Motion for Limited Protective Order (ECF No. 146) (collectively, the "Motions"). The Motions have been referred to the undersigned for appropriate disposition. *See* (ECF No. 183 at 2). The Court has reviewed the Motions, the Responses (ECF Nos. 160, 202), the Reply (ECF No. 182), and the Joint Status Report (ECF No. 227). Accordingly, being fully advised in the matter, it is hereby **ORDERED AND ADJUDGED** that the Motions are **GRANTED IN PART AND DENIED IN PART** for the reasons set forth below.

## I.  BACKGROUND

This case involves claims by the Securities and Exchange Commission against Royal Bengal Logistics, Inc. ("RBL") and its owner Sanjay Singh in connection with their operation of an alleged Ponzi scheme. *See generally* (ECF No. 1) (Complaint). In June 2023, the Court appointed Receivers to marshal and preserve all assets of RBL ("Receivership Assets") that: "(a) are attributable to funds derived from investors or clients of the Defendant RBL; (b) are held in constructive trust for the Defendant RBL; (c) were fraudulently transferred by the Defendant RBL; and/or (d) may otherwise be includable as assets of the estates of the Defendant RBL" (collectively, "Recoverable Assets"). (ECF No. 11 at 2). In pursuit of Recoverable Assets, Receivers served nearly identical Rule 45 subpoenas on Truist and Capital One. *See* (ECF Nos. 143-1, 146-1, 146-2). The subpoenas led to the Motions before the Court: (i) Receivers' motion to compel Truist to respond to its subpoena; and (ii) Capital One's motion for a limited Protective Order to relieve it from compliance with several requests in the two subpoenas that it received. *See generally* (ECF Nos. 143, 146). Because the Motions significantly overlap, this Order addresses both motions.

## II.  DISCUSSION

The central issue in the Motions is whether the Bank Secrecy Act ("BSA") and its implementing regulations prohibit non-parties Truist and Capital One from responding to certain requests in the Rule 45 subpoenas. *See generally* 31 U.S.C. §§ 5311-36. Pursuant to the BSA, the Secretary of the Treasury may require any financial institution "to report any suspicious transaction relevant to a possible violation of law or regulation." 31 U.S.C. § 5318(g)(1). For example, the Office of the Comptroller of the Currency (within the Department of Treasury) has issued regulations implementing the BSA that require every national bank to file a Suspicious Activity Report ("SAR") when it "detect[s] a known or suspected violation of Federal law or a suspicious

2

transaction related to a money laundering activity or a violation of the [BSA]."  12 C.F.R. § 21.11(a); *see Ackner v. PNC Bank, Nat'l Ass'n*, 16-CV-81648, 2017 WL 1383950, at *2 (S.D. Fla. Apr. 12, 2017); *see also* 31 C.F.R. § 1020.320(a)(1) (Financial Crimes Enforcement Network implementing regulations similarly requiring banks to file SARs).

The BSA and its implementing regulations prohibit banks from disclosing a SAR or any information that would reveal the existence or non-existence of a SAR.  *See* 31 U.S.C. § 5318(g)(1); 12 C.F.R. § 21.11(k)(1)(i); 31 C.F.R. § 1020.320(e)(1)(i).  This is known as the SAR privilege.  *See, e.g.*, *Fed. Trade Comm'n v. Marcus*, No. 17-CV-60907, 2020 WL 1482250, at *3 (S.D. Fla. Mar. 27, 2020).  Specifically, the SAR privilege "is an unqualified discovery and evidentiary privilege that a financial institution is not permitted to waive."  *Id*.  The SAR privilege, however, is not all-encompassing; it does not extend to "the underlying facts, transactions, and documents upon which a SAR is based."  75 FR 75576-01; *see Peter E. Shapiro, P.A. v. Wells Fargo Bank, N.A.*, No. 18-CV-60250, 2018 WL 4208225, at *1-2 (S.D. Fla. July 23, 2018) (quoting *Wiand v. Wells Fargo Bank*, N.A., No. 8:12-CV-557-T-27EAJ, 2013 WL 12157564, at *2 (M.D. Fla. Dec. 11, 2013)) (distinguishing factual business records that are discoverable from privileged work product/communications that would disclose whether a SAR has been prepared or filed).  Accordingly, factual, underlying, or supporting documentation that give rise to a SAR but is "generated or received in the ordinary course of business is discoverable."  *Marcus*, 2020 WL 1482250, at *4 (quoting *Lesti v. Wells Fargo Bank, N.A.*, No. 211-CV-695-FTM29DNF, 2014 WL 12828854, at *1 (M.D. Fla. Mar. 4, 2014)).

