```
 1                     UNITED STATES DISTRICT COURT
                       SOUTHERN DISTRICT OF FLORIDA
 2                          (MIAMI DIVISION)

 3                    CASE NO. 0:23-CV-61179-DSL

 4


 5

 6   SECURITIES AND EXCHANGE              Ft. Lauderdale, Florida
     COMMISSION
 7            PLAINTIFF,                  March 20, 2024
                                         Wednesday
 8        VS.

 9   ROYAL BENGAL LOGISTICS,             Scheduled for 10:00 a.m.
     INC., ET AL.                        10:18 a.m. to 11:18 a.m.
10

11            DEFENDANTS.
                                         Pages 1 - 52
12

13   -----------------------------------------------------------

14                        STATUS CONFERENCE

15

16      BEFORE THE HONORABLE JUDGE DAVID S. LEIBOWITZ
                  UNITED STATES DISTRICT JUDGE
17

18

19   APPEARANCES:

20

21   FOR THE PLAINTIFF:       RUSSELL ROBERT O'BRIEN, ESQ.
                              Securities and Exchange Commission
                              801 Brickell Aveue
22                            Suite 1950
                              Miami, Florida  33131
23

24

25
```

 1    APPEARANCES (CONTINUED):

 2
      FOR THE DEFENDANTS            CHARLES M. TATELBAUM, ESQ.
 3    PAUL LOPEZ AND                Tripp Scott, P.A.
      JENNIFER WAHBA:               110 S.E. 6th Street
 4                                  15th Floor
                                    Ft. Lauderdale, Florida  33301
 5

 6
      PRO SE DEFENDANT:             SANJAY SINGH
 7                                  3700 N.W 109th Avenue
                                    Coral Springs, Florida  33065
 8

 9
      FOR NON-PARTY CAPITAL ONE:    IRA SILVERSTEIN, ESQ.
10                                  Liebler, Gonzalez & Portuondo
                                    44 W. Flagler Street
11                                  Floor 25
                                    Miami, Florida  33130
12

13    ALSO PRESENT:  WESLEY WALLACE, AFPD
                      Federal Public Defender's Office
14

15

16    STENOGRAPHICALLY
      REPORTED BY:
17                                  GLENDA M. POWERS, RPR, CRR, FPR
                                    Official Court Reporter
                                    United States District Court
18                                  400 North Miami Avenue
                                    Miami, Florida  33128
19

20

21

22

23

24

25

```
1              (Call to the order of the Court:)
2              COURTROOM DEPUTY:  Calling Case Number 23-CV-61179,
3      Securities and Exchange Commission versus Royal Bengal
4      Logistics, Inc., et al.
5              THE COURT:  All right.  If everybody could please enter
6      their appearance for the record, starting with the plaintiff.
7              MR. O'BRIEN:  Good morning, Your Honor.
8              Russell O'Brien on behalf of the Plaintiff, Securities
9      and Exchange Commission.
10             THE COURT:  Good morning.
11             MR. SINGH:  Good morning, Your Honor.  Sanjay Singh,
12     pro se.
13             THE COURT:  Good morning.
14             MR. TATELBAUM:  Good morning, Your Honor.
15             Charles Tatelbaum, attorneys for ROYAL BENGAL Jennifer
16     Wahba, the receivers appointed in this case.
17             THE COURT:  Good morning.
18             MR. SILVERSTEIN:  Good morning, Your Honor.
19             Ira Silverstein on behalf of non-party, Capital One.
20             THE COURT:  Good morning.
21             MR. WALLACE:  Good morning, Your Honor.
22             Wesley Wallace on behalf of the Federal Public
23     Defender's Office.  I don't represent Mr. Sanjay in his
24     criminal matter.  I work with the attorneys that do.  They just
25     asked me to be here as a friend of the Court to make sure that
```

1    nothing's addressed.

2            THE COURT:  I understand.  And good morning to you all.

3            What I did not hear -- and maybe it's just Mr. Sanjay,

4    he entered an appearance for himself, but I don't yet hear an

5    appearance of any kind for Royal Bengal Logistics, Inc.,

6    itself.

7            MR. TATELBAUM:  Your Honor, please, Charles Tatelbaum.

8            The receivers under the order from Judge Singhal

9    effectively supplanted Royal Bengal Logistics.  The Royal

10   Bengal Logistics in a federal receivership remains an entity,

11   remains a defendant.  The receivers have been appointed and

12   have taken over the management from Mr. Singh and from others.

13           So, effectively, we are -- I am counsel for the two

14   receivers, who are Royal Bengal Logistics and the receivership

15   of the estate combined.

16           THE COURT:  Thank you.  You can all be seated.  Okay.

17           So now that that's reasonably clear, I'm going to ask

18   counsel for the SEC to start off.  It's going to be the same

19   question -- and let me just say right at the start, this is a

20   case that does not have its ducks in a row, and I'm going to

21   ask you to go quite slow and really, you know, as I used to say

22   when I was a prosecutor, talk to me like I'm six years old,

23   you're not going to offend me, I want to just know everything

24   about the case.

25           I've read as much as I could.  But please, you know,

1   from wherever you think we should start.  I understand there

2   are allegations of a ponzi scheme.  I understand that there's a

3   related criminal case.  I have that case.  But with that, I

4   leave it to you, sir, please get me up to speed.

5            MR. O'BRIEN:  Thank you, Your Honor.

6            We filed this case in June of 2023.  We brought it as

7   an emergency action and sought emergency relief.

8            As part of our action we sought a temporary restraining

9   order, the appointment of a receiver, an asset freeze, and

10  other emergency relief, which was granted by Judge Singhal.

11           There was a show cause hearing, which is the typical

12  fashion in those types of cases.  At that time the parties

13  appeared and The Commission put forth its evidence in support

14  of a preliminary injunction.  It was a contested hearing.

15           At that time the defendant, Mr. Singh, was represented

16  by counsel.  The Court entered a preliminary injunction in

17  favor of the Securities and Exchange Commission and the case

18  proceeded from there.

19           At some point in time counsel for Mr. Singh withdrew.

20  He had two counsel, both had withdrawn.

21           There are two relief defendants.  There is a relief

22  defendant Constantina Celicourt, which we are in the process of

23  negotiating a settlement.  The settlement process with The

24  Commission takes up time because it goes through our

25  headquarters in D.C.  I believe that's likely why counsel for

1    Ms. Celicourt is not here today.

2         The other relief defendant is Sheetal Singh, which is

3    the wife of Mr. Singh.  I don't believe she's appeared today.

4    She's also -- she was represented by counsel.  Counsel also

5    withdrew.  I believe there currently is a two-week extension of

6    time for her to obtain new counsel.

7         I can tell you where we are.

8         We had attempted to file a joint scheduling report with

9    Your Honor.  This was after counsel for Mr. Singh withdrew.  We

10   had two conferences scheduled.  For certain reasons as we

11   stated I believe in our scheduling report that I filed

12   unilaterally, Mr. Singh withdrew from the conference and chose

13   not to submit or to cooperate in providing a joint report for

14   Your Honor.

15        As a result of that, I believe it's docket entry 188,

16   the Commission filed a scheduling report unilaterally, along

17   with the proposed order and that does remain outstanding,

18   Your Honor.

19        THE COURT:  We will get to that in a bit.

20        MR. O'BRIEN:  Okay.

21        THE COURT:  But you're bringing up one example of what

22   you're describing as non-participation by Mr. Singh.

23        We'll get to that as well.

24        But putting apart the scheduling matter, which I know

25   we have to set in this case, is there anything else you'd like

1    me to know about the case, anything?

2         MR. O'BRIEN:  The receiver has a number of matters that

3    are outstanding, which he will be speaking with you about this

4    morning.

5         Other than that, I think, you know, since counsel for

6    Mr. Singh has withdrew from the case, it hasn't been too long,

7    so we'll see how the case goes.

8         Mr. Singh has an outstanding Motion for Judgment on the

9    Pleadings, which I have an extension of time that you've

10   entered, that's due on the 26th.

11        There's an outstanding Motion to Stay -- excuse me,

12   there is a Motion to Stay Discovery in this case filed by

13   Mr. Singh.

14        I have an outstanding Motion For Extension of Time to

15   File a Response to that, which sort of coordinates with the

16   Motion for Judgment on the Pleadings and our response that's

17   due.  I wanted to -- since I rely heavily on our response to

18   the Motion For Judgment on the Pleadings, it makes sense to

19   give me a little bit more time on the stay motion.

20        So that's outstanding for Your Honor, and that's been

21   filed.  That is docket entry 203.

22        Other than that, Your Honor, then the scheduling report

23   and getting the scheduling order in place, I think that's

24   everything I have to report, unless you have any questions for

25   me.

```
1          THE COURT:  Not right now.  That's very helpful.

2          Counsel for the receiver and the receivers, same

3   question, I'd like to hear your side of it.  I'd like to hear

4   what you've done.  I'd like for you to tell me where we are and

5   any problems that you're having.

6          MR. SINGH:  Thank you, Your Honor.

7          If Your Honor please, and I know you have been

8   inundated to this case where the ducks are flying around,

9   certainly not in a row, docket number 131, which I have a copy

10  of, if the Court would like it.

11         Under Judge Singhal's order, at the end of every

12  calendar quarter the receivers are required to file a detailed

13  status report.

14         We filed this for the calendar quarter ending December

15  31st, and we filed it on January 8th.  It has not only a

16  narrative for 23 pages of where we are, but also 24 pages of a

17  financial accounting for all of the funds in the receivers'

18  estate, receipts, disbursements, et cetera, I don't know if the

19  Court --

20         THE COURT:  You can hand that up, that's very helpful.

21  Thank you.

22         (Passing document to courtroom deputy.)

23         THE COURT:  Thank you.

24         MR. TATELBAUM:  If I may, please, give you a short

25  summary?
```

1      THE COURT:  Please.

2      MR. TATELBAUM:  I will try to be short with it.

3      This was a trucking company that operated out of

4  Coral Springs.  It had a unique method whereby individual

5  investors would put down a deposit or an investment on the

6  truck and then Royal Bengal would arrange for those investors

7  to purchase a truck, get loans in their name or their entity's

8  name on the truck and then lease the truck back to Royal

9  Bengal; and then Royal Bengal operated a nationwide trucking

10 company with those trucks.

11     There were approximately, somewhere, between four and

12 six Royal Bengal-owned trucks and all of the rest were these

13 investor-owned.  So there was one set of transactions involving

14 these trucks.

15     Also, Royal Bengal solicited receiving short-term loans

16 from individuals and entities, and most of those loans were for

17 90 days, and so they were going in and then going out.

18     One of the things that we've found is that the interest

19 rate paid on these loans went from 20 percent to 108 percent

20 annual rate, which would make them violative of federal law.

21     When subsequent to the receivers' appointment, Judge

22 Singhal entered an order at the same time appointing Kapila

23 Mukamal, the accounting firm that specializes in forensic

24 accounting in bankruptcy cases, as the forensic accountants for

25 the receivers.

1    They did a report over the weekend and found that Royal

2    Bengal was losing hundreds of thousands of dollars a month from

3    the operation of the trucking company.

4    So the receivers in consultation with the SEC decided

5    to shut it down, and it took us a month, a month-and-a-half

6    because we had trucks all over the country.  We have to have

7    the trucks -- they had a facility in Lubbock, Texas, a facility

8    in Fort Pierce, Florida.

9    We had to have the trucks finish their deliveries,

10   trucks brought back.  Get the drivers that were 1099 employees

11   and get them home and get everything secure.

12   It took maybe two months to get everything done.

13   So then one of the problems is Royal Bengal used a

14   Quick Books accounting system, which is not really meant for a

15   major company, but they did.

16   One of the things that we found was beginning February

17   1st of 2023 there were no more entries in the Quick Books,

18   until June 21 when the receivers were appointed.  So we have no

19   records from the financial records.

20   So through our accounting firm and through our efforts

21   and through the cooperation with the banks -- because there

22   were multiple bank accounts and a lot of money transferring

23   between accounts, rather than just in and out, we've got copies

24   of all of the bank account records and we're still in the

25   process of trying with the accountants to reconstruct

1    everything.

2         Part of the problem was within that time, February 1

3    through June 21, Royal Bengal took these loans from these

4    individuals, but we have no record of them.

5         And so when the receivership's paying, we had to wait

6    until the 90 days ended, when people came and tried to get

7    their money to find out who they were because we couldn't even

8    notify them.

9         Royal Bengal has its main office in Coral Springs.

10        One of the two receivers was there everyday until

11   November 30th -- because we had investors.

12        One of the other problems or issues that we had is many

13   of the investors, they're not owned truck drivers, they're just

14   investors, who are in the Haitian community, in Palm Beach, in

15   Broward County.  While they are all American citizens, English

16   is not necessarily their first language, and English law is

17   not.

18        So the receivers have established a website, and we

19   translate every major report and status reports into English --

20   well, put it into English and translate it into Haitian Creole.

21        And we also attached links to major pleadings where we

22   translate them into Haitian Creole as well in order to make

23   sure everybody had done it.

24        When it appeared that everything was ready to shutdown

25   in Coral Springs by the end of the November, we negotiated a

1    deal with the landlord that if we left we wouldn't be

2    responsible for anything on the lease which had two more years

3    to go.

4             There's a facility in Lubbock, Texas, which is on a

5    former us Air Force base, which is still used by the air field

6    by the FAA, and others, there's a hanger in a major area, that

7    was the major storage area.

8             THE COURT:  For the trucks?

9             MR. TATELBAUM:  For trucks.

10            We have been working with the landlord there, that was

11   much more complicated to deal with.  We have finally finished

12   as of February 29th there and moved out; and that landlord,

13   too, negotiated the deal with us for no future rent.  However,

14   we still have some trucks there, and I'll explain in a minute

15   the problems we had.

16            The trucks are still there, but we're paying a small

17   per diem -- per month per diem to keep the trucks there.

18            We hope to have them out by the end of the month.

19            One of the other problems was that part of the fleet

20   was non-operational.  There was a thing called the "bone yard"

21   and that was at the Lubbock facility and from what we've been

22   able to determine, when the trucks were not really operational

23   they were cannibalizing them to put parts into operating

24   trucks.

25            So in dealing with getting out of Lubbock, we had to

1    deal and are still dealing with non-operational trucks that are
2    going to have to be towed.
3         Then we have the issue -- we had petroleum that we had
4    to deal with on environmental.  And we have used tires that
5    have a separate environmental.  And that has all been done.
6         So now, if I can go back --
7         THE COURT:  All been done, meaning cleaned up?
8         MR. TATELBAUM:  We had removed them with certified
9    removal people so that we're not going to have an EPA problem
10   and working with the landlord, which is the Public Authority to
11   the airport, who have been very cooperative with us.
12        THE COURT:  In my former life, I'm used to the disposal
13   of tires, so I understand the issue.
14        MR. TATELBAUM:  And we have no in-ground lifts, which
15   they know have a real problem.
16        THE COURT:  Got it.  Amazingly, I'm staying with you,
17   but continue, please.
18        MR. TATELBAUM:  There's many, many issues here.  I'm
19   staying with you, hopefully.
20        THE COURT:  Yes.
21        MR. TATELBAUM:  So now we have the trucks in Lubbock
22   and Fort Pierce.  Each of the trucks are used by investors.
23   Some many investors have some of them.  These are truck drivers
24   so we have to start by getting them to pick up their trucks,
25   and that was difficult because many of them don't have

1    appropriate licenses, don't know what to do with them, they

2    can't put them in their driveway.

