UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 23-61179-CIV-LEIBOWITZ

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

v.

ROYAL BENGAL LOGISTICS, INC., and
SANJAY SINGH,

    Defendants.
_____/

# RECEIVERS' RENEWED MOTION FOR AUTHORIZATION TO SELL ABANDONED VEHICLES, ESTABLISHMENT OF LIEN CLAIM FUND AND INCORPORATED MEMORNADUM OF LAW

PAUL O. LOPEZ and JENNIFER H. WAHBA ("**Receivers**"), as Court-appointed Receivers for the Estate of Royal Bengal Logistics, Inc. ("**RBL**"), by and through undersigned Court-appointed counsel, file this Renewed Motion seeking authorization from the Court to sell and dispose of abandoned vehicles and place the proceeds therefrom into a lien claim fund to which lienholders' interests attach ("**Motion**") on the following grounds[1]:

1.    By virtue of an Order of this Court dated June 21, 2023, the Receivers were appointed to take charge of all RBL's assets ("Receivership Order"). [*See* ECF No. 11].

2.    Prior to the appointment of the Receivers and the entry of the Receivership Order, RBL operated a nationwide trucking business. Under the business scheme developed by RBL,

---

[1] During a hearing before the Court on May 31, 2024, the Court suggested that the Receivers file an amended motion in order to more fully set forth the Court's authority to grant the relief requested. Consistent with the Court's suggestion, the Receivers filed their Amended Motion for Authorization to Sell Abandoned Vehicles [ECF No. 279] on June 12, 2024 ("**Amended Motion**"). The Court denied the Receivers' Amended Motion on July 12, 2024 [ECF No. 303]. In the Order, the Court indicated it "believe[d] that it lacks authority to grant the Receivers' request" and that the Receivers had not provided any precedential authority to dislodge this belief. Accordingly, the Receivers file this Renewed Motion to provide additional authority that authorizes the Court to effectuate the relief requested herein.

1

individual "investors" would purchase trucks for utilization by RBL in its trucking business, and then these "investors" would lease the trucks to RBL. In almost every instance, the truck was purchased using financing where a security interest was granted to the lender in the truck being purchased and then leased to RBL.

3. In a few instances, RBL purchased trucks in its own name and for use in the trucking business, and in such situations, RBL financed the purchase of the trucks by the utilization of a loan where a security interest in the truck was granted to the lender.

4. The Receivership Order gave the Receivers the authority to sell personal property assets of RBL without further Order of the Court. [*See* ECF No. 11 at ¶ 31].

5. Shortly after the appointment of the Receivers, based upon the financial analysis performed by the forensic accountants appointed by the Court, the Receivers discontinued the trucking operation since it was losing hundreds of thousands of dollars per month.

6. At the time the Receivers discontinued the trucking business of RBL, they notified all investors of the discontinuance of the trucking operations, the contemplated termination of the leases, and directed all investors who owned trucks to retrieve their trucks from the storage facilities maintained by the Receivers.

7. Over a period of approximately six months, utilizing computerized scheduling and multiple communications with the investors, virtually all the trucks were either retrieved by the investors who were the title owners, or by lenders that had a security interest in the trucks no longer being utilized by the Receivers.

8. The Receivers are now in possession of seven trucks where, after numerous notifications to the title owners, and notification to lenders, the trucks have not been retrieved from the Receivers. The Receivers deem these vehicles to be abandoned. Since the Receivers are

required to pay storage charges for these vehicles, it is imperative that the Receivers be authorized to sell and dispose of the vehicles in order to further curtail expenses for the estate.

9. With respect to the two remaining trucks that are titled in the name of RBL, the Receivers have determined that the titles to these vehicles are encumbered by security interests in favor of the original lenders. Approximately one year before the Receivership, the original lenders instituted an action in state court against RBL and Sanjay Singh arising out of RBL's non-payment of the liens, though that lawsuit is currently stayed. The Receivers are working with the lender to reach a favorable outcome for both parties regarding these two trucks.

