UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 23-61179-CIV-LEIBOWITZ

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

ROYAL BENGAL LOGISTICS, INC., and
SANJAY SINGH,

      Defendants.

_____/

## RECEIVERS' FOURTH QUARTERLY APPLICATION TO AUTHORIZE PAYMENT OF THE RECEIVERS' AND THEIR PROFESSIONALS' FEES AND EXPENSES

Paul Lopez and Jennifer Wahba, as Receivers of Royal Bengal Logistics, Inc. ("RBL")[1],

file this Fourth Quarterly Application for the Court to authorize payment of the Receivers' and

their professionals' fees and expenses from April 1, 2024, through June 30, 2024 (the "Application

Period").[2] *See* Order Granting Plaintiff's Emergency Motion for Appointment of Receiver

("Receivership Order") ¶¶ 53–57 (D.E. 11).

### Brief Background

This action arises out of an alleged Ponzi scheme perpetrated by RBL and its CEO, Sanjay

Singh ("Mr. Singh"). In June 2023, Plaintiff Securities and Exchange Commission ("SEC") filed

its Complaint against RBL and Mr. Singh ("Defendants"), seeking to enjoin them from continuing

to defraud investors—the vast majority of whom are Haitian-Americans—in violation of federal

---

[1] On September 12, 2023, this Court also appointed Mr. Lopez and Ms. Wahba as Receivers of North America Aerospace, LLC, an affiliate of RBL. *See* (D.E. 90). The exhibits attached to this Fourth Quarterly Application include fees and costs incurred in the NAA Receivership, as well.

[2] The Receivers seek (1) authorization to immediately pay all their and their professionals' fees and expenses, less a 20% holdback as to fees; and (2) authorization to pay the 20% holdback upon final distribution of the Receivership assets to investors and creditors. *See* (D.E. 11 ¶ 56).

securities laws. Compl. ¶¶ 1–2 (D.E. 1). RBL is a trucking logistics company that was engaged in the business of driving loads across the country. The SEC's Complaint alleges that Defendants raised approximately $112 million from more than 1,500 defrauded investors and has been operating at a loss of more than $18 million since August 2019. *Id.* ¶¶ 2, 4. On June 21, 2023, this Court granted the SEC's motion to appoint the Receivers to take all actions necessary to protect RBL's assets for the investors. *See* (D.E. 11). On September 12, 2023, this Court also appointed the Receivers as Receivers over NAA. *See* (D.E. 90). The Court previously granted the Receivers' three prior fee applications in this matter. (D.E. 108, 147, 248).

## Receivership

Since the Receivers' appointment on June 21, 2023, they have complied with the Receivership Order authorizing them to administer and manage RBL's business affairs and funds, marshal and safeguard RBL's assets, and take all other actions necessary to protect RBL's investors and creditors.

The Receivers' investigation has revealed that Mr. Singh induced more than 1,250 investors—many of whom are from South Florida's Haitian community and are unsophisticated businesspeople—to invest in RBL. In many of these cases, Mr. Singh and other RBL employees from the third floor "business development office" promised the investors "guaranteed" returns of anywhere between 12.5% and 325% on their investments. The Receivers discovered several types of investments: short-term loans, long-term loans, truck investments, real estate sponsorship agreements, and trailer fabrication investments, among others. During their investigation, the Receivers took control over the funds in RBL's bank accounts, which ended up being an amount significantly less than the profitability that RBL was advertising to its investors. As noted in the Receivers' Second Quarterly Status Report, millions of dollars were transferred among RBL's

#2858437v1-221271.0001

various bank accounts and were disbursed to third parties without any apparent legitimate business purpose, demonstrating that RBL's funds were not being fully and accurately accounted for. *See* (D.E. 131). The Receivers also discovered that RBL made extraordinary and unusual payments to former RBL employees exceeding $1 million, which the Receivers are seeking to recover in independent lawsuits filed against those two employees.

As a trucking logistics company, RBL had more than 200 trucks in its fleet. With the exception of a few trucks, the vast majority of trucks were owned by investors and titled in their names. RBL would use the investor's initial payment to purchase a truck on the investor's behalf. RBL would then lease the truck to itself and make monthly payments to the investor which, in many cases, covered the lien payments that the investor owed to third-party lenders. But, because RBL was not a legitimate trucking operation, RBL could not continue paying its overhead expenses, including payroll, while also paying each investor a monthly payment. Thus, RBL continued its Ponzi scheme by recruiting more investors to use their investments to pay off other investors.

