UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 23-61179-CIV-LEIBOWITZ

SECURITIES AND EXCHANGE COMMISSION,

      Plaintiff,

v.

ROYAL BENGAL LOGISTICS, INC., and
SANJAY SINGH,

      Defendants.

_____/

**RECEIVERS' RENEWED MOTION FOR AUTHORIZATION TO MAKE A FIRST
INTERIM DISTRIBUTION TO CREDITORS AND INVESTORS**

Paul Lopez and Jennifer Wahba in their capacity as Receivers for Royal Bengal Logistics, Inc.

("RBL") submit this Renewed Motion for (a) authorization to make a first interim distribution to

investors and creditors of RBL, (b) establish a claims objection procedure, and (c) approve a plan

of distribution on the following grounds:

**Introduction**

1.  The Receivers were appointed by an order of this Court dated June 21, 2023 [DE 11] (the

"Receivership Order"). Despite the broad authority granted to the Receivers in the Receivership

Order, and more particularly in sections 5 and 7 of the Receivership Order, there is no specific

authority granted to the Receivers to make a distribution to creditors and investors without first

obtaining an order of this Court.

2.  On November 7, 2024, the Receivers filed a Motion for Authority to Make a First Interim

Distribution to Creditors and Investors (the "Initial Motion") [DE 330].  On December 13, 2024,

a preliminary hearing was had on the Receivers' Initial Motion at which time the Court and counsel

for the Receivers had a colloquy as to the best methodology to arrange for a final hearing for the

Court to consider authorizing an interim distribution to investors and creditors. The Court also requested some additional information from the Receivers about the distribution, which they are providing in this Renewed Motion.

3.   This Renewed Motion sets forth the Receivers' basis for the procedure and authority for the entry of an Order authorizing an initial distribution to investors and creditors in the gross amount of $2,750,000.

4.   As more fully set forth in the multiple quarterly status reports filed by the Receivers with this Court [DE 100, 131, 214, 298, 328], the Receivers have liquidated assets of RBL, collected outstanding obligations and receivables of RBL and transferred funds from RBL's bank accounts to that of the Receivers. As of the date of the filing of this Renewed Motion, the balance in the Receivers' bank accounts was $4,006,999.04

### The Claims Filing Process

5.   As reported by the Receivers in the quarterly status reports filed with this Court, prior to the appointment of the Receivers on June 21, 2023, beginning on February 1, 2023, RBL discontinued entering any financial transactions into the financial books and records of RBL, including not utilizing the company's QuickBooks software or any other accounting system or procedure.  Additionally, whether intentionally or otherwise, management of RBL chose not to keep accurate and complete records of financial transactions with investors and creditors, requiring the Receivers and their forensic accountants to try to reconstruct as many prior financial transactions with investors and creditors as possible.

6.   In order to assist the Receivers in being able to evaluate the claims of investors and creditors, the Receivers developed an extensive and comprehensive proof of claim form to be utilized by all investors and creditors so that the Receivers would be in a position to be able to

appropriately analyze and determine the nature, extent and validity of all proofs of claim being submitted. The SEC approved the use of the claim form before the Receivers posted the form on their website. In addition to completing the proof of claim form, investors and creditors were required to attach supporting documentation to support the nature, extent and validity of the proofs of claim.

7.   Utilizing what RBL records were available to the Receivers, the Receivers sent an email notification to all known investors and creditors of RBL advising them of the need to file a proof of claim and attaching a link to the claim form.

8.   Additionally, the Receivers posted a notice on the Receivers' website (www.rblReceivers.com) of the need for investors and creditors to file a proof of claim and included a link to the claim form.

9.   Because many of the investors are members of the Haitian American community in South Florida, the Receivers had the website notification about the need for the filing of claims translated into Haitian Creole, and also attached a link to the proof of claim form which had also been translated into Haitian Creole.

10. The Receivers established a unique email address (rblclaims@trippscott.com) for all investors and creditors to utilize in filing proofs of claim and supporting documents. Additionally, investors and creditors were advised that they could mail or send by overnight delivery the proofs of claim and supporting documents to the Receivers at their office address in Fort Lauderdale, and they were advised that they could also hand-deliver such documents to the office as well.

11. As of the filing of this Renewed Motion, approximately 1,270 unique proofs of claim have been filed with the Receivers. The Receivers and their staff have analyzed the proofs of claim in

order to make sure that all documentation and required information is complete and have contacted investors to provide missing information where necessary.

