UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 23-61179-CIV-LEIBOWITZ

SECURITIES AND EXCHANGE COMMISSION,

     Plaintiff,

v.

ROYAL BENGAL LOGISTICS, INC., and
SANJAY SINGH,

     Defendants.

_____/

## RECEIVERS' EIGHTH QUARTERLY STATUS REPORT FOR THE PERIOD FROM APRIL 1, 2025 THROUGH JUNE 30, 2025

     Paul Lopez and Jennifer Wahba in their capacity as Receivers for Royal Bengal Logistics, Inc. (RBL), by their undersigned attorneys, file this Eighth Quarterly Status Report as to their activities from April 1, 2025 through June 30, 2025 (the "Reporting Period") as follows:

### INTRODUCTION

     The Receivers were appointed in their position by this Court on June 21, 2023 as a result of an Order Granting the Securities and Exchange Commission's (SEC) Motion. *See* [DE 11] (the "Receivership Order"). Pursuant to paragraphs 48 and 49 of the Receivership Order, the Receivers were directed to file quarterly status reports. The Receivers have filed seven quarterly reports thus far. *See* (DE 100, DE 131, DE 214, DE 298, DE 328, DE 348, 383).

     While all Receivership proceedings involving Ponzi schemes are different, the situation involving RBL is unique due to several extraordinary factors. As noted in more detail below, beginning on February 1, 2023, management of RBL discontinued making entries into the financial books and records of RBL in the company's QuickBooks software system. This has hampered the Receivers and the Receivers' accounting professionals in the investigation as to the acts and

conduct of those involved with RBL in determining the true nature of the financial transactions involving the company. Furthermore, rather than utilizing a single investment vehicle and a single bank account to lure investors into depositing money with RBL, management devised multiple schemes for "investment opportunities" which include the following:

- Providing investments to RBL for the purchase of trucks in the investors' names (or corporate entity) to be then leased to RBL where the trucks were to be utilized by RBL in its money-losing trucking operation.  A percentage of the trucks were old with excessive miles that were in various states of disrepair, none of which was apparently properly disclosed to investors.

- Providing investments to RBL for the purchase of trucks to be then leased to RBL when no such trucks were ever purchased for the investors.

- Providing unsecured short-term loans to RBL for 90 days with high-interest rates, some of which were in excess of 110% per annum in violation of Florida law.

- Providing unsecured long-term loans to RBL at high interest rates, some of which were in excess of 110% per annum in violation of Florida law.

- Providing loans to RBL for the alleged investment in real estate acquisitions.

- Providing loans to RBL for the fabrication of trailers at the RBL Lubbock, Texas facility.

- Providing loans or equity investments for a purported business operation in India.

While the Receivers, their legal professionals and their accounting professionals have worked diligently in order to be able to submit this quarterly status report that is complete, based upon the lack of financial recordkeeping by RBL and its management, the absence of candor of some of the RBL executives and employees, and the herculean task of reconstructing the financial records of RBL as noted below, the Receivers are unable at this time to provide all of the

information as required by paragraphs 48 and 49 of the Receivership Order.  That said, the Receivers have been able to reconstruct significant key information regarding RBL's operations so that this Court can understand RBL's overall status at this point in time.

### SUMMARY OF THE OPERATIONS OF THE RECEIVERS

Below is merely a summary of the services the Receivers and their professionals have rendered to the Receivership estate during this Reporting Period. More detailed descriptions of the services rendered can be found in Tripp Scott's and KapilaMukamal's timesheets attached to the forthcoming Eighth Fee Petition.

### Asset Disposition and Business Operations

The Receivers expended time and work during the Reporting Period analyzing and pursuing existing causes of action, as well as analyzing other claims and causes of action that the Receivers may potentially file for the benefit of the RBL creditors and investors. Furthermore, in anticipation of providing an initial distribution to the RBL creditors and investors, the Receivers, their attorneys and staff members worked diligently to analyze the more than 1,300 proofs of claim which have been filed with the Receivers in order to ensure that all documentation and been supplied and that the amounts claimed were stated.

- Following the conviction of Sanjay Singh, the former CEO of RBL, on eight felony counts, the U.S. Attorney's Office was able to provide the Receivers and their professionals with all of the exhibits that were introduced at the criminal trial. Included in these exhibits were the results of investigations conducted by the FBI and the Florida Office of Financial Regulation, which documented transfers made or effected by Mr. Singh from assets that were derived directly or indirectly from RBL.  Since the Receivers could only utilize their subpoena power in order to obtain documents relating to RBL, the delivery of the

theretofore undisclosed documents involving Mr. Singh's transfers enabled the Receivers and their professionals to begin to investigate new and additional causes of action that may be brought in order to recover assets for the benefit of investors and creditors.

