UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 23-61179-CIV-LEIBOWITZ

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,
v.

ROYAL BENGAL LOGISTICS, INC., and
SANJAY SINGH,

    Defendants.
_____/

**RECEIVERS' NINTH QUARTERLY STATUS REPORT FOR THE PERIOD FROM JULY 1, 2025 THROUGH SEPTEMBER 30, 2025**

Paul Lopez and Jennifer Wahba in their capacity as Receivers for Royal Bengal Logistics, Inc. (RBL), by their undersigned attorneys, file this Ninth Quarterly Status Report as to their activities from July 1, 2025 through September 30, 2025 (the "Reporting Period") as follows:

**INTRODUCTION**

The Receivers were appointed in their position by this Court on June 21, 2023 as a result of an Order Granting the Securities and Exchange Commission's (SEC) Motion. *See* [DE 11] (the "Receivership Order"). Pursuant to paragraphs 48 and 49 of the Receivership Order, the Receivers were directed to file quarterly status reports. The Receivers have filed eight quarterly reports thus far. *See* (DE 100, DE 131, DE 214, DE 298, DE 328, DE 348, 383, 394).

While all Receivership proceedings involving Ponzi schemes are different, the situation involving RBL is unique due to several extraordinary factors. As noted in more detail below, beginning on February 1, 2023, management of RBL discontinued making entries into the financial books and records of RBL in the company's QuickBooks software system. This has hampered the Receivers and the Receivers' accounting professionals in the investigation as to the acts and

#3309722v1-221271.0001

conduct of those involved with RBL in determining the true nature of the financial transactions involving the company. Furthermore, rather than utilizing a single investment vehicle and a single bank account to lure investors into depositing money with RBL, management devised multiple schemes for "investment opportunities" which include the following:

- Providing investments to RBL for the purchase of trucks in the investors' names (or corporate entity) to be then leased to RBL where the trucks were to be utilized by RBL in its money-losing trucking operation.  A percentage of the trucks were old with excessive miles that were in various states of disrepair, none of which was apparently properly disclosed to investors.
- Providing investments to RBL for the purchase of trucks to be then leased to RBL when no such trucks were ever purchased for the investors.
- Providing unsecured short-term loans to RBL for 90 days with high-interest rates, some of which were in excess of 110% per annum in violation of Florida law.
- Providing unsecured long-term loans to RBL at high interest rates, some of which were in excess of 110% per annum in violation of Florida law.
- Providing loans to RBL for the alleged investment in real estate acquisitions.
- Providing loans to RBL for the fabrication of trailers at the RBL Lubbock, Texas facility.
- Providing loans or equity investments for a purported business operation in India.

While the Receivers, their legal professionals and their accounting professionals have worked diligently in order to be able to submit this quarterly status report that is complete, based upon the lack of financial recordkeeping by RBL and its management, the absence of candor of some of the RBL executives and employees, and the herculean task of reconstructing the financial records of RBL as noted below, the Receivers are unable at this time to provide all of the

#3309722v1-221271.0001

information as required by paragraphs 48 and 49 of the Receivership Order. That said, the Receivers have been able to reconstruct significant key information regarding RBL's operations so that this Court can understand RBL's overall status at this point in time.

## SUMMARY OF THE OPERATIONS OF THE RECEIVERS

Below is merely a summary of the services the Receivers and their professionals have rendered to the Receivership estate during this Reporting Period. More detailed descriptions of the services rendered can be found in Tripp Scott's and KapilaMukamal's timesheets attached to the forthcoming Ninth Fee Petition.

### Asset Disposition and Business Operations

The Receivers expended time and work during the Reporting Period analyzing and pursuing existing causes of action, as well as analyzing other claims and causes of action that the Receivers may potentially file for the benefit of the RBL creditors and investors. Furthermore, as part of the process of making an initial distribution to investors and creditors during the Reporting period, the Receivers, their attorneys and staff members worked diligently to continue analyze the more than 1,300 proofs of claim which have been filed with the Receivers in order to ensure that all documentation and been supplied and that the amounts claimed were stated.

