UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 23-61179-CIV-LEIBOWITZ

SECURITIES AND EXCHANGE COMMISSION,

     Plaintiff,

v.

ROYAL BENGAL LOGISTICS, INC., and
SANJAY SINGH,

     Defendants.

_____/

**RECEIVERS' SUPPLEMENTAL MOTION TO APPROVE (I) THIRD-PARTY LITIGATION PROCEDURES AND CONTINGENCY FEE ARRANGEMENT WITH RESPECT TO THE NET WINNERS AND (II) LITIGATION PROCEDURES AND CONTINGENCY FEE AGREEMENT TO PURSUE SANJAY SINGH AND SHEETAL SINGH**

Paul Lopez and Jennifer Wahba, as the Court-appointed Receivers ("Receivers") over Royal Bengal Logistics, Inc. ("RBL"), hereby file this supplemental motion to approve third-party litigation procedures and contingency fee agreements (I) for the pursuit of the so-called net winners, and (ii) for the collection of a judgment that has been obtained against Sanjay Singh and Sheetal Singh on the following grounds:

**BACKGROUND**

**A.    The SEC Action and RBL Scheme.**

1.    The Receivers were appointed in their position by this Court on June 21, 2023, as a result of an Order Granting the Securities and Exchange Commission's (SEC) Motion. See [DE 11] (the "Receivership Order").

2.    While all Receivership proceedings involving Ponzi schemes are different, the situation involving RBL is unique due to several extraordinary factors. As the Court is aware, prior to the

#3444557v2-221271.0001

entry of the Receivership Order, beginning on February 1, 2023, the chief financial officer of RBL discontinued making entries into RBL's financial records. As a result, the Receivers were initially unable to determine the nature and extent of financial transactions that took place in the months preceding the entry of the Receivership Order. Furthermore, on further review of the financial record entries made prior to February 1, 2023, the Receivers determined that the entries were incomplete, unreliable and in some instances totally inaccurate. Thereafter, the Receivers conducted several meetings with employees of RBL and issued subpoenas to the multiple banking institutions utilized by RBL prior to the entry of the Receivership Order in order for the Receivers and their court- appointed forensic accountants to determine the nature and extent of transfers made by RBL within the four years preceding the entry of the Receivership Order.

3. As reflected in the quarterly status reports filed by the Receivers, actions have been taken to sell assets belonging to RBL once they were identified, assets were recovered and sold where they were fraudulently transferred to others, and the Receivers recovered a substantial settlement from the prior accounting firm for RBL.

4. Concurrently with recovering assets on a cost-effective basis to provide distributions, the Receivers have focused on reviewing filed proofs of claim to determine the amount of allowed claims entitled to receive distributions. On April 22, 2025, this Court entered an Order [DE 384] authorizing the Receivers to make an interim distribution in the amount of $2,750,000 to investors and creditors who timely filed proofs of claim which were liquidated and uncontested.

5. On November 26, 2026, the Receivers filed an initial Motion to Approve Third Party Litigation Procedures and Contingency Fee Agreement [DE 413]. (the "Motion")

6. On January 29, 2026, this Court entered an Order which denied the Motion [DE 428]. (the "Order")

#3444557v2-221271.0001

7.      On December 18, 2025, the Receivers and their counsel participated in a status conference held before the Court. At that time, the Court expressed ideas and concerns with respect to the cost to the estate in order to attempt to recover additional funds, to reiterate the Court's concern that "the juice will be worth the squeeze".

8.      Keeping in mind the Court's admonition and statements that were expressed at the December 18, 2025, status conference and considering the Court's statements in the Order, the Receivers are now filing a Supplemental Motion in order to address the concerns of the Court. **In particular, the Court's attention is called to the fact that the engagement of counsel below is on a fully contingent basis as to both fees and costs.** As a result, there will be no financial exposure to the receivership estate.