Against this legal framework, at issue in the Motions are: (i) Requests 18 to 21 in the Truist subpoena; and (ii) Request 13 in the October 11, 2023 Capital One subpoena and Requests 18 to 21 in the October 28, 2023 Capital One subpoena.  (ECF Nos. 143 at 9-11; 146 at 4, 11-14).  These

3

Requests seek production of internal notes, communications, documents, and audits "created by the bank in the ordinary course of business that *pertain to suspicious activity* related to" the bank account(s) of RBL and affiliated individuals or entities. (ECF Nos. 143-1 at 7, 146-1 at 7, 146-2 at 8) (emphasis added). Truist and Capital One object to these Requests, arguing that they cannot respond to the Requests as written without running afoul of the BSA and the corresponding SAR privilege. More specifically, Truist and Capital One argue that the phrase "*that pertain to suspicious activity*" on its face requires the banks to disclose the existence or non-existence of a SAR. *See* (ECF Nos. 146 at 1, 12-16, 182 at 1, 202 at 2, 12-13). Thus, Truist and Capital One suggest that the Court strike the purportedly problematic phrase in each Request. *See* (ECF Nos. 146 at 5, 202 at 14, 227 at 7).

Although Receivers concede that banks are prohibited from disclosing a SAR or information that would reveal the existence or non-existence of a SAR, they argue that the contested Requests "do not necessarily seek SARs or information which would reveal whether a SAR exists," but seek documents prepared in the ordinary course of business that pertain to suspicious activity. (ECF No. 227 at 3); *see also* (ECF No. 160 at 5) (Receivers' response to Capital One's motion for protective order that "[w]hile some documents prepared by Capital One may be protected by virtue of acknowledging the filing or non-filing of a SAR report, there are countless other documents which would not so acknowledge").

Receivers' semantic distinction is unpersuasive. As Capital One succinctly states, the problem with the Requests is not the documents sought, but the language of the Requests themselves. (ECF No. 182 at 2). Any response to the Requests as written would necessarily reveal the existence or non-existence of a SAR. To avoid this potential violation of the BSA and SAR privilege, the undersigned will amend the Requests to **STRIKE** the phrase "*that pertain to*

4

*suspicious activity.*" By removing this phrase from the Requests, Truist and Capital One can freely review their internal files and produce responsive documents without potentially violating the BSA and its implementing regulations.

Accordingly, by **May 10, 2024**, Truist and Capital One must produce internal documents, kept or made in the ordinary course of business, that are responsive to the Requests. To the extent that any of the responsive documents may implicate the SAR privilege, Truist and Capital One must provide a privilege log that adequately describes the documents being withheld and the claimed privilege. *See Marcus*, 2020 WL 1482250, at *4; *see also NIACCF, Inc. v. Cold Stone Creamery, Inc.*, No. 12-CV-20756, 2014 WL 4545918, at *5 n.6 (S.D. Fla. Sept. 12, 2014) (outlining the requirements of a proper privilege log).

Lastly, because the parties' positions in the Motions were substantially justified, the Court will refrain from awarding sanctions and each party shall bear its own fees and costs. *See* Fed. R. Civ. P. 37(5).

### III.   CONCLUSION

For the reasons set forth above, the Motions (ECF Nos. 143, 146) are **GRANTED IN PART AND DENIED IN PART**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Florida on April 26, 2024.

_____
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: U.S. District Judge David S. Leibowitz
    All Counsel of Record