3         And then we had to deal, also, with the lenders because

4    before the receivership was in place, Royal Bengal was paying

5    the monthly loans.

6         Well, now these individuals who had invested in the

7    trucks had no income coming, and these are substantial monthly

8    payments on these trucks.  So for, probably approximately, six

9    months at least, we have been negotiating with the individual

10   investors and the finance companies to try to get the trucks

11   taken away, because we can't sell them, they're not ours, we're

12   just only the lessee.  And so, on each one, we have a

13   termination of the lease.

14        We set up a process where everyone was notified, they

15   gave us their documentation.  Then once we have the

16   documentation, we had a website where they could make an

17   appointment, either in Lubbock or in Fort Pierce, we did it

18   three days a week, because the other problem was, Lubbock --

19   it's an active runway and you can't drive there, except certain

20   days of the week.

21        So we did that on Tuesday, Thursday and Saturday.

22        And so, which, of course, through this we kept

23   employees as needed.  And so then we arranged -- they would

24   come -- they would have a release certificate because they

25   would have to send a driver or a towing company to get the

1    vehicle, and we got the vehicles out.

2         The problems with the vehicles we currently have are

3    that investors have abandoned them and the finance companies

4    have abandoned them.  But under Texas law, while there are laws

5    that allow a storage facility to sell a vehicle for storage

6    charges, if we sent the statutory notice, we're not a storage

7    facility, so we can't do it under Texas law.

8         So the Court may be getting a motion for authorizing us

9    to sell or dispose and give notice to everyone that they've

10   been abandoned.  We have those trucks.

11        THE COURT:  Okay.

12        MR. TATELBAUM:  In the process of the work with the

13   forensic accountants, we found that there was a separate entity

14   called North America Aerospace, LLC.  It was affiliated with

15   Royal Bengal Logistics.  We also found checks of transfers of

16   funds to Royal Bengal, and we also saw one instance where no

17   receivable, was just written off.

18        As a result, we filed a motion with Judge Singhal, and

19   he entered an order appointing Mr. Lopez and Ms. Wahba

20   receivers for North America Aerospace, LLC, as well.

21        So it is a sub-receivership within this receivership,

22   and that's some of the open issues that I'll tell you about.

23        THE COURT:  Okay.

24        MR. TATELBAUM:  So we're dealing with that as well.

25        We have --

1          THE COURT:  Let me stop you there, counsel, it's very

2   helpful, but let me just ask you a couple of things.

3          MR. TATELBAUM:  Sure.

4          THE COURT:  The first things, I'm going to ask both

5   questions, and the first is, the more general one, of what, if

6   anything, do you require from the Court to assist you -- given

7   that this case, you know, has seemed to have languished a bit

8   -- not because of anything the receivers have done or counsel

9   for the receiver.

10         But let me give you an example that is a more specific

11  question of that general question, which is, you have, in a

12  Motion to Compel Compliance With Your Order and a Motion For

13  Contempt.  This is ECF 181.

14         MR. TATELBAUM:  Yes, sir.

15         THE COURT:  Okay.  That's a clear example to me of

16  where there are papers now before me that you have

17  recalcitrance, you have non-cooperation.  Do I have that right?

18         MR. TATELBAUM:  Partially.  If I may?

19         THE COURT:  Please.

20         MR. TATELBAUM:  If the Court will look at docket entry

21  197 --

22         THE COURT:  Yep.

23         MR. TATELBAUM:  -- there is a motion by Mr. Singh for

24  an Extension of Time to Respond.

25         THE COURT:  Yes, I'm aware of that.

1       MR. TATELBAUM:  199, docket entry, is an order

2   extending until April 2nd for Mr. Singh to get new counsel.

3   Yes, that has languished.  It was filed, originally, we thought

4   we had compliance.  We then scheduled a Rule 30(b)(6)

5   deposition of the corporate representative of North American

6   Aerospace.

7       Mr. Singh had someone from the Public Defender's Office

8   assist him but not enter an appearance, and say he was going to

9   take the Fifth Amendment and he wasn't going to designate

10  someone else, so we have no deposition.

11      So we renewed the motion, because we were not getting

12  any information concerning the assets, and the receivership

13  order has a direct requirement to provide us this information.

14      You're right, that has languished.

15      THE COURT:  Yes, sir, that much, I understand.  Let me

16  put you at some ease.  You've carried the ball quite a bit.

17      Let me turn it over to Mr. Singh.  I think that's a

18  good place to do it, and I'm sure I'll be coming back to you,

19  Mr. Tatelbaum.

20      MR. TATELBAUM:  Your Honor, just so you know, we can

21  deal with this separately.  There are some other discovery

22  items open, most of which -- all of them are at the magistrate

23  judge level.  Your order said we had to provide you with a

24  list, so I'm ready to provide it when you want to let you know

25  where everything is.

1      THE COURT:  That's great, not just yet.

2          Let me turn it over to Mr. Singh.  Mr. Singh, I'm going

3  to ask the same questions that I asked the two gentlemen before

4  you.  You can start wherever you want.  You can let me know

5  anything that hasn't been said, anything you'd like to correct,

6  any background or context you'd like to give me.

7          I would like to know your view of things, just like I

8  asked the two gentlemen before you, please.

9          MR. SINGH:  Good morning, Your Honor.  First of all,

10 congratulations on your appointment as a district judge.

11         I have written out -- I need three to five minutes to

12 explain the entire deal of the case.

13         THE COURT:  That's fine.  Let me just stop you right

14 before you do that.  You know, I am not required to do this,

15 but I'm going to do it since it's the first time that you've

16 appeared before me.  You know, I have a related criminal case.

17         You have certain rights in that case.  There's a

18 presumption of innocence in that case.  There are all kinds of

19 constitutional and statutory rights that you have in that case.

20 I see that counsel for the federal defender, quite rightly, is

21 sitting next to you now.

22         I know it was probably explained to you that those

23 rights don't apply in this civil proceeding.  A good example is

24 the Fifth Amendment.  You have no Fifth Amendment privilege as

25 you sit here before me today in a civil case representing

1  yourself.  Okay.  So, I say that, not because I'm required to

2  say it, I say it because I just think basic, fundamental

3  fairness with a new judge that is sitting before you, things

4  that you say here, sir, can be used.  Okay.

5      Now, with that said, you've elected to represent

6  yourself, to explain the case to me, and I welcome you to do

7  so.  But sitting next to your counsel, I felt like it's my

8  duty, my first appearance, you don't have a Fifth Amendment

9  here, sir, and things that are said here by you can be used in

10  any other proceeding.  All right.

11      With that said, you've elected to represent yourself,

12  to explain the case to me.

13      If you wish to still do that, please.

14      MR. SINGH:  I appreciate that, Your Honor.

15      THE COURT:  Yes.

16      MR. SINGH:  At the outset, without investigation and

17  only on supposition, The Commission concluded affinitive

18  (phonetic) fraud in an ongoing business, 112 million, South

19  Florida Trucking Company, Indian promoter, Haitian management,

20  majority Haitian participant as lender and leaser, Jewish

21  lawyer, and a subjective word investment.

22      In combination of these, The Commission concluded fraud

23  and then started an investigation to arrive at their vicious,

24  objective decision to seek emergency TRO, receivership, asset

25  freeze.  The result of that decision is still in effect.

1          TRO, injunctive relief, receivership without bond,

2     company out of business, 300 people out of job, 2,000 people

3     suffering financially, which was not the case on June 21st,

4     2023, around 12 p.m.

5          The emergency TRO was granted without hearing.  I'm not

6     familiar with the Court's intricacy with the Government to

7     grant such relief, but the TRO pleading is sanctionable in its

8     entirety, as it is frivolous.

9          The Commission used its undefined weapon of investment

10    contract to attack Defendant's business, as it is evident

11    throughout the country.  But there must be enough is enough.

12         In SEC versus Denmark, finally a district court judge

13    caught their frivolous and conspicuous attempt of acquiring

14    emergency injunctive relief and receivership.

15         The Court presented a show cause notice to SEC.

16         After getting caught, The Commission filed for

17    dismissal on their claim.

18         The outcome of the sanction came this Monday, where

19    Judge Robert Shelby said:

20         For the reasons provided, the Court concludes The

21    Commission engaged in bad faith conduct, in seeking, obtaining,

22    defending the ex parte TRO, asset freeze and appointment of

23    receiver.  The Court imposes sanction under its inherent

24    authority for Commission's abuse of judicial process, adding in

25    his order, gross abuse of power.

1          And this is not my words.  This is from a federal

2   district court judge's order.

3          This case, as it unfolds, it will become more and more

4   frivolous in nature as the whole complaint and the pleading is

5   material lies, misleading, fueled with frivolous argument.

6          What happened to the country where the right to cure

7   was a fundamental right?  What happened to the country where

8   even mistakes are made and notice of cure is primary objective

9   of that administrative branch?

10          THE COURT:  Mr. Singh, I'm going to stop you there,

11   sir.  I don't need to hear conclusory statements or arguments

12   today.  I actually -- I can already, from what you've said so

13   far, I think the best thing that I can do for you right now is

14   turn to an issue that counsel for the receiver raise, which is

15   counsel.  You've elected to, so far, represent yourself, but it

16   has been stated to me that you are in the process of retaining

17   counsel; is that correct?

18          MR. SINGH:  Not me, Your Honor.

19          THE COURT:  Not you?  So you have no intention of

20   retaining counsel for yourself in this case; is that what

21   you're saying?

22          MR. SINGH:  Yes, Your Honor.

23          THE COURT:  Okay.  Well --

24          MR. SINGH:  We have no ability to retain counsel.

25          THE COURT:  So then what I would say to you is two

things:

First, there is a Voluntary Assistance Attorney Program in the Southern District of Florida.  If you have not been told about it, I would ask the Federal Defender to talk to you about it.  In civil cases, my guess is they probably already told you about it.  And I, on your behalf, if it's something you wish to do, I, along with the Federal Defender Service will make every effort to secure a Voluntary Assistant Attorney to assist you in this case.

A Federal Defender is going to assist you in your criminal case.

Do you understand that first point that I said to you, sir?

MR. SINGH:  Yes, Your Honor.  We did submit a motion a few months ago for Volunteer Assistance of Counsel.

However, that did not result in any volunteer and we moved on from there.

THE COURT:  Okay.

MR. SINGH:  Our assets are frozen.  We have no other way to function or negotiate with an attorney at a reasonable cost.

THE COURT:  Okay.  Well, I appreciate you telling me that.  And what I would ask you to do is to submit to me that request again.

MR. SINGH:  Okay.

1    THE COURT:  Submit it again, even if you are repeating

2    things that you said before, and we'll go from there.  We'll

3    see what can be done.  Maybe nothing can be done, but we will

4    certainly make the attempt.

5    MR. SINGH:  Okay.

6    THE COURT:  Second, with an attorney or without an

7    attorney, there are rules that attach to this proceeding that

8    you are going to have to abide by.  There is cooperation with

9    other attorneys, like these two gentlemen.

10    In a civil case, that failure to comply, failure to

11    confer in good faith, failure to schedule things, failure to

12    answer questions that are properly put to you under the law,

13    those are grounds separately for sanctions or even contempt.

14    I want to say that right up front, which is that I

15    understand the difficult position that you're in and you're

16    representing to me that you're appearing for yourself, but that

17    is not an excuse to obfuscate, delay or throw a wrench in

18    things that are clearly required under the law.

19    Now, with respect to where you were going before I

20    interrupted you, I'm aware of your Amended Motion for Judgment

21    on the Pleadings.  It largely rests on something called the

22    "Howey test."  I've read it.  I know that the SEC is going to

23    be putting in their opposition to it soon; is that correct?

24    MR. O'BRIEN:  Correct, Your Honor, the 26th.

25    THE COURT:  I tell you, I have not made up my mind

1    about it.  I'm going to wait for the SEC to put in their

2    papers.  I think it is likely to fail.  I think that the Howey

3    test here -- I'm going to listen to what the SEC says.

4         I'm going to read your papers again.

5         But I think in the interest of you hearing from me

6    right off the bat about how we're not going to accept delay in

7    this case, we're not going to accept recalcitrance in this

8    case.  I don't see much merit to your Motion for Judgment on

9    the Pleadings so far.

10         I'll read it again and I'll listen to what the SEC

11    says, but why am I saying all this to you, Mr. Singh?  I'm

12    saying it to you because I'm going to tell everybody in this

13    case that the deadlines are going to be observed and the rules

14    are going to be observed.

15         That's what I want to make sure that you know.

16         I want to make sure that you have an opportunity that

17    when I'm listening to these two counsel and they're asking for

18    certain dates -- for instance, it was represented to me that

19    the SEC has put in a unilateral scheduling order.

20         They put that in because there was, basically, a

21    failure by you to participate in the setting of those dates.

22    Okay.  If you want to have a say on things like dates so that

23    you have time alone or with counsel, you need to confer in good

24    faith.  You need to participate with counsel for the receiver

25    and counsel for the SEC.

1          If you do not do that, they're going to come before me,

2     they're going to say he's not cooperating, he's not even

3     conferring, and then I'm going to just set the dates that they

4     want.  And when you blow those dates, there will be waiver.

5     There will be waiver of rights that you have in this civil

6     case.

7          Do you understand what I'm saying to you, generally, so

8     far, sir?

9          MR. SINGH:  Yes, Your Honor.  And if I may answer?

10         We did confer on the scheduling order.

11         One of the stipulations by Judge Singhal was that if

12     agreement cannot be reached, the Court on its own accord will

13     issue the scheduling order.

14         I have deferred with the complexity of the case, the

15     way the SEC has find, and I deferred to him that I will defer

16     the scheduling order at the Court's discretion.

17         THE COURT:  Yep, I appreciate you saying that, and I

18     intend to do the same thing.  And what I want you to know is

19     that the rules apply both ways.  If these two gentlemen come

20     before me and you tell me, they're not conferring, they're not

21     calling me, they're not giving me a chance, I'll take what you

22     say very seriously.

23         But if they come before me and they say, you know, the

24     guy shows up at a deposition and he won't even appoint a

25     representative to answer questions, right, and then they're

1   saying those things to me, I'm going to take what they say

2   very, very seriously.

3           And frankly, sir, to be just candid with you, sir, it's

4   the first time we're meeting, I just want to make sure you

5   understand, it's a two-way street, they have to confer in good

6   faith with you.  But if you fail to confer in good faith with

7   them, there will be sanctions in this case, there will be

8   waiver in this case.

9           And I don't want to see that happen, especially to

10  someone that's representing themselves so far.

11          So, at a minimum, I want to make sure that you

12  understand that.  They have so far submitted papers to Judge

13  Singhal -- and so, therefore, now me -- that say, essentially,

14  he's just not responding, he's just not complying with the

15  basics.  It doesn't mean you don't -- you don't have to agree

16  with them.  You get to argue your side of it.  Okay.

17          But I hope you understand what I'm saying.

18          Do you, sir?

19          MR. SINGH:  Yes, Your Honor.

20          And if I may refer to the receivers' issue here with

21  the contempt filing he has done.

22          There is receivers, I have cooperated with them, and

23  there is a substantial compliance filed by the receiver in that

24  docket.  They just changed the goal post from extracting

25  information to a deposition under oath, and that's where the

criminal attorney opposed that under-oath deposition is -- will

be privileged under Fifth Amendment.