10. Additionally, RBL owns one commercial trailer which is unfit for public sale due to its hazardous condition.

11. Attached hereto and marked "Exhibit A" is a list of the vehicles in the possession of the Receivers that are owned by investors where the investors abandoned their vehicles. Attached hereto and marked "Exhibit B" is a list of the vehicles that are titled in the name of RBL where there are security interests encumbering the titles to the vehicles or where the vehicle cannot otherwise be sold.

12. In order to curtail expenses, preserve the assets of the estate, and to complete the liquidation of the assets of RBL, the Receivers desire to sell the vehicles listed on the attached exhibits free and clear of liens and with the ability to pass a "clean" title to the purchasers with the proceeds of said sales be deposited into a segregated account ("**Lien Claim Fund**").

13. Once sold, the proceeds from the sale of the vehicles will be placed in the Lien Claim Fund, and to the extent that any liens in fact encumber any vehicle sold, the liens against the vehicles will attach to the sale proceeds in the Lien Claim Fund with the same priority, extent and validity as they had prior to the Receivership or sale of the vehicle. To the extent that the

proceeds from the sale exceed the balance due on any liens, the remaining proceeds will be held in the Lien Claim Fund for the benefit of the title owner of the vehicle.

14. The proceeds deposited into the Lien Claim Fund will be traceable, and the Receivers shall maintain an accounting of same in order to have such proceeds of the sale identifiable and available should a claim be subsequently made by an owner or lienholder of the vehicle that was sold. Once the sale is consummated, and the liens attach to the proceeds, the Receivers will file a proposed distribution schedule in due course to which claimants may object.

15. Such practice is consistent with orders entered by other Courts within this district in the receivership context, as further explained herein.

16. Absent obtaining an order authorizing the sale of the vehicles free and clear of the claims of the title owners and any security interest holders, the Receivers are unable to provide a new title to any vehicle purchasers.

17. The Receivers submit that no party in interest will be adversely prejudiced by the Court's grant of authorization to sell the vehicles free and clear of encumbrances. Should any of the vehicle owners or security interest holders continue to assert a claim in the vehicles, the Receivers will be in possession of the proceeds from the sale—which will be maintained in a segregated Lien Claim Fund and any lien or interest in a respective vehicle will retain the same priority, extent and validity as they had prior to the Receivership or sale of the vehicle.

18. Since the filing of the original motion to sell abandoned vehicles on May 8, 2024 [ECF No. 251], the Receivers sent an email communication in both English and Haitian Creole to the known owners and any lienholders on the vehicles that are subject to this Motion. A certificate of service for said notification was filed on May 16, 2024. [*See* ECF 264].

19. The Receivers submit that the authority below supports their position.

**MEMORANDUM OF LAW**

The Receivers submit that Judge Becerra's ruling in *Securities and Exchange Commission v. Kapoor,* No. 23-cv-24903-JB, 2024 WL 3026490 (S.D. Fla. June 17, 2024), is new authority that supports the relief sought herein and the Court's authority to effectuate same as further explained below.  This authority was not cited in the Receivers' prior motions to sell abandoned vehicles because Judge Becerra's order was not rendered until after the Receivers filed both prior motions.

The Supreme Court has consistently highlighted the broad equitable powers of federal courts to devise equitable remedies tailored to the necessities of each case, particularly when a federal agency seeks enforcement of laws or regulations that are in the public interest.  *See e.g.*, *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 386 (1970); *Hect Co. v. Bowles*, 321 U.S. 321, 329 (1944); *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946); *see also Sec. & Exch. Comm'n v. Wencke*, 622 F.2d 1363, 1371 (9th Cir. 1980) (*Wencke I*).  Accordingly, a district court has "broad powers and wide discretion to determine relief in an equity receivership."  *Sec. & Exch. Comm'n v. Wells Fargo Bank, N.A.*, 848 F.3d 1339, 1343–44 (11th Cir. 2017) (quoting *Sec. & Exch. Comm'n v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992)).  "This discretion derives from the inherent powers of an equity court to fashion relief."  *Id.* at 1344 (citing *Elliott*, 953 F.2d at 1566; citing *Sec. & Exch. Comm'n v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372 (5th Cir. 1982)).