As authorized by this Court on June 26, 2023 (*nunc pro tunc* to June 21), the Receivers retained Charles M. Tatelbaum and Tripp Scott, P.A. as legal counsel to represent them in the performance of their duties. (D.E. 18). The same day, the Court also granted the Receivers' motion to retain KapilaMukamal, LLP ("KM") as the forensic accounting firm to analyze and reconstruct RBL's QuickBooks and other financial records. (D.E. 18). The Court previously approved Stampler Auctions as the auctioneer company to auction RBL's real properties in Lubbock, Texas, all of which have been sold at this point. (D.E. 80). The Receivers, their counsel, and KM all agreed to bill at significantly reduced hourly rates on their work in this action, as reflected in the following Fee Schedule:

3

| Professional/Paraprofessional | 2024 Standard Hourly Rate[3] | Reduced Hourly Rate |
|---|---|---|
| Receiver Paul Lopez | $795 | $350 |
| Receiver Jennifer Wahba | $450 | $250 |
| Receivers' court-appointed counsel, Charles Tatelbaum | $630 | $350 |
| Other attorneys at Tripp Scott | $450 to $695 (directors)<br><br>$380 to $450 (associates) | $350<br><br>$250 |
| Paralegals at Tripp Scott | $225 | $150 |
| Soneet Kapila, principal of KM | $780 | $500 |
| Other KM partners, principals, consultants, and paraprofessionals | $290 to $450 | $196 to $450 |

The SEC approved these billing rates at the outset of this case.

## SUMMARY OF SERVICES RENDERED BY THE RECEIVERS AND THEIR PROFESSIONALS DURING THE APPLICATION PERIOD

Below is merely a summary of the services the Receivers and their professionals have rendered to the Receivership estate during this Application Period. More detailed descriptions of the services rendered can be found in Tripp Scott's and KM's timesheets attached to this Fourth Quarterly Fee Petition.

### Asset Disposition and Business Operations

Much of the Receivers' time and work during the Application Period was spent disposing of RBL's assets and continuing to wind down RBL's operations in Coral Springs, Florida, and Lubbock, Texas. A summary of work within these categories is outlined below.

---

[3] The 2024 standard hourly rates for all attorneys and paralegals at Tripp Scott are greater than the 2023 standard hourly rates that the SEC approved at the outset of this case when the Receivers were appointed. But in the interest of preserving the Receivership Estate's assets to the greatest extent possible, the Receivers have not sought to increase their or their professionals' hourly rates for this Application Period and are still billing under their 2023 approved reduced rates.

#2858437v1-221271.0001

- The Receivers continued overseeing their established truck pickup process in Coral Springs and Lubbock. As of the filing of this Application, only seven investor-owned trucks are still within the Receivers' custody, and only three RBL-owned trucks or trailers are still within the Receivers' custody.[4] The investor-owned trucks have been surrendered or abandoned by the investors or lenders. A total of twelve RBL-owned trucks and trailers were auctioned or sold at private sales during this Application Period as authorized by the Court, *see* (D.E. 169), and those sale proceeds were deposited into the Receivers' bank account.

- During this Application Period, the Receivers filed their Amended Motion for Authorization to Sell Abandoned Vehicles (D.E. 279), in which they requested authorization from this Court to sell the abandoned trucks within their custody. The Court denied the motion on July 12, 2024, concluding that it did not have authority to grant the requested relief. (D.E. 303). The Receivers later filed their Renewed Motion for Authorization to Sell Abandoned Vehicles, Establishment of Lien Claim Fund and Incorporated Memorandum of Law (D.E. 310), in which they bring additional authority to the Court's attention permitting the requested relief. As of the filing of this Application, the Court has not yet ruled on the Renewed Motion, which is scheduled for a hearing on August 28, 2024.

- During this Application Period, the Receivers disposed of all the remaining furniture from RBL's Coral Springs office. A portion of this furniture was donated to charities during the last application period. Because the remaining furniture could not be sold due to the lack

---

[4] Two RBL-owned trucks currently have perfected liens on them and are the subject of pending litigation by the lienholder against RBL and Mr. Singh, which was instituted before the Receivers' appointment. The Receivers have contacted the lienholder to offer to surrender the two trucks in satisfaction of the liens.