12. The Receivers notified all investors and creditors of a cutoff date of July 31, 2024 in order for investors and creditors to participate in the initial distribution. Any proofs of claim submitted after that date are not barred from receiving subsequent distributions but will be subject to a true up in subsequent distributions.

**The Claims Analysis Procedure**

13. Upon the receipt of a proof of claim form, the staff of the Receivers initially had all of the information on the completed forms entered into a searchable spreadsheet so that the Receivers would have a complete compilation of all of the proofs of claim that had been filed, along with hyperlinks to all supporting documentation for the claims. Additionally, by receiving mailing addresses, email addresses and telephone numbers of the investors and creditors on the claims forms, the Receivers would be able to create the first complete database of information identifying the investors and creditors.

14. After entering the information contained on the proof of claim forms into the spreadsheet, the Receivers' staff reviewed each proof of claim form in order to see if it was complete and also to determine if all necessary documentation was attached to the proof of claim. Hundreds of proofs of claim were submitted without complete documentation and information. As each proof of claim was reviewed, the Receivers' staff would call or email those investors and creditors where the information or documentation contained on the proof of claim form was incomplete in order to work with the investors so that all of the missing information and documentation could be obtained.

15. Given the large number of proofs of claim that were submitted (initially over 1,500), and quickly realizing that there were number of duplicate proofs of claim being filed, it has taken the

Receivers and their staff an extremely long period of time in order to obtain the necessary information and documentation to be able to analyze and review each of the proofs of claim that have been submitted. Part of the delay is due to investors' failure to respond to the Receivers' calls and emails requesting additional documentation.

### Quantification of the Claims

16. As noted in the Receivers' quarterly reports filed with this Court, there are multiple different types of proofs of claim being filed on behalf of investors and creditors. These include, but are not limited to, the following:

   a.  Investors that had given funds to RBL for the purchase of a truck.

   b.  Investors that had given funds to RBL for what were characterized as short-term loans.

   c.  Investors that had given funds to RBL for what was characterized as long-term loans.

   d.  Investors that had given funds to RBL to invest in a trailer fabrication and manufacturing operation.

   e.  Investors that had given funds to RBL to invest in real estate development opportunities.

   f.  Businesses that were owed monies by RBL as unsecured creditors based upon ordinary business transactions.

   g.  Claims arising from personal injury and property damage claims from the operation of trucks where RBL had insurance coverage.

   h.  Claims arising from personal injury and property damage claims from the operation of trucks where insurance coverage for RBL was denied.

      i.   Investors who submitted claims based upon the loss in value of their trucks or deficiency claims being asserted by secured creditors as a result of the surrender or foreclosure of the trucks that had been leased to RBL.

17. To date, based on the Receivers' analysis of just the principal owed on outstanding investments made to investors and creditors, investors and creditors have claimed more than $74,900,000 in principal of unpaid investments.

18. In order to create an equality of treatment for all creditors and investors, the Receivers have determined that it would be in the best interest of all parties for creditors and investors to receive a distribution based upon the following:

      a.   For investors that had advanced funds to RBL as set forth in subcategories a., b., c., d., e. and f. above, only principal amounts of debts and investments would be considered as an allowed claim, with any accrued or unpaid interest or any interest that was either unpaid or rolled over as a result of subsequent investments to not be considered for distribution purposes.

      b.   For claims from insurance carriers arising in subcategory g. above, as a result of a determination that these claims became the responsibility of RBL after the appointment of the Receivers for claims that were settled with the consent of the Receivers, the Receivers have paid the deductible amounts, and any additional claims will be objected to.

      c.   For claims from insurance carriers or other claimants arising in subcategory h. above, those claims will be treated as unsecured claims for the principal amount of the debt stated after a full review by the Receivers as to the nature and extent of such claims.

    d.  For those claims arising in subparagraph i. above, the Receivers are taking the position that those claims will be subject to objection and will seek to be disallowed.

In this manner, creditors and investors will be treated on an equivalent pro rata basis, with each investor receiving the same total percentage of their allowed investment.

### Proposed Claims Resolution Process

19. In order not to delay an initial distribution to investors and creditors, the Receivers propose to calculate the distribution based upon the amounts of the claims that have been filed. For those investors and creditors where there is no objection to the claim and all of the documentation needed has been supplied, then the distribution will be made upon the entry of an Order by this Court authorizing the interim distribution. Where the documentation is still incomplete or has not yet been verified, or if there is an objection to the claim that has not been resolved, the distribution will be withheld until the claim can be completed or the objection resolved. Once the issue is resolved, the full or adjusted amount of the distribution can be made to the investor or creditor.