- With respect to the information provided through the U.S. Attorney's office, the Receivers' legal counsel and forensic accounting firm have continued the analysis of the transfers and possible causes of action that may exist. During this review, the Receivers and their professionals are mindful of the need to not only determine if causes of action may exist, but also the need to review and analyze (a) the cost of pursuing such causes of action and (b) the probability of a meaningful recovery if such causes of action are brought. As the Receivers have previously reported, beginning February 1, 2023, RBL discontinued making entries into the QuickBooks financial accounting system, so reconstructed bank records and other reconstructed summaries must be utilized in order to determine the nature and extent of the disbursements that were made that may be recoverable by the Receivers. As of the end of this Reporting Period, the Receivers have identified a number of individuals and entities who are not investors in RBL that are potential targets for recovery actions.

- During a prior Reporting Period, the Receivers filed their Renewed Motion for Authorization to Sell Abandoned Vehicles (D.E. 310), in which they requested authorization from this Court to sell the abandoned trucks within their custody, which motion was granted on September 12, 2024 (D.E. 323). The Receivers also had to deal with the administrative problem and issues created by investors and their lenders that had abandoned vehicles left in the possession of the Receivers, where the Receivers are required to continue to pay storage charges for these vehicles. As a result of ongoing

#3200691v2-221271.0001

communications with motor vehicle authorities in Florida and Texas, during the Reporting Period, the Receivers filed a motion for additional Court authority in order to be able to sell and dispose of these vehicles and pass good title to the purchasers [DE 392]. Subsequently, the Court requested that the Receivers provide additional documentation to support the relief requested in the motion, and the Receivers are working to obtain that information and documentation from state motor vehicle agencies.

- During this Reporting Period, the Receivers continued retaining one full-time RBL employee on payroll to assist with the claims administration process. He is responsible for contacting investors to inform them of missing information needed to process their claims forms. The Receivers also continued employing the two law-school students from Nova Southeastern University hired during the last reporting period to assist the Receivers with the claims administration process. As of the conclusion of the Reporting Period, the Receivers have achieved the mailing of the checks for the first interim distribution to investors and creditors in the gross amount of $2,750,000. This first interim distribution will equal 2.62% of each investor's or creditor's allowed proof of claim. Investors and creditors have submitted 1,272 proofs of claim prior to the filing deadline (with 1,168 verified and 1,324 total), and these proofs of claim total $105,074,932.04. The distribution amount for allowed claimants, excluding reserves for disputed and late-filed claims, was $2,427,426.83. The rate of distribution was calculated by dividing the $2,750,000 by the total claim amount of $105,074,932.04.

- As reported at the conclusion of the prior Reporting Period, the Receivers and their counsel are continuing to pursue the ongoing litigation against Ricardi Celicourt and Brisly and Elsie Guillaume (the "FT Defendants") for fraudulent transfers, though those lawsuits are

going to be stayed as further discussed below. Throughout the Reporting Period, counsel for the Receivers pursued the Receivers' litigation pending in Florida circuit courts against the FT Defendants, while counsel for the SEC pursued its pending litigation against the FT Defendants in the U.S. District Court for the Southern District of Florida. As a result of ongoing communications between counsel for the Receivers and counsel for the SEC, it was concluded that efficiency may be best served if a settlement were to be reached in the SEC litigation which could inure to the benefit of the Receivership estate. Counsel for the SEC was able to negotiate separate settlement agreements with the FT Defendants, the terms of which were acceptable to the Receivers and their professionals.  Prior to the conclusion of the Reporting Period, the FT Defendants executed the settlement agreements with the SEC. In order for the settlements to be fully approved by the SEC, the full Commission must approve the terms of the agreements. Once that is accomplished, the SEC will seek an order and judgment in its federal-court action against the FT Defendants. Concurrently, the Receivers have negotiated the terms of forbearance agreements with the FT Defendants.  The result of these forbearances permitted the Receivers to obtain trial-date continuances from the respective state-court judges in order to permit the SEC to pursue obtaining the necessary approvals from the full Commission to then obtain the judgment against the FT Defendants without the need for the Receivers and their professionals to incur additional costs for the scheduled trials of the state-court actions. Assuming that the judgments are entered against the FT Defendants, the Receivers will dismiss their state-court actions against the FT Defendants.  The adoption of this procedure saves the estate the time, expense and potential uncertainty of the state-court litigation,

#3200691v2-221271.0001

while, at the same time, providing for appropriate consent judgments to be entered against the FT Defendants.