- Pursuant to the authority granted to the receivers by this Court, during the Reporting Period the receivers carried out the distribution of the gross amount of $2,750,000 to the investors and creditors that had submitted proofs of claim to the receivers by the initial claims filing deadline. With respect to proofs of claim that remain unresolved due to inconsistencies or insufficient documentation but were filed prior to the claims filing deadline, reserves were held so that once the claims are verified, the initial distribution may be made.

- As part of the truck investment scheme created by RBL, those who invested in the purchase of trucks were urged by management of RBL to create corporate entities in order to own and lease the trucks back to RBL. Upon the closure of RBL by the court order of June 21, 2023 and the subsequent return of the vehicles to the owners by the Receivers, many of the truck investors discontinued utilizing the corporate entities that they had created. In so doing, bank accounts in the names of the corporate entities were either closed or became dormant. As a result, the Receivers recognized that issuing checks for the initial distribution to the entities that had filed proofs of claim where the corporate entities were no longer in existence or no longer maintain bank accounts would create a situation where the investors would be unable to negotiate the initial distribution checks. As a result, the Receivers conducted a communication campaign to all investors to have them provide information as to the status of any corporate entities in order to receive authorization for the distribution checks to be made payable to the principal of the corporation that filed the proof of claim. Because of the lack of business sophistication of many of the investors, this required the Receivers' staff to spend considerable time in working with the investors so that the initial distribution payments could be promptly deposited and negotiated.

- The Receivers utilized the services of their forensic accountants to facilitate the calculation and issuance of distribution checks to investors and creditors. The Receivers and their accountants are currently dealing with checks that have been issued to investors and creditors that remain uncashed. The Receivers called or emailed each of these investors to determine the reason for not cashing the check. If necessary, the prior checks were voided and new checks were re-issued and mailed to the investors.

- Following the conviction of Sanjay Singh, the former CEO of RBL, on eight felony counts, the U.S. Attorney's Office was able to provide the Receivers and their professionals with all of the exhibits that were introduced at the criminal trial. Included in these exhibits were the results of investigations conducted by the FBI and the Florida Office of Financial Regulation, which documented transfers made or effected by Mr. Singh from assets that were derived directly or indirectly from RBL. These documents enabled the Receivers and their professionals to begin to investigate new and additional causes of action that may be brought in order to recover assets for the benefit of investors and creditors.

- With respect to the information provided through the U.S. Attorney's office, the Receivers' legal counsel and forensic accounting firm have continued the analysis of the transfers and possible causes of action that may exist. The Receivers and their accountants in utilizing bank account records have been able to identify potential fraudulent transfers that were made by RBL that may be subject to recovery. During this review, the Receivers and their professionals are mindful of the need to not only determine if causes of action may exist, but also the need to review and analyze (a) the cost of pursuing such causes of action and (b) the probability of a meaningful recovery if such causes of action are brought. As of the end of this Reporting Period, the Receivers have identified a number of individuals and entities who are not investors in RBL that are potential targets for recovery actions.

- During a prior reporting period, the Receivers filed their Renewed Motion for Authorization to Sell Abandoned Vehicles (D.E. 310), in which they requested authorization from this Court to sell the abandoned trucks within their custody, which motion was granted on September 12, 2024 (D.E. 323). The Receivers also had to deal with the administrative problem and issues created by investors and their lenders that had

abandoned vehicles left in the possession of the Receivers, where the Receivers are required to continue to pay storage charges for these vehicles. As a result of ongoing communications with motor vehicle authorities in Florida and Texas, during the prior reporting period, the Receivers filed a motion for additional Court authority in order to be able to sell and dispose of these vehicles and pass good title to the purchasers [DE 392]. Subsequently, the Court requested that the Receivers provide additional documentation to support the relief requested in the motion [DE 393], and the Receivers are working to obtain that information and documentation from state motor vehicle agencies to provide to the Court. To date, however, the Receivers have encountered several administrative hurdles in attempting to obtain this additional information requested by the Court, but the Texas and Florida agencies have not been able to provide the information. The Receivers are evaluating the best course of action to proceed with these abandoned vehicles.