**B.   Additional Third-Party Litigation and Proposed Settlement Procedures for The Pursuit of the Net Winners.**

9.      The Receivership Order authorizes and directs the Receivers to bring legal actions as the Receivers deem necessary or appropriate in discharging their duties. *See* Receivership Order, ¶ 7.H.  Leave of court, however, is required to commence certain litigation. *See id.* ¶ 26.

10.     Paragraph 36 of Receivership Order states:

> Subject to the requirement, in Section VIII above, that leave of this Court is required to resume or commence certain litigation, the Receivers is authorized, empowered and directed to investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may in his discretion, and in consultation with Commission counsel, be advisable or proper to recover and/or conserve Receivership Property.

*See id.* ¶ 36.

11.     Paragraph 37 of the Receivership Order further states:

> Subject to his obligation to expend Receivership funds in a reasonable and cost-effective manner, the Receivers is authorized, empowered and directed to investigate

the manner in which the financial and business affairs of the Receivership Defendants were conducted and (after obtaining leave of this Court) to institute such actions and legal proceedings, for the benefit and on behalf of the Receivership Estate, as the Receivers deems necessary and appropriate; the Receivers may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this Court as may be necessary to enforce this Order. Where appropriate, the Receivers should provide prior notice to Counsel for the Commission before commencing investigations and /or actions.

*See id.* ¶ 37.

12.     The Receivers have investigated claims that can be brought against creditors, investors, and other individuals and companies who received funds from RBL that may be recoverable as the recipients may be deemed to be "net winners" in in connection with RBL's Ponzi scheme in receiving a greater amount of funds than they invested in the RBL (each an "Additional Third-Party Claim" and collectively the "Additional Third-Party Claims").

13.     Pursuant to Paragraph 36 of the Receivership Order, the Receivers are presently authorized and empowered to prosecute and compromise actions or proceedings. Additionally, they may settle claims according to their best business judgment without further leave of Court or additional notice. Consistent with the Receivership Order, and in order to prosecute, and potentially compromise, the Additional Third-Party Claims against the net winners in an efficient cost-effective manner, the Receivers propose the following procedures:

    a.  The Receivers, in their discretion, may: (i) issue demand letters to individuals and companies against whom the Receivers have Additional Third-Party Claims in which the Receivers will offer to settle such claims for the repayment of liability, and not seek prejudgment interest; (ii) initiate litigation against recipients of Additional Third-Party Claims, which lawsuits will set forth the full amount of

liability against each defendant as well as other available relief including, but not limited to, prejudgment interest and post judgment interest; and (iii) settle any Additional Third-Party Claim after issuing a demand letter or filing a lawsuit, and take into account any relevant factor, including collectability, which will be subject to proof and documentation satisfactory to the Receivers.

b.   In the event the Receivers settle any Additional Third-Party Claim, in order for such settlement to become final, after conferring with the SEC, the Receivers will file a motion with the Court in order to obtain an Order approving the settlement.  The Receivers will be permitted to combine multiple settlements in one motion requesting approval.

c.   Pending Court approval of a settlement, the Receivers are permitted to receive settlement funds upon the settling party's execution of the settlement agreement and hold such funds pending Court approval.

d.   The Receivers are permitted to file motions to approve settlement agreements under seal and on an omnibus basis, and the Receivers will first provide a copy to the SEC.

14.   Further, to minimize expenses associated with Additional Third-Party Claim lawsuits, the Receivers request that they all be managed and adjudicated by this Court, which is familiar with the underlying facts. The Receivers believe this will maximize efficiency, prevent unnecessary duplication of judicial labor, and avoid inconsistent rulings which could potentially lead to disparate treatment of similarly situated prospective defendants. Accordingly, the Receivers believe it is appropriate for all Additional Third-Party Claim lawsuits to be transferred to this Court as similar actions, and the Receivers will file a notice of similar action with each complaint.

#3444557v2-221271.0001

15. The Receivers' objective in pursuing Additional Third-Party Claims is to maximize the net recovery to the Receivership estate. The Receivers will use their business judgment in pursuing such claims and remain focused on the objective of maximizing recovery. This may include seeking Court approval of exceptions to the procedures described above if warranted. The Receivers may request tolling agreements for statutes of limitation and statutes of repose. The Receivers, after consultation with the SEC, are seeking to engage counsel on a contingency basis to pursue the Additional Third-Party Claims which are discussed next.