THE COURT:  Yes, so let me take you -- I very much

appreciate you bringing up those two points.  This back and

forth, sir, is a very big reason why I wanted to call everybody

in today, even though it's taking a little more time than the

standard status conference.

So, first of all, the first thing that you said is a

very good example about conferring.  You have a duty to confer

in good faith, and so do they.  Okay.  I can assure you that

these two attorneys just listening to me say all this, this

morning, they're going to make sure that every time they confer

with you that they take notes that tell me what you cooperated

on and what you didn't cooperate on, what you did answer and

what you didn't answer.  Right.  There's not going to be, you

know, any guesswork.

And I would advise you to do the same thing, because I

hold them to the same standard.  Okay.

Now, with respect to the Fifth Amendment that you

raised.  You can make decisions about the Fifth Amendment in a

civil case.  There are consequences to invoking the Fifth in a

civil case.  There are things called "adverse inferences" that

can be cast upon you in a civil case by invoking the Fifth.

The SEC knows all about that.  That's a reason, sir,

why you want to make sure that you have counsel.  Okay.

1              You're going to decide what you do in this case.  This
2    is the first time we're meeting today, you have just given two
3    examples, what I want you to understand, there's no give.  The
4    rules are clear.  If you don't cooperate, there are
5    consequences.  And if you invoke the Fifth in a civil
6    proceeding, there are consequences.

7              It doesn't mean that you don't invoke a Fifth, it is
8    your right to invoke a Fifth and face the consequences in a
9    civil case.  But I think it's my duty and I think it's,
10   frankly, just shear decency to say to you, these two examples
11   that you said to the Court -- there's going to be rules in this
12   case, and I am faced with a docket that -- to be very blunt
13   with you -- is unacceptable, because it's non-compliant.

14             That's not going to be tolerated by me.

15             The next thing that I'm going to ask the SEC to do, if
16   it continues, is they're going to brief me in my powers of
17   contempt in this case.  I don't think we're there.  It's the
18   first day.  It's a new day.

19             But when I get things from a receiver that says,
20   "motion for contempt," I'm going to ask both of these
21   gentlemen, Well, if you really want me to hold him in contempt
22   and you have the goods, tell me what my power is.  And I don't
23   want to go down that road, sir.  I don't want to do that.

24             All right.  Is there anything that I said to you that
25   you would like for me to explain or clarify for you?

1          MR. SINGH:  No, Your Honor.  I completely agree with
2    all of what you have said, and to the best of my efforts I have
3    complied.  I am conferring with my attorney how to navigate
4    this motion and we will address that in the best possible way.
5          THE COURT:  Well, that's great, Mr. Singh.
6          I appreciate you saying that to the Court, and I think
7    that the colloquy that you and I just had at the start of this
8    just meeting each other today, I think that's enough for today.
9          And I take you at your word that you're going to do
10   that from here forward.  Okay?
11         MR. SINGH:  Yes, Your honor.
12         THE COURT:  And it's important that you said that to
13   me.  It's also important that I said to everyone in the case
14   that it's a new day, it's a new judge.
15         I've been a judge, sir, for all of three weeks.
16         This is a very serious case involving a ponzi scheme
17   that is alleged by the SEC, by the receiver, and by the United
18   States Government in a related case.
19         So I wanted to take a little extra time and just make
20   sure that we re-set the ground here, because what I'm not going
21   to do is start like it's day one in Judge Singhal.  It is not
22   day one in Judge Singhal, too much water is under the bridge.
23         Okay.  So, with that, since I interrupted you, sir, you
24   don't have to argue case law to me.  You'll have a chance to do
25   that on paper.  Is there anything else you'd like me to know?

1    MR. SINGH:  Your Honor, it will take me another minute

2  to finish up.

3    THE COURT:  Take as much time as you need, sir.

4    MR. SINGH:  I continued from there:

5    The threshold issue is this docket is four contracts,

6  which is alleged as security.  The ongoing pending matters are

7  Amended Motion for Judgment on the Pleadings on ECF 180; Motion

8  to Stay Case Pending Disposition, ECF 180; defendant have

9  issued a notice of sanction to the plaintiff under Rule 11.

10  Upon expiration of 21 days, it will be filed in the docket.

11    Defendant is ready for trial upon adjudication of

12  judgment on pleading.  Defendant request the Court on this

13  occasion that plaintiff and receiver must submit the financial

14  analysis of our bill to this Court to justify the presumption

15  of the alleged scheme -- which the receiver have been deferring

16  it for a long time.

17    The appointment of receiver is without financial bond.

18  It is my belief that the receivership has exposed themself to a

19  greater liability in the conduct of receivership, hence, the

20  public interest; a bond determined by this Court should be

21  imposed in order for any future claim by lender, leaser or RBL.

22    And I submit to this Court for the examination on the

23  Amended Motion for Judgment on the Pleadings.

24    THE COURT:  Thank you for your statement, Mr. Singh.

25    Let me end here.  Given what I've said and given what

```
 1    you've said -- and again, I take you at your word.  Let me give
 2    you an example of what I think will start to prove whether
 3    we're walking the walk or talking the talk.
 4          There is an entry on the docket, it is docketed number
 5    188.  Document 188 is the Security and Exchange Commission's
 6    Unilateral Scheduling and Discovery Report.
 7          Now, they say to me if they filed it unilaterally,
 8    essentially, because there was no give and take, there was no
 9    conferral, there was no participation by you.  Whether that's
10    true or not, I don't care.  We'll put that behind us.  Okay.
11    We don't need to characterize or get into an argument about it.
12          But what I would advise you to do, given everything
13    that you've said, given that the SEC has to respond to your
14    Motion for Judgment on the Pleadings, given that I'm still
15    going to, believe it or not, go back to counsel for the
16    receiver and ask him a couple of more questions that you can
17    hear the answers to.
18          I would tell you that I am -- I'm ordering you to
19    confer in good faith with SEC on docketed 188 to confer and be
20    able to provide to me a scheduling and discovery report with
21    the dates that the SEC put in on March the 4th -- not that long
22    ago -- maybe you won't agree on every single date, maybe there
23    will be a range, right, but it should not be unilateral.
24          We should get to a place where you, in conferral with
25    the SEC, put in a joint proposed schedule, and let's see if we
```

1  can get -- to use the metaphor -- if we can start to get ducks

2  in a row.  If we start to understand when discovery's going to

3  be provided, when motions are going to be filed, when there's

4  going to be a calendar call, and the case will start to proceed

5  on a track that everyone here, including the Court, can expect

6  to meet certain basic deadlines and certain basic, really, just

7  certain basic rules.  Okay.  So I'm going to ask you to do that

8  for docketed 188 with the SEC.

9        Do you understand that, sir?

10       MR. SINGH:  Yes, Your Honor.  I will research and

11  confer with the counsel, or SEC, and we will -- I will work

12  with them to provide a joint scheduling order.

13       THE COURT:  Okay.  And the only other assignment that

14  I'm tasking you with other than that is to get me those papers

15  again on a Voluntary Assistance of Attorney.

16       MR. SINGH:  Yes.

17       MR. WALLACE:  Your Honor, I'll make sure that our

18  office assists with that, and that it's submitted properly and

19  timely.

20       THE COURT:  Thank you very much.

21       MR. WALLACE:  Absolutely, Your Honor.

22       THE COURT:  Okay.  So, the final piece, unless SEC

23  feels like I've missed something, counsel for the receiver, I

24  cut you off, I guess, I throw it back in your court to take me

25  down the home stretch.

1    MR. TATELBAUM:  Where we are, Your Honor, is just to

2    give you a little more background, if I may.  One of the things

3    we found was that sometime prior to the receivership, 2.1

4    million dollars was transferred to the relief defendant,

5    Celicourt, and that the relief defendant purchased a parcel of

6    property in Pompano Beach.

7         We filed on behalf of the receivership a fraudulent

8    transfer action.  Counsel for Ms. Celicourt worked out an

9    agreement.  That property was transferred back to the

10   receivership.

11        And about 45 days ago, as a result of the receivers

12   re-platting this for $900, we got 3.1 million dollars from the

13   2.1 million dollars that was fraudulently transferred.  So we

14   have that.  We found that RBL, Royal Bengal Logistics, owns a

15   40-acre ranch in Lubbock, Texas, we have sold that.

16        Owned another house, for whatever reason, in Lubbock,

17   we have sold that at public auction; and then we found a vacant

18   parcel along Interstate 27 near Lubbock, and we have sold that.

19        So most of the tangible -- virtually, all the tangible

20   assets, except for a few trucks and trailers, have been sold.

21        We are conferring with the SEC at this time on maybe

22   making an interim distribution to the investors and the

23   creditors.

24        Part of the problem we've had is, first, the total

25   unsophistication -- I don't mean that in a demeaning way -- of

the creditors and the investors.  So, unlike a bankruptcy case where there is a proof of claims system, there is none in federal receivership.  So we created a system.  We created a web site.

And we have now, we think -- because we didn't know who all the creditors were -- and through the efforts of some very good people in Palm Beach County in the Haitian American community, we think we have all the proofs of claim.

We are analyzing them now.  And we will work with the SEC in order to see about a partial distribution.  We are analyzing those claims.  A lot of those claims are -- don't have the documentation, don't have anything, nothing nefarious, it's just...

So we retained two of the Royal Bengal employees with the consent, approximately, 1200 claims, Your Honor.

THE COURT:  1200?

MR. TATELBAUM:  1200.  We have retained two of the Royal Bengal employees who were involved with this to help us adjust the claims.  One, it keeps the costs much down because it is not being done by legal counsel, but by people -- and these are people who dealt with the investors and they know them, and so we think we can have them resolved.

So that leaves us with possible causes of action.

The receivers have sued the former accounting firm in the Circuit Court for Broward County, and that case is pending.

1          THE COURT:  Who is that pending before?

2          MR. TATELBAUM:  Judge Levenson.

3          THE COURT:  Okay.  Thanks.

4          MR. TATELBAUM:  Judge Levenson, as you may know, is

5    very sophisticated in this area, so we are lucky on the draw

6    there for that.

7          We receivers have subpoenaed a lot of documentation

8    from a number of banks and brokerage firms that did business

9    with Royal Bengal.  Disputes have arisen -- the Court may be

10   aware that there's a thing called a Suspicious Activity Report

11   -- it's called SAR as an acronym -- where a bank is required to

12   submit reports on suspicious activity.

13         The law specifically exempts them from discovery.  But

14   the issue is -- which has arisen -- how far does that exemption

15   go?  So, in good faith, legitimate disputes between the

16   receivers and some of the banks, we have some ongoing discovery

17   issues, so I can relate to what they are.

18         They are all before Magistrate Judge Valle.

19         THE COURT:  Okay.

20         MR. TATELBAUM:  Docket entry 143 is Receivers' Motion

21   to Compel; number 146 is a Third-Party Motion For Protective

22   Order; number 160 is the Receiver's Response to number 146.

23         THE COURT:  But these are all motions involving third

24   parties?

25         MR. TATELBAUM:  Yes.

1          THE COURT:  Okay.

2          MR. TATELBAUM:  Everything is before the magistrate

3   judge, that will be resolved one way or another.  I just wanted

4   the Court to be aware, but that's all, because that involves

5   where the receivers are, need this investigative tool, we've

6   alleged, to find out, because, again, there were no book

7   entries from February 1st on.

8          THE COURT:  Uh-huh.  So, I understand.  So let me just

9   go back to you on ECF 181, Renewed Motion to Compel Compliance

10  With Receivership Order and Motion for Contempt.

11         MR. TATELBAUM:  Sure.

12         THE COURT:  What's your view?

13         MR. TATELBAUM:  Our view is that under the rules,

14  because the order appointing the receivers for North America

15  Aerospace requires the company to disclose information.

16         If Mr. Singh does not want to disclose that information

17  based on his Fifth Amendment rights, all he needs to do is tell

18  someone else and designate them as the corporate representative

19  under Federal Rule 12(b)(6) to provide us with the information

20  under oath.  And let me explain something Mr. Singh said.

21         We first had resistance and then Mr. Singh gave us some

22  answers.  The answers, we believe, were incomplete, and some of

23  them we found to be inconsistent with facts that we know.

24         So we withdrew our notice of substantial compliance

25  based on that and then scheduled the Rule 12(b)(6) deposition

```
 1      so that we could inquire of a designated representative of

 2      North America Aerospace.  It can be an attorney.

 3              It can be anybody.

 4              And if Mr. Singh doesn't want to testify because of his

 5      Fifth Amendment, he needs to designate someone.  He is the sole

 6      officer and sole member of the Limited Liability Company, North

 7      America Aerospace.

 8              THE COURT:  Let me stop you there, because maybe it

 9      will help the Court to understand it, as well as Mr. Singh.

10              Am I correct to understand that that designated person

11      could be someone designated today, meaning they had nothing to

12      do with the company, they had nothing to do with any of this

13      conduct?  They could be someone today, designated to be the

14      corporate representative?

15              MR. TATELBAUM:  Yes, as long as Mr. Singh -- someone

16      gave them all the information -- we've analyzed everything we

17      want to know, because under Rule 12(b)(6), we have to list

18      every area of inquiry.  It just could be anybody who could

19      testify what it is.  It doesn't have to be someone involved

20      with the company.

21              THE COURT:  Let me do it this way.  Maybe we'll make

22      some headway right here today.  You can be seated, sir.

23              Mr. Singh, do you understand the colloquy that I just

24      had with counsel?

25              MR. SINGH:  Yes, Your Honor.  I would like to say a
```

1  little bit to expand the matter of my current situation.

2         THE COURT:  Sure.

3         MR. SINGH:  I'm under no-contact list from the criminal

4  bond.  That kind of precludes me from contacting most of the

5  people I know in my life.

6         THE COURT:  I understand.  So let me stop you there.

7  I understand what you're saying, Mr. Singh.  For this limited

8  purpose, if there is a person that you wish to designate as a

9  representative for the purpose of dealing with the receiver --

10        MR. TATELBAUM:  Right.

11        THE COURT:  -- you let me know and I'll modify your

12  bond.  You can talk to that person and you can give that person

13  all the information.  Okay?

14        MR. SINGH:  I appreciate that, Your Honor.  I will

15  speak to my counsel from that other law and I will offer them

16  this offer.

17        THE COURT:  Because of this back and forth I just had

18  with you and I just had with counsel for the receiver.

19        What I'm going to do -- unless the receiver objects --

20  what I hear, there was partial compliance, and then no

21  compliance.  There was a motion -- what I'm going to do today

22  is I'm going to moot ECF 181.

23        I'm going to start over because you've made a

24  representation to me to my face today that you intend to comply

25  with the receiver, including, but not limited to, designating

1   someone that can be a representative that can answer their

2   questions, that you're going to give all of the list of

3   information that they asked for.

4           I'm -- and, of course, I'm going to moot that without

5   prejudice to counsel for the receiver, to be able to bring that

6   motion again if, after today, there is not compliance, there is

7   not conferring in good faith, there is not the finding and

8   designating of a person to assist the receiver.

9           Do you have any objection to that, Mr. Singh?

10          MR. SINGH:  No, Your Honor.  I'm going to get back.

11  Once I'm out, I'm going to e-mail the criminal attorney to

12  request a bond modification to contact two, three persons I

13  will name so they can articulate issues the receiver makes.