The Supreme Court has long recognized that security interests in property are determined by state law, and that "[a] receiver appointed by a federal court takes property subject to all liens, priorities, or privileges existing or accruing under the laws of the state[.]"  *Wells Fargo Bank.*, 848 F.3d at 1344 (quoting *Marshall v. New York*, 254 U.S. 380, 385 (1920)); *see also Butner v. United States*, 440 U.S. 48, 55 (1979).  However, "beyond these well-established rules, there is minimal

authority with respect to a district court's authority, in the context of a receivership," to transfer a lien from a secured asset to the proceeds of the sale of that asset—until now. *See id.*

While the Eleventh Circuit has indicated that "bankruptcy law is both analogous and instructive" in this situation given the dearth of case precedent in the receivership context[2], new authority from this Court provides guidance for the Court with respect to the relief sought by this Motion and the Court's broad powers to effectuate same in the receivership context while respecting potential claimants' constitutional guarantees and state law rights.

  A. *Securities and Exchange Commission v. Kapoor*, **No. 23-cv-24903-JB, 2024 WL 3026490 (S.D. Fla. June 17, 2024).**

On June 17, 2024, Judge Becerra of the U.S. District Court for the Southern District of Florida entered an order authorizing a receiver to approve the sale of property free and clear of liens and encumbrances. *See Sec. and Exch. Comm'n v. Kapoor, et al.*, No. 23-cv-24903-JB, 2024 WL 3026490 (S.D. Fla. June 17, 2024) (hereinafter "***Kapoor***")[3]. In *Kapoor*, the SEC filed a complaint for injunctive relief against defendant Rishi Kapoor and his companies alleging that Kapoor used the companies to operate a real estate scheme in violation of the anti-fraud provisions of federal securities law by raising approximately $93 million from more than fifty (50) investors from January 2018 through March 2023. *See Kapoor*, 2024 WL 3026490, at *1. Shortly thereafter, the Court entered an order appointing a receiver. *Id.*

The receiver's motion sought a court order approving the sale of real property free and clear of all liens and encumbrances. *See id.* Judge Becerra had concerns regarding the receiver's

---

[2] *See Wells Fargo Bank*, 848 F. 3d at 1344 n.3 (noting "[a] number of other circuits have also looked to bankruptcy law to aid in addressing issues raised in the receivership context" and collecting cases); *Marion v. TDI Inc.*, 591 F.3d 137, 148 (3d Cir. 2010) (analyzing bankruptcy law in receivership context); *Fidelity Bank, Nat'l Ass'n v. M.M. Grp., Inc.*, 77 F.3d 880, 882 (6th Cir. 1996) (finding it "appropriate and helpful to refer to the rules governing appellate standing in bankruptcy proceedings" when no case law existed regarding the rules in a receivership action); *Unisys Fin. Corp. v. Resolution Tr. Corp.*, 979 F.2d 609, 611 (7th Cir. 1992) (reasoning that bankruptcy law is "parallel" and "instructive" in the receivership context).

[3] For ease of the Court's reference, a copy of this Court's order in *Kapoor* is attached hereto as "**Exhibit C**."

request in light of the Eleventh Circuit's decision in *Wells Fargo Bank*. *Id.* ("Following oral argument, the Court required supplemental briefing regarding the impact on the Motion, if any, of the Eleventh Circuit's decision in [*Wells Fargo Bank*]."). *Wells Fargo Bank* is the same precedent noted by this Court in its Order Denying the Receivers' Amended Motion to Sell Abandoned Vehicles. *See* [ECF No. 303] ("After reading *Wells Fargo Bank*, the Court finds it requires denial of the Receivers' Motion."). Judge Becerra "carefully considered the parties' initial and supplemental briefing"—which included argument regarding the impact of *Wells Fargo Bank*—and granted the portion of the receiver's motion that sought to sell property free and clear of encumbrances and deposit the proceeds into a segregated Lien Claim Fund. *See Kapoor*, 2024 WL 3026490, at *1, *2, *6.