#2858437v1-221271.0001

of interest from any potential buyers, the property was disposed of by the storage company during this Application Period.

- The Receivers terminated the lease with the Lubbock landlord and are using the premises for a low monthly fee for the storage of the few remaining trucks. All business operations have ceased in Lubbock. After receiving authorization from the Court to sell the remaining trucks located in Lubbock, the Receivers will be able to completely terminate the month-to-month lease and will not be incurring any further storage charges for these trucks. Because the Lubbock facility was used for storage of oil, fuel, and other hazardous chemicals, which were not removed when RBL vacated the premises in the last application period, the Receivers were required to engage a vendor that specializes in waste removal and disposal to remove the waste from the Lubbock facility.

- During this Application Period, the Receivers auctioned RBL-owned computers, monitors, laptops, and other related equipment from the Coral Springs office. The Receivers retained only the hard drives of these computers so that the data may be used in the future if necessary. This auction disposed of all RBL's physical assets; RBL has no other physical assets remaining that need to be sold.

- There have been no updates from the two police departments for the investigations into the two truck thefts.

- During this Application Period, the Receivers continued retaining two part-time RBL employees on payroll to assist with the claims administration process. As of May 17, 2024, only one RBL employee remains on payroll, and he is now working full time for the Receivers. The Receivers have no employees working in Lubbock.

#2858437v1-221271.0001

- During this Application Period, the Receivers' professionals continued reviewing documents from banks and financial institutions relating to RBL's and Sanjay Singh's accounts held at those institutions. The Receivers conferred with the non-parties' counsel and attended hearings where necessary to obtain the subpoenaed responsive documents.

- The Receivers and their counsel are continuing to pursue the ongoing litigation against Ricardi Celicourt and Brisly and Elsie Guillaume for fraudulent transfers. The Receivers moved for summary judgment against Mr. Celicourt for the fraudulent transfers. The state court granted in part and denied one issue in the Receives' motion, which significantly narrowed the issues for trial. The state court in the lawsuit against the Guillaumes did not rule on the Receivers' motion for summary judgment during the Application Period but has recently granted the Receivers' motion. The Guillaumes' motion to dismiss the action is also set for a hearing to be held during the next application period.

- The Receivers' lawsuit against Forrest Robinson for professional negligence remains pending in state court. Although the Receivers were not granted leave to amend the complaint to add punitive damages, they were granted leave to amend the complaint to include the additional misconduct by Forrest Robinson that was discovered since the complaint was filed. Forrest Robinson served the Receivers with a proposal for settlement under Florida law. The Receivers and Forrest Robinson ultimately reached a settlement and are in the process of finalizing settlement documents.

- The Receivers are continuing the process of cataloging the hundreds of bills or invoices from RBL's vendors and unsecured creditors so the Receivers can notify these entities that they must file a claim against the Receivership estate to recover those unpaid sums. In instances where the vendor bills were significant, such as one vendor who sent a collection

letter for a single debt of more than $600,000, the Receivers have contacted the vendor directly to discuss the claim.

- There has been little to no activity involving the NAA Receivership during this Application Period.

- At the end of this Application Period, RBL's Receivership estate had $4,080,675.86 total cash on hand in the Receivers' RBL Comerica checking and insured sweep accounts, plus approximately $9,900 in NAA's Comerica checking account. These amounts do not include any funds frozen in Mr. Singh's or his wife's personal accounts, to which the Receivers do not have access.

## Asset Analysis and Recovery

- During this Application Period, the Receivers have been working closely with potential class-action counsel to obtain information that could lead to a potential class-action lawsuit against one or more parties that conducted business with RBL. The proceeds of any recovery in such a class-action lawsuit would be paid directly to the investors and creditors under the Receivership Order. No lawsuit has been filed yet.