20. To the extent that claims of investors and creditors cannot be resolved, the Receivers propose to file an omnibus objection with this Court setting forth the identification of the investor or creditor, the amount claimed, and the basis for the objection. The Receivers anticipate and suggest that these objections be referred to U.S. Magistrate Judge Valle for handling, and procedures can then be established for the efficient handling and management of the objections that have been filed.

### Proposed Distribution of $2,750,000 to Investors and Creditors

21. The Receivers desire to make an initial interim distribution to investors and creditors in the gross amount of $2,750,000 to be allocated on a pro rata basis to all investors and creditors who have submitted a complete proof of claim form with all supporting documentation by July 31,

2024, and whose claims have been verified as of the date of the entry of the order authorizing the distribution. The remaining funds in the Receivership estate will be utilized to continue the operation of the Receivership estate in order to recover additional assets and funds available for subsequent distributions to creditors and investors, including those who did not submit complete documentation by the July 31 cut-off date.[1]

22. Because the Receivers anticipate that they will be filing new or participating in current litigation in order to recover additional funds for the Receivership estate to ultimately be distributed to investors and creditors, it is necessary for the Receivers to retain sufficient funds in order to accomplish those results. The Receivers currently have claims pending against Bruce and Elsie Guillaume, Ricardi and Constantina Celicourt, Sanjay and Sheetal Singh, and Forrest Robinson. These claims are in various stages of litigation, and the Receivers and their counsel are working with the defendants to potentially resolve the claims in settlements. To date, however, these claims remain pending.

23. As stated above, to the extent that as of the entry of an Order approving the distribution to investors and creditors by the Receivers, any claim is subject to objection, the Receivers will set aside the anticipated distribution to that investor or creditor to be held until a resolution of the objection is effected.

24. For the reasons noted above, the Receivers believe in good faith that a pro rata distribution of $2,750,000 as an interim distribution to investors and creditors is appropriate under the circumstances.

---

[1] As part of each of the Court's Orders authorizing fees to be paid to the Receivers and their forensic accountants, there is a 20% holdback as to the amount of fees paid upon the entry of the Order. The Receivers therefore need to retain sufficient funds for the payment of the 20% holdback for each interim fee application to date if the allowance of the holdback fees is granted by the Court. To date, the Court has granted five fee applications, with a 20% holdback as to the Receivers,' Tripp Scott's, and KapilaMukamal's professional fees in each application.

## Suggested Notice and Hearing Procedure

25. Because there are more than 1,200 creditors and investors who have asserted claims in the Receivership action, the Receivers suggest that the Court in an interim order (the "Interim Order") approve a procedure whereby a copy of this Renewed Motion, a proposed Order (the "Final Order") and an explanation of the significance of the proposed Order in English and Haitian Creole be distributed to all known RBL creditors and investors through posting on the Receivers' website and also by way of an email blast to all known investors and creditors. A copy of the proposed Interim Order is attached hereto and marked as **Exhibit A** and a copy of the proposed Final Order is attached hereto and marked **Exhibit B**.

26. The Receivers will further advise such investors and creditors that if they have any objection to the entry of the proposed Final Order they have the opportunity to either: (a) file an objection in writing with this Court prior to any scheduled hearing; (b) send a written communication to the Receivers at the Receivers' email address or (c) attend the requested in-person hearing on this Motion, which is to occur at a time to be set by the Court.

27. Thus, the Receivers request that this Court, upon the filing of this Renewed Motion, set a hearing on the requested relief in this Motion for a date in 30 days after the filing of this Motion.

28. The Receivers believe that it will be in the best interest of all interested persons for the interim distribution to be made at this time.

## Legal Argument for Distribution

This Court has wide latitude in exercising inherent equitable power in approving a plan of distribution of Receivership funds. *SEC v. Forex Asset Mgmt.*, 242 F.3d 325, 331 (5th Cir. 2001) (affirming district court's approval of plan of distribution because court used its discretion in "a logical way to divide the money"); *CFTC v. Levy*, 541 F.3d 1102, 1110 (11th Cir. 2008)

#3041298v2-221271.0001

("Appellate Courts will 'not disturb the district court's choice of an equitable remedy except for abuse of discretion.'"); *Quilling v. Trade Partners, Inc.*, 2007 WL 107669, at *1 (W.D. Mich. 2007) ("In ruling on a plan of distribution, the standard is simply that the district court must use its discretion in a logical way to divide the money" (internal quotations omitted)).