- With respect to the Receivers' lawsuit against Forrest Robinson (the former accounting firm for RBL) for professional negligence, the Receivers were able to conclude the settlement that was approved by the Court, and the Receivers have received the $400,000.00 agreed settlement amount. As a result, the action filed in the Circuit Court for Broward County against Forrest Robinson has been dismissed.

- There has been no activity involving the NAA Receivership during this Reporting Period due to the fact that Sanjay Singh previously refused to provide any information concerning NAA based upon his Fifth Amendment privilege against self-incrimination.

- During the Reporting Period, the Receivers were requested by the office of the United States Attorney for the Southern District of Florida to provide documents and assistance in connection with the sentencing phase of the conviction in the criminal case against Sanjay Singh. The Receivers worked with attorneys in the U.S. Attorney's Office in order to provide documents and information as may be appropriate to respond to any requests. As a result, at the sentencing hearing, Paul Lopez, one of the Receivers, testified in order to provide the Court with data and information concerning the extent of the losses to investors for the Court's consideration in imposing the sentence of 23 years of incarceration for Mr. Singh.

- As previously reported, the Receivers had obtained an order intervening in a foreclosure action brought by the mortgage lender with respect to the residence of Mr. and Mrs. Singh. In order for the Receivers to assert a fraudulent transfer claim against Mr. and Mrs. Singh, the Receivers were able to intervene in that action and filed a third-party claim against Mr.

#3200691v2-221271.0001

and Mrs. Singh for fraudulent transfer. Apparently, a settlement was reached between the mortgage lender and Mr. and Mrs. Singh, and the foreclosure action was dismissed. The Receivers immediately filed a separate complaint in state court against Mr. and Mrs. Singh for fraudulent transfer, and also filed a lis pendens against the residence of Mr. and Mrs. Singh. After further review and investigation, the Receivers have filed an amended complaint. Just before the end of the Reporting Period, Mr. and Mrs. Singh, without the aid of counsel, have filed an answer and affirmative defenses to the amended complaint. The Receivers anticipate promptly filing a motion for summary judgment.

- At the end of this Reporting Period, RBL's Receivership estate had $1,354,923.78 total cash on hand in the Receivers' RBL Comerica checking and insured sweep accounts, plus approximately $9,900 in NAA's Comerica checking account. These amounts do not include any funds frozen in Mr. Singh's or his wife's personal accounts, to which the Receivers do not have access.

- During this Reporting Period, the Receivers were advised by Comerica Bank that the Comerica accounts would no longer be generating a high rate of interest. After speaking with the SEC's counsel, the Receivers and their counsel determined that the best course of action would be to transfer the Comerica funds to a high-interest sweep account at Vista Bank. During this Reporting Period, the Receivers set up the accounts for NAA and RBL at Vista Bank, and will transfer the remaining Comerica funds to Vista after the initial interim distribution is made.

- During this Reporting Period, the Receivers as well as their legal counsel dealt with a number of open personal injury and property damage claims that had been asserted by parties involved in vehicle collisions with vehicles leased to RBL.  This required dealing

#3200691v2-221271.0001

with RBL's insurance carrier and its counsel, as well as enforcing the stay against litigation set forth in the Receivership Order.  Where appropriate, the Receivers have entered into stipulations to allow litigation against RBL to proceed so long as it was understood that any uninsured portion of any judgment could only be satisfied by the plaintiffs' filing a proof of claim in the Receivership estate.

- During a prior reporting period, a class action had been commenced by a group of investors and RBL against Citibank, one of the banks utilized by RBL during its operations. Since any recoveries from that class action will provide a direct benefit to investors and creditors of the Receivership estate, the Receivers and legal counsel have been cooperating with counsel for the class-action plaintiffs. Citibank removed the case to federal court, and it is currently pending before this Court (Case No. 0:24-cv-61469-DSL). As of the conclusion of the Reporting Period, the docket of the class-action reflects that the Court had denied Citibank's motion to dismiss the amended complaint, allowing the case to proceed against Citibank. Additionally, counsel for Citibank has served the Receivers and the Receivers' legal counsel with extensive document production discovery and a notice of deposition as part of the ongoing class action litigation.

### Asset Analysis and Recovery

- As more fully set forth above, during this Reporting Period, as partially stated above, the Receivers have been continuing to analyze the bank account records and brokerage account records of RBL in order to determine what, if any, additional causes of action may be brought in connection with the multiple apparent unauthorized and potentially improper transactions with such entities.