- During this Reporting Period, the Receivers continued retaining one full-time RBL employee on payroll to assist with the claims administration process. He is responsible for contacting investors to inform them of missing information needed to process their claims forms. The Receivers also continued employing the two law-school students from Nova Southeastern University hired during the last reporting period to assist the Receivers with the claims administration process and are now down to one law-school student and one full-time employee.

- As previously reported the interim distribution to investors and creditors was in the gross amount of $2,750,000. This first interim distribution equaled 2.62% of each investor's or creditor's allowed proof of claim. Investors and creditors have submitted 1,272 proofs of claim prior to the filing deadline (with 1,168 verified and 1,324 total), and these proofs of

claim total $105,074,932.04. The distribution amount for allowed claimants, excluding reserves for disputed and late-filed claims, was $2,427,426.83. The rate of distribution was calculated by dividing the $2,750,000 by the total claim amount of $105,074,932.04.

- Since the initial distribution was made, 35 additional proofs of claim have been submitted to the Receivers in the total maximum claimed amount of $2,063,000. The Receivers are verifying the information submitted and the total allowed amount of these claims.

- As previously reported, the Receivers and their counsel pursued the ongoing litigation against Ricardi Celicourt and Brisly and Elsie Guillaume (the "FT Defendants") for fraudulent transfers, though those lawsuits are going to be stayed as further discussed below. As a result of ongoing communications between counsel for the Receivers and counsel for the SEC, it was concluded that efficiency may be best served if a settlement were to be reached in the SEC litigation which could inure to the benefit of the Receivership estate. Counsel for the SEC was able to negotiate separate settlement agreements with the FT Defendants, the terms of which were acceptable to the Receivers and their professionals. As a result, the FT Defendants executed the settlement agreements with the SEC. In order for the settlements to be fully approved by the SEC, the full Commission must approve the terms of the agreements which approval process has yet to be completed. Once that is accomplished, the SEC will seek an order and judgment in its federal-court action against the FT Defendants. Concurrently, the Receivers have negotiated the terms of forbearance agreements with the FT Defendants. The result of these forbearances permitted the Receivers to obtain trial-date continuances from the respective state-court judges in order to permit the SEC to pursue obtaining the necessary approvals from the full Commission to then obtain the judgment against the FT Defendants without the need for

   the Receivers and their professionals to incur additional costs for the scheduled trials of the state-court actions. Assuming that the judgments are entered against the FT Defendants, the Receivers will dismiss their state-court actions against the FT Defendants. The adoption of this procedure saves the estate the time, expense and potential uncertainty of the state-court litigation, while, at the same time, providing for appropriate consent judgments to be entered against the FT Defendants.

- There has been no activity involving the NAA Receivership during this Reporting Period.

- During the Reporting Period, the Receivers were requested by the office of the United States Attorney for the Southern District of Florida to provide documents and assistance in connection with the restitution phase of the sentencing in the criminal case against Sanjay Singh. The Receivers have worked with attorneys in the U.S. Attorney's Office in order to provide documents and information as may be appropriate to respond to any requests. The Receivers anticipate that they will be called as a witness to provide facts and information at the restitution determination hearing currently scheduled for October 15, 2025.

- As previously reported, the Receivers had obtained an order intervening in a foreclosure action brought by the mortgage lender with respect to the residence of Mr. and Mrs. Singh. In order for the Receivers to assert a fraudulent transfer claim against Mr. and Mrs. Singh, the Receivers were able to intervene in that action and filed a third-party claim against Mr. and Mrs. Singh for fraudulent transfer. Apparently, a settlement was reached between the mortgage lender and Mr. and Mrs. Singh, and the foreclosure action was dismissed. The Receivers immediately filed a separate complaint in state court against Mr. and Mrs. Singh for fraudulent transfer, and also filed a lis pendens against the residence of Mr. and Mrs. Singh. After further review and investigation, the Receivers have filed an amended

complaint. During the Reporting Period, Mrs. Singh, proceeding pro se on behalf of her and Mr. Singh, moved for summary judgment on the Receivers' claims, which the state court denied. The state court also awarded the Receivers entitlement to attorney's fees against the Singhs, finding that the motion was brought in bad faith.