### C. The Collection of a Judgment Obtained Against Sanjay Singh and Sheetal Singh

16. During the course of the administration of the Receivership estate, through the assistance of the forensic accountants for the Receivers, it was determined that Mr. and Mrs. Singh caused RBL to transfer a sum in excess of $100,000 to Wells Fargo Bank in order to pay monthly mortgage obligations of Mr. and Mrs. Singh for their residence in Coral Springs Florida.

17. At the same time, the forensic accountants, utilizing RBL bank records, determined that Mr. and Mrs. Singh caused RBL to transfer substantial sums of money to the personal accounts of Mr. and Mrs. Singh, with the net amount being in excess of $3 million. All the aforesaid transfers were made at the time that RBL was insolvent and while engaging in a Ponzi scheme.

18. At approximately the same time, counsel for the Receivers learned that Wells Fargo Bank had instituted a foreclosure proceeding against Mr. and Mrs. Singh in the Circuit Court for Broward County Florida. Given the fact that the Receivers believe that Mr. and Mrs. Singh have substantial equity in their residence; in order to protect the interests of the estate, the Receivers successfully intervened in the foreclosure proceeding and further placed a Lis Pendens on the residence of Mr. and Mrs. Singh.

19. Thereafter, when it was learned by the Receivers' counsel that Wells Fargo Bank had

#3444557v2-221271.0001

dismissed the foreclosure proceeding, in order to protect the interests of the Receivership estate in the equity in the residence of Mr. and Mrs. Singh, the Receivers commenced a fraudulent transfer action in the Circuit Court for Broward County while also refiling the Lis Pendens on the property in order to preclude a sale or encumbrance that would interfere with the Receivers' ability to monetize the equity in the property.

20.     Following months of dilatory pleadings being filed by Sheetal on behalf of Mr. and Mrs. Singh, one of which led to sanctions being imposed by the Court on Sheetal, following a hearing on March 2, 2026, the Judge of the Circuit Court for Broward County granted the Receivers' motion for partial summary judgment on the fraudulent transfer account in the total amount of $4,980,643.35.  A copy of said order granting Summary Judgment in favor of the Receivers as against Mr. and Mrs. Singh is attached hereto and marked **Exhibit "A"**.

21.     In order to create finality with respect to the Summary Judgment that was entered, counsel for the Receivers will be dismissing without prejudice the remaining counts of the complaint against Mr. and Mrs. Singh, as the remaining counts state different causes of action to reach the same result as the Summary Judgment order. Thereafter, upon the finality of the Summary Judgment Order, the Receivers will be able to proceed towards execution to collect the judgment against Mr. and Mrs. Singh.

22.     Counsel for the Receivers has been in communication with counsel for the SEC to determine how best to proceed to monetize the benefits of the Judgment obtained against Mr. and Mrs. Singh. Counsel for the SEC has suggested that in accordance with the SEC's guidelines for Receivership proceedings, any further legal work in connection with the enforcement of the judgment against Mr. and Mrs. Singh should be handled by the Receivers' law firm on a contingent fee basis.

#3444557v2-221271.0001

23.     In the event that the Receivers reach a settlement with Mr. and/or Mrs. Singh, after conferring with the SEC, the Receivers will file a motion with the Court to obtain an Order approving the settlement.

24.     Pending Court approval of a settlement, the Receivers are permitted to receive settlement funds upon the settling party's execution of the settlement agreement and hold such funds pending Court approval.

25.     The Receivers are permitted to file a motion to approve a settlement agreement under seal and on an omnibus basis, and the Receivers will first provide a copy to the SEC.

26.     Keeping in mind the Court's admonition and statements that were expressed at the December 18, 2025, status conference in this proceeding and considering the request by counsel for the SEC, the Receivers are now filing a Motion for authority to further proceed with the litigation against Mr. and Mrs. Singh on a contingent fee basis.