14          THE COURT:  Before you contact them, you should make

15  sure that your criminal attorney submits that bond modification

16  to me and states that you want that bond modification for this

17  specific purpose.

18          MR. SINGH:  Absolutely, Your Honor.

19          THE COURT:  And that way no one is going to say that

20  you tried to get around your bond.  No one is going to accuse

21  you of anything.  You are going to be dealing directly with me

22  and, hopefully, what we will then do --you can see, I've done

23  two things today, Mr. Singh, and I accept you at your word on

24  both:

25          Is that there is going to be conferral in good faith

 1   with the SEC on scheduling.  There is going to be conferral in

 2   compliance with the receivers' lawful rights on things like

 3   designating a representative and providing the information that

 4   they have given you a list of.

 5          I also understand, Mr. Singh, that a lot of this is

 6   made more difficult because you're also trying to find counsel.

 7   I understand that, and that's why I'm going to moot ECF 181

 8   today, without prejudice.  We're going to start over.  Okay?

 9          And what I would like to see, since I take you at your

10   word, sir, today's a new day, we're going to re-set the new

11   schedule.  And if there are problems, I'm sure between the

12   three of you, I'll hear about it.  Okay?

13          Anything else, Mr. Singh?

14          MR. SINGH:  Your Honor, one last thing.  Like I

15   mentioned in my status report, the receivership should submit

16   an accounting analysis.  I have an affidavit from a different

17   court, which they have filed in that court, saying that -- from

18   the accountant -- that they have completed a full accounting

19   from June 13th, 2018, to June 30, 2023.  That was the date --

20   that was the month the receivership was installed.

21          THE COURT:  All right.  Was this filed with the Court?

22          MR. SINGH:  Yes, sir.

23          THE COURT:  Can you read the ECF number for me?

24          MR. SINGH:  Oh, not in this court.  In a separate

25   lawsuit the receivership is engaged in.

THE COURT:  Do you know the document to which Mr. Singh

refers, sir?

MR. TATELBAUM:  Yes.  I believe it's an affidavit in

the Forest Robinson -- the former accounting firm before Judge

Levenson.  I believe that's the case.

THE COURT:  And, Mr. Singh, you're saying you would

like what?

MR. SINGH:  Since they have the financial analysis

completed, they should submit to in their status report and

supplement, because in the status report -- in the quarterly

status report they say they have not completed.

THE COURT:  So you're saying, as far as what they need

to provide to you, you would like that provided to you.

Do I have that right?

MR. SINGH:  No.  What I'm saying, in the status report

and the affidavit has conflicting information.

THE COURT:  A-ha, now I understand.  Sir --

MR. TATELBAUM:  Mr. Singh is correct from what he read.

What it is, this was an interim financial report.  The

forensic accountants are still ongoing.  We will add to the

report -- which has to be done as of March 31, which we hope to

file the first week of April -- i'll make sure that we add a

narrative and other information as to what we do have so far.

THE COURT:  Sounds very reasonable to me.

Mr. Singh, do you understand what counsel just said?

1          MR. SINGH:  Yes.

2          THE COURT:  Okay.  Does that sound reasonable to you?

3          MR. SINGH:  Yes, it does.

4          THE COURT:  Okay.

5          MR. SINGH:  All I was trying to bring attention to the

6     Court that --

7          THE COURT:  I understand.  I understand why you brought

8     it up, Mr. Singh, I follow you.

9          Anything else, Mr. Singh?

10         MR. SINGH:  No, Your Honor, I rest.

11         THE COURT:  Anything else, counsel for the SEC?

12         MR. O'BRIEN:  Yes, briefly.  If I may make a suggestion

13    regarding the joint scheduling report?

14         THE COURT:  Yes.

15         MR. O'BRIEN:  It may be helpful if you provide us with

16    a deadline to provide that to Your Honor.

17         THE COURT:  Yes, I appreciate you saying that.  I'd

18    like to see a joint scheduling report after conferral in good

19    faith within three weeks from today.  Okay?

20         Do you understand that, Mr. Singh?

21         MR. SINGH:  Yes.  Yes, Your Honor.

22         THE COURT:  I think that was a good suggestion.

23         Is that enough time?

24         MR. O'BRIEN:  It is for me, Your Honor.

25         MR. SINGH:  Yeah, absolutely.

```
 1              THE COURT:  That's excellent.

 2              So within three weeks from today, file with me a joint

 3      scheduling report of the kind that was filed by the SEC

 4      unilaterally, and if you think of one or two other dates to add

 5      to it, you can always add more.  Okay?

 6              Anything else, counsel for the receiver?

 7              I thank all of you for coming in and kind of re-setting

 8      and getting me up-to-speed.  Thank you, Mr. Singh.

 9              MR. SINGH:  Thank you, Your Honor.

10              THE COURT:  Thank you, counsel.

11              And Court's adjourned.

12              MR. TATELBAUM:  Thank you.

13              COURTROOM DEPUTY:  There is one more case.

14              THE COURT:  Oh, we're not adjourned.

15              (Proceedings concluded at 11:18 a.m.)

16

17

18

19

20

21

22

23

24

25
```

1               C E R T I F I C A T E

2

3        I hereby certify that the foregoing is an

4     accurate transcription of the proceedings in the

5     above-entitled matter.

6

7        May 14th, 2024

8
                             S/Glenda M. Powers
9
                             GLENDA M. POWERS, RPR, CRR, FPR
10                            United States District Court
                             400 North Miami Avenue
11                            Miami, Florida  33128
                             Glenda_Powers@flsd.uscourts.gov
12

13

14

15

16

17

18

19

20

21

22

23

24

25

**$**

**$900** [1] - 33:12

**0**

**0:23-CV-61179-DSL**
[1] - 1:3

**1**

**1** [2] - 1:11, 11:2
**108** [1] - 9:19
**1099** [1] - 10:10
**109th** [1] - 2:7
**10:00** [1] - 1:9
**10:18** [1] - 1:9
**11** [1] - 30:9
**110** [1] - 2:3
**112** [1] - 19:18
**11:18** [2] - 1:9, 43:15
**12** [1] - 20:4
**12(b)(6** [3] - 36:19, 36:25, 37:17
**1200** [3] - 34:15, 34:16, 34:17
**131** [1] - 8:9
**13th** [1] - 40:19
**143** [1] - 35:20
**146** [2] - 35:21, 35:22
**14th** [1] - 44:7
**15th** [1] - 2:4
**160** [1] - 35:22
**180** [2] - 30:7, 30:8
**181** [4] - 16:13, 36:9, 38:22, 40:7
**188** [5] - 6:15, 31:5, 31:19, 32:8
**1950** [1] - 1:22
**197** [1] - 16:21
**199** [1] - 17:1
**1st** [2] - 10:17, 36:7

**2**

**2,000** [1] - 20:2
**2.1** [2] - 33:3, 33:13
**20** [2] - 1:7, 9:19
**2018** [1] - 40:19
**2023** [4] - 5:6, 10:17, 20:4, 40:19
**2024** [2] - 1:7, 44:7
**203** [1] - 7:2
**21** [3] - 10:18, 11:3, 30:10
**21st** [1] - 20:3
**23** [1] - 8:16
**23-CV-61179** [1] - 3:2
**24** [1] - 8:16
**25** [1] - 2:11

**26th** [2] - 7:10, 23:24
**27** [1] - 33:18
**29th** [1] - 12:12
**2nd** [1] - 17:2

**3**

**3.1** [1] - 33:12
**30** [1] - 40:19
**30(b)(6** [1] - 17:4
**300** [1] - 20:2
**30th** [1] - 11:11
**31** [1] - 41:21
**31st** [1] - 8:15
**33065** [1] - 2:7
**33128** [2] - 2:18, 44:11
**33130** [1] - 2:11
**33131** [1] - 1:22
**33301** [1] - 2:4
**3700** [1] - 2:7

**4**

**40-acre** [1] - 33:15
**400** [2] - 2:18, 44:10
**44** [1] - 2:10
**45** [1] - 33:11
**4th** [1] - 31:21

**5**

**52** [1] - 1:11

**6**

**6th** [1] - 2:3

**8**

**801** [1] - 1:21
**8th** [1] - 8:15

**9**

**90** [2] - 9:17, 11:6

**A**

**a-ha** [1] - 41:17
**a.m** [4] - 1:9, 1:9, 43:15
**abandoned** [3] - 15:3, 15:4, 15:10
**abide** [1] - 23:8
**ability** [1] - 21:24
**able** [3] - 12:22, 31:20, 39:5
**above-entitled** [1] - 44:5
**absolutely** [3] - 32:21,

39:18, 42:25
**abuse** [2] - 20:24, 20:25
**accept** [3] - 24:6, 24:7, 39:23
**accord** [1] - 25:12
**account** [1] - 10:24
**accountant** [1] - 40:18
**accountants** [4] - 9:24, 10:25, 15:13, 41:20
**accounting** [9] - 8:17, 9:23, 9:24, 10:14, 10:20, 34:24, 40:16, 40:18, 41:4
**accounts** [2] - 10:22, 10:23
**accurate** [1] - 44:4
**accuse** [1] - 39:20
**acquiring** [1] - 20:13
**acronym** [1] - 35:11
**action** [4] - 5:7, 5:8, 33:8, 34:23
**active** [1] - 14:19
**Activity** [1] - 35:10
**activity** [1] - 35:12
**add** [4] - 41:20, 41:22, 43:4, 43:5
**adding** [1] - 20:24
**address** [1] - 29:4
**addressed** [1] - 4:1
**adjourned** [2] - 43:11, 43:14
**adjudication** [1] - 30:11
**adjust** [1] - 34:19
**administrative** [1] - 21:9
**adverse** [1] - 27:22
**advise** [2] - 27:17, 31:12
**Aerospace** [6] - 15:14, 15:20, 17:6, 36:15, 37:2, 37:7
**affidavit** [3] - 40:16, 41:3, 41:16
**affiliated** [1] - 15:14
**affinitive** [1] - 19:17
**AFPD** [1] - 2:13
**ago** [3] - 22:15, 31:22, 33:11
**agree** [3] - 26:15, 29:1, 31:22
**agreement** [2] - 25:12, 33:9
**Air** [1] - 12:5
**air** [1] - 12:5
**airport** [1] - 13:11
**AL** [1] - 1:9
**al** [1] - 3:4

**allegations** [1] - 5:2
**alleged** [4] - 29:17, 30:6, 30:15, 36:6
**allow** [1] - 15:5
**alone** [1] - 24:23
**ALSO** [1] - 2:13
**amazingly** [1] - 13:16
**Amended** [3] - 23:20, 30:7, 30:23
**Amendment** [9] - 17:9, 18:24, 19:8, 27:2, 27:19, 27:20, 36:17, 37:5
**America** [5] - 15:14, 15:20, 36:14, 37:2, 37:7
**American** [3] - 11:15, 17:5, 34:7
**analysis** [3] - 30:14, 40:16, 41:8
**analyzed** [1] - 37:16
**analyzing** [2] - 34:9, 34:11
**AND** [2] - 1:5, 2:3
**annual** [1] - 9:20
**answer** [6] - 23:12, 25:9, 25:25, 27:14, 27:15, 39:1
**answers** [3] - 31:17, 36:22
**apart** [1] - 6:24
**appearance** [5] - 3:6, 4:4, 4:5, 17:8, 19:8
**APPEARANCES** [2] - 1:19, 2:1
**appeared** [4] - 5:13, 6:3, 11:24, 18:16
**appearing** [1] - 23:16
**apply** [2] - 18:23, 25:19
**appoint** [1] - 25:24
**appointed** [3] - 3:16, 4:11, 10:18
**appointing** [3] - 9:22, 15:19, 36:14
**appointment** [6] - 5:9, 9:21, 14:17, 18:10, 20:22, 30:17
**appreciate** [7] - 19:14, 22:22, 25:17, 27:4, 29:6, 38:14, 42:17
**appropriate** [1] - 14:1
**April** [2] - 7:2, 41:22
**area** [4] - 12:6, 12:7, 35:5, 37:18
**argue** [2] - 26:16, 29:24
**argument** [2] - 21:5, 31:11
**arguments** [1] - 21:11

**arisen** [2] - 35:9, 35:14
**arrange** [1] - 9:6
**arranged** [1] - 14:23
**arrive** [1] - 19:23
**articulate** [1] - 39:13
**asset** [3] - 5:9, 19:24, 20:22
**assets** [3] - 17:12, 22:19, 33:20
**assignment** [1] - 32:13
**assist** [6] - 16:6, 17:8, 22:8, 22:10, 39:8
**Assistance** [3] - 22:2, 22:15, 32:15
**Assistant** [1] - 22:8
**assists** [1] - 32:18
**assure** [1] - 27:10
**attach** [1] - 23:7
**attached** [1] - 11:21
**attack** [1] - 20:10
**attempt** [2] - 20:13, 23:4
**attempted** [1] - 6:8
**attention** [1] - 42:5
**Attorney** [3] - 22:2, 22:8, 32:15
**attorney** [8] - 22:20, 23:6, 23:7, 27:1, 29:3, 37:2, 39:11, 39:15
**attorneys** [4] - 3:15, 3:24, 23:9, 27:11
**auction** [1] - 33:17
**authority** [1] - 20:24
**Authority** [1] - 13:10
**authorizing** [1] - 15:8
**Avenue** [3] - 2:7, 2:18, 44:10
**Aveue** [1] - 1:21
**aware** [4] - 16:25, 23:20, 35:10, 36:4

**B**

**background** [2] - 18:6, 33:2
**bad** [1] - 20:21
**ball** [1] - 17:16
**bank** [3] - 10:22, 10:24, 35:11
**bankruptcy** [2] - 9:24, 34:1
**banks** [3] - 10:21, 35:8, 35:16
**base** [1] - 12:5
**based** [2] - 36:17, 36:25
**basic** [4] - 19:2, 32:6,

32:7
**basics** [1] - 26:15
**bat** [1] - 24:6
**Beach** [3] - 11:14, 33:6, 34:7
**become** [1] - 21:3
**BEFORE** [1] - 1:16
**beginning** [1] - 10:16
**behalf** [5] - 3:8, 3:19, 3:22, 22:6, 33:7
**behind** [1] - 31:10
**belief** [1] - 30:18
**Bengal** [21] - 3:3, 4:5, 4:9, 4:10, 4:14, 9:6, 9:9, 9:12, 9:15, 10:2, 10:13, 11:3, 11:9, 14:4, 15:15, 15:16, 33:14, 34:14, 34:18, 35:9
**BENGAL** [2] - 1:9, 3:15
**Bengal-owned** [1] - 9:12
**best** [3] - 21:13, 29:2, 29:4
**between** [4] - 9:11, 10:23, 35:15, 40:11
**big** [1] - 27:5
**bill** [1] - 30:14
**bit** [5] - 6:19, 7:19, 16:7, 17:16, 38:1
**blow** [1] - 25:4
**blunt** [1] - 28:12
**bond** [9] - 20:1, 30:17, 30:20, 38:4, 38:12, 39:12, 39:15, 39:16, 39:20
**bone** [1] - 12:20
**book** [1] - 36:6
**Books** [2] - 10:14, 10:17
**branch** [1] - 21:9
**Brickell** [1] - 1:21
**bridge** [1] - 29:22
**brief** [1] - 28:16
**briefly** [1] - 42:12
**bring** [2] - 39:5, 42:5
**bringing** [2] - 6:21, 27:4
**brokerage** [1] - 35:8
**brought** [3] - 5:6, 10:10, 42:7
**Broward** [2] - 11:15, 34:25
**business** [4] - 19:18, 20:2, 20:10, 35:8
**BY** [1] - 2:16