In partially granting the receiver's motion, Judge Becerra noted the receiver intended to "establish a Lien Claim Fund to hold the net sale proceeds and propose[d] that all other liens against the [property], including the [junior lienholders' interests], *attach to the monies in the Lien Claim Fund* (as defined below) *with the same priority, extent, and validity as they had prior to the Receivership*." *Id.* at *2 (emphasis added). The Court recognized the receiver's argument that, "[l]ien claimants may, but are not required, to submit proofs of claim … to the Receiver by a date certain" and that "[a]fter that date, the Receiver will file a motion setting forth her proposed distribution of the Lien Claim Fund, notice of which will be provided to all lien claimants known to the Receiver, who may object to the proposed distribution and be heard by the Court." *Id.*

Like here, the receiver there argued that the sale free and clear of encumbrances was "in the best interest of the receivership estate to consummate" because it would "prevent accrual of additional [expenses] that could otherwise reduce the potential recovery by lien claimants with allowed secured claims, and the receivership estate." *Id.* Notwithstanding, the junior lienholders

#2903137v2-221271.0001

objected to the sale motion and offered the Court several reasons why the Court should deny the receiver's request. *Id.* at *3. Specifically, the junior lienholders argued, *inter alia*, that the Court (1) lacked subject matter jurisdiction to adjudicate the rights and interests of the various lienholders because the lienholders were citizens of Florida, and thus complete diversity was absent; (2) the relief requested by the receiver would deprive the junior lienholders of its property rights without due process; and (3) if the relief sought by the receiver was granted, the Court's action would constitute a taking without just compensation under the Takings Clause. *Id.* As further explained below, the Court did not find any the of junior lienholders' protestations meritorious.

First, with respect to subject matter jurisdiction, the Court expediently found that the junior lienholders' "challenge to subject matter jurisdiction [was] not well-founded." *Id.* In so finding, the Court noted that, "[g]iven that this is an SEC action, the Court has federal question jurisdiction over the action, [] and the receivership proceeding is within the court's equity jurisdiction." *Id.* (citing *Elliott*, 953 F.2d at 1566) (district court's "wide discretion to determine relief in an equity receivership … derives from the inherent powers of an equity court to fashion relief"); *Sec. & Exch. Comm'n v. Posner*, 16 F.3d 520, 521 (2d Cir. 1994) (holding that once the "equity jurisdiction of the district court has been properly invoked by a showing of a securities law violation," the court has "broad discretion" to fashion an appropriate remedy) (citation omitted). Thus, the Court concluded it had subject matter to effectuate the relief sought in the motion.

Second, with respect to the junior lienholders' assertion that the proposed sale violated due process or constituted a taking without just compensation under the Takings Clause, the Court ultimately concluded the sale passed constitutional muster. *See Kapoor*, 2024 WL 3026490, at *3–5. In so concluding, the Court engaged in extended analysis. *See id.* The junior lienholders argued that "'the Receiver, through its Motion, [sought] to extinguish the [junior lienholders']

8

mortgage lien rights' without notice and an opportunity to be heard." *Id.* at 3.  Notwithstanding, the Court noted that "[t]he premise of [the junior lienholders'] arguments is that the proposed sale *would invalidate* the [junior lienholders' interests]." *Id.* (emphasis added). However, the Court explicitly found, "[t]his is incorrect." *Id.*  The Court reasoned that the junior lienholders' interests "*will not be extinguished* or terminated by the proposed sale" and "[t]o the contrary, as stated in the Motion, 'liens against the [property] will attach to the funds in the Lien Claim Fund, with the same priority, extent and validity as they had prior to the receivership.'" *Id.* (emphasis added) (noting "[c]ourts have repeatedly held that a receivership claims process is the appropriate forum for considering interests of secured creditors and allowing secured creditors to protect their interest") (citing *Sec. & Exch. Comm'n v. JCS Enters., Inc.*, No. 14-CV-80468, 2015 WL 13950381 (S.D. Fla. Nov. 3, 2015)).

In support of her reasoning, Judge Becerra found the *Wells Fargo Bank* opinion "[i]nstructive." *Kapoor*, 2024 WL 3026490, at *4.  Judge Becerra noted that, in *Wells Fargo Bank*, the Eleventh Circuit held that "while a federal district court has wide-ranging authority to supervise a receivership … it does not have the authority to extinguish a creditor's pre-existing state law security interest." *Id.* (citing *Wells Fargo Bank*, 848 F.3d at 1344).  Judge Becerra quoted portions of *Wells Fargo Bank* and specifically highlighted the following language:

> The appointment of a receiver does not invalidate liens existing at the time the receiver is appointed, *although it may affect or change the remedy or remedies which the lienholder may use to enforce its lien*.