## Case Administration

- The Receivers set up a dedicated website (www.rblreceivers.com) and email address (rblreceiver@trippscott.com) to provide information about the progress of the Receivership estate and to answer investors' questions. Updates continue to be sent to investors by email and through the website to advise them of significant developments, including the Receives' intent to make an interim distribution to investors at the end of August 2024. The Receivers also created another email address (rblclaims@trippscott.com) dedicated to submission of Proof of Claim Forms. Lastly, the

Receivers continue monitoring a third email address ([rblrecovery@trippscott.com](mailto:rblrecovery@trippscott.com)) to receive documents related to truck pickups, though the pickups have ceased as of the last application period.

- During the Application Period, the Receivers and their counsel continued to receive occasional phone calls and emails, as well as in-person visits, from investors asking questions and seeking information about their investments, the Receivership process, and the claims administration process. The Receivers and their counsel have taken the time to respond to each investor call, email, and meeting based on the unique facts and situation of each investor, without rendering legal advice.

## Claims Administration and Objections

- Most of the Receivers' work and time spent during this Application Period consisted of Claims Administration. The Receivers and their staff continue to review the Proof of Claim Forms that investors are sending by mail, email, and in person to the Receivers. The Receivers' staff are logging the forms' contents in a spreadsheet to evaluate the nature of the claims. The Receivers' staff, including the full-time RBL employee, are contacting hundreds of investors to obtain missing information or supporting documentation needed to evaluate the claims. The spreadsheet will be used to formulate a proposal for distributions to be approved by the Court, with an initial distribution anticipated to be made at the end of August 2024 upon Court approval. After sorting through duplicates within the more than 1,500 forms received, it appears that there are approximately 1,288 unique investors, not accounting for RBL's unsecured creditors who may also have claims for sums owed during the ordinary course of business.

- The Receivers initially contemplated moving for a claims bar date, a date by which no further claims will be considered for an initial distribution to be made to investors. After further thought and discussions with the SEC, however, the Receivers have elected to proceed with a motion to request an interim distribution without a bar date and, once granted, only those investors who have submitted their proofs of claim and all supporting documentation will receive an interim distribution at that time. Later-filed proofs of claim may be considered in subsequent distributions.

## KM's Work Performed

During the Application Period, KM continued to update the RBL bank-reconstruction database that consists of at least 17 different bank and brokerage accounts and over 42,000 transactions. KM's work performed during this Application Period also included:

- Identifying the payor and payees, normalizing the names, categorizing the transactions, and reconciling the transactions to investor-related activities;
- Reviewing supporting investment, financial, and other records to support the categorization of transactions;
- Updating the analysis and support for the banking activity at each bank and brokerage account to quantify the volumes and dollar amount of transactions for the Receivers' and their counsel's review;
- Continuing to update and analyze bank records and support on a rolling basis as responses from the third-party subpoenas continue to be produced;
- Continuing to assist the Receivers and their counsel in analyzing and investigating the transactions and support for pending lawsuit filed against Forrest Robinson;
- Providing the Receivers and their counsel with missing financial record details to follow up on third-party subpoena productions;
- Preparing for and meeting with the Assistant United States Attorney and FBI to discuss the criminal trial against Sanjay Singh;
- Reviewing and analyzing the Receivers' 2023 financial activity and preparing a trial balance, the 2023 F-1120S, and the S Corporation federal tax return; and
- Reviewing and responding to multiple IRS 1099 tax compliance notices after consulting with the Receivers and their counsel.

KM continues to assist the Receivers with requests relating to analysis and investigations, including from the SEC and United States Attorney's Office. KM continues to update the bank

reconstruction database from the bank records received on a rolling basis and further identify and categorize transactions from the investor files and other records to compile an assessment of the flow of funds for both RBL and NAA from inception until the Receivers' appointment.

### **Active Litigation**

During this Application Period, the Receivers' counsel continued the prosecution of several state-court lawsuits on the Receivers' behalf against various individuals and entities: (1) Ricardi and Constantina Celicourt, for the fraudulent transfer of RBL "bonus payments" (221271.0003); (2) Brisly and Elsie Guillaume, for the fraudulent transfer of RBL "bonus payments" used to purchase a home in Boynton Beach, Florida (221271.0004); and (3) Forrest Robinson, for accounting malpractice (221271.0005). The Receivers also analyzed certain issues in the matter against CitiBank, a financial institution at which RBL maintained an account, which is still under investigation but has not resulted in litigation (221271.0007).