"When it comes to fashioning a claims process and related distribution plan, '[n]o specific distribution scheme is mandated so long as the distribution is 'fair and equitable.'" *S.E.C. v. Homeland Communications Corp.*, 2010 WL 2035326, at *2 (S.D. Fla. May 24, 2010) (alteration in original) (quoting *SEC v. P.B. Ventures*, 1991 WL 269982, at *2 (E.D. Pa. Dec. 11, 1991)). "Similarly, in deciding what claims should be recognized and in what amounts, 'the fundamental principle which emerges from case law is that any distribution should be done equitably and fairly, with similarly situated investors or customers treated alike.'" *Id.* (quoting *SEC v. Credit Bancorp. Ltd.*, 2000 WL 1752979, at *13 (S.D.N.Y. Nov. 29, 2000)).

In approving a plan of distribution in a Receivership, "the district court, acting as a court of equity, is afforded the discretion to determine the most equitable remedy." *Forex*, 242 F.3d at 332. This Court may adopt any plan of distribution that is logical, fair, and reasonable. *S.E.C. v. Wang*, 944 F.2d 80, 83-84 (2d Cir. 1991); *S.E.C. v. Basic Energy & Affiliated Res., Inc.*, 273 F.3d 657, 671 (6th Cir. 2001); *Quilling*, 2007 WL 107669, at *1. "Therefore, '[a]ny action by a trial court in supervising an equity Receivership is committed to his sound discretion and will not be disturbed unless there is a clear showing of abuse.'" *SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 373 (5th Cir. 1982) (quoting *SEC v. Ark. Loan & Thrift Corp.*, 427 F.2d 1171, 1172 (8th Cir. 1970)); *see also Bendall v. Lancer Mgmt. Grp., LLC*, 523 F. App'x 554, 557 (11th Cir. 2013) (same).

#3041298v2-221271.0001

Consistent with the features of RBL's scheme, "courts have favored pro rata distribution of assets where, as here, the funds of defrauded victims were commingled and where victims were similarly situated with respect to their relationship to the defrauders." *S.E.C. v. Credit Bancorp, Ltd.*, 290 F.3d 80, 88 (2d Cir. 2002) (collecting cases). A logical, fair, and reasonable distribution plan may provide for reimbursement to certain claimants while excluding others. *See Wang*, 944 F.2d at 84; *Basic Energy*, 273 F.3d at 660-61. The Receivers' Proposed Plan of Distribution is (i) in the best interest of the Receivership and the investors and creditors as a whole; (ii) is fair, reasonable, and equitable; and (iii) satisfies due process, giving the investors and creditors notice of the hearing and an opportunity to be heard.

## LOCAL RULE 7.1(a)(3) CONFERRAL CERTIFICATION

I certify that I have conferred with representatives of the SEC regarding the relief requested in this Motion, and the SEC has no objection to the granting of the relief requested herein.

## LOCAL RULE 7.1(b)(2) REQUEST FOR HEARING

Because of the nature of the relief requested in this Motion, which affects all RBL's creditors and investors who have timely submitted complete proof of claim forms to the Receivers, the Receivers request that the Court hold a hearing on this Motion within 30 days after the filing of this Motion. At the hearing, the Court will be able to resolve any already filed objections by any investor or creditor and will be able to give an opportunity for any interested person to be heard. The Receivers request 60 minutes for this hearing.

Dated: December 18, 2024

Respectfully submitted,

**TRIPP SCOTT, P.A.**
*Counsel to the Receivers*
110 S.E. 6th Street, 15th Floor
Fort Lauderdale, Florida 33301

11

#3041298v2-221271.0001

Phone: (954) 525-7500

By: */s/ Charles M. Tatelbaum*
**Charles M. Tatelbaum**
Florida Bar No. 177540
cmt@trippscott.com
hbb@trippscott.com
**Corey D. Cohen**
Florida Bar No. 1024891
cdc@trippscott.com
eservice@trippscott.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 18TH day of December, 2024, I electronically filed the foregoing document via this Court's CM/ECF system which provided a true copy to all those entitled to notice.

By: */s/ Charles M. Tatelbaum*
**Charles M. Tatelbaum**
Florida Bar No. 177540

#3041298v2-221271.0001