#3200691v2-221271.0001

- During the Reporting Period, with the assistance of the Receivers' forensic accounting firm and with the additional assistance of the Florida Office of Financial Regulation, the Receivers have analyzed the extent to which early investors in RBL received not only the repayment of principal and investments, but also substantial amounts of interest payments. The Receivers are currently analyzing the cost and benefit of pursuing first a demand for repayment and then, if necessary, litigation in order to recover those funds that constituted recoverable distributions to investors.

### Case Administration

- The Receivers previously set up a dedicated website (www.rblReceivers.com) and email address (rblreceiver@trippscott.com) to provide information about the progress of the Receivership estate and to answer investors' questions. Updates continue to be sent to investors by email and through the website to advise them of significant developments, including the Receives' procedures with respect to the mailing of checks which constitute the first interim distribution to investors and creditors. During this Reporting Period, the Receivers also created another email address (rbldistributions@trippscott.com) dedicated to submission of questions with respect to the initial distributions.

- During the Reporting Period, the Receivers and their counsel continued to receive frequent telephone calls and emails, as well as in-person visits, from investors and creditors asking questions and seeking information about their investments, the Receivership process, and the claims administration process. The Receivers and their counsel have taken the time to respond to each investor call, email, and meeting based on the unique facts and situation of each investor, without rendering legal advice.

#3200691v2-221271.0001

### Claims Administration and Objections

- A large portion of the Receivers' work and time spent during this Reporting Period consisted of Claims Administration. The Receivers and their staff continue to review the Proof of Claim Forms that investors sent by mail, email, and in person to the Receivers. During this Reporting Period, the Receivers were still receiving some new proofs of claims from investors who state that they had not previously filled out a claim form. The Receivers' staff are logging all the forms' contents in a spreadsheet to evaluate the nature of the claims. The Receivers' staff, including the full-time RBL employee and the remaining law student, are contacting hundreds of investors to obtain missing information or supporting documentation needed to evaluate the claims. The Receivers' forensic accountants, KapilaMukamal, are responding to the Receivers' inquiries to confirm investors' payment histories. The Receivers' spreadsheet will be used to formulate a proposal for distributions to be approved by the Court. After sorting through duplicates within the more than 1,500 forms received, it appears that there are approximately 1,302 unique investors, not accounting for RBL's unsecured creditors who may also have claims for sums owed during the ordinary course of business.

### A LIST OF ALL KNOWN CREDITORS WITH THEIR ADDRESSES AND THE AMOUNTS OF THEIR CLAIMS

The Receivers have filed a Motion with this Court [DE 94] seeking to defer providing a list of all known creditors with their addresses and the amount of their claims due to the fact that the books and records of RBL have not been able to provide the Receivers with an accurate and complete list of all such creditors. On September 18, 2023, this Court entered an Order [DE 98] granting the Receivers' Motion to defer providing the list of creditors with the last Status Report.

#3200691v2-221271.0001

Upon the Receivers gaining such information that will permit them to complete such a list, it will be submitted with the next quarterly status report.  As noted above, the attached **Exhibit A** is a list of all known creditors and investors based upon the close to 1,300 proofs of claim that have been filed. Because most of the creditors are individuals entitled to personal information privacy protection, the Receivers are not providing the addresses of the creditors.

**A SCHEDULE OF ALL THE RECEIVERS' RECEIPTS AND DISBURSEMENTS (ATTACHED AS EXHIBIT B), WITH ONE COLUMN FOR THE QUARTERLY PERIOD COVERED AND A SECOND COLUMN FOR THE ENTIRE DURATION OF THE RECEIVERSHIP**

The SEC's SFAR report is attached as **Exhibit B** to this Report.

> **TRIPP SCOTT, P.A.**
> *Counsel to the Receivers*
> 110 S.E. 6th Street, 15th Floor
> Ft. Lauderdale, FL 33301
> Phone: (954) 525-7500
>
> By: */s/ Charles M. Tatelbaum*
> **Charles M. Tatelbaum**
> Florida Bar No. 177540
> cmt@trippscott.com
> **Corey D. Cohen**
> Florida Bar No. 1024891
> cdc@trippscott.com
> hbb@trippscott.com

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on the 8th day of July 2025, I electronically filed the foregoing document via this Court's CM/ECF system which provided a true copy to all those entitled to notice.

> By: */s/ Charles M. Tatelbaum*
> Charles M. Tatelbaum
> Florida Bar No. 177540

12

#3200691v2-221271.0001