- At the end of this Reporting Period, RBL's Receivership estate had $1,315,038.25 total cash on hand in the Receivers' RBL checking and insured sweep accounts, plus approximately $9,900 in NAA's checking account. These amounts do not include any funds frozen in Mr. Singh's or his wife's personal accounts, to which the Receivers do not have access. The Receivers moved their RBL and NAA accounts to Vista Bank during this Reporting Period because Comerica was no longer offering a favorable interest rate. The Vista accounts both bear a high rate of interest. The Comerica accounts are currently closed.

- During this Reporting Period, the Receivers as well as their legal counsel dealt with a number of open personal injury and property damage claims that had been asserted by parties involved in vehicle collisions with vehicles leased to RBL.  This required dealing with RBL's insurance carrier and its counsel, as well as enforcing the stay against litigation set forth in the Receivership Order.  Where appropriate, the Receivers have entered into stipulations to allow litigation against RBL to proceed so long as it was understood that any uninsured portion of any judgment could only be satisfied by the plaintiffs' filing a proof of claim in the Receivership estate.

- During a prior reporting period, a class action had been commenced by a group of investors and RBL against Citibank, one of the banks utilized by RBL during its operations. Since any recoveries from that class action will provide a direct benefit to investors and creditors

#3309722v1-221271.0001

of the Receivership estate, the Receivers and legal counsel have been cooperating with counsel for the class-action plaintiffs. Citibank removed the case to federal court, and it is currently pending before this Court (Case No. 0:24-cv-61469-DSL). During the Reporting Period, counsel for Citibank served the Receivers with an extensive discovery request requiring the production of thousands of documents. As of the conclusion of the Reporting Period, the Receivers have produced to the attorneys for Citibank over 107,000 documents in order to comply with the discovery request. This subpoena required the Receivers and their staff to spend considerable time and expense identifying and reviewing each of the documents to be produced in response to the discovery request.

### Asset Analysis and Recovery

- As more fully set forth above, during this Reporting Period, as partially stated above, the Receivers have been continuing to analyze the bank account records and brokerage account records of RBL in order to determine what, if any, additional causes of action may be brought in connection with the multiple apparent unauthorized and potentially improper transactions with such entities.

- During the Reporting Period, with the assistance of the Receivers' forensic accounting firm and with the additional assistance of the Florida Office of Financial Regulation, the Receivers have analyzed the extent to which early investors in RBL received not only the repayment of principal and investments, but also substantial amounts of interest payments. The Receivers are currently analyzing the cost and benefit of pursuing first a demand for repayment and then, if necessary, litigation in order to recover those funds that constituted recoverable distributions to investors.

- With the assistance of the Receivers' forensic accountants, an analysis has been completed of the investors who were "net winners" in that they received payments from RBL without suffering any losses. The delay in completing this calculation was due to the fact that the books and records of RBL are incomplete, and bank records had to be utilized in order to complete the summary. Additionally, correlation had to be completed between individual names and entity names in order to make sure that both the principals of the entities and the entities themselves were correlated. The Receivers will be filing a motion with the Court for authority to make a demand on the so-called net winners to reimburse the receivership estate for the payments they received, and the Receivers will seek further authority to pursue litigation against those individuals and entities in the event that payment is not made after demand.

- With the assistance of the Receivers' forensic accountants, an initial analysis has been completed with respect to those individuals and entities that appear to have received fraudulent transfers from RBL in that the payments to them bore no relationship to any business activities or investments made by the recipients, and for which there was no consideration to RBL. The Receivers will be filing a motion with the Court for authority to make demand on the recipients of these fraudulent transfers to reimburse the receivership estate for the payments they received, and the Receivers will seek further authority to pursue litigation against those individuals and entities in the event that payment is not made after demand.