**D.     The Proposed Contingency Fees.**

27.     Pursuant to Court Order, the Receivers hired the law firm of Tripp Scott, P.A. ("TS") to represent them in the performance of their duties [DE 18]. The Receivers and their counsel agreed to substantial discounts from their standard hourly rates in connection with this engagement.

28.     The Receivers, after consultation with the SEC and having considered the Court's comments at the status hearing and as contained in the Order, have determined it is in the estate's best interest to have counsel pursue the Additional Third-Party Claims and the collection of the Singh judgment on a contingency fee basis. The Receivers have conferred with TS, which has agreed to handle the Additional Third-Party Claims on behalf of the Receivership estate on and the collection of the Singh judgment on a contingency fee basis. TS has experience in handling these types of claims with favorable results, and the contingency fee arrangement will minimize administration

#3444557v2-221271.0001

expenses and risk to the Receivership estate.

29.     The Receivers propose that as a reasonable attorneys' fee for the pursuit of the claims against the net winners and the collection of the Singh judgment, TS receive the following fees (the "Contingency Fee Arrangement"):

    a.  With respect to the first $100,000 of cumulative recoveries, there will be a 20% contingency fee charged.

    b.  With respect to any cumulative recoveries above $100,000 up to $250,000, there will be a 17.5% contingency fee charged.

    c.  With respect to any cumulative recoveries above $250,000 up to $500,000, there will be a 15% contingency fee charged.

    d.  With respect to any cumulative recoveries above $500,000 up to $750,000, there will be a 12.5% contingency fee charged.

    e.  With respect to any cumulative recoveries above $1,000,000, there will be 10% contingency fee charged.

30.     The Receivers propose that as a reasonable attorneys' fee for the collection of the judgment against Mr. and Mrs. Singh, TS receive the following fees (the "Contingency Fee Arrangement"):

    a.  With respect to the first $100,000 of cumulative recoveries, there will be a 20% contingency fee charged.

    b.  With respect to any cumulative recoveries above $100,000 up to $250,000, there will be a 17.5% contingency fee charged.

    c.  With respect to any cumulative recoveries above $250,000 up to $500,000, there will be a 15% contingency fee charged.

d.   With respect to any cumulative recoveries above $500,000 up to $750,000, there will be a 12.5% contingency fee charged.

e.   With respect to any cumulative recoveries above $1,000,000, there will be 10% contingency fee charged.

31.   The Receivers propose that in the event the Receivers settle any Additional Third-Party Claim, following Court approval of the settlement, and after conferring with the SEC, the Receivers will file a motion with the Court seeking an Order approving the payment of the contingency fee and any out-of-pocket expenses.  Payment of contingency fees and costs can be made after Court approval of such allowance. There will be no holdback for any allowed contingency fees or cost reimbursement.

32.   TS will maintain separate categories in its billing records for all time expended in connection with the prosecution of the Additional Third-Party Claims and the collection of the Singh judgment.

33.   The direct out-of-pocket expenses, associated with all Additional Third-Party Claims and the collection of the Singh judgment will be advanced by TS and not paid by the Receivership estate. At the time of any recovery of an Additional Third-Party Claim, TS will be reimbursed for any direct out-of-pocket expenses that have been advanced after approval by the Court. Direct out-of-pocket expenses WILL NOT include any TS overhead, copying, long distance, etc. Expenses subject to Court approval will only be true third-party expenditures such as court costs, service of process fees, deposition expenses and mediation costs.

34.   The Receivers submit that the proposed modification of the terms of Receivers' counsel's employment is in the best interests of the Receivership estate, victim investors and other creditors, and will minimize the potential expense and risk to the Receivership estate while

#3444557v2-221271.0001

incentivizing efficient recoveries of any Additional Third-Party Claims.