**C**

**calendar** [3] - 8:12, 8:14, 32:4
**candid** [1] - 26:3
**cannibalizing** [1] - 12:23
**cannot** [1] - 25:12
**CAPITAL** [1] - 2:9
**Capital** [1] - 3:19
**care** [1] - 31:10
**carried** [1] - 17:16
**Case** [2] - 3:2, 30:8
**CASE** [1] - 1:3
**case** [51] - 3:16, 4:20, 4:24, 5:3, 5:6, 5:17, 6:25, 7:1, 7:6, 7:7, 7:12, 8:8, 16:7, 18:12, 18:16, 18:17, 18:18, 18:19, 18:25, 19:6, 19:12, 20:3, 21:3, 21:20, 22:9, 22:11, 23:10, 24:7, 24:8, 24:13, 25:6, 25:14, 26:7, 26:8, 27:21, 27:22, 27:23, 28:1, 28:9, 28:12, 28:17, 29:13, 29:16, 29:18, 29:24, 32:4, 34:1, 34:25, 41:5, 43:13
**cases** [3] - 5:12, 9:24, 22:5
**cast** [1] - 27:23
**caught** [2] - 20:13, 20:16
**causes** [1] - 34:23
**Celicourt** [4] - 5:22, 6:1, 33:5, 33:8
**certain** [7] - 6:10, 14:19, 18:17, 24:18, 32:6, 32:7
**certainly** [2] - 8:9, 23:4
**certificate** [1] - 14:24
**certified** [1] - 13:8
**certify** [1] - 44:3
**cetera** [1] - 8:18
**chance** [2] - 25:21, 29:24
**changed** [1] - 26:24
**characterize** [1] - 31:11
**charges** [1] - 15:6
**Charles** [2] - 3:15, 4:7
**CHARLES** [1] - 2:2
**checks** [1] - 15:15
**chose** [1] - 6:12
**Circuit** [1] - 34:25
**citizens** [1] - 11:15

**civil** [10] - 18:23, 18:25, 22:5, 23:10, 25:5, 27:21, 27:22, 27:23, 28:5, 28:9
**claim** [3] - 20:17, 30:21, 34:8
**claims** [5] - 34:2, 34:11, 34:15, 34:19
**clarify** [1] - 28:25
**cleaned** [1] - 13:7
**clear** [3] - 4:17, 16:15, 28:4
**clearly** [1] - 23:18
**colloquy** [2] - 29:7, 37:23
**combination** [1] - 19:22
**combined** [1] - 4:15
**coming** [3] - 14:7, 17:18, 43:7
**COMMISSION** [1] - 1:6
**Commission** [12] - 1:21, 3:3, 3:9, 5:13, 5:17, 5:24, 6:16, 19:17, 19:22, 20:9, 20:16, 20:21
**Commission's** [2] - 20:24, 31:5
**community** [2] - 11:14, 34:8
**companies** [2] - 14:10, 15:3
**company** [9] - 9:3, 9:10, 10:3, 10:15, 14:25, 20:2, 36:15, 37:12, 37:20
**Company** [2] - 19:19, 37:6
**Compel** [3] - 16:12, 35:21, 36:9
**complaint** [1] - 21:4
**completed** [3] - 40:18, 41:9, 41:11
**completely** [1] - 29:1
**complexity** [1] - 25:14
**Compliance** [2] - 16:12, 36:9
**compliance** [7] - 17:4, 26:23, 36:24, 38:20, 38:21, 39:6, 40:2
**compliant** [1] - 28:13
**complicated** [1] - 12:11
**complied** [1] - 29:3
**comply** [2] - 23:10, 38:24
**complying** [1] - 26:14
**concerning** [1] - 17:12
**concluded** [3] - 19:17,

19:22, 43:15
**concludes** [1] - 20:20
**conclusory** [1] - 21:11
**conduct** [2] - 20:21, 30:19, 37:13
**confer** [10] - 23:11, 24:23, 25:10, 26:5, 26:6, 27:9, 27:12, 31:19, 32:11
**conference** [2] - 6:12, 27:7
**CONFERENCE** [1] - 1:14
**conferences** [1] - 6:10
**conferral** [5] - 31:9, 31:24, 39:25, 40:1, 42:18
**conferring** [6] - 25:3, 25:20, 27:9, 29:3, 33:21, 39:7
**conflicting** [1] - 41:16
**congratulations** [1] - 18:10
**consent** [1] - 34:15
**consequences** [4] - 27:21, 28:5, 28:6, 28:8
**conspicuous** [1] - 20:13
**Constantina** [1] - 5:22
**constitutional** [1] - 18:19
**consultation** [1] - 10:4
**contact** [3] - 38:3, 39:12, 39:14
**contacting** [1] - 38:4
**Contempt** [2] - 16:13, 36:10
**contempt** [5] - 23:13, 26:21, 28:17, 28:20, 28:21
**contested** [1] - 5:14
**context** [1] - 18:6
**continue** [1] - 13:17
**CONTINUED** [1] - 2:1
**continued** [1] - 30:4
**continues** [1] - 28:16
**contract** [1] - 20:10
**contracts** [1] - 30:5
**cooperate** [3] - 6:13, 27:14, 28:4
**cooperated** [2] - 26:22, 27:13
**cooperating** [1] - 25:2
**cooperation** [3] - 10:21, 16:17, 23:8
**cooperative** [1] - 13:11
**coordinates** [1] - 7:15
**copies** [1] - 10:23

**copy** [1] - 8:9
**Coral** [4] - 2:7, 9:4, 11:9, 11:25
**corporate** [2] - 17:5, 36:18, 37:14
**correct** [6] - 18:5, 21:17, 23:23, 23:24, 37:10, 41:18
**cost** [1] - 22:21
**costs** [1] - 34:19
**counsel** [41] - 4:13, 4:18, 5:16, 5:19, 5:20, 5:25, 6:4, 6:6, 6:9, 7:5, 8:2, 16:1, 16:8, 17:2, 18:20, 19:7, 21:14, 21:15, 21:17, 21:20, 21:24, 24:17, 24:23, 24:24, 24:25, 27:25, 31:15, 32:11, 32:23, 33:8, 34:20, 37:24, 38:15, 38:18, 39:5, 40:6, 41:25, 42:11, 43:6, 43:10
**Counsel** [1] - 22:15
**country** [1] - 10:6, 20:11, 21:6, 21:7
**County** [3] - 11:15, 34:7, 34:25
**couple** [2] - 16:2, 31:16
**course** [2] - 14:22, 39:4
**court** [6] - 20:12, 21:2, 32:24, 40:17, 40:24
**COURT** [82] - 1:1, 3:5, 3:10, 3:13, 3:17, 3:20, 4:2, 4:16, 6:19, 6:21, 8:1, 8:20, 8:23, 9:1, 12:8, 13:7, 13:12, 13:16, 13:20, 15:11, 15:23, 16:1, 16:4, 16:15, 16:19, 16:22, 16:25, 17:15, 18:1, 18:13, 19:15, 21:10, 21:19, 21:23, 21:25, 22:18, 22:22, 23:1, 23:6, 23:25, 25:17, 27:3, 29:5, 29:12, 30:3, 30:24, 32:13, 32:20, 32:22, 34:16, 35:1, 35:3, 35:19, 35:23, 36:1, 36:8, 36:12, 37:8, 37:21, 38:2, 38:6, 38:11, 38:17, 39:14, 39:19, 40:21, 40:23, 41:1, 41:6, 41:12, 41:17, 41:24, 42:2, 42:4, 42:7, 42:11,

42:14, 42:17, 42:22, 43:1, 43:10, 43:14
**Court** [28] - 2:17, 2:17, 3:1, 3:25, 5:16, 8:10, 8:19, 15:8, 16:6, 16:20, 20:15, 20:20, 20:23, 25:12, 28:11, 29:6, 30:12, 30:14, 30:20, 30:22, 32:5, 34:25, 35:9, 36:4, 37:9, 40:21, 42:6, 44:10
**Court's** [3] - 20:6, 25:16, 43:11
**courtroom** [1] - 8:22
**COURTROOM** [2] - 3:2, 43:13
**created** [2] - 34:3
**creditors** [3] - 33:23, 34:1, 34:6
**Creole** [3] - 11:20, 11:22
**criminal** [8] - 3:24, 5:3, 18:16, 22:11, 27:1, 38:3, 39:11, 39:15
**CRR** [2] - 2:16, 44:9
**cure** [2] - 21:6, 21:8
**current** [1] - 38:1
**cut** [1] - 32:24

### D

**D.C** [1] - 5:25
**date** [2] - 31:22, 40:19
**dates** [7] - 24:18, 24:21, 24:22, 25:3, 25:4, 31:21, 43:4
**DAVID** [1] - 1:16
**days** [6] - 9:17, 11:6, 14:18, 14:20, 30:10, 33:11
**deadline** [1] - 42:16
**deadlines** [2] - 24:13, 32:6
**deal** [8] - 12:1, 12:11, 12:13, 13:1, 13:4, 14:3, 17:21, 18:12
**dealing** [5] - 12:25, 13:1, 15:24, 38:9, 39:21
**dealt** [1] - 34:21
**December** [1] - 8:14
**decency** [1] - 28:10
**decide** [1] - 28:1
**decided** [1] - 10:4
**decision** [2] - 19:24, 19:25
**decisions** [1] - 27:20
**DEFENDANT** [1] - 2:6

**defendant** [9] - 4:11, 5:15, 5:22, 6:2, 30:8, 30:11, 30:12, 33:4, 33:5
**Defendant's** [1] - 20:10
**defendants** [1] - 5:21
**DEFENDANTS** [2] - 1:11, 2:2
**defender** [1] - 18:20
**Defender** [3] - 22:4, 22:7, 22:10
**Defender's** [3] - 2:13, 3:23, 17:7
**defending** [1] - 20:22
**defer** [1] - 25:15
**deferred** [2] - 25:14, 25:15
**deferring** [1] - 30:15
**delay** [2] - 23:17, 24:6
**deliveries** [1] - 10:9
**demeaning** [1] - 33:25
**Denmark** [1] - 20:12
**deposit** [1] - 9:5
**deposition** [6] - 17:5, 17:10, 25:24, 26:25, 27:1, 36:25
**DEPUTY** [2] - 3:2, 43:13
**deputy** [1] - 8:22
**describing** [1] - 6:22
**designate** [4] - 17:9, 36:18, 37:5, 38:8
**designated** [4] - 37:1, 37:10, 37:11, 37:13
**designating** [3] - 38:25, 39:8, 40:3
**detailed** [1] - 8:12
**determine** [1] - 12:22
**determined** [1] - 30:20
**diem** [2] - 12:17
**different** [1] - 40:16
**difficult** [3] - 13:25, 23:15, 40:6
**direct** [1] - 17:13
**directly** [1] - 39:21
**disbursements** [1] - 8:18
**disclose** [2] - 36:15, 36:16
**discovery** [4] - 17:21, 31:20, 35:13, 35:16
**Discovery** [2] - 7:12, 31:6
**discovery's** [1] - 32:2
**discretion** [1] - 25:16
**dismissal** [1] - 20:17
**disposal** [1] - 13:12
**dispose** [1] - 15:9

**Disposition** [1] - 30:8
**disputes** [2] - 35:9, 35:15
**distribution** [2] - 33:22, 34:10
**District** [3] - 2:17, 22:3, 44:10
**DISTRICT** [3] - 1:1, 1:1, 1:16
**district** [3] - 18:10, 20:12, 21:2
**DIVISION** [1] - 1:2
**docket** [11] - 6:15, 7:21, 8:9, 16:20, 17:1, 26:24, 28:12, 30:5, 30:10, 31:4, 35:20
**docketed** [3] - 31:4, 31:19, 32:8
**document** [3] - 8:22, 31:5, 41:1
**documentation** [4] - 14:15, 14:16, 34:12, 35:7
**dollars** [4] - 10:2, 33:4, 33:12, 33:13
**done** [12] - 8:4, 10:12, 11:23, 13:5, 13:7, 16:8, 23:3, 26:21, 34:20, 39:22, 41:21
**down** [5] - 9:5, 10:5, 28:23, 32:25, 34:19
**draw** [1] - 35:5
**drive** [1] - 14:19
**driver** [1] - 14:25
**drivers** [3] - 10:10, 11:13, 13:23
**driveway** [1] - 14:2
**ducks** [3] - 4:20, 8:8, 32:1
**due** [2] - 7:10, 7:17
**duty** [3] - 19:8, 27:9, 28:9

### E

**e-mail** [1] - 39:11
**ease** [1] - 17:16
**ECF** [7] - 16:13, 30:7, 30:8, 36:9, 38:22, 40:7, 40:23
**effect** [1] - 19:25
**effectively** [2] - 4:9, 4:13
**effort** [1] - 22:8
**efforts** [3] - 10:20, 29:2, 34:6
**either** [1] - 14:17
**elected** [3] - 19:5, 19:11, 21:15

**emergency** [6] - 5:7, 5:10, 19:24, 20:5, 20:14
**employees** [4] - 10:10, 14:23, 34:14, 34:18
**end** [4] - 8:11, 11:25, 12:18, 30:25
**ended** [1] - 11:6
**ending** [1] - 8:14
**engaged** [2] - 20:21, 40:25
**English** [4] - 11:15, 11:16, 11:19, 11:20
**enter** [2] - 3:5, 17:8
**entered** [5] - 4:4, 5:16, 7:10, 9:22, 15:19
**entire** [1] - 18:12
**entirety** [1] - 20:8
**entities** [1] - 9:16
**entitled** [1] - 44:5
**entity** [2] - 4:10, 15:13
**entity's** [1] - 9:7
**entries** [2] - 10:17, 36:7
**entry** [6] - 6:15, 7:21, 16:20, 17:1, 31:4, 35:20
**environmental** [2] - 13:4, 13:5
**EPA** [1] - 13:9
**especially** [1] - 26:9
**ESQ** [3] - 1:20, 2:2, 2:9
**essentially** [2] - 26:13, 31:8
**established** [1] - 11:18
**estate** [2] - 4:15, 8:18
**et** [2] - 3:4, 8:18
**ET** [1] - 1:9
**everyday** [1] - 11:10
**evidence** [1] - 5:13
**evident** [1] - 20:10
**ex** [1] - 20:22
**examination** [1] - 30:22
**example** [6] - 6:21, 16:10, 16:15, 18:23, 27:9, 31:2
**examples** [2] - 28:3, 28:10
**excellent** [1] - 43:1
**except** [2] - 14:19, 33:20
**EXCHANGE** [1] - 1:5
**Exchange** [5] - 1:21, 3:3, 3:9, 5:17, 31:5
**excuse** [2] - 7:11, 23:17
**exemption** [1] - 35:14

**exempts** [1] - 35:13
**expand** [1] - 38:1
**expect** [1] - 32:5
**expiration** [1] - 30:10
**explain** [6] - 12:14, 18:12, 19:6, 19:12, 28:25, 36:20
**explained** [1] - 18:22
**exposed** [1] - 30:18
**extending** [1] - 17:2
**extension** [2] - 6:5, 7:9
**Extension** [2] - 7:14, 16:24
**extra** [1] - 29:19
**extracting** [1] - 26:24