*Kapoor*, 2024 WL 3026490, at *4 (emphasis in original) (quoting *Wells Fargo Bank*, 848 F.3d at 1345).  Judge Becerra also noted the Eleventh Circuit held that "a federal district court cannot order a secured creditor to either file a proof of claim and submit its claim for determination by the receivership court or lose its secured state-law property right that existed prior to the

receivership." *Id.* at *4 (quoting *Wells Fargo Bank*, 848 F.3d at 1345). Judge Becerra ultimately found "the proposed sale does not violate these principles." *Id.* at *4. In so finding, Judge Becerra explained her reasoning:

> The proposed sale does not violate these principles. As mentioned, the [junior lienholders'] security interest *is not extinguished or invalidated*, *but rather, attaches to the funds in the Lien Claim Fund*. Further, the Receiver has withdrawn her request for a mandatory claims process, and instead has agreed that a lienholder may, but is not required to, file a proof of claim to receive distribution from the Lien Claim Fund. ECF No. [164] at 7.
>
> *Given the preservation of the [junior lienholders'] security interest, its argument that the proposed sale violates the Takings Clause of the Fifth Amendment by "extinguishing non-parties lien rights without just compensation" is without merit*. ECF No. [153] at 11-12. The [junior lienholders] also argue[d] that "it would lose another important right[:] the right to credit bid at a foreclosure sale ...." *Id.* at 10 n.3. While a secured lien constitutes a protected property interest, *see e.g.*, *Armstrong v. United States*, 364 U.S. 40, 46-49 (1960), the [junior lienholders] cite no legal authority that a right to credit bid qualifies as such.
>
> "[I]t is appropriate for [a] district court to use summary proceedings" to dispose of receivership property because it "reduces the time necessary to settle disputes, decreases litigation costs, and prevents further dissipation of receivership assets." *Elliott*, 953 F. 2d at 1566. Indeed, the Eleventh Circuit has held that "summary proceedings do not per se violate claimants' due process interest." *Id.* at 1571. Rather, to establish a due process violation, the claimant "must show how they were prejudiced by the summary proceedings and how they would have been better able to defend their interests in a plenary proceeding." *Id.* The [junior lienholders] make no such showing. To be sure, "[s]ummary proceedings are inappropriate when parties would be deprived of a full and fair opportunity to present their claims and defenses." *Id.* at 1567. That is not the situation here, as monies can only be distributed from the Lien Claim Fund upon court order following notice to all known lien claimants, including the [junior lienholders], who will be given an opportunity to object.
>
> For these reasons, the proposed sale does not constitute an unauthorized act of the Receiver or violate the [junior lienholders'] due process or Fifth Amendment rights.

*Id.* at *4–5 (emphasis added). Judge Becerra went on to evaluate the junior lienholders' claim that "the proposed sale is improper because it does not comply with the requirements set forth in 28 U.S.C. § 2001(b)." *Id.* at *5. However, the analysis of this section of the United States Code is

10

inapplicable to the relief sought by the Receivers in this Motion, as the Receivers seek to sell *vehicles* free and clear of encumbrances—28 U.S.C. § 2001(b) applies solely to a receiver's sale of real property. *See* 28 U.S.C. § 2001(b) (providing the appropriate procedures regarding a court's order of "the sale of ***such realty or interest or any part thereof*** at private sale for cash or other consideration") (emphasis added).

Judge Becerra's order ultimately granted the motion in part, which authorized the *Kapoor* receiver to sell the property "free and clear of pre-existing liens." *Kapoor*, 2024 WL 3026490, at *6. Notwithstanding, Judge Becerra carefully noted that said liens "are not extinguished, but rather, will attach to the funds in the Lien Claim Fund" and would have "the same priority, extent and validity as they had prior to the Receivership." *Id.* Judge Becerra further authorized the *Kapoor* receiver to "take any and all actions reasonably necessary to consummate the sale" of the property, including but not limited to, executing deeds, bills of sale, title affidavits, and closing statements. *Id.* at *7.