The lawsuits against the Celicourts and Guillaumes are still pending; the Receivers moved for summary judgment in both lawsuits as to the fraudulent transfers. As to the motion for summary judgment against Mr. Celicourt, the state court granted the Receivers' requested relief on all but one issue, which will proceed to trial. During this Application Period, Mr. Celicourt, proceeding pro se, moved to set aside the clerk's default entered against him. That motion has not yet been set for hearing.

As for the action against Mr. Guillaume, the state court recently granted the Receivers' motion for summary judgment (though a written order has not yet been entered as of the time of the filing of this Application). Additionally, the Guillaumes' motion to dismiss the action was set to be heard during this Application Period but was required to be reset to July 17, 2024, because of the court's personal emergency.

Finally, the claim and counterclaim involving Forrest Robinson are still in progress. The state court denied without prejudice the Receivers' motion for leave to amend the complaint to add a claim for punitive damages against Forrest Robinson, but the court allowed the Receivers to amend the complaint to allege the general newly discovered facts underlying Forrest Robinson's misconduct. During this Application Period, Forrest Robinson tendered a proposal for settlement to the Receivers under Florida law. The Receivers and Forrest Robinson reached a settlement that will be reported in detail in the next quarterly report and fee application once the settlement documents are finalized.

## **Prior Fees and Expenses Awarded**

On October 23, 2023, the Court granted the Receivers' October 19, 2023 First Quarterly Fee Application for the period of June 21, 2023, through September 30, 2023. (D.E. 107, 108). The Court approved the following fees and expenses incurred during the first application period:

- $255,585 for the Receivers' fees;

- $269,865 for Tripp Scott's fees, and $7,990.69 for Tripp Scott's expenses; and

- $188,443.20 for KM's fees, and $443.41 for KM's expenses.

(D.E. 108). These awards were the total amount of fees and expenses that the Receivers sought for the first application period. The Court's Order authorized payment of 80% of the approved fees and 100% of the approved expenses, subject to a request for the remaining 20% holdback upon final distribution of the Receivership assets. (D.E. 108).

On February 5, 2024, the Court granted the Receivers' January 29, 2024 Second Quarterly Fee Application for the period of October 1, 2023 through December 31, 2023. (D.E. 141, 147). The Court approved the following fees and expenses incurred during the second application period:

- $73,350 for the Receivers' fees;

- $213,089 for Tripp Scott's fees, and $3,569.80 for Tripp Scott's expenses; and

- $60,699.60 for KM's fees, and $127.07 for KM's expenses.

(D.E. 147). These awards were the total amount of fees and expenses that the Receivers sought for the second application period. The Court's Order authorized payment of 80% of the approved fees and 100% of the approved expenses, subject to a request for the remaining 20% holdback upon final distribution of the Receivership assets. (D.E. 147).

On May 7, 2024, the Court granted the Receivers' May 1, 2024 Third Quarterly Fee Application for the period of January 1, 2024, through March 31, 2024. (D.E. 243, 248). The Court approved the following fees and expenses incurred during the third application period:

- $59,290 for the Receivers' fees;

- $135,115[5] for Tripp Scott's fees, and $31,383.44 for Tripp Scott's expenses; and

- $61,467.40 for KM's fees, and $36.10 for KM's expenses.

(D.E. 248). These awards were the total amount of fees and expenses that the Receivers sought for the third application period, with the exception of the erroneous amount of Tripp Scott's fees. The Court's Order authorized payment of 80% of the approved fees and 100% of the approved expenses, subject to a request for the remaining 20% holdback upon final distribution of the Receivership assets. (D.E. 248).

The Receivership estate paid the Receivers, Tripp Scott, and KM shortly after each of the Court's three Orders were entered.

---

[5] As mentioned above, the Receivers requested in one portion of their Third Quarterly Fee Application the correct amount of $153,115 in Tripp Scott's fees. *See* (D.E. 243, at 13). Because the Court awarded the Receivers all their claimed fees without indicating that any fees or expenses were disallowed for the third quarter, the correct figure in the Court's Order should have been $153,115 instead of $135,115. The Receivers are seeking this $18,000 difference in this Application.