## Case Administration

- The Receivers previously set up a dedicated website (www.rblReceivers.com) and email address (rblreceiver@trippscott.com) to provide information about the progress of the

11

    Receivership estate and to answer investors' questions. Updates continue to be sent to investors by email and through the website to advise them of significant developments, including the Receives' procedures with respect to the mailing of checks which constitute the first interim distribution to investors and creditors. The Receivers also continued to monitor another email address (rbldistributions@trippscott.com) dedicated to submission of questions with respect to the initial distributions.

- During the Reporting Period, the Receivers and their counsel continued to receive telephone calls and emails, as well as a few in-person visits, from investors and creditors asking questions about the claims administration process, including the amount of the initial distribution. The Receivers and their counsel have taken the time to respond to each investor call, email, and meeting based on the unique facts and situation of each investor, without rendering legal advice.

### Claims Administration and Objections

- A large portion of the Receivers' work and time spent during this Reporting Period consisted of Claims Administration in connection with the initial distribution to investors and creditors.  Unlike other Ponzi scheme cases where the investors may be somewhat sophisticated. Due to the targeting of unsophisticated investors by Sanjay Singh, the Receivers are required to provide extra information and assistance to the investors and creditors of RBL in order to carry out their fiduciary obligations.. The Receivers and their staff continue to review the Proof of Claim Forms that investors sent by mail and email to the Receivers to verify the few remaining, unverified claims. During this Reporting Period, the Receivers were still receiving some new proofs of claims from investors who state that

12

#3309722v1-221271.0001

they had not previously filled out a claim form. The Receivers' staff are logging all the forms' contents in a spreadsheet to evaluate the nature of the claims. The Receivers' staff, including the full-time RBL employee and the remaining law student, are contacting hundreds of investors to obtain missing information or supporting documentation needed to evaluate the claims. The Receivers' forensic accountants, KapilaMukamal, are responding to the Receivers' inquiries to confirm investors' payment histories.

### A LIST OF ALL KNOWN CREDITORS WITH THEIR ADDRESSES AND THE AMOUNTS OF THEIR CLAIMS

The Receivers have filed a Motion with this Court [DE 94] seeking to defer providing a list of all known creditors with their addresses and the amount of their claims due to the fact that the books and records of RBL have not been able to provide the Receivers with an accurate and complete list of all such creditors. On September 18, 2023, this Court entered an Order [DE 98] granting the Receivers' Motion to defer providing the list of creditors with the last Status Report. Upon the Receivers gaining such information that will permit them to complete such a list, it will be submitted with the next quarterly status report. As noted above, the attached **Exhibit A** is a list of all known creditors and investors based upon the close to 1,300 proofs of claim that have been filed. Because most of the creditors are individuals entitled to personal information privacy protection, the Receivers are not providing the addresses of the creditors.

### A SCHEDULE OF ALL THE RECEIVERS' RECEIPTS AND DISBURSEMENTS (ATTACHED AS EXHIBIT B), WITH ONE COLUMN FOR THE QUARTERLY PERIOD COVERED AND A SECOND COLUMN FOR THE ENTIRE DURATION OF THE RECEIVERSHIP

The SEC's SFAR report is attached as **Exhibit B** to this Report.

**TRIPP SCOTT, P.A.**
*Counsel to the Receivers*

    110 S.E. 6th Street, 15th Floor
Ft. Lauderdale, FL 33301
Phone: (954) 525-7500

By: */s/ Charles M. Tatelbaum*
**Charles M. Tatelbaum**
Florida Bar No. 177540
cmt@trippscott.com
**Corey D. Cohen**
Florida Bar No. 1024891
cdc@trippscott.com
hbb@trippscott.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 8th day of October 2025, I electronically filed the foregoing document via this Court's CM/ECF system which provided a true copy to all those entitled to notice.

By: */s/ Charles M. Tatelbaum*
Charles M. Tatelbaum
Florida Bar No. 177540

#3309722v1-221271.0001