35.     For the elimination of doubt, the following example is provided. For every recovery made prior to reaching a cumulative amount of recoveries of $100,000, counsel for the Receivers will be entitled to a 20% contingency fee. Once the cumulative recoveries exceed $100,000 until the cumulative recoveries reach $250,000, on the recoveries above $100,000, counsel for the Receivers will only be entitled to a 17.5% contingency fee until the $250,000 threshold is met. A copy of the proposed representation agreement is attached hereto and marked **Exhibit "B"**.

## LEGAL ARGUMENT

**A. The Court Should Approve the Proposed Procedures for the Pursuit of the Additional Third-Party Claims and the Collection of the Judgment Against Mr. and Mrs. Singh.**

36.     "The district court has broad powers and wide discretion to determine relief in an equity Receivership." *S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992) (citations omitted). "This discretion derives from the inherent powers of an equity court to fashion relief." *Id*. "[A] district court's power to supervise an equity Receivership and to determine the appropriate action to be taken in the administration of the Receivership is extremely broad." *S.E.C. v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986). "A district judge supervising an equity Receivership faces a myriad of complicated problems in dealing with the various parties and issues involved in administering the Receivership." *Id*. at 1038. "Reasonable administrative procedures, crafted to deal with the complex circumstances of each case, will be upheld." *Id*. "A district judge simply cannot effectively and successfully supervise a Receivership and protect the interests of its beneficiaries absent broad discretionary power." *Broadbent v. Advantage Software, Inc.*, 415 F. App'x 73, 78 (10th Cir. 2011). "[A]ny action by a trial court in supervising an equity Receivership is committed to his sound discretion and will not be disturbed unless there is a clear showing of abuse." *Bendall v.*

#3444557v2-221271.0001

*Lancer Mgmt. Grp., LLC*, 523 F. App'x 554, 557 (11th Cir. 2013) (quoting *S.E.C. v. Safety Fin. Serv., Inc.,* 674 F.2d 368, 373 (5th Cir.1982).

37.     The Court's wide discretion includes considering and approving procedures to recover improper transfers and other claims for the benefit of the Receivership estate. Several district courts in Florida have approved a receiver's proposed procedures for third-party claims. *See, e.g.*, *S.E.C. v. Kinetic Investment Group, LLC, et al.*, Case No. 20-cv-00394-MSS-SPF, DE 181 (M.D. Fla. Feb. 24, 2021) (granting receiver's motion to approve procedure to issue pre-suit demand letters and prosecute and compromise claims); *S.E.C. v. TCA Fund Management Group Corp., et al.*, Case No. 20-cv-21964-CMA, DE 226 (S.D. Fla. April 8, 2022) (authorizing Receivers to pursue collection of certain defendants and approving proposed process for demand letters and prosecution and settlement of claims); *C.F.T.C. v. Oasis International Group, Limited, et al.*, Case No. 19-cv-00886-VMC-SPF, DE 247 (M.D. Fla. 2020) (approving receiver's pre-suit demand and settlement procedure).

38.     The Receivers' paramount priority is to identify assets that can be efficiently recovered for the benefit of the Receivership estate. They believe the proposed procedures described in this Motion provide an efficient and cost-effective method to further this goal with respect to the pursuit of the Additional Third-Party Claims and the collection of the Singh judgment. The Receivers submit that equity would not be served if investors who received profits on top of their investments and Mr. and Mrs. Singh who received funds without providing adequate value are permitted to retain recoverable transfers.

39.     Importantly, the Receivers are not asking the Court to decide ultimate issues of fact or law through this motion; they are only asking the Court to approve the institution of claw back litigation against the net winners and the collection of the Singh judgment, given the

#3444557v2-221271.0001

principles discussed above. The requested relief is consistent with the Court's extremely broad power to supervise this equity Receivership and to determine the appropriate actions to be taken in the administration of the Receivership. *S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992); *S.E.C. v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). The Court's wide discretion derives from the inherent powers of an equity court to fashion relief. *Elliott*, 953 F.2d at 1566; *S.E.C. v. Safety Finance Service, Inc.*, 674 F.2d 368, 372 (5th Cir. 1982). A court imposing a Receivership assumes custody and control of all assets and property of the Receivership, and it has broad equitable authority to issue all orders necessary for the proper administration of the Receivership estate. *See S.E.C. v. Credit Bancorp Ltd.*, 290 F.3d 80, 82-83 (2d Cir. 2002); *S.E.C. v. Wencke*, 622 F.2d 1363, 1370 (9th Cir. 1980).