### F

**FAA** [1] - 12:6
**face** [2] - 28:8, 38:24
**faced** [1] - 28:12
**facility** [6] - 10:7, 12:4, 12:21, 15:5, 15:7
**facts** [1] - 36:23
**fail** [2] - 24:2, 26:6
**failure** [5] - 23:10, 23:11, 24:21
**fairness** [1] - 19:3
**faith** [11] - 20:21, 23:11, 24:24, 26:6, 27:10, 31:19, 35:15, 39:7, 39:25, 42:19
**familiar** [1] - 20:6
**far** [9] - 21:13, 21:15, 24:9, 25:8, 26:10, 26:12, 35:14, 41:12, 41:23
**fashion** [1] - 5:12
**favor** [1] - 5:17
**February** [4] - 10:16, 11:2, 12:12, 36:7
**Federal** [3] - 3:22, 22:4, 22:7, 22:10, 36:19
**federal** [6] - 2:13, 4:10, 9:20, 18:20, 21:1, 34:3
**felt** [1] - 19:7
**few** [2] - 22:15, 33:20
**field** [1] - 12:5
**Fifth** [14] - 17:9, 18:24, 19:8, 27:2, 27:19, 27:20, 27:21, 27:23, 28:5, 28:7, 28:8, 36:17, 37:5
**File** [1] - 7:15
**file** [4] - 6:8, 8:12, 41:22, 43:2
**filed** [18] - 5:6, 6:11,

6:16, 7:12, 7:21, 8:14, 8:15, 15:18, 17:3, 20:16, 26:23, 30:10, 31:7, 32:3, 33:7, 40:17, 40:21, 43:3
**filing** [1] - 26:21
**final** [1] - 32:22
**finally** [2] - 12:11, 20:12
**finance** [2] - 14:10, 15:3
**financial** [6] - 8:17, 10:19, 30:13, 30:17, 41:8, 41:19
**financially** [1] - 20:3
**fine** [1] - 18:13
**finish** [2] - 10:9, 30:2
**finished** [1] - 12:11
**firm** [4] - 9:23, 10:20, 34:24, 41:4
**firms** [1] - 35:8
**first** [16] - 11:16, 16:4, 16:5, 18:9, 18:15, 19:8, 22:2, 22:12, 26:4, 27:8, 28:2, 28:18, 33:24, 36:21, 41:22
**five** [1] - 18:11
**Flagler** [1] - 2:10
**fleet** [1] - 12:19
**Floor** [2] - 2:4, 2:11
**FLORIDA** [1] - 1:1
**Florida** [10] - 1:5, 1:22, 2:4, 2:7, 2:11, 2:18, 10:8, 19:19, 22:3, 44:11
**flying** [1] - 8:8
**follow** [1] - 42:8
**FOR** [3] - 1:20, 2:2, 2:9
**Force** [1] - 12:5
**foregoing** [1] - 44:3
**forensic** [4] - 9:23, 9:24, 15:13, 41:20
**Forest** [1] - 41:4
**former** [4] - 12:5, 13:12, 34:24, 41:4
**Fort** [3] - 10:8, 13:22, 14:17
**forth** [3] - 5:13, 27:5, 38:17
**forward** [1] - 29:10
**four** [2] - 9:11, 30:5
**FPR** [2] - 2:16, 44:9
**frankly** [2] - 26:3, 28:10
**fraud** [2] - 19:18, 19:22
**fraudulent** [1] - 33:7

**fraudulently** [1] - 33:13
**freeze** [3] - 5:9, 19:25, 20:22
**friend** [1] - 3:25
**frivolous** [4] - 20:8, 20:13, 21:4, 21:5
**front** [1] - 23:14
**frozen** [1] - 22:19
**Ft** [2] - 1:5, 2:4
**fueled** [1] - 21:5
**full** [1] - 40:18
**function** [1] - 22:20
**fundamental** [2] - 19:2, 21:7
**funds** [2] - 8:17, 15:16
**future** [2] - 12:13, 30:21

### G

**general** [2] - 16:5, 16:11
**generally** [1] - 25:7
**gentlemen** [5] - 18:3, 18:8, 23:9, 25:19, 28:21
**given** [8] - 16:6, 28:2, 30:25, 31:12, 31:13, 31:14, 40:4
**GLENDA** [2] - 2:16, 44:9
**Glenda_Powers@ flsd.uscourts.gov** [1] - 44:11
**goal** [1] - 26:24
**Gonzalez** [1] - 2:10
**goods** [1] - 28:22
**Government** [1] - 20:6, 29:18
**grant** [1] - 20:7
**granted** [2] - 5:10, 20:5
**great** [2] - 18:1, 29:5
**greater** [1] - 30:19
**gross** [1] - 20:25
**ground** [2] - 13:14, 29:20
**grounds** [1] - 23:13
**guess** [2] - 22:5, 32:24
**guesswork** [1] - 27:16
**guy** [1] - 25:24

### H

**Haitian** [6] - 11:14, 11:20, 11:22, 19:19, 19:20, 34:7
**half** [1] - 10:5
**hand** [1] - 8:20

**hanger** [1] - 12:6
**headquarters** [1] - 5:25
**headway** [1] - 37:22
**hear** [8] - 4:3, 4:4, 8:3, 21:11, 31:17, 38:20, 40:12
**hearing** [4] - 5:11, 5:14, 20:5, 24:5
**heavily** [1] - 7:17
**help** [2] - 34:18, 37:9
**helpful** [4] - 8:1, 8:20, 16:2, 42:15
**hence** [1] - 30:19
**hereby** [1] - 44:3
**himself** [1] - 4:4
**hold** [2] - 27:18, 28:21
**home** [2] - 10:11, 32:25
**honor** [1] - 29:11
**Honor** [40] - 3:7, 3:11, 3:14, 3:18, 3:21, 4:7, 5:5, 6:9, 6:14, 6:18, 7:20, 7:22, 8:6, 8:7, 17:20, 18:9, 19:14, 21:18, 21:22, 22:14, 23:24, 25:9, 26:19, 29:1, 30:1, 32:10, 32:17, 32:21, 33:1, 34:15, 37:25, 38:14, 39:10, 39:18, 40:14, 42:10, 42:16, 42:21, 42:24, 43:9
**HONORABLE** [1] - 1:16
**hope** [3] - 12:18, 26:17, 41:21
**hopefully** [2] - 13:19, 39:22
**house** [1] - 33:16
**Howey** [2] - 23:22, 24:2
**hundreds** [1] - 10:2

### I

**important** [2] - 29:12, 29:13
**imposed** [1] - 30:21
**imposes** [1] - 20:23
**in-ground** [1] - 13:14
**Inc** [2] - 3:4, 4:5
**INC** [1] - 1:9
**including** [2] - 32:5, 38:25
**income** [1] - 14:7
**incomplete** [1] - 36:22
**inconsistent** [1] - 36:23
**Indian** [1] - 19:19

**individual** [2] - 9:4, 14:9
**individuals** [3] - 9:16, 11:4, 14:6
**inferences** [1] - 27:22
**information** [12] - 17:12, 17:13, 26:25, 36:15, 36:16, 36:19, 37:16, 38:13, 39:3, 40:3, 41:16, 41:23
**inherent** [1] - 20:23
**injunction** [2] - 5:14, 5:16
**injunctive** [2] - 20:1, 20:14
**innocence** [1] - 18:18
**inquire** [1] - 37:1
**inquiry** [1] - 37:18
**installed** [1] - 40:20
**instance** [2] - 15:16, 24:18
**intend** [2] - 25:18, 38:24
**intention** [1] - 21:19
**interest** [3] - 9:18, 24:5, 30:20
**interim** [2] - 33:22, 41:19
**interrupted** [2] - 23:20, 29:23
**Interstate** [1] - 33:18
**intricacy** [1] - 20:6
**inundated** [1] - 8:8
**invested** [1] - 14:6
**investigation** [2] - 19:16, 19:23
**investigative** [1] - 36:5
**investment** [3] - 9:5, 19:21, 20:9
**investor** [1] - 9:13
**investor-owned** [1] - 9:13
**investors** [12] - 9:5, 9:6, 11:11, 11:13, 11:14, 13:22, 13:23, 14:10, 15:3, 33:22, 34:1, 34:21
**invoke** [3] - 28:5, 28:7, 28:8
**invoking** [2] - 27:21, 27:23
**involved** [2] - 34:18, 37:19
**involves** [1] - 36:4
**involving** [3] - 9:13, 29:16, 35:23
**Ira** [1] - 3:19
**IRA** [1] - 2:9
**issue** [7] - 13:3, 13:13,

21:14, 25:13, 26:20, 30:5, 35:14
**issued** [1] - 30:9
**issues** [5] - 11:12, 13:18, 15:22, 35:17, 39:13
**items** [1] - 17:22
**itself** [1] - 4:6

### J

**January** [1] - 8:15
**JENNIFER** [1] - 2:3
**Jennifer** [1] - 3:15
**Jewish** [1] - 19:20
**job** [1] - 20:2
**joint** [7] - 6:8, 6:13, 31:25, 32:12, 42:13, 42:18, 43:2
**Judge** [12] - 4:8, 5:10, 8:11, 9:21, 15:18, 20:19, 25:11, 26:12, 29:21, 29:22, 35:18, 41:4
**JUDGE** [1] - 1:16
**judge** [9] - 17:23, 18:10, 19:3, 20:12, 29:14, 29:15, 35:2, 35:4, 36:3
**judge's** [1] - 21:2
**judgment** [1] - 30:12
**Judgment** [8] - 7:8, 7:16, 7:18, 23:20, 24:8, 30:7, 30:23, 31:14
**judicial** [1] - 20:24
**June** [6] - 5:6, 10:18, 11:3, 20:3, 40:19
**just..** [1] - 34:13
**justify** [1] - 30:14

### K

**Kapila** [1] - 9:22
**keep** [1] - 12:17
**keeps** [1] - 34:19
**kept** [1] - 14:22
**kind** [4] - 4:5, 38:4, 43:3, 43:7
**kinds** [1] - 18:18
**knows** [1] - 27:24

### L

**landlord** [4] - 12:1, 12:10, 12:12, 13:10
**language** [1] - 11:16
**languished** [3] - 16:7, 17:3, 17:14
**largely** [1] - 23:21

**last** [1] - 40:14
**Lauderdale** [2] - 1:5, 2:4
**law** [9] - 9:20, 11:16, 15:4, 15:7, 23:12, 23:18, 29:24, 35:13, 38:15
**lawful** [1] - 40:2
**laws** [1] - 15:4
**lawsuit** [1] - 40:25
**lawyer** [1] - 19:21
**lease** [3] - 9:8, 12:2, 14:13
**leaser** [2] - 19:20, 30:21
**least** [1] - 14:9
**leave** [1] - 5:4
**leaves** [1] - 34:23
**left** [1] - 12:1
**legal** [1] - 34:20
**legitimate** [1] - 35:15
**LEIBOWITZ** [1] - 1:16
**lender** [2] - 19:20, 30:21
**lenders** [1] - 14:3
**lessee** [1] - 14:12
**level** [1] - 17:23
**Levenson** [3] - 35:2, 35:4, 41:5
**liability** [1] - 30:19
**Liability** [1] - 37:6
**licenses** [1] - 14:1
**Liebler** [1] - 2:10
**lies** [1] - 21:5
**life** [2] - 13:12, 38:5
**lifts** [1] - 13:14
**likely** [2] - 5:25, 24:2
**Limited** [1] - 37:6
**limited** [2] - 38:7, 38:25
**links** [1] - 11:21
**list** [5] - 17:24, 37:17, 38:3, 39:2, 40:4
**listen** [2] - 24:3, 24:10
**listening** [2] - 24:17, 27:11
**LLC** [2] - 15:14, 15:20
**loans** [6] - 9:7, 9:15, 9:16, 9:19, 11:3, 14:5
**LOGISTICS** [1] - 1:9
**Logistics** [7] - 3:4, 4:5, 4:9, 4:10, 4:14, 15:15, 33:14
**look** [1] - 16:20
**LOPEZ** [1] - 2:3
**Lopez** [1] - 15:19
**losing** [1] - 10:2
**Lubbock** [10] - 10:7,

12:4, 12:21, 12:25, 13:21, 14:17, 14:18, 33:15, 33:16, 33:18
**lucky** [1] - 35:5

**M**

**magistrate** [2] - 17:22, 36:2
**Magistrate** [1] - 35:18
**mail** [1] - 39:11
**main** [1] - 11:9
**major** [5] - 10:15, 11:19, 11:21, 12:6, 12:7
**majority** [1] - 19:20
**management** [2] - 4:12, 19:19
**March** [3] - 1:7, 31:21, 41:21
**material** [1] - 21:5
**matter** [4] - 3:24, 6:24, 38:1, 44:5
**matters** [2] - 7:2, 30:6
**mean** [3] - 26:15, 28:7, 33:25
**meaning** [2] - 13:7, 37:11
**meant** [1] - 10:14
**meet** [1] - 32:6
**meeting** [3] - 26:4, 28:2, 29:8
**member** [1] - 37:6
**mentioned** [1] - 40:15
**merit** [1] - 24:8
**metaphor** [1] - 32:1
**method** [1] - 9:4
**MIAMI** [1] - 1:2
**Miami** [6] - 1:22, 2:11, 2:18, 2:18, 44:10, 44:11
**million** [4] - 19:18, 33:4, 33:12, 33:13
**mind** [1] - 23:25
**minimum** [1] - 26:11
**minute** [2] - 12:14, 30:1
**minutes** [1] - 18:11
**misleading** [1] - 21:5
**missed** [1] - 32:23
**mistakes** [1] - 21:8
**modification** [3] - 39:12, 39:15, 39:16
**modify** [1] - 38:11
**Monday** [1] - 20:18
**money** [2] - 10:22, 11:7
**month** [6] - 10:2, 10:5, 12:17, 12:18, 40:20
**month-and-a-half** [1] -

10:5
**monthly** [2] - 14:5, 14:7
**months** [3] - 10:12, 14:9, 22:15
**moot** [3] - 38:22, 39:4, 40:7
**morning** [13] - 3:7, 3:10, 3:11, 3:13, 3:14, 3:17, 3:18, 3:20, 3:21, 4:2, 7:4, 18:9, 27:12
**most** [4] - 9:16, 17:22, 33:19, 38:4
**Motion** [18] - 7:8, 7:11, 7:12, 7:14, 7:16, 7:18, 16:12, 23:20, 24:8, 30:7, 30:23, 31:14, 35:20, 35:21, 36:9, 36:10
**motion** [10] - 7:19, 15:8, 15:18, 16:23, 17:11, 22:14, 28:20, 29:4, 38:21, 39:6
**motions** [2] - 32:3, 35:23
**moved** [2] - 12:12, 22:17
**MR** [80] - 3:7, 3:11, 3:14, 3:18, 3:21, 4:7, 5:5, 6:20, 7:2, 8:6, 8:24, 9:2, 12:9, 13:8, 13:14, 13:18, 13:21, 15:12, 15:24, 16:3, 16:14, 16:18, 16:20, 16:23, 17:1, 17:20, 18:9, 19:14, 19:16, 21:18, 21:22, 21:24, 22:14, 22:19, 22:25, 23:5, 23:24, 25:9, 26:19, 29:1, 29:11, 30:1, 30:4, 32:10, 32:17, 32:21, 33:1, 34:17, 35:2, 35:4, 35:20, 35:25, 36:2, 36:11, 36:13, 37:15, 37:25, 38:3, 38:10, 38:14, 39:10, 39:18, 40:14, 40:22, 40:24, 41:3, 41:8, 41:15, 41:18, 42:1, 42:3, 42:5, 42:10, 42:12, 42:15, 42:21, 42:24, 42:25, 43:9, 43:12
**Mukamal** [1] - 9:23
**multiple** [1] - 10:22
**must** [2] - 20:11, 30:13