Judge Becerra's order further required the *Kapoor* receiver to "separately account" for the sale proceeds in the Lien Claim Fund, and that, "on the date that is 60 days after the entry of this Order, any person or entity … who claims to have a right to payment or claim of any nature … secured by a lien against the [property] *may* complete and submit the Proof of Lien Claim … to the Receiver … for the Receiver to consider in preparing the proposed distribution of funds in the Lien Claim Fund." *Id.* (emphasis in original). Then, "the Receiver will file an appropriate motion with the Court to approve the proposed distribution of the funds in the Lien Claim Fund, with notice to all known lien claimants." *Id.* Thereafter, "[a] lien claimant with a claim against the Lien Claim Fund may file an objection to the motion if it disagrees with the proposed distribution" and

11

the Court "will thereafter set a briefing schedule and make final determinations regarding the distribution of funds from the Lien Claim Fund." *Id*.

### B. Application of *Kapoor* to the Receivers' Instant Motion

Here, this Court is presented with a nearly identical scenario to the one Judge Becerra addressed in *Kapoor*. Indeed, the Receivers seek the entry of an order authorizing the sale of vehicles free and clear of encumbrances to "curtail expenses" and "preserve the assets of the estate." *See* Mot. ¶ 11. Additionally, the Receivers seek to deposit the proceeds from said sale into a Lien Claim Fund with each lienholder's interest retaining the identical "priority, extent and validity" in the proceeds of the vehicles as they had in the vehicles themselves prior to the Receivership and the proposed sale. *Id.* ¶¶ 11–13.

As Judge Becerra reasoned in *Kapoor*, in reliance on *Wells Fargo Bank*, this arrangement would not present any constitutional concerns with respect to the Takings Clause—the lienholder's interests are not extinguished and retain the identical priority, extent, and validity as prior to the sale. *See* Mot. ¶ 12. Additionally, the lienholders will have an adequate opportunity to object after proper notice of the filing of the Receivers' proposed distribution schedule—quelling any due process concerns. *See id.* ¶ 13. Moreover, 28 U.S.C. § 2001(b) is inapplicable here because the Receivers seek to sell vehicles—not real property. *See* 28 U.S.C. § 2001(b).

While this Court's Order [ECF No. 303] expressed concerns regarding the Court's authority to authorize the sale of the vehicles in light of the Eleventh Circuit's holding in *Wells Fargo Bank*, in that case, the Eleventh Circuit reversed the district court's grant of the receivers' motion to extinguish a lienholder's interest. Here, however, the Receivers do not seek to invalidate, extinguish, alter, amend or otherwise meaningfully affect the security interest claimants have in the vehicles. Rather, the Receivers seek to *preserve and protect* the claimants' security

interest in the vehicles while curtailing the expenses of the Receivership and preserving the assets of the estate for the benefit of investors who were harmed by the alleged Ponzi scheme. This can be effectuated by the establishment of a Lien Claim Fund following the Court's authorization of the sale, which as noted, would preserve the claimants' security interests and retain the identical priority, extent and validity in the proceeds stemming therefrom absent any constitutional concerns or state-law infringements. The proceeds will be identifiable and traceable, and the Receivers will separately account for the Lien Claim Fund for the benefit of claimants, like in *Kapoor*.

Once the sale is consummated and the Lien Claim Fund established, the Receivers will file a motion encompassing a proposed distribution schedule to which any claimant may object, and the Court may entertain same. Accordingly, this Court is authorized to grant this Motion—said grant would not present any constitutional concerns and the Lien Claim Fund would preserve all lien claimants' interests as they existed in the vehicles prior to the sale.