## **CURRENT REQUEST FOR FEES AND EXPENSES**

Paragraph 53 of the Receivership Order (D.E. 11) provides that the Receivers and their professionals are entitled to "reasonable compensation and expense reimbursement from the Receivership Estate" as described in the SEC's Billing Instructions. On June 26, 2023, *nunc pro tunc* to June 21, 2023, the Court granted the Receivers' motions to employ Tripp Scott, P.A. as counsel and KM as the forensic accountants in this matter. (D.E. 18).

In this Fourth Quarterly Fee Application, the Receivers are requesting that the Court approve all the fees and expenses incurred by the Receivers and each of their professionals during the Application Period, along with a sum of $18,000 that was requested in the Receivers' Third Quarterly Fee Application (D.E. 243) but was inadvertently omitted from the proposed order sent to the Court that was ultimately entered by the Court. *See* (D.E. 248).[6] The Receivers request authorization for distribution of 100% of the expenses and 80% of the fees (with a holdback of 20%), to be paid from the funds currently held in the RBL Receivers' accounts. As discussed above, the SEC approved the Fee Schedule for the fees sought in this matter. The attached timesheets reflect each individual's work performed during the Application Period in accordance with the SEC's Billing Instructions. Also attached to this Application is **Exhibit A**, the SEC's Standardized Fund Accounting Report reflecting the Receivers' expenses and money received.

As shown in the attached exhibits, the total amount of fees and expenses incurred by the Receivers and their professionals during the Application Period is as follows:

---

[6] The Third Quarterly Fee Application requested on page 13 the correct amount of $153,115 for Tripp Scott's fees. *See* (D.E. 243, at 13). But page 14 of the application inadvertently claimed an incorrect amount of $135,115 in Tripp Scott's fees. *See id.* at 14. The proposed order sent to the Court, which the Court ultimately entered, contained the inverted number of $135,115 for Tripp Scott's fees instead of $153,115. *Compare* (D.E. 243, at 13), *with* (D.E. 248, at 2). This resulted in the Receivers not being awarded the $18,000 difference. *See* (D.E. 248). Thus, the Receivers respectfully request that the Court add this amount of $18,000 inadvertently omitted from the last proposed order during this Application Period. The Receivers will apply the 20% holdback to this $18,000, along with the other fees awarded during this Application Period.

1. The Receivers, Paul Lopez and Jennifer Wahba: $35,395 in fees, which consists of $35,145 in fees for RBL, and $250 in fees for NAA. **Exhibit B** shows all the Receivers' time and fees for all RBL and NAA matters separated by matter number.

2. Tripp Scott, P.A.'s directors, associates, and paralegals: $80,640 in fees (which consists of $62,090 in fees for RBL, $550 in fees for NAA, and $18,000 in fees as a correction from the Third Quarter), $21,985.28 in expenses for RBL, and $138.75 in expenses for NAA. **Exhibit B** also shows all Tripp Scott's time and fees for all RBL and NAA matters separated by matter number. **Exhibit C** shows all expenses incurred by Tripp Scott for RBL and NAA.[7]

3. KapilaMukamal, LLP, **Exhibit D**: $36,295.20 in fees, and $141.11 in expenses.

## <u>MEMORANDUM OF LAW</u>

The Receivers and their professionals are entitled to reasonable compensation and expenses under the Receivership Order. Court-appointed receivers who reasonably and diligently discharge their duties are entitled to fair compensation for services rendered and expenses incurred. *See SEC v. Byers*, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008); *see also SEC v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992) ("[I]f a receiver reasonably and diligently discharges his duties, he is entitled to compensation."). Receivers and their lawyers are "also entitled to be reimbursed for the actual and necessary expenses they incurred in the performance of their duties." *Fed. Trade Comm'n v. Direct Benefits Grp., LLC*, 2013 WL 6408379, at *3 (M.D. Fla. Dec. 6, 2013).

Receivership courts have traditionally determined reasonableness of compensation by using the "lodestar" approach, calculating a reasonable hourly rate in the relevant market and the

---

[7] As mentioned above, the Receivers, through Tripp Scott, employed two RBL employees part time, and ultimately cut down to one employee full time, to assist in data entry and evaluation of investor claims. The SEC approved the arrangement of paying the RBL employees part time through RBL and part time through Tripp Scott. Thus, the Receivers are claiming the payroll expenses associated with paying these two employees part time.

reasonable number of hours expended. *See, e.g.*, *SEC v. Aquacell Batteries, Inc.*, 2008 WL 276026, *3 (M.D. Fla. Jan. 31, 2008); *see also Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299–1302 (11th Cir. 1988). The hourly rates billed by the Receivers and their professionals are reasonable for attorneys, paralegals, and forensic accountants practicing in the Southern District of Florida, particularly in light of the reduced hourly rates noted in the Fee Schedule, and the services reflected in the attached exhibits were reasonably necessary to the Receivers' performance of their duties set forth in the Receivership Order. Accordingly, the Receivers request that the Court grant all the fees and expenses sought in this Fourth Quarterly Fee Application.