40.     The Court may enter such orders as may be appropriate and necessary for a receiver to fulfill his/her duty to preserve and maintain the property and funds within the Receivership estate. *See, e.g., Official Comm. Of Unsecured Creditors of Worldcom, Inc. v. S.E.C.*, 467 F.3d 73, 81 (2d Cir. 2006). Any action taken by a district court in the exercise of its discretion is subject to great deference by appellate courts. *See United States v. Branch Coal*, 390 F. 2d 7, 10 (3d Cir. 1969). Such discretion is especially important considering that one of the ultimate purposes of a receiver's appointment is to provide a method of gathering, preserving, and ultimately liquidating assets to return funds to creditors. *See S.E.C. v. Safety Fin. Serv., Inc.*, 674 F.2d 368, 372 (5th Cir. 1982) (court overseeing equity Receivership enjoys "wide discretionary power" related to its "concern for orderly administration") (citations omitted). The Receivers believe that the relief requested in this motion is consistent with both their mandate under the Order Appointing Receiver and the Court's equitable powers. The Receivers anticipate bringing these claims in one action as was done in *Commodity Futures Trading Commission v.*

#3444557v2-221271.0001

*Oasis International Group, et al.*, Case No. 8:19-CV-886-T-33SPF (M.D. Fla.) which has proven to be a cost-effective and efficient means of litigating this type of claim. Additionally, the Receivers will exercise their discretion to possibly exclude *de minimis* Additional Third-Party Claims that may not be economical for the Receivers to pursue.

41.     Again, the Receivers are not asking the Court to decide ultimate issues of fact or law through this motion. This section is included only to demonstrate that the Receiver's claims are well-founded and that the proposed pre-suit settlement is fair and reasonable. As noted above, "[a] Ponzi scheme uses the principal investments of newer investors, who are promised large returns, to pay older investors what appear to be high returns, but which are in reality a return of their own principal or that of other investors." *See, e.g., Lee*, 753 F.3d at 1201. Given this Court's Order on the Motion for Preliminary Injunction and his own investigation, the Receiver believes the scheme underlying this action qualifies as a Ponzi scheme.[1] The Eleventh Circuit has expressly adopted the "Ponzi presumption," which provides that transfers from Ponzi schemes are recoverable under pertinent fraudulent transfer law:

> Other circuits have held that in a receiver's suit under a state uniform fraudulent transfer law, proof that a transfer was made from an entity used to perpetrate a Ponzi scheme is sufficient to establish the transfer was made with actual fraudulent intent without a consideration of the badges of fraud. *See Donell v. Kowell,* 533 F.3d 762, 770 (9th Cir. 2008) (applying California's UFTA); *S.E.C. v. Res. Dev. Int'l, LLC,* 487 F.3d 295, 301 (5th Cir. 2007) (applying Texas's UFTA); *Warfield v. Byron,* 436 F.3d 551, 558-59 (5th Cir. 2006) (applying Washington's UFTA); *see also Wing v. Dockstader,* 482 Fed. Appx. 361, 363 (10th Cir. 2012) (applying Utah's UFTA). This court has embraced the so-called "Ponzi scheme presumption" in applying the Bankruptcy Code's fraudulent transfer provisions. *Perkins v. Haines,* 661 F.3d 623, 626 (11th Cir.2011) ("With respect to Ponzi schemes, transfers made in furtherance of the scheme are

---

[1] Even if it did not, fraudulent transfers are nevertheless recoverable using statutory "badges of fraud." *See, e.g., Lee*, 753 F.3d at 1200.

presumed to have been made with the intent to defraud for purposes of recovering the payments under [11 U.S.C.] §§ 548(a) and 544(b).") (citations omitted). We now clarify that, under FUFTA's actual fraud provision, proof that a transfer was made in furtherance of a Ponzi scheme establishes actual intent to defraud under § 726.105(1)(a) without the need to consider the badges of fraud. *Lee*, 753 F.3d at 1200-01.