10:5
**monthly** [2] - 14:5, 14:7
**months** [3] - 10:12, 14:9, 22:15
**moot** [3] - 38:22, 39:4, 40:7
**morning** [13] - 3:7, 3:10, 3:11, 3:13, 3:14, 3:17, 3:18, 3:20, 3:21, 4:2, 7:4, 18:9, 27:12
**most** [4] - 9:16, 17:22, 33:19, 38:4

**N**

**N.W** [1] - 2:7
**name** [3] - 9:7, 9:8, 39:13
**narrative** [2] - 8:16, 41:23
**nationwide** [1] - 9:9
**nature** [1] - 21:4
**navigate** [1] - 29:3
**near** [1] - 33:18
**necessarily** [1] - 11:16
**need** [8] - 18:11, 21:11, 24:23, 24:24, 30:3, 31:11, 36:5, 41:12
**needed** [1] - 14:23
**needs** [2] - 36:17, 37:5
**nefarious** [1] - 34:12
**negotiate** [1] - 22:20
**negotiated** [2] - 11:25, 12:13
**negotiating** [2] - 5:23, 14:9
**new** [6] - 6:6, 17:2, 19:3, 28:18, 29:14, 40:10
**next** [3] - 18:21, 19:7, 28:15
**NO** [1] - 1:3
**no-contact** [1] - 38:3
**non** [6] - 3:19, 6:22, 12:20, 13:1, 16:17, 28:13
**NON** [1] - 2:9
**non-compliant** [1] - 28:13
**non-cooperation** [1] - 16:17
**non-operational** [2] - 12:20, 13:1
**non-participation** [1] - 6:22
**non-party** [1] - 3:19
**NON-PARTY** [1] - 2:9
**none** [1] - 34:2
**North** [8] - 2:18, 15:14, 15:20, 17:5, 36:14, 37:2, 37:6, 44:10
**notes** [1] - 27:13
**nothing** [4] - 23:3, 34:12, 37:11, 37:12
**nothing's** [1] - 4:1
**notice** [6] - 15:6, 15:9, 20:15, 21:8, 30:9, 36:24
**notified** [1] - 14:14
**notify** [1] - 11:8
**November** [2] - 11:11,

11:25
**number** [8] - 7:2, 8:9, 31:4, 35:8, 35:21, 35:22, 40:23
**Number** [1] - 3:2

**O**

**O'BRIEN** [9] - 1:20, 3:7, 5:5, 6:20, 7:2, 23:24, 42:12, 42:15, 42:24
**O'Brien** [3] - 3:8
**oath** [3] - 26:25, 27:1, 36:20
**obfuscate** [1] - 23:17
**objection** [1] - 39:9
**objective** [2] - 19:24, 21:8
**objects** [1] - 38:19
**observed** [2] - 24:13, 24:14
**obtain** [1] - 6:6
**obtaining** [1] - 20:21
**occasion** [1] - 30:13
**OF** [1] - 1:1
**offend** [1] - 4:23
**offer** [2] - 38:15, 38:16
**Office** [3] - 2:13, 3:23, 17:7
**office** [2] - 11:9, 32:18
**officer** [1] - 37:6
**Official** [1] - 2:17
**old** [1] - 4:22
**once** [2] - 14:15, 39:11
**One** [1] - 3:19
**ONE** [1] - 2:9
**one** [22] - 6:21, 9:13, 9:18, 10:13, 10:16, 11:10, 11:12, 12:19, 14:12, 15:16, 16:5, 25:11, 29:21, 29:22, 33:2, 34:19, 36:3, 39:19, 39:20, 40:14, 43:4, 43:13
**ongoing** [4] - 19:18, 30:6, 35:16, 41:20
**open** [2] - 15:22, 17:22
**operated** [2] - 9:3, 9:9
**operating** [1] - 12:23
**operation** [1] - 10:3
**operational** [3] - 12:20, 12:22, 13:1
**opportunity** [1] - 24:16
**opposed** [1] - 27:1
**opposition** [1] - 23:23
**order** [22] - 3:1, 4:8, 5:9, 6:17, 7:23, 8:11,

9:22, 11:22, 15:19, 17:1, 17:13, 17:23, 20:25, 21:2, 24:19, 25:10, 25:13, 25:16, 30:21, 32:12, 34:10, 36:14
**Order** [3] - 16:12, 35:22, 36:10
**ordering** [1] - 31:18
**originally** [1] - 17:3
**outcome** [1] - 20:18
**outset** [1] - 19:16
**outstanding** [6] - 6:17, 7:3, 7:8, 7:11, 7:14, 7:20
**own** [1] - 25:12
**owned** [4] - 9:12, 9:13, 11:13, 33:16
**owns** [1] - 33:14

**P**

**P.A** [1] - 2:3
**p.m** [1] - 20:4
**pages** [2] - 8:16
**Pages** [1] - 1:11
**paid** [1] - 9:19
**Palm** [2] - 11:14, 34:7
**paper** [1] - 29:25
**papers** [5] - 16:16, 24:2, 24:4, 26:12, 32:14
**parcel** [2] - 33:5, 33:18
**part** [4] - 5:8, 11:2, 12:19, 33:24
**parte** [1] - 20:22
**partial** [2] - 34:10, 38:20
**partially** [1] - 16:18
**participant** [1] - 19:20
**participate** [2] - 24:21, 24:24
**participation** [2] - 6:22, 31:9
**parties** [2] - 5:12, 35:24
**parts** [1] - 12:23
**Party** [1] - 35:21
**PARTY** [1] - 2:9
**party** [1] - 3:19
**passing** [1] - 8:22
**PAUL** [1] - 2:3
**paying** [1] - 11:5, 12:16, 14:4
**payments** [1] - 14:8
**pending** [3] - 30:6, 34:25, 35:1
**Pending** [1] - 30:8
**people** [8] - 11:6,

13:9, 20:2, 34:7, 34:20, 34:21, 38:5
**per** [3] - 12:17
**percent** [2] - 9:19
**person** [5] - 37:10, 38:8, 38:12, 39:8
**persons** [1] - 39:12
**petroleum** [1] - 13:3
**phonetic** [1] - 19:18
**pick** [1] - 13:24
**piece** [1] - 32:22
**Pierce** [3] - 10:8, 13:22, 14:17
**place** [4] - 7:23, 14:4, 17:18, 31:24
**PLAINTIFF** [2] - 1:7, 1:20
**plaintiff** [3] - 3:6, 30:9, 30:13
**Plaintiff** [1] - 3:8
**platting** [1] - 33:12
**pleading** [3] - 20:7, 21:4, 30:12
**pleadings** [1] - 11:21
**Pleadings** [8] - 7:9, 7:16, 7:18, 23:21, 24:9, 30:7, 30:23, 31:14
**point** [2] - 5:19, 22:12
**points** [1] - 27:4
**Pompano** [1] - 33:6
**ponzi** [2] - 5:2, 29:16
**Portuondo** [1] - 2:10
**position** [1] - 23:15
**possible** [2] - 29:4, 34:23
**post** [1] - 26:24
**power** [2] - 20:25, 28:22
**POWERS** [2] - 2:16, 44:9
**Powers** [1] - 44:8
**powers** [1] - 28:16
**precludes** [1] - 38:4
**prejudice** [2] - 39:5, 40:8
**preliminary** [2] - 5:14, 5:16
**PRESENT** [1] - 2:13
**presented** [1] - 20:15
**presumption** [2] - 18:18, 30:14
**primary** [1] - 21:8
**privilege** [1] - 18:24
**privileged** [1] - 27:2
**pro** [1] - 3:12
**PRO** [1] - 2:6
**problem** [5] - 11:2, 13:9, 13:15, 14:18,

33:24
**problems** [7] - 8:5, 10:13, 11:12, 12:15, 12:19, 15:2, 40:11
**proceed** [1] - 32:4
**proceeded** [1] - 5:18
**proceeding** [4] - 18:23, 19:10, 23:7, 28:6
**proceedings** [2] - 43:15, 44:4
**process** [7] - 5:22, 5:23, 10:25, 14:14, 15:12, 20:24, 21:16
**Program** [1] - 22:2
**promoter** [1] - 19:19
**proof** [1] - 34:2
**proofs** [1] - 34:8
**properly** [2] - 23:12, 32:18
**property** [2] - 33:6, 33:9
**proposed** [2] - 6:17, 31:25
**prosecutor** [1] - 4:22
**Protective** [1] - 35:21
**prove** [1] - 31:2
**provide** [9] - 17:13, 17:23, 17:24, 31:20, 32:12, 36:19, 41:13, 42:15, 42:16
**provided** [2] - 20:20, 32:3, 41:13
**providing** [2] - 6:13, 40:3
**Public** [4] - 2:13, 3:22, 13:10, 17:7
**public** [2] - 30:20, 33:17
**purchase** [1] - 9:7
**purchased** [1] - 33:5
**purpose** [3] - 38:8, 38:9, 39:17
**put** [13] - 5:13, 9:5, 11:20, 12:23, 14:2, 17:16, 23:12, 24:1, 24:19, 24:20, 31:10, 31:21, 31:25
**putting** [1] - 6:24, 23:23

**Q**

**quarter** [2] - 8:12, 8:14
**quarterly** [1] - 41:10
**questions** [7] - 7:24, 16:5, 18:3, 23:12, 25:25, 31:16, 39:2
**Quick** [2] - 10:14, 10:17

**quite** [3] - 4:21, 17:16, 18:20

**R**

**raise** [1] - 21:14
**raised** [1] - 27:20
**ranch** [1] - 33:15
**range** [1] - 31:23
**rate** [2] - 9:19, 9:20
**rather** [1] - 13:15
**RBL** [2] - 30:21, 33:14
**re** [4] - 29:20, 33:12, 40:10, 43:7
**re-platting** [1] - 33:12
**re-set** [2] - 29:20, 40:10
**re-setting** [1] - 43:7
**reached** [1] - 25:12
**read** [6] - 4:25, 23:22, 24:4, 24:10, 40:23, 41:18
**ready** [1] - 11:24, 17:24, 30:11
**real** [1] - 13:15
**really** [5] - 4:21, 10:14, 12:22, 28:21, 32:6
**reason** [3] - 27:5, 27:24, 33:16
**reasonable** [3] - 22:20, 41:24, 42:2
**reasonably** [1] - 4:17
**reasons** [2] - 6:10, 20:20
**recalcitrance** [2] - 16:17, 24:7
**receipts** [1] - 8:18
**receivable** [1] - 15:17
**receiver** [23] - 5:9, 7:2, 8:2, 16:9, 20:23, 21:14, 24:24, 26:23, 28:19, 29:17, 30:13, 30:15, 30:17, 31:16, 32:23, 38:9, 38:18, 38:19, 38:25, 39:5, 39:8, 39:13, 43:6
**Receiver's** [1] - 35:22
**receivers** [20] - 3:16, 4:8, 4:11, 4:14, 8:2, 8:12, 9:25, 10:4, 10:18, 11:10, 11:18, 15:20, 16:8, 26:22, 33:11, 34:24, 35:7, 35:16, 36:5, 36:14
**Receivers'** [1] - 35:20
**receivers'** [4] - 8:17, 9:21, 26:20, 40:2
**receivership** [18] - 4:10, 4:14, 14:4, 15:21, 17:12, 19:24,

20:1, 20:14, 30:18, 30:19, 33:3, 33:7, 33:10, 34:3, 40:15, 40:20, 40:25
**Receivership** [1] - 36:10
**receivership's** [1] - 11:5
**receiving** [1] - 9:15
**reconstruct** [1] - 10:25
**record** [2] - 3:6, 11:4
**records** [2] - 10:19, 10:24
**refer** [1] - 26:20
**refers** [1] - 41:2
**regarding** [1] - 42:13
**relate** [1] - 35:17
**related** [2] - 5:3, 18:16, 29:18
**release** [1] - 14:24
**relief** [10] - 5:7, 5:10, 5:21, 6:2, 20:1, 20:7, 20:14, 33:4, 33:5
**rely** [1] - 7:17
**remain** [1] - 6:17
**remains** [2] - 4:10, 4:11
**removal** [1] - 13:9
**removed** [1] - 13:8
**renewed** [1] - 17:11
**Renewed** [1] - 36:9
**rent** [1] - 12:13
**repeating** [1] - 23:1
**Report** [2] - 31:6, 35:10
**report** [20] - 6:8, 6:11, 6:13, 6:16, 7:22, 7:24, 8:13, 10:1, 11:19, 31:20, 40:15, 41:9, 41:10, 41:11, 41:15, 41:19, 41:21, 42:13, 42:18, 43:3
**REPORTED** [1] - 2:16
**Reporter** [1] - 2:17
**reports** [2] - 1:19, 35:12
**represent** [4] - 3:23, 19:5, 19:11, 21:15
**representation** [1] - 38:24
**representative** [8] - 17:5, 25:25, 36:18, 37:1, 37:14, 38:9, 39:1, 40:3
**represented** [3] - 5:15, 6:4, 24:18
**representing** [3] - 18:25, 23:16, 26:10
**request** [3] - 22:24,

30:12, 39:12
**require** [1] - 16:6
**required** [5] - 8:12, 18:14, 19:1, 23:18, 35:11
**requirement** [1] - 17:13
**requires** [1] - 36:15
**research** [1] - 32:10
**resistance** [1] - 36:21
**resolved** [2] - 34:22, 36:3
**respect** [2] - 23:19, 27:19
**Respond** [1] - 16:24
**respond** [1] - 31:13
**responding** [1] - 26:14
**Response** [2] - 7:15, 35:22
**response** [2] - 7:16, 7:17
**responsible** [1] - 12:2
**rest** [2] - 9:12, 42:10
**restraining** [1] - 5:8
**rests** [1] - 23:21
**result** [5] - 6:15, 15:18, 19:25, 22:16, 33:11
**retain** [1] - 21:24
**retained** [2] - 34:14, 34:17
**retaining** [2] - 21:16, 21:20
**rightly** [1] - 18:20
**rights** [6] - 18:17, 18:19, 18:23, 25:5, 36:17, 40:2
**road** [1] - 28:23
**Robert** [1] - 20:19
**ROBERT** [1] - 1:20
**Robinson** [1] - 41:4
**row** [3] - 4:20, 8:9, 32:2
**ROYAL** [2] - 1:9, 3:15
**Royal** [21] - 3:3, 4:5, 4:9, 4:14, 9:6, 9:8, 9:9, 9:12, 9:15, 10:1, 10:13, 11:3, 11:9, 14:4, 15:15, 15:16, 33:14, 34:14, 34:18, 35:9
**RPR** [2] - 2:16, 44:9
**Rule** [5] - 17:4, 30:9, 36:19, 36:25, 37:17
**rules** [7] - 23:7, 24:13, 25:19, 28:4, 28:11, 32:7, 36:13
**runway** [1] - 14:19
**Russell** [1] - 3:8