WHEREFORE, PAUL O. LOPEZ and JENNIFER H. WAHBA, as Receivers for the Estate of Royal Bengal Logistics, Inc. respectfully request this Court enter an Order:

1. Granting this Motion;

2. Authorizing the Receivers to sell the vehicles listed on the attached Exhibits free and clear of ownership rights and encumbrances, while allowing existing ownership rights and liens to properly attach to the proceeds of the sale of the vehicles in the Lien Claim Fund with the same priority, extent and validity in the proceeds as each claimant maintained prior to the sale;

3. Authorizing the Receivers to take all actions reasonably necessary to consummate the sale of the vehicles, including, but not limited to, executing documents;

4. Directing the Receivers to establish a Lien Claim Fund for the deposit of all cash proceeds of the sale, to which the Receivers will separately account and maintain in such a manner as to ensure all proceeds are traceable and identifiable;

5. Authorizing, but not requiring, title owners and lien claimants to submit a Proof of Lien Claim, signed under the penalty of perjury, with supporting documentation evidencing the ownership and/or amount, extent, validity, perfection, and priority

of their claim and lien as it existed prior to the sale and the deposit of said proceeds in the Lien Claim Fund, including but not limited to, compliance with applicable state law requirements, to the Receiver by electronic mail for the Receivers to consider in preparing the proposed distribution of the sale proceeds held in the Lien Claim Fund;

6. Authorizing the Receivers to file an appropriate motion with the Court to approve the proposed distribution of the funds in the Lien Claim Fund, with notice to all known title owners and lien claimants;

7. Authorizing any lien claimant with a claim against the Lien Claim Fund to file an objection to the motion containing the Receivers' proposed distribution if it disagrees with the proposed distribution; and

8. Any and all further relief this Court deems just and appropriate.

## **LOCAL RULE 7.1(a)(3) CERTIFICATION**

I HEREBY CERTIFY that I conferred with counsel for the Securities and Exchange Commission regarding this Renewed Motion to Sell Abandoned Vehicles and the attached exhibits and that the Commission does not object to the relief requested herein.

Dated: July 22, 2024

        Respectfully submitted,

        **TRIPP SCOTT, P.A.**
        *Counsel to the Receivers*
        110 S.E. 6th Street, 15th Floor
        Fort Lauderdale, Florida 33301
        Phone: (954) 525-7500

        By: */s/ Charles M. Tatelbaum*
        **Charles M. Tatelbaum**
        Florida Bar No. 177540
        cmt@trippscott.com
        hbb@trippscott.com
        **Corey D. Cohen**
        Florida Bar No. 1024891
        cdc@trippscott.com
        eservice@trippscott.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 22nd day of July, 2024, I electronically filed the foregoing document via this Court's CM/ECF system which provided a true copy to all those entitled to notice.

By: */s/ Charles M. Tatelbaum*
**Charles M. Tatelbaum**
Florida Bar No. 177540

**EXHIBIT A**

| Unit Number | Vehicle Identification Number | Owner |
|---|---|---|
| 061 | 1FUJGLD57GLGY1284 | P&D FRIENDLY MOVER |
| 084 | 1XKYDP9X1JJ135455 | WILSA HOLDINGS |
| 097 | 3AKJGLDR6HSHR0263 | LNL EXPRESS |
| 108 | 3AKGGLDR0HSHY2427 | YVONETTE TISSY LLC |
| 135[4] | 3AKJGLDR2GSGZ2118 | RACH & MITCH CORP. |
| 285 | 1FUJHHDR1LLLN1693 | SASHINKA TRUCKING |
| OW17 | 1FUJA6CG46LV07531 | E.M. DAVIS ENTERPRISES |

---

[4] The owner of this truck had a title issue stemming from the purchase of the truck from the prior owner, resulting in title that was not free and clear and did not reflect the investor as the current owner of the truck. The owner advised that he retained counsel and is sorting out the title issues. The Receivers are seeking authorization for sale of this truck in an abundance of caution, but they intend to wait until the investor's counsel resolves the issue.

**EXHIBIT B**

| Unit Number | Vehicle Identification Number | Owner/Comment |
|---|---|---|
| 963004 (Trailer) | 1R9RKDA5XNL963004 | RBL (This trailer is unfit for public sale due to its hazardous condition.) |
| 006 | 1XKYDP9X2FJ384323 | RBL (This truck has a lien and cannot be sold.) |
| 007 | 1XKYDP9X5FJ384316 | RBL (This truck has a lien and cannot be sold.) |

#2903137v2-221271.0001