## **CONCLUSION**

For the reasons discussed above, Paul Lopez and Jennifer Wahba, as RBL's and NAA's Receivers, respectfully request that the Court enter an order granting their fees and expenses as follows:

    a.   approving the total amount of fees and expenses for the Application Period of:

         i.   **Receivers** in the amount of **$35,395** in fees ($35,145 for RBL, and $250 for NAA);

        ii.   **Tripp Scott, P.A.** in the amount of **$80,640** in fees ($62,090 for RBL, $550 for NAA, and $18,000 as a correction from last quarter) and **$22,124.03** in expenses ($21,985.28 for RBL and $138.75 for NAA); and

       iii.   **KapilaMukamal, LLP** in the amount of **$36,295.20** in fees and **$141.11** in expenses; and

    b.   authorizing payment of 80% of the approved fees and 100% of the approved expenses from the assets held by the Receivership Estate; and

    c.  authorizing payment of the 20% holdback at final distribution of Receivership assets to investors and creditors.

## LOCAL RULE 7.1(a)(3) CERTIFICATION

I certify that I conferred with the SEC's counsel regarding this Fourth Quarterly Fee Application and the attached exhibits and that the SEC does not object to the relief requested in this Application.

Dated: August 12, 2024

Respectfully submitted,

**TRIPP SCOTT, P.A.**
*Counsel to the Receivers*
110 S.E. 6th Street, 15th Floor
Ft. Lauderdale, FL 33301
Phone: (954) 525-7500

By: */s/ Charles M. Tatelbaum*
**Charles M. Tatelbaum**
Florida Bar No. 177540
cmt@trippscott.com
**Corey D. Cohen**
Florida Bar No. 1024891
cdc@trippscott.com
hbb@trippscott.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 12th day of August 2024, I electronically filed the foregoing document via this Court's CM/ECF system which provided a true copy to all those entitled to notice.

By: */s/ Charles M. Tatelbaum*
Charles M. Tatelbaum
Florida Bar No. 177540

## BILLING INSTRUCTIONS CERTIFICATION

The Receivers, through their undersigned counsel, certify that the following statements are true:

1. The Receivers have read this Fourth Quarterly Application;

2. To the best of the Receivers' knowledge, information, and belief formed after reasonable inquiry, this Application and all fees and expenses here are true and accurate and comply with the SEC's Billing Instructions (with any exceptions specifically noted in the Certification and described in the Application);

3. All fees contained in this Application are based on the rates listed in the Receivers' fee schedule. All fees contained in the Application are reasonable, necessary, and commensurate with the skill and experience required for the activity performed and are subject to Court approval;

4. The Receivers have not included in the amount for which reimbursement is sought the amortization of the cost of any investment, equipment, or capital outlay (except to the extent that any such amortization is included within the permitted allowable amounts set forth herein for photocopies and facsimile transmission); and

5. In seeking reimbursement for a service that the Receivers justifiably purchased or contracted for from a third party (such as copying, imaging, bulk mail, messenger service, overnight courier, computerized research, or title and lien searches), the Receivers request reimbursement only for the amount billed to the Applicant by the third-party vendor and paid by the Receivers to such vendor. If such services are performed by the Receivers or their retained personnel, the Receivers or their retained personnel, as appropriate, will certify that it is not making a profit on such reimbursable service.

#2858437v1-221271.0001

6.  At least 30 days before filing this Fourth Quarterly Application with the Court, the Receivers provided to the SEC's counsel a complete copy of the proposed Fourth Quarterly Application, together with all exhibits and relevant billing information. The SEC requested that the Receivers remove certain entries claimed, which the Receivers did. The SEC has no objection to the fees and costs claimed in this Fourth Quarterly Application as filed.

19