42.     Courts recognize a receiver's right to recover, at minimum, "false profits" from investors because "[t]he investors who profited … did not receive income from their investments but received principal funds from other investors." *Id.* at 1200; *see also Wiand v. Lee*, 2012 WL 6923664, at *17 (M.D. Fla. Dec. 13, 2012), *adopted* 2013 WL 247361 (M.D. Fla. Jan. 23, 2013) ("[A]s the Receiver indicates, it is well-settled that a receiver is entitled to recover from winning investors profits above the initial outlay, also known as 'false profits,' and an investor in a scheme does not provide reasonably equivalent value for any amounts received from [the] scheme that exceed the investor's principal investment."); *Perkins v. Haines*, 661 F.3d 623, 627 (11th Cir. 2011) ("Any transfers over and above the amount of the principal—*i.e.,* for fictitious profits— are not made for 'value' because they exceed the scope of the investors' fraud claim and may be subject to recovery…."). Given the Receiver's own investigation, and this well-settled, governing law, the Receiver respectfully requests that the Court allow him to pursue these claims.

43.     As discussed above, "the district court has broad powers and wide discretion to determine relief in an equity Receivership [,]" including with respect to approving fee structures and awarding compensation and reimbursement of expenses incurred by the Receivers in the performance of their duties. *Elliott*, 953 F.2d at 1566. Further, Chief Judge Altonaga has approved the same tiered contingency fee arrangement for the Receivers' counsel in *TCA Fund Management*. *See* Case No. 20-cv-21964-CMA, DE 156.

44.     The Receivers have determined, in consultation with the SEC, that it is in the best

#3444557v2-221271.0001

interest of the Receivership estate to engage TS on a contingency fee basis to pursue the collection of the judgment against Mr. and Mrs. Singh and the Additional Third-Party Claims on an hourly basis could potentially deplete the Receivership estate's funds that might otherwise be used for distributions, and the proposed fee arrangement shifts the risk away from the Receivership estate. The SEC does not object to the Contingency Fee Arrangement set forth above.

**WHEREFORE**, the Receivers respectfully request that the Court enter an order granting the Motion substantially in the same form as the proposed Order attached hereto as **Exhibit "C"**: (a) granting the Motion; (b) authorizing leave of Court for the Receivers to pursue the pursuit of the Additional Third-Party Claims and the collection of the judgment against Mr. and Mrs. Singh; (c) approving the proposed procedures for the collection of the judgment against Mr. and Mrs. Singh; (d) approving the Contingency Fee Arrangement, payment procedures and related relief for litigation expenses described herein; and (e) granting the Receivers such other and further relief as the Court deems just and proper.

## <u>CERTIFICATION OF CONFERRAL</u>

The undersigned counsel for the Receivers certifies that he has conferred with counsel for the SEC and certifies that the SEC has no objection to the relief sought in the Motion.

Respectfully submitted,

**TRIPP SCOTT, P.A.**
***Counsel to the Receivers***
110 S.E. 6th Street, 15th Floor
Ft. Lauderdale, FL 33301
Phone: (954) 525-7500

By: */s/ Charles M. Tatelbaum*
**Charles M. Tatelbaum**
Florida Bar No. 177540
cmt@trippscott.com

#3444557v2-221271.0001

**Corey D. Cohen**
Florida Bar No. 1024891
cdc@trippscott.com
mrw@trippscott.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 20th day of March 2026, I electronically filed the foregoing

document via this Court's CM/ECF system which provided a true copy to all those entitled to notice.

By: */s/ Charles M. Tatelbaum*
Charles M. Tatelbaum
Florida Bar No. 177540

#3444557v2-221271.0001