**RUSSELL** [1] - 1:20

## S

**S.E** [1] - 2:3
**s/Glenda** [1] - 44:8
**sanction** [3] - 20:18, 20:23, 30:9
**sanctionable** [1] - 20:7
**sanctions** [2] - 23:13, 26:7
**SANJAY** [1] - 2:6
**Sanjay** [2] - 3:11, 3:23
**sanjay** [1] - 4:3
**SAR** [1] - 35:11
**Saturday** [1] - 14:21
**saw** [1] - 15:16
**schedule** [3] - 23:11, 31:25, 40:11
**scheduled** [3] - 6:10, 17:4, 36:25
**Scheduled** [1] - 1:9
**Scheduling** [1] - 31:6
**scheduling** [16] - 6:8, 6:11, 6:16, 6:24, 7:22, 7:23, 24:19, 25:10, 25:13, 25:16, 31:20, 32:12, 40:1, 42:13, 42:18, 43:3
**scheme** [3] - 5:2, 29:16, 30:15
**Scott** [1] - 2:3
**se** [1] - 3:12
**SE** [1] - 2:6
**seated** [2] - 4:16, 37:22
**SEC** [26] - 4:18, 10:4, 20:12, 20:15, 23:22, 24:1, 24:3, 24:10, 24:19, 24:25, 25:15, 27:24, 28:15, 29:17, 31:13, 31:19, 31:21, 31:25, 32:8, 32:11, 32:22, 33:21, 34:10, 40:1, 42:11, 43:3
**second** [1] - 23:6
**secure** [2] - 10:11, 22:8
**SECURITIES** [1] - 1:5
**Securities** [4] - 1:21, 3:3, 3:8, 5:17
**security** [1] - 30:6
**Security** [1] - 31:5
**see** [10] - 7:7, 18:20, 23:3, 24:8, 26:9, 31:25, 34:10, 39:22, 40:9, 42:18
**seek** [1] - 19:24
**seeking** [1] - 20:21

**sell** [3] - 14:11, 15:5, 15:9
**send** [1] - 14:25
**sense** [1] - 7:18
**sent** [1] - 15:6
**separate** [3] - 13:5, 15:13, 40:24
**separately** [2] - 17:21, 23:13
**serious** [1] - 29:16
**seriously** [2] - 25:22, 26:2
**Service** [1] - 22:7
**set** [6] - 6:25, 9:13, 14:14, 25:3, 29:20, 40:10
**setting** [1] - 24:21, 43:7
**settlement** [1] - 5:23
**shear** [1] - 28:10
**Sheetal** [1] - 6:2
**Shelby** [1] - 20:19
**short** [3] - 8:24, 9:2, 9:15
**short-term** [1] - 9:15
**show** [2] - 5:11, 20:15
**shows** [1] - 25:24
**shut** [1] - 10:5
**shutdown** [1] - 11:24
**side** [2] - 8:3, 26:16
**SILVERSTEIN** [2] - 2:9, 3:18
**Silverstein** [1] - 3:19
**SINGH** [38] - 3:11, 8:6, 18:9, 19:14, 19:16, 21:18, 21:22, 21:24, 22:14, 22:19, 22:25, 23:5, 25:9, 26:19, 29:1, 29:11, 30:1, 30:4, 32:10, 32:16, 37:25, 38:3, 38:14, 39:10, 39:18, 40:14, 40:22, 40:24, 41:8, 41:15, 42:1, 42:3, 42:5, 42:10, 42:21, 42:25, 43:9
**Singh** [42] - 3:11, 4:12, 5:15, 5:19, 6:2, 6:3, 6:9, 6:12, 6:22, 7:6, 7:8, 7:13, 16:23, 17:2, 17:7, 17:17, 18:2, 21:10, 24:11, 29:5, 30:24, 36:16, 36:20, 36:21, 37:4, 37:9, 37:15, 37:23, 38:7, 39:9, 39:23, 40:5, 40:13, 41:1, 41:6, 41:18, 41:25, 42:8, 42:9, 42:20, 43:8

**Singhal** [8] - 4:8, 5:10, 9:22, 15:18, 25:11, 26:13, 29:21, 29:22
**Singhal's** [1] - 8:11
**single** [1] - 31:22
**sit** [1] - 18:25
**site** [1] - 34:4
**sitting** [3] - 18:21, 19:3, 19:7
**situation** [1] - 38:1
**six** [3] - 4:22, 9:12, 14:8
**slow** [1] - 4:21
**small** [1] - 12:16
**sold** [4] - 33:15, 33:17, 33:18, 33:20
**sole** [2] - 37:5, 37:6
**solicited** [1] - 9:15
**someone** [10] - 17:7, 17:10, 26:10, 36:18, 37:5, 37:11, 37:13, 37:15, 37:19, 39:1
**sometime** [1] - 33:3
**somewhere** [1] - 9:11
**soon** [1] - 23:23
**sophisticated** [1] - 35:5
**sort** [1] - 7:15
**sought** [2] - 5:7, 5:8
**sound** [1] - 42:2
**sounds** [1] - 41:24
**South** [1] - 19:18
**Southern** [1] - 22:3
**SOUTHERN** [1] - 1:1
**speaking** [1] - 7:3
**specializes** [1] - 9:23
**specific** [2] - 16:10, 39:17
**specifically** [1] - 35:13
**speed** [2] - 5:4, 43:8
**Springs** [4] - 2:7, 9:4, 11:9, 11:25
**standard** [2] - 27:7, 27:18
**start** [13] - 4:18, 4:19, 5:1, 13:24, 18:4, 29:7, 29:21, 31:2, 32:1, 32:2, 32:4, 38:23, 40:8
**started** [1] - 19:23
**starting** [1] - 3:6
**statement** [1] - 30:24
**statements** [1] - 21:11
**States** [3] - 2:17, 29:18, 44:10
**states** [1] - 19:18
**STATES** [2] - 1:1, 1:16
**status** [8] - 8:13, 11:19, 27:7, 40:15,

41:9, 41:10, 41:11, 41:15
**STATUS** [1] - 1:14
**statutory** [2] - 15:6, 18:19
**Stay** [3] - 7:11, 7:12, 30:8
**stay** [1] - 7:19
**staying** [2] - 13:16, 13:19
**sTENOGRAPHICALL Y** [1] - 2:16
**still** [9] - 10:24, 12:5, 12:14, 12:16, 13:1, 19:13, 19:25, 31:14, 41:20
**stipulations** [1] - 25:11
**stop** [5] - 16:1, 18:13, 21:10, 37:8, 38:6
**storage** [1] - 12:7, 15:5, 15:6
**Street** [2] - 2:3, 2:10
**street** [1] - 26:5
**stretch** [1] - 32:25
**sub** [1] - 15:21
**sub-receivership** [1] - 15:21
**subjective** [1] - 19:21
**submit** [9] - 6:13, 22:14, 22:23, 23:1, 30:13, 30:22, 35:12, 40:15, 41:9
**submits** [1] - 39:15
**submitted** [2] - 26:12, 32:18
**subpoenaed** [1] - 35:7
**subsequent** [1] - 9:21
**substantial** [3] - 14:7, 26:23, 36:24
**sued** [1] - 34:24
**suffering** [1] - 20:3
**suggestion** [2] - 42:12, 42:22
**Suite** [1] - 1:22
**summary** [1] - 8:25
**supplanted** [1] - 4:9
**supplement** [1] - 41:10
**support** [1] - 5:13
**supposition** [1] - 19:17
**Suspicious** [1] - 35:10
**suspicious** [1] - 35:12
**system** [3] - 10:14, 34:2, 34:3

## T

**tangible** [2] - 33:19

**tasking** [1] - 32:14
**TATELBAUM** [33] - 2:2, 3:14, 4:7, 8:24, 9:2, 12:9, 13:8, 13:14, 13:18, 13:21, 15:12, 15:24, 16:3, 16:14, 16:18, 16:20, 16:23, 17:1, 17:20, 33:1, 34:17, 35:2, 35:4, 35:20, 35:25, 36:2, 36:11, 36:13, 37:15, 38:10, 41:3, 41:18, 43:12
**Tatelbaum** [3] - 3:15, 4:7, 17:19
**temporary** [1] - 5:8
**term** [1] - 9:15
**termination** [1] - 14:13
**test** [2] - 23:22, 24:3
**testify** [2] - 37:4, 37:19
**Texas** [5] - 10:7, 12:4, 15:4, 15:7, 33:15
**THE** [84] - 1:16, 1:20, 2:2, 3:5, 3:10, 3:13, 3:17, 3:20, 4:2, 4:16, 6:19, 6:21, 8:1, 8:20, 8:23, 9:1, 12:8, 13:7, 13:12, 13:16, 13:20, 15:11, 15:23, 16:1, 16:4, 16:15, 16:19, 16:22, 16:25, 17:15, 18:1, 18:13, 19:15, 21:10, 21:19, 21:23, 21:25, 22:18, 22:22, 23:1, 23:6, 23:25, 25:17, 27:3, 29:5, 29:12, 30:3, 30:24, 32:13, 32:20, 32:22, 34:16, 35:1, 35:3, 35:19, 35:23, 36:1, 36:8, 36:12, 37:8, 37:21, 38:2, 38:6, 38:11, 38:17, 39:14, 39:19, 40:21, 40:23, 41:1, 41:6, 41:12, 41:17, 41:24, 42:2, 42:4, 42:7, 42:11, 42:14, 42:17, 42:22, 43:1, 43:10, 43:14
**themself** [1] - 30:18
**themselves** [1] - 26:10
**therefore** [1] - 26:13
**they've** [1] - 15:9
**Third** [1] - 35:21
**third** [1] - 35:23
**Third-Party** [1] - 35:21
**thousands** [1] - 4:9
**three** [7] - 14:18, 18:11, 29:15, 39:12,

40:12, 42:19, 43:2
**threshold** [1] - 30:5
**throughout** [1] - 20:11
**throw** [2] - 23:17, 32:24
**Thursday** [1] - 14:21
**timely** [1] - 32:19
**tires** [2] - 13:4, 13:13
**today** [18] - 6:1, 6:3, 18:25, 21:12, 27:6, 28:2, 29:8, 37:11, 37:13, 37:22, 38:21, 38:24, 39:6, 39:23, 40:8, 42:19, 43:2
**today's** [1] - 40:10
**tolerated** [1] - 28:14
**took** [3] - 10:5, 10:12, 11:3
**tool** [1] - 36:5
**total** [1] - 33:24
**towed** [1] - 13:2
**towing** [1] - 14:25
**track** [1] - 32:5
**trailers** [1] - 33:20
**transactions** [1] - 9:13
**transcription** [1] - 44:4
**transfer** [1] - 33:8
**transferred** [3] - 33:4, 33:9, 33:13
**transferring** [1] - 10:22
**transfers** [1] - 15:15
**translate** [3] - 11:19, 11:20, 11:22
**trial** [1] - 30:11
**tried** [2] - 11:6, 39:20
**Tripp** [1] - 2:3
**TRO** [5] - 19:24, 20:1, 20:5, 20:7, 20:22
**truck** [6] - 9:6, 9:7, 9:8, 11:13, 13:23
**trucking** [3] - 9:3, 9:9, 10:3
**Trucking** [1] - 19:19
**trucks** [23] - 9:10, 9:12, 9:14, 10:6, 10:7, 10:9, 10:10, 12:8, 12:9, 12:14, 12:16, 12:17, 12:22, 12:24, 13:1, 13:21, 13:22, 13:24, 14:7, 14:8, 14:10, 15:10, 33:20
**true** [1] - 31:10
**try** [2] - 9:2, 14:10
**trying** [3] - 10:25, 40:6, 42:5
**Tuesday** [1] - 14:21
**turn** [3] - 17:17, 18:2,

21:14
**two** [24] - 4:13, 5:20, 5:21, 6:5, 6:10, 10:12, 11:10, 12:2, 18:3, 18:8, 21:25, 23:9, 24:17, 25:19, 26:5, 27:4, 27:11, 28:2, 28:10, 34:14, 34:17, 39:12, 39:23, 43:4
**two-way** [1] - 26:5
**two-week** [1] - 6:5
**types** [1] - 5:12
**typical** [1] - 5:11

**U**

**unacceptable** [1] - 28:13
**undefined** [1] - 20:9
**under** [17] - 4:8, 8:11, 15:4, 15:7, 20:23, 23:12, 23:18, 26:25, 27:1, 27:2, 29:22, 30:9, 36:13, 36:19, 36:20, 37:17, 38:3
**under-oath** [1] - 27:1
**unfolds** [1] - 21:3
**Unilateral** [1] - 31:6
**unilateral** [2] - 24:19, 31:23
**unilaterally** [4] - 6:12, 6:16, 31:7, 43:4
**unique** [1] - 9:4
**UNITED** [2] - 1:1, 1:16
**united** [1] - 2:17
**United** [2] - 29:17, 44:10
**unless** [3] - 7:24, 32:22, 38:19
**unlike** [1] - 34:1
**unsophistication** [1] - 33:25
**up** [14] - 5:4, 5:24, 6:21, 8:20, 13:7, 13:24, 14:14, 23:14, 23:25, 25:24, 27:4, 30:2, 42:8, 43:8
**up-to-speed** [1] - 43:8

**V**

**vacant** [1] - 33:17
**Valle** [1] - 35:18
**vehicle** [2] - 15:1, 15:5
**vehicles** [2] - 15:1, 15:2
**versus** [2] - 3:3, 20:12
**vicious** [1] - 19:23
**view** [3] - 18:7, 36:12,

36:13
**violative** [1] - 9:20
**virtually** [1] - 33:19
**Voluntary** [3] - 22:2, 22:8, 32:15
**Volunteer** [1] - 22:15
**volunteer** [1] - 22:16
**VS** [1] - 1:8

**W**

**Wahba** [2] - 3:16, 15:19
**WAHBA** [1] - 2:3
**wait** [2] - 11:5, 24:1
**waiver** [3] - 25:4, 25:5, 26:8
**walk** [1] - 31:3
**walking** [1] - 31:3
**WALLACE** [3] - 2:13, 32:17, 32:21
**wALLACE** [1] - 3:21
**Wallace** [1] - 3:22
**water** [1] - 29:22
**ways** [1] - 25:19
**weapon** [1] - 20:9
**web** [1] - 34:4
**website** [2] - 11:18, 14:16
**Wednesday** [1] - 1:7
**week** [4] - 6:5, 14:18, 14:20, 41:22
**weekend** [1] - 10:1
**weeks** [3] - 29:15, 42:19, 43:2
**welcome** [1] - 19:6
**wesley** [1] - 3:22
**WESLEY** [1] - 2:13
**whereby** [1] - 9:4
**whole** [1] - 21:4
**wife** [1] - 6:3
**wish** [3] - 19:13, 22:6, 38:8
**withdrawn** [1] - 5:20
**withdrew** [6] - 5:19, 6:5, 6:9, 6:12, 7:6, 36:24
**word** [5] - 19:21, 29:9, 31:1, 39:23, 40:10
**words** [1] - 21:1
**wrench** [1] - 23:17
**written** [2] - 15:17, 18:11

**Y**

**yard** [1] - 12:20
**years** [4] - 4:22, 12:2
**yourself** [6] - 19:1, 19:6, 19:11, 21:15,

21